**No. 23-1101**

United States Court of Appeals
for the Federal Circuit

_____

ECOFACTOR, INC.,

*Plaintiffs–Appellee*,

v.

GOOGLE LLC,

*Defendant-Appellant.*

_____

On Appeal from the United States District Court for the Western
District of Texas, No. 6:20-cv-00075-ADA, Hon. Alan D Albright

**BRIEF OF US\*MADE AS AMICUS CURIAE IN SUPPORT OF
GOOGLE AND REHEARING EN BANC**

Joseph Matal
CLEAR IP, LLC
800 17th St., NW  Suite 500
Washington, DC 20006
(202) 654-4500
Joseph.Matal@clearpatents.com

*Counsel for Amicus Curiae*

July 31, 2024

# CERTIFICATE OF INTEREST

Pursuant to Federal Circuit Rules 29(a) and 47.4, counsel for US*MADE certifies that:

1. The full name of the party that I represent is US*MADE

2. There are no real parties in interest of the party that I represent

3. There are no parent corporations or publicly held companies that own ten percent or more of the stock of the party that I represent

4. No other law firms, partners, or associates who have not entered an appearance in this appeal either appeared for the party that I represent in the originating court or are expected to so appear in this Court

5. I do not know of any case in this or any other court or agency that will directly affect or be directly affected by this Court's decision in this case

6. No disclosure regarding organizational victims in criminal cases or debtors or trustees in bankruptcy cases is required under Fed. R. App. P. 26.1(b) or (c).

July 31, 2024                                    */s/ Joseph Matal*

# TABLE OF CONTENTS

**Table of authorities** ...................................................ii

**Interest of amicus curiae**..........................................iv

**Argument** ...............................................................1

   **I. Introduction** ................................................1

   **II. Rule 702 requires exclusion of testimony that is based on self-interested data** ..........................3

   **III. Apportionment requires more than mere acknowledgment that non-asserted patents were used in rate setting**.......................................6

**Conclusion**.........................................................12

# TABLE OF AUTHORITIES

## Cases

*Al Qari v. Am. Steamship Co*., 689 F. Supp. 3d 494 (E.D. Mich. 2023) ..........................................................................6

*Cooper v. Travelers Indem. Co. of Ill*., 113 F. App'x 198 (9th Cir. 2004) ..........................................................................4

*Finjan, Inc. v. Secure Computing Corp*., 626 F.3d 1197 (Fed. Cir. 2010) ........................................................................10

*Garretson v. Clark*, 111 U.S. 120 (1884) ..................................8

*In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717 (3d Cir. 1996) .......3

*Jacked Up, L.L.C. v. Sara Lee Corp*., 807 F. App'x 344 (5th Cir. 2020) ..........................................................................4

*Mercedes-Benz USA, Inc. v. Coast Auto. Grp*., Ltd., 362 F. App'x 332 (3d Cir. 2010) ........................................................4

*Rodríguez v. Hospital San Cristobal, Inc*., 91 F.4th 59 (1st Cir. 2024) ..........................................................................6

*Sardis v. Overhead Door Corp*., 10 F.4th 268 (4th Cir. 2021) .....6

*Seymour v. McCormick*, 57 U.S. 480 (1853) ...........................9

*Tumey, LLP v. Mycroft AI, Inc*., 84 F.4th 775 (8th Cir. 2023)......6

## Rules

Fed. R. Evid. 702 advisory committee's note................... 1, 6, 11

Federal Rule of Evidence 702 ...................................... 1, 6, 11

**Other Authorities**

Mark A. Lemley and William Lee, "The Broken Balance: How "Built-In Apportionment" and the Failure to Apply *Daubert* Have Distorted Patent Infringement Damages," Stanford Law and Econ. Olin Working Paper No. 857.............................. 5, 7, 10

## INTEREST OF AMICUS CURIAE

The U.S. Manufacturers Association for Development and Enterprise (US*MADE) is a nonprofit association representing companies manufacturing diverse goods in the United States. US*MADE members range from some of the largest U.S. manufacturers to the smallest father-and-son business. While US*MADE members have collectively received hundreds of thousands of patents to undergird their innovative enterprises, they have also been the targets of abusive patent litigation. US*MADE has a strong interest in ensuring that district courts properly exercise their gatekeeping functions and exclude unreliable expert-witness damages testimony from the courtroom.[1]

---

[1] No counsel for any party wrote any part of this brief. No party other than amicus curiae's members contributed any money that was intended to fund the preparation or submission of this brief. US*MADE's members are listed at: https://us-made.org/members/.

