No. 2023-1101

# United States Court of Appeals for the Federal Circuit

ECOFACTOR, INC.,

*Plaintiff-Appellee,*

v.

GOOGLE LLC,

*Defendant-Appellant.*

Appeal from the United States District Court for the Western District of Texas
Case No. 6:20-cv-00075-ADA
Honorable Alan D. Albright

BRIEF OF SAS INSTITUTE INC., SYMMETRY, LLC, SAP AMERICA, INC., GARMIN INTERNATIONAL INC., VIZIO, INC., TESLA, INC., AND RED HAT, INC. AS *AMICI CURIAE* IN SUPPORT OF DEFENDANT-APPELLANT'S REQUEST FOR REHEARING EN BANC

July 31, 2024

Kristin L. Cleveland
John D. Vandenberg
KLARQUIST SPARKMAN, LLP
121 SW Salmon Street, Suite 1600
Portland, OR 97204
(503) 595-5300

*Counsel for Amici Curiae*

FORM 9. Certificate of Interest

Form 9 (p. 1)
March 2023

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 2023-1101

**Short Case Caption** EcoFactor, Inc. v. Google LLC

**Filing Party/Entity** Amici Curiae

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.
2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.
3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.
4. Please do not duplicate entries within Section 5.
5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 07/31/2024

Signature: /s/ Kristin L. Cleveland

Name: Kristin L. Cleveland

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☐ None/Not Applicable |
| SAS Institute Inc. | n/a | n/a |
| Symmetry, LLC | n/a | n/a |
| SAP America, Inc. | n/a | SAP America, Inc. is wholly owned by parent company SAP SE. |
| Garmin International Inc. | n/a | Garmin International Inc. is wholly owned by parent company Garmin Ltd. |
| VIZIO, Inc. | n/a | VIZIO, Inc. is wholly owned by parent company VIZIO Holding Corp. |
| Tesla, Inc. | n/a | n/a |
| Red Hat, Inc. | n/a | Red Hat, Inc. is indirectly owned by International Business Machines Corp. |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐ Yes (file separate notice; see below) ☐ No ☑ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

Page

CERTIFICATE OF INTEREST ........................................................................ i

TABLE OF AUTHORITIES ........................................................................ v

I. IDENTITY, INTEREST, AND AUTHORITY OF *AMICI CURIAE* ............ 1

II. ARGUMENT ........................................................................ 1

A. Patent Damages Awards Must Be Proportionate to the Patented Invention's Contribution ........................................................ 2

B. Damages Awards Must Be Predictable ............................................ 3

C. Unpredictable, Disproportionate Damages Stifle Innovation ............... 4

D. The Majority Demotes Apportionment to a Talking Point ................... 5

E. The Majority Lowers the Standard for Admissibility .......................... 7

F. The Majority Shifts Gatekeeping Factfinding to the Jury ................... 11

III. CONCLUSION ........................................................................ 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*,
694 F.3d 1312 (Fed. Cir. 2012) ........................................................................10

*Apple Inc. v. Wi-LAN Inc.*,
25 F.4th 960 (Fed. Cir. 2022) ......................................................................8, 9

*Bio-Rad Lab'ys, Inc. v. 10X Genomics Inc.*,
967 F.3d 1353 (Fed. Cir. 2020) ........................................................................10

*Brumfield, Tr. for Ascent Tr. v. IBG LLC*,
97 F.4th 854 (Fed. Cir. 2024) ............................................................................5

*Commonwealth Sci. & Indus. Rsch. Org. v. Cisco Sys., Inc.*,
809 F.3d 1295 (Fed. Cir. 2015) ......................................................................5, 6

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993) ............................................................................ 9, 10, 11

*EcoFactor, Inc. v. Google LLC*,
104 F.4th 243 (Fed. Cir. 2024) ........................................................... passim

*Garretson v. Clark*,
10 F. Cas. 40 (C.C.N.D.N.Y. 1878) ..................................................................2