**ARGUMENT**

## I.  Introduction

On December 1, 2023, the Judicial Conference of the United States amended Federal Rule of Evidence 702 to reaffirm the federal judiciary's duty to ensure that an expert witness's testimony is relevant and reliable.  The amendments add language to Rule 702 providing that the proponent of expert testimony must "demonstrate[] to the court that it is more likely than not" that the proffered testimony is, among other things, based on sufficient facts or data and is the product of reliable principles and methods.

The Note accompanying the amendments explains that "emphasizing the preponderance standard in Rule 702 specifically was made necessary by the courts that have failed to apply correctly the reliability requirements of that rule."  Fed. R. Evid. 702 advisory committee's note.  The Note criticizes decisions that "have held that the critical question of the sufficiency of an expert's basis, and the application of the expert's methodology, are questions of weight and not admissibility"—the Note makes clear that "[t]hese rulings are an incorrect application of Rules 702 and 104(a)."  *Id.*; *see also id.* ("The amendment clarifies that the preponderance standard applies to the three reliability-based

1

requirements added in 2000–requirements that many courts have incorrectly determined to be governed by the more permissive Rule 104(b) standard.").

The panel decision in this case adopted the very approach that the Judicial Conference has condemned.  It effectively applied a presumption of admissibility, treating the sufficiency of the expert's evidentiary basis and the relevance of his comparisons as "a question for the jury" and "best addressed by cross examination and not exclusion."  *EcoFactor, Inc. v. Google LLC*, 104 F.4th at 254, 255.  As a result, the panel decision allowed the admission of expert testimony that relied on the patent owner's own unverified assertions about its past licensing rates and that did not account for non-asserted patents in the portfolios that were used for comparison.

The panel's precedential decision all but vitiates the requirement of apportionment—that a reasonable royalty must reflect the value of the claimed technology.  If left uncorrected, it will be employed by patent owners to gain admission of manufactured evidence and non-comparable licenses to seek inflated damages against American manufacturers.  This Court should rehear this case en banc.

## II. Rule 702 requires exclusion of testimony that is based on self-interested data

The district court allowed EcoFactor's expert witness to rely on "licensing rates" that EcoFactor itself had invented. There is no independent evidence that any licensee actually agreed to pay these rates, nor was EcoFactor or its expert even aware of unit sales by the licensees. The only validation of EcoFactor's purported per-unit rate was the assertions of EcoFactor's own CEO—who, again, did not himself know the number of units that were sold and even felt the need to defend what were evidently inflated rates by making unverified assertions that the licensees' sales must have been low. *See EcoFactor*, 104 F.4th at 253.

Expert testimony based on such self-interested data is not reliable and should have been excluded. Courts applying Rule 702 routinely bar reliance on unverified information provided by a party to the litigation, which has an interest in pleading its own case. *See In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 762 (3d Cir. 1996) (holding that it was proper to exclude the testimony of experts who "based their conclusion as to a plaintiff's symptoms solely on the plaintiff's self-report of illness in preparation for litigation"); *Cooper v. Travelers Indem. Co. of Ill.*, 113 F. App'x 198, 201 (9th Cir.

2004) (holding that it was proper to exclude lost-profits expert testimony based on unverified "client-provided data;" self-reported data is not "the type of data on which experts in economics would reasonably rely"); *Mercedes-Benz USA, Inc. v. Coast Auto. Grp*., Ltd., 362 F. App'x 332, 334 (3d Cir. 2010) (holding that expert's testimony was properly excluded where he "fail[ed] to independently verify [the plaintiff's] claims of unfair allocation"); *see also Jacked Up, L.L.C. v. Sara Lee Corp*., 807 F. App'x 344, 349 (5th Cir. 2020) ("The Federal Rules of Evidence and the requirements of *Daubert* are not satisfied where, as here, the expert fails to show any basis for believing someone else's projections.") (citation omitted).