*Garretson v. Clark*,
111 U.S. 120 (1884) ..........................................................................................2

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
694 F.3d 51 (Fed. Cir. 2012) ..............................................................................6

*MLC Intell. Prop., LLC v. Micron Tech., Inc.*,
10 F.4th 1358 (Fed. Cir. 2021) ............................................................ 6, 7, 8, 9

*Omega Pats., LLC v. CalAmp Corp.*,
13 F.4th 1361 (Fed. Cir. 2021) ............................................................ 5, 6, 8, 9

*Seymour v. McCormick*,
57 U.S. 480 (1853) ....................................................................................3

*VLSI Tech. LLC v. Intel Corp.*,
87 F.4th 1332 (Fed. Cir. 2023) ....................................................................5

*Whitserve, LLC v. Comput. Packages, Inc.*,
694 F.3d 10 (Fed. Cir. 2012) ..................................................................8, 9

*Wordtech Sys., Inc v. Integrated Networks Sols., Inc.*,
609 F.3d 1308 (Fed. Cir. 2010) ..............................................................8, 9

**Statutes**

35 U.S.C. §102 .............................................................................................2

35 U.S.C. §103 .............................................................................................2

35 U.S.C. §112 .............................................................................................2

**Other Authorities**

Advisory Committee Note to 1972 Proposed Rule Fed. R. Evid. 104 ....................11

Christopher S. Storm, *Measuring the Inventor's Contribution*,
21 U.N.H.L. Rev. 167 (2022) ........................................................................3

Feng Chen et al., *Chilling effects of patent trolls*,
52 Research Policy, Issue 3 (Apr. 2023) .......................................................4

Kenneth G. Huang et al., *Escaping the patent trolls: The impact of non-practicing entity litigation on firm innovation strategies*,
2024 Strategic Mgmt. J. 1–34 (Mar. 27, 2024) ..........................................4, 5

Lauren Cohen et al., *Patent Trolls: Evidence from Targeted Firms*,
National Bureau of Economic Research (2016)..............................................4

Mark A. Lemley & Carl Shapiro, *Patent Holdup and Royalty Stacking*,
85 Tex. L. Rev. 1991 (2007) ..........................................................................3

William Lee & Mark A. Lemley, *The Broken Balance: How 'Built-In Apportionment' and the Failure to Apply Daubert Have Distorted Patent Infringement Damages*,
Stanford Law and Economics Olin Working Paper No. 587 (Sep. 6, 2023) .........5

**Rules**

Fed. R. Evid. 104 ..........................................................................................11

Fed. R. Evid. 702 ................................................................................... 7, 9, 10

## I. <u>IDENTITY, INTEREST, AND AUTHORITY OF *AMICI CURIAE*</u>

*Amici* are SAS Institute Inc., Symmetry, LLC, SAP America, Inc., Garmin International Inc., Vizio, Inc., Tesla, Inc., and Red Hat, Inc. As further explained in their accompanying motion, *amici* are innovators (or an organization that represents innovators) that face patent licensing solicitations and patent infringement actions and, thus, have an interest in courts *predictably* enforcing *proportionality* between a patented invention and a damages award.[1]

## II. <u>ARGUMENT</u>

The majority errs by (1) reducing the apportionment mandate to a mere talking point in the hypothetical negotiation, (2) permitting an expert to parrot their client's wished-for royalty rate, without quantitative comparability analyses on the "comparable" portfolio-wide, lump-sum, settlement agreements, and (3) shifting to the jury threshold comparability factfinding that is part of the trial court's gatekeeping duty. These errors, if left undisturbed as precedent, would join earlier panel precedents that have diluted both the apportionment mandate and the trial court's gatekeeping duty. The en banc Court should step in to protect proportionality and predictability in reasonable royalty awards.

---

[1] No party or party's counsel authored this brief in whole or in part. No party, party's counsel, or any person other than *amici* or their counsel contributed money that was intended to fund preparing or submitting this brief.