It is widely recognized that repeat-litigator patentees will add terms to licensing agreements for the purpose of supporting inflated damages demands in future lawsuits.  A patent owner "will often structure its licensing and litigation campaign to generate spurious 'comparable' licenses it can then point to in later litigation."  Mark A. Lemley and William Lee, "The Broken Balance: How "Built-In Apportionment" and the Failure to Apply *Daubert* Have Distorted Patent Infringement Damages," Stanford Law and

Econ. Olin Working Paper No. 857, at 9.[2] "In the worst case, those licenses are actually collusive, with the parties agreeing to a number no one actually pays." *Id.*; *see also id.* at 42, 59.

These observations conform with the experience of US*MADE's members. When non-practicing entities in particular settle an infringement action, *everything* they add to the license is done with an eye toward future patent assertions. Defendants, on the other hand, often have little interest in negotiating over "whereas" clauses and other non-binding terms, so long as the total settlement amount is reasonable. *See id.* at 42-43. No reasonable economist seeking to gauge the true value of a patent would rely on such self-interested and unverified data.

The panel failed to enforce Rule 702. It effectively applied a presumption of admissibility: it found that "*[a]rguably*" the evidence "could also mean that the $X royalty rate was actually being applied," and that the fact that these rates were "self-serving" was "a question for the jury." Again, Rule 702 requires "the court" to determine "that it is *more likely that not*" that the

---

[2] Available at https://papers.ssrn.com/sol3/papers.cfm?abstract_id=4564279.

expert has a sufficient basis for his testimony.  FRE 702 (emphasis added).  Treating the inquiry into the "sufficiency of an expert's basis, and the application of the expert's methodology" as "questions of weight and not admissibility" is "an incorrect application of Rules 702."  *Id.*, advisory committee's note.[3]  The district court's summary denial of Google's *Daubert* motion and admission of expert testimony that relied on such biased and unreliable data was clear error.[4]

### III. Apportionment requires more than mere acknowledgment that non-asserted patents were used in rate setting

The three licensing agreements that EcoFactor's expert relied on consisted of 30 patents.  Thus in addition to the asserted '327 patent, the agreements that were used to determine damages

---

[3] Although the recent amendments to Rule 702 were not finally adopted until December 2023, courts have applied them to pending cases even before they became final, *see, e.g.*, *Sardis v. Overhead Door Corp*., 10 F.4th 268, 283-84 (4th Cir. 2021), because the amendments clarify "how Rule 702 should have been applied all along." *Al Qari v. Am. Steamship Co*., 689 F. Supp. 3d 494, 499 (E.D. Mich. 2023).

[4] A district court's factual determinations applying Rule 702 are reviewed for clear error.  *See Rodríguez v. Hospital San Cristobal, Inc*., 91 F.4th 59, 71 (1st Cir. 2024); *Tumey, LLP v. Mycroft AI, Inc*., 84 F.4th 775, 776 (8th Cir. 2023).

included 29 other patents that were not a basis for damages in this lawsuit. The panel nevertheless concluded that the licenses were economically comparable because EcoFactor's expert "sufficiently apportioned the value of the '327 patent." *EcoFactor*, 104 F.4th at 256.

Here is how the expert accounted for the non-asserted patents included in the licenses: he "addressed and distinguished the remaining patents" by testifying that these additional patents would place "downward pressure . . . on the $X royalty rate." *Id.* The expert then concluded that this downward pressure was offset by "upward pressure on the $X royalty rate" that is created by assuming that the '327 patent was valid and infringed. *Id.* EcoFactor also argued that it was entitled to the same rate regardless of which patents were asserted. *See id.* at 260-61 (Prost., J., dissenting).

Academic commentary has noted that in the last few years, this Court has "eased [its] scrutiny of licenses in damages analyses, thereby opening the door for implicit abandonment of the apportionment principle." Lemley, *supra*, at 44. The type of analysis that the district court allowed in this case amounts to a complete abandonment of apportionment principles.

The reasoning that EcoFactor's expert employed is so generic that it could be used to "apportion" for non-asserted patents in every single case and in any set of circumstances. If a license includes multiple other patents that may not even "cover[] the same technological areas as the asserted patents," *EcoFactor*, 104 F.4th at 260 (Prost, J., dissenting), all the expert needs to do to secure admission of his testimony is to acknowledge that the non-asserted patents would place "downward pressure" on the licensing rate. The expert can then cite offsetting "upward pressure" created by the hypothetical negotiation's assumption of validity and infringement—again, a circumstance that is present in every single case—and thereby justifying relying on non-asserted patents to set a rate for asserted patents.