### A. Patent Damages Awards Must Be Proportionate to the Patented Invention's Contribution

To promote innovation, our patent system must balance providing innovators with a period of exclusivity for disclosing their inventions, while limiting that exclusivity to novel and non-obvious inventions (35 U.S.C. §§ 102, 103), which are claimed with particularity, described, and enabled (*id*. §112).

But the Patent Office striking this balance is for naught if courts award disproportionate damages, rewarding a patentee for others' innovations. This is of paramount concern in *amici*'s technology fields where new innovations typically build atop decades of earlier innovations.

The "apportionment" mandate enforces proportionality. It requires "in every case," that the patentee "give evidence tending to separate or apportion . . . between the patented feature and the unpatented features, and such evidence must be reliable and tangible, and not conjectural or speculative." *Garretson v. Clark*, 111 U.S. 120, 121 (1884). The lower court in *Garretson* explained that failing to apportion risked damages "entirely out of proportion to the relation existing between the improvement and the rest of the machine," warning that if other patents covered the product, damages could exceed profits. *Garretson v. Clark*, 10 F. Cas. 40, 43–44 (C.C.N.D.N.Y. 1878), *aff'd*, 111 U.S. 120 (1884). This problem, often referred to as

"royalty stacking,"[2] was of concern in 1878 for a mop. Modern products (*compare* iPhone *with* a mop) only accentuate the need for an apportionment mandate.

### B. Damages Awards Must Be Predictable

It is not enough to enforce apportionment only sometimes. Damages awards must be predictable, which requires courts consistently performing their gatekeeping duty to exclude unreliable expert testimony. Without predictability, patents have the potential to become a lottery ticket. With the right expert, the right jury, and lax gatekeeping, an oversized payday can result even if the patent covers only an insignificant sliver of a sufficiently profitable product.

This is particularly true when an expert cites "comparable licenses" based on settlement agreements to justify a reasonable royalty. Such agreements are often lump sum payments based on the cost of litigation and the risk of disproportionate damages, not patent valuation.[3] These disproportionate licenses then serve as a benchmark in subsequent lawsuits. *See* Lemley & Shapiro, *supra*, at 2021

---

[2] Mark A. Lemley & Carl Shapiro, *Patent Holdup and Royalty Stacking*, 85 Tex. L. Rev. 1991, 2011 (2007); *Seymour v. McCormick*, 57 U.S. 480, 490–91 (1853) (warning that "the unfortunate mechanic may be compelled to pay treble his whole profits to each of . . . several inventors of some small improvement in the engine he has built").

[3] Christopher S. Storm, *Measuring the Inventor's Contribution*, 21 U.N.H.L. Rev. 167, 207 (2022) (noting licenses are influenced by factors "having nothing to do with the value of the asserted patent").

("[R]eliance on private license deals involves a degree of circularity because the royalty rates in those deals are themselves set as a function of what patentees could get if they went to court.").

### C. **Unpredictable, Disproportionate Damages Stifle Innovation**

So what? Does it matter if patentees sometimes reap windfalls? Yes, it matters because unpredictable, disproportionate damage awards stifle innovation, particularly where a disproportionate royalty is sought by a non-practicing entity.

A 2014 study found that companies that lose money in non-practicing entity litigation (via judgment or settlement) reduce their R&D investment by 20% compared to *ex ante* identical firms and it "causes a real decrease in innovation at targeted firms."[4] These results were consistent with previous studies.[5] Studies published in 2023[6] and 2024[7] found that innovation decreased not only in the

---

[4] Lauren Cohen et al., *Patent Trolls: Evidence from Targeted Firms*, National Bureau of Economic Research, 4, 31–32 (2016), available at http://www.nber.org/papers/w20322.

[5] *Id.* at 7 (listing research).

[6] Feng Chen et al., *Chilling effects of patent trolls*, 52 Research Policy, Issue 3 (Apr. 2023), available at https://doi.org/10.1016/j.respol.2022.104702 (finding declines in R&D).