This cannot be what the Supreme Court intended when it held that a patent owner "must in every case give evidence tending to separate or apportion the defendant's profits and the patentee's damages between the patented feature and the unpatented features"—and that such evidence "must be reliable and tangible, and not conjectural or speculative." *Garretson v. Clark*, 111 U.S. 120, 121 (1884). EcoFactor's expert's testimony about "downward pressure" is not an apportionment analysis—rather, it is an

acknowledgment that the licenses that he relied on do not reflect the value of the '327 patent.

It is particularly troubling that the district court permitted EcoFactor to argue for a patent-agnostic approach—that the same rate should apply regardless of which patent or subset of patents from the portfolio is asserted. It is not uncommon for patent holding companies to assert different patents via multiple LLCs. Under the damages theory that EcoFactor was allowed to advance, the individual patents in a portfolio could be distributed to a dozen different entities—who could then sue an industry serially, demanding the same rate for each patent that would be commanded by the portfolio as a whole.

This is exactly what the Supreme Court warned against when it required apportionment—that without limiting patent damages to the value of the claimed technology, "the unfortunate mechanic may be compelled to pay treble his whole profits to each of a dozen or more several inventors"—and that "actual damages" may be "converted into an unlimited series of penalties on the defendant." *Seymour v. McCormick*, 57 U.S. 480, 491 (1853).

Again, the panel's error stems from a misapprehension of the courts' role under Rule 702. The panel concluded that assessing

whether the licenses were truly comparable is "a factual issue best addressed by cross examination and not exclusion." *EcoFactor*, 104 F.4th at 255; *see also id.* at 257 ("Credibility determinations [and] the weighing of the evidence . . . are jury functions, not those of a trial judge.") (citation omitted).

Even the authorities that the panel cited do not support such a hands-off approach. For example, *Finjan, Inc. v. Secure Computing Corp*., 626 F.3d 1197 (Fed. Cir. 2010), does state that "[i]n setting damages, the jury's function is to weigh contradictory evidence, to judge the credibility of the witnesses, and to resolve factual disputes"—but that the jury undertakes this function only "*provided that the record does not rest on faulty assumptions and a lack of reliable economic testimony*." *Id.* at 1212 (emphasis added). Rule 702 gatekeeping is a predicate to the jury's factfinding, not a factor that is subsumed within it.

In addition, "cross examination is always available and cannot, by itself, eliminate the *Daubert* gatekeeping function." Lemley, *supra*, at 79. "[E]xamination of untested methodologies never shown to be reliable is not the task of the jury." *Id.* A jury typically "has no expertise in scientific methods and may

inappropriately defer to a persuasive-sounding expert." *Id.* This is why Rule 702 exists.

Again, Rule 702 was recently clarified to emphasize that it is "the court" that must decide whether it is "more likely than not" that an expert's evidence and methodology are relevant and reliable. FRE 702. Treating "the critical question of the sufficiency of an expert's basis, and the application of the expert's methodology, [as] questions of weight and not admissibility" is "an incorrect application of Rules 702 and 104(a)." *Id.*, advisory committee's note. The court, not the jury, should have assessed whether EcoFactor's data and methods were relevant and reliable. The district court's failure to require apportionment was clear error.

## CONCLUSION

The panel's affirmance of the district court's admission of EcoFactor's expert testimony should be reheard en banc and reversed.

Respectfully submitted,

*/s/ Joseph Matal*

Joseph Matal
CLEAR IP, LLC
800 17th St., NW
Suite 500
Washington, DC 20006
(202) 654-4500
Joseph.Matal@clearpatents.com

*Counsel for Amicus Curiae*

Dated: July 31, 2024

# CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), the undersigned counsel for amicus curiae certifies that this brief:

(1)   complies with the type-volume limitation of Federal Rule of Appellate Procedure 36(g)(3) and Federal Circuit Rule 29(b) because it contains 2121 words, including footnotes and excluding the parts of the brief exempted by Federal Circuit Rule 32(b) and Federal Rule of Appellate Procedure 32(f); and

(2)   complies with the typeface and style requirements of Federal Rules of Appellate Procedure 32(a)(5) and 32(a)(6) because this document has been prepared using Microsoft Office Word and is set in the Verdana font in a size equivalent to 14 points or larger.

Dated:  July 31, 2024                                            /s/ Joseph Matal