[7] Kenneth G. Huang et al., *Escaping the patent trolls: The impact of non-practicing entity litigation on firm innovation strategies*, 2024 Strategic Mgmt. J. 1–34 (Mar. 27, 2024), available at https://doi.org/10.1002/smj.3606.

targeted firms, but also firms offering similar technology.[8] *Amici* experiences are consistent.

Predictability and proportionality in the assessment of damages are crucial to reducing this negative impact on innovation.[9]

### D. <u>The Majority Demotes Apportionment to a Talking Point</u>

Apportionment is mandatory so that patentees are rewarded only for the value of the claimed invention. *See VLSI Tech. LLC v. Intel Corp.*, 87 F.4th 1332, 1345 (Fed. Cir. 2023); *see also Brumfield, Tr. for Ascent Tr. v. IBG LLC*, 97 F.4th 854, 876 (Fed. Cir. 2024).

Patentees must offer reliable evidence of apportionment to meet their burden to prove damages. *Omega Pats., LLC v. CalAmp Corp.*, 13 F.4th 1361, 1377–78 (Fed. Cir. 2021). "[Q]ualitative testimony that an invention is valuable—without being anchored to a quantitative market valuation—are insufficiently reliable." *Commonwealth Sci. & Indus. Rsch. Org. v. Cisco Sys., Inc.*, 809 F.3d 1295, 1302

---

[8] *Id.* at 20 ("[F]irms targeted by NPE lawsuits subsequently draw more on their in-house technologies" and "nontarget firms . . . seem to shift the locus of their innovation activities away from those of target firms.").

[9] William Lee & Mark A. Lemley, *The Broken Balance: How 'Built-In Apportionment' and the Failure to Apply Daubert Have Distorted Patent Infringement Damages*, Stanford Law and Economics Olin Working Paper No. 587 (Sep. 6, 2023), available at https://ssrn.com/abstract=4564279 ("if patentees are permitted to recover damages on the value of technology they did *not* invent, the balance is disrupted [and incentives for innovation] can be diminished").

(Fed. Cir. 2015) (internal citations omitted); *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 69 (Fed. Cir. 2012) ("This complete lack of economic analysis to quantitatively support [apportionment] . . . would alone justify" exclusion.).

Built-in apportionment is no exception. It is not apportionment-light. To avoid doing *quantitative* adjustments to account for apportionment, an expert must show that the allegedly comparable license is "sufficiently comparable" *and* that it accounts for "principles of apportionment." *Omega*, 13 F.4th at 1377; *MLC Intell. Prop., LLC v. Micron Tech., Inc.*, 10 F.4th 1358, 1374–75 (Fed. Cir. 2021).

Rather than enforcing this legal mandate of apportionment, the majority accepts the patentee's theory that apportionment was merely one of the many talking points in the negotiation, whose absence could be offset with some other talking point, such as the "comparable" portfolio licenses having been settlement agreements:

> Mr. Kennedy testified that in arriving at the $X royalty rate in a hypothetical negotiation, Google would argue that the three license agreements included EcoFactor's portfolio, not just the '327 patent, and thus the $X royalty rate should be decreased. Mr. Kennedy then provided that the three license agreements reflect a settlement and thus the $X royalty rate reflects a risk that that EcoFactor's patents would be found not infringed or invalid. According to Mr. Kennedy, this consideration would not be present at the hypothetical negotiation between EcoFactor and Google, since the assumption is that the '327 patent was infringed

> and valid. As a result, this point would place upward pressure on the negotiated rate.

*EcoFactor, Inc. v. Google LLC*, 104 F.4th 243, 255 (Fed. Cir. 2024) (internal citations omitted). The majority accepts that "upward" and "downward" "pressure" (without any analysis as to why they would be equal and offsetting) could balance the existence of non-infringed patents in the "comparable" licenses:

> Additionally, Mr. Kennedy addressed and distinguished the remaining patents discussed in the license agreements. He testified that at the hypothetical negotiation, *Google would emphasize the downward pressure that these patents* would have on the $X royalty rate. Mr. Kennedy then testified that *EcoFactor would note upward pressure* on the $X royalty rate by assuming that the '327 patent was valid and infringed.

*Id.* at 256 (emphases added).

This downgrading of apportionment to a mere talking point, not a mandate cabining the hypothetical negotiation, would create a dangerous new precedent harmful to *amici* and other innovators. It could invite litigants to proffer expert testimony based on *any* prior portfolio settlement agreement to set a rate for any single claim of that portfolio, arguing the "apportionment" is "built-in" simply because the portfolio license did not assume validity and infringement.

### E. <u>The Majority Lowers the Standard for Admissibility</u>

The trial court is the primary enforcer of predictability by gatekeeping expert testimony. Fed. R. Evid. 702; *MLC*, 10 F.4th at 1367.

But the majority swings open the gate to "reasonable royalty" demands based on prior lump-sum, portfolio licenses. As the dissent explains, the majority allows expert testimony lacking *any* explanation *why* the prior, lump-sum, portfolio licenses were "sufficiently comparable" or "accounted for apportionment." *EcoFactor*, 104 F.4th at 259–60.

First, the majority allows testimony regarding a per unit rate, even though nothing in the record showed *how* one would reliably get from the lump sum amount to a per unit rate (and the expert admitted he did not do that math). Rather, the majority approves the expert parroting his client's self-described "general" licensing policy. This is improper. *MLC*, 10 F.4th at 1368 (affirming exclusion where expert "did not provide mathematical analysis to derive the 0.25% royalty rate from the lump-sum"); *Whitserve, LLC v. Comput. Packages, Inc.*, 694 F.3d 10, 30–33 (Fed. Cir. 2012) (excluding testimony where expert did not explain *how* lump sum could be converted to a rate); *see also Wordtech Sys., Inc v. Integrated Networks Sols., Inc.*, 609 F.3d 1308, 1320–21 (Fed. Cir. 2010). If an expert opines that $X/unit is the rate used in a "comparable" lump-sum license, they should be made to do the math.

Second, even had the expert done that math, he still needed to meet the apportionment mandate by showing that the licenses were "sufficiently comparable" *and* accounted for apportionment. *See Omega*, 13 F.4th at 1376–77; *Apple Inc. v. Wi-LAN Inc.*, 25 F.4th 960, 971–74 (Fed. Cir. 2022). Here, the "comparable"

licenses differed from the "hypothetical negotiation" in at least two important ways: they licensed a patent portfolio (rather than the one patent claim at issue) and they licensed different products (and nothing in the majority opinion suggests Google's accused product had an identical feature set to those different products). The expert made no "adjustments" to the rate for either variable; rather, he hand-waved that the "upward" and "downward" "pressures" he described (which are common to *all* serial plaintiff settlement portfolio licenses) were enough to just use the $X rate. As discussed below, Rule 702 and *Daubert/Kumho Tire* require more. This Court has required more too, particularly when, as here, giving a pass would allow the patentee to evade the apportionment mandate. *See Omega*, 13 F.4th at 1379 (declining to allow party to "hide behind its generic licensing arrangement to avoid the task of apportionment").

However, this Court's guidance has not been consistent: sometimes quantitative adjustment is required, and sometimes it is okay to simply balance "pressures." Because the latter allows patentees to evade apportionment, the en banc Court should endorse the stricter line of cases to preserve predictability and proportionality.

The dissent explains how *MLC*, *Whitserve*, and *Wordtech* all require an expert to show how a rate is derived from a lump sum. *EcoFactor*, 104 F.4th at 258–59. It explains how *Apple*, *MLC*, and *Omega* require an expert "to account for" other

patents in a portfolio when a "comparable" license is to a portfolio, and that not doing so would improperly "excuse" the patentee from apportionment. *Id.* at 260–61 (citation omitted). By contrast, the majority relies on cases that appear to tolerate lax gatekeeping.[10] *See Bio-Rad Lab'ys, Inc. v. 10X Genomics Inc.*, 967 F.3d 1353 (Fed. Cir. 2020); *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312 (Fed. Cir. 2012).

The en banc Court should make clear that an expert cannot use vague, qualitative notions to account for the differences between a "comparable" lump-sum license and the expert's proposed rate. Rather, an expert must quantify *how* a lump sum can be converted to a running royalty rate, *and* quantitatively adjust for differences between that license and the hypothetical negotiation. Even if experts opine that the rate is unchanged, they should show *how* the various upward and downward adjustments are equal. These quantitative analyses must use reliable methods and be based on sufficient facts that are tied to the case.

While mathematical precision is not required, *Daubert*, *Kumho Tire*, and Rule 702 require more than vague reference to unquantified "pressures." A real estate agent cannot justify pricing a one-bedroom condo in Georgetown based on a nine-

---

[10] Albeit the opinions lack sufficient detail to fully assess whether those experts performed reliable, quantitative adjustments. *See EcoFactor*, 104 F.4th at 261 (dissent noting that majority relies on party's *characterization* of ActiveVideo expert's work).

bedroom home in Arlington, because a Georgetown address provides "upward pressure," and fewer bedrooms provide "downward pressure." No patent defendant should have to face such speculation—proportionality and predictability are enhanced where there is confidence that courts will perform their gatekeeping function.

### F. The Majority Shifts Gatekeeping Factfinding to the Jury

The majority also dilutes the apportionment mandate and the trial court's gatekeeping duty in holding "if there were any failures to control for certain variables in comparability, these factual issues were for the jury to decide." *EcoFactor*, 104 F.4th at 256. On the contrary, these were threshold factual issues for the trial court to decide in determining admissibility of the proffered expert testimony. *See* Fed. R. Evid. 104(a) ("The court must decide any preliminary questions about whether . . . evidence is admissible."); Advisory Committee Note to 1972 Proposed Rule 104(a) ("To the extent that these inquiries are factual, the judge acts as a trier of fact."); *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592–93 (1993) ("Faced with a proffer of expert scientific testimony, then, the trial judge must determine at the outset, pursuant to Rule 104(a), whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue.").

## III. CONCLUSION

The dissent notes that this Court has made progress recently in clarifying patent infringement damages. *EcoFactor*, 104 F.4th at 257. *Amici* have welcomed that progress. But a decision like this undermines predictability and proportionality, chilling innovation. The en banc Court should rehear this case to ensure progress on the path of clarity is not abandoned.

July 31, 2024

Respectfully submitted,

/s/ *Kristin L. Cleveland*
Kristin L. Cleveland
John D. Vandenberg
KLARQUIST SPARKMAN, LLP
121 SW Salmon Street, Suite 1600
Portland, OR 97204
(503) 595-5300
john.vandenberg@klarquist.com
kristin.cleveland@klarquist.com

*Counsel for Amici Curiae SAS Institute Inc., Symmetry, LLC, SAP America, Inc., Garmin International Inc., Vizio, Inc., Tesla, Inc., and Red Hat, Inc.*

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS**

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☒ the filing has been prepared using a proportionally-spaced typeface and includes 2592 words, excluding items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

☐ the filing has been prepared using a monospaced typeface and includes __________ lines of text.

☐ the filing contains __________ pages / __________ words / __________ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. __________).

This motion complies with the typeface and style requirements of Federal Rules of Appellate Procedure 27(d)(1)(E), 32(a)(5), and 32(a)(6) because this document has been prepared using Microsoft Office Word 365 and is set in Times New Roman font in a size equivalent to 14 points or larger.

July 31, 2024

/s/ *Kristin L. Cleveland*
Kristin L. Cleveland

*Counsel for Amici Curiae SAS Institute Inc., Symmetry, LLC, SAP America, Inc., Garmin International Inc., Vizio, Inc., Tesla, Inc., and Red Hat, Inc.*