**No. 2023-1101**

# United States Court of Appeals for the Federal Circuit

ECOFACTOR, INC.,
*Plaintiff-Appellee,*
v.
GOOGLE LLC,
*Defendant-Appellant.*

On Appeal from the United States District Court for the Western District of Texas, Case No. 6:20-cv-00075-ADA, Hon. Alan D. Albright

## BRIEF FOR *AMICI CURIAE* INTEL CORPORATION AND DELL INC. IN SUPPORT OF APPELLANT GOOGLE LLC

Meredith Zinanni
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
(312) 862-2000
mzinanni@kirkland.com

John C. O'Quinn
Jason M. Wilcox
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., NW
Washington, DC 20004
(202) 389-5000
john.oquinn@kirkland.com
jason.wilcox@kirkland.com

*Attorneys for Amici Curiae*

July 31, 2024

# CERTIFICATE OF INTEREST

Counsel for *amici curiae* Intel Corporation and Dell Inc. certifies the following:

**1. The full name of every party or *amicus* represented by me is:**

Intel Corporation and Dell Inc.

**2. The names of the real party in interest represented by me is:**

Not applicable

**3. All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or *amici curiae* represented by me are:**

Denali Intermediate Inc., which is wholly owned by Dell Technologies Inc., a publicly traded company. No other publicly held corporation owns 10% or more of the stock of Dell Inc.

**4. The names of all law firms and the partners or associates that appeared for the party or *amici* now represented by me in the trial court or agency or are expected to appear in this court (and who have not or will not enter an appearance in this case) are:**

None

**5. The title and number of any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal:**

Not applicable (amicus brief)

**6. Organizational Victims and Bankruptcy Cases. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).**

None

July 31, 2024

/s/ *John C. O'Quinn*
John C. O'Quinn

## TABLE OF CONTENTS

INTEREST OF AMICI CURIAE ..... 1

ARGUMENT ..... 2

I. 140 Years of Supreme Court Precedent Mandate Meaningful Apportionment of Patent Damages ..... 2

II. The Panel Majority's Approach Abdicates the Judicial Gatekeeping Role For Enforcing Apportionment ..... 4

III. The Real-World Consequence of Not Enforcing Apportionment is a Downward Spiral that Artificially Inflates Consumer Prices While Stifling Innovation ..... 7

A. The Panel Majority's Opinion Opens The Floodgates To Royalty Stacking, Risking Defendants Paying Repeatedly For The Full Value Of An Accused Technology ..... 7

B. The Panel Majority's Opinion Will Upend Real-World Licensing Negotiations And Thereby Harm Consumers ..... 10

CONCLUSION ..... 13

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Blake v. Robertson*,
94 U.S. 728 (1876) .......... 3

*Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*,
489 U.S. 141 (1989) .......... 13

*Daubert v. Merrell Dow Pharma., Inc.*,
509 U.S. 579 (1993) .......... 6

*Ericsson, Inc. v. D-Link Sys., Inc.*,
773 F.3d 1201 (Fed. Cir. 2014) .......... 3, 12

*Garretson v. Clark*,
111 U.S. 120 (1884) .......... 3

*Gen. Elec. Co. v. Joiner*,
522 U.S. 136 (1997) .......... 6

*Intel Corp. v. Future Link Sys.*, LLC
No. 14-377 (D. Del.) .......... 8, 9

*Kumho Tire Co., Ltd. v. Carmichael*,
526 U.S. 137 (1999) .......... 6

*Lattimore v. Hardsocg Mfg. Co.*,
121 F. 986 (8th Cir. 1903) .......... 4

*Mentor Graphics Corp. v. EVE-USA, Inc.*,
851 F.3d 1275 (Fed. Cir. 2017) .......... 4

*Mentor Graphics Corp. v. EVE-USA, Inc.*,
870 F.3d 1298 (Fed. Cir. 2017) .......... 7

*Quanta Computer, Inc. v. LG Elecs., Inc.*,
553 U.S. 617 (2008) .......... 8

*Seymour v. McCormick*,
57 U.S. 480 (1853) .......... 3

*VideoLabs, Inc. v. Dell Techs. Inc. et al.*
No. 6:21-00456 (W.D. Tex.) .......... 9, 10

*VirnetX, Inc. v. Cisco Sys., Inc.*,
767 F.3d 1308 (Fed. Cir. 2014) .......... 4

*Westinghouse Elec. & Mfg. Co. v. Wagner Elec. & Mfg. Co.*,
225 U.S. 604 (1912) .......... 4

*Westinghouse v. New York Brake Co.*,
140 F. 545 (2d Cir. 1905) .......... 4

**Statutes**

35 U.S.C. § 284 .......... 3

**Other Authorities**

Fed. R. Evid. 702, Advisory Committee Notes 2023 .......... 6, 7

FTC, *The Evolving IP Marketplace* (2011)
available at
https://www.ftc.gov/sites/default/files/documents/reports/evolving-ip-marketplace-aligning-patent-notice-and-remedies-competition-report-federal-trade/110307patentreport.pdf .......... 12

Love, *Patentee Overcompensation and the Entire Market Value Rule*,
60 Stan. L. Rev. 263, 279 (2007) .......... 12

Michel, *Bargaining for RAND Royalties in the Shadow of Patent Remedies Law*,
77 Antitrust L.J. 889, 895 (2011) .......... 12

Simpson, *Intel Settles Patent Row That Future Link Valued At $10B*,
Law360 (Aug. 18, 2017)
available at https://www.law360.com/articles/955712/intel-settlespatent-row-that-future-link-valued-at-10b .......... 8, 9

**Rules**

Fed. Cir. R. 40(f)(1) .......... 1

Fed. R. Evid. 702.......... 6

## INTEREST OF AMICI CURIAE[1]

*Amici* are leading United States innovative companies. Intel Corporation ("Intel") is a global leader in the design and manufacturing of semiconductor products, including hardware and software products for networking, telecommunications, cloud computing, artificial intelligence, autonomous driving, and other applications. Dell Inc. ("Dell") designs solutions for the way people work—from award-winning thin computers, tablets, and laptops to powerful workstations, rugged devices, servers, enterprise storage systems, and computer and network security products. Together, *amici* devote billions of dollars annually to research and development and hold thousands of patents. As significant patent holders and frequent patent litigation defendants, they share a robust interest in ensuring that patentees are compensated only for the actual value of their inventions, and that only reliable expert damages testimony is presented to juries.

[1] No counsel for any party authored this brief in whole or in part, and no person or entity other than *amici* and their counsel made a monetary contribution intended to fund the preparation or submission of this brief. Pursuant to Fed. Cir. R. 40(f)(1), this brief is accompanied by a motion for leave to file.

## ARGUMENT

Both innovation and the public interest are served when courts rigorously enforce the foundational apportionment requirement that a patentee be compensated for the value added by its patented invention—and not more. That nearly century-and-a-half old principle is more important than ever, as modern, technologically-advanced products routinely implicate thousands of patents. The panel majority's opinion, however, treats apportionment as effectively optional—allowing plaintiffs to present tenuous theories to juries—contrary to Supreme Court precedent. The repercussions are pernicious, as defendants may be subjected to multiple lawsuits each seeking the full value of an accused technology for patents covering only incremental improvements to that technology.

### I. 140 YEARS OF SUPREME COURT PRECEDENT MANDATE MEANINGFUL APPORTIONMENT OF PATENT DAMAGES

Apportionment is a *legal* requirement memorialized in the patent statute and rooted in longstanding Supreme Court precedent. One hundred and forty years ago, the Supreme Court held that a patentee "must in every case give evidence tending to separate or apportion the defendant's profits and the patentee's damages between the patented feature and the unpatented features." *Garretson v. Clark*, 111 U.S. 120, 121

(1884). Even then, apportionment principles were not new. *See Seymour v. McCormick*, 57 U.S. 480, 491 (1853) (trial court committed "very grave error" in instructing jury regarding damages that "the same rule is to govern, whether the patent covers an entire machine or an improvement on a machine," because the patent-in-suit was for only an "improvement of small importance when compared with the whole machine"); *see also Blake v. Robertson*, 94 U.S. 728, 733-34 (1876). This concept is reflected in the current patent statute, which states a patentee shall be awarded "damages adequate to compensate for the infringement." 35 U.S.C. § 284; *see also Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014) ("the value to be measured is only the value of the infringing features of an accused product" for purposes of assessing damages under § 284). This simple, yet critical, concept—that patentees should only be rewarded for the incremental value of their invention—has been the cornerstone of patent damages law since *Garretson*. *Accord Ericsson*, 773 F.3d at 1232 ("patents often claim only small portions of multi-component products and we have precedent which covers apportionment of damages in those situations" (citing *Garretson*)); *Westinghouse Elec. & Mfg. Co. v.*

*Wagner Elec. & Mfg. Co.*, 225 U.S. 604, 614-15 (1912) (if infringing product contains multiple components but "plaintiff's patent only created a part of the profits, he is only entitled to recover that part of the net gains" (citing *Garretson*)); *Lattimore v. Hardsocg Mfg. Co.*, 121 F. 986, 987-988 (8th Cir. 1903) (similar); *Westinghouse v. New York Brake Co.*, 140 F. 545, 549 (2d Cir. 1905) (same).

At least in theory, apportionment governs to this day. *Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275, 1283 n.3 (Fed. Cir. 2017) ("While these pre-§ 284 cases apply to a different damages regime, nonetheless, we find the basic principle of apportionment which they espouse applies in all of patent damages."), *cert. dismissed*, 139 S. Ct. 44 (2018); *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1326 (Fed. Cir. 2014) (patentee "must take care to seek only those damages attributable to the infringing features" (citing *Garretson*)). Too often, however, courts pay lip service to the principles of apportionment but do not apply them faithfully—as the district court and panel majority did here.

## II. THE PANEL MAJORITY'S APPROACH ABDICATES THE JUDICIAL GATEKEEPING ROLE FOR ENFORCING APPORTIONMENT

The panel majority found that apportioning the royalty rate in

three Ecofactor licenses—covering Ecofactor's *entire portfolio*—was not necessary, despite the fact Ecofactor asserted Google infringed a single patent. Op. at 15. In reaching its decision, the panel majority held that "further apportionment may not be required because the comparable license has built-in apportionment" (whatever that means). *Id.* But as the dissent persuasively explains, that "ignores the key failure" of patentee's expert on the factual record: he "failed to account for the impact of the *specific* remaining patents" covered by the allegedly comparable license agreements at issue despite Ecolab's admission it "use[d] the same $X rate" in its licenses "regardless of the number of patents." Dissent at 9. This type of "circumstance-agnostic analysis is insufficient" under apportionment principles reflected in binding Supreme Court precedent. *Id.* at 8.

Nor, under these facts, is it an answer to say, as the panel majority did, that the question is merely one of weight, leaving it for cross-examination to test the strength of the expert's opinions. *See* Op. at 19. Absent proper apportionment, that bootstraps litigation uncertainty into a windfall. Rather, a district court has an ***obligation*** to "ensure that any and

all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharma., Inc.*, 509 U.S. 579, 589 (1993); *see also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999) (trial judge's *Daubert* obligation to ensure expert testimony is reliable "applies to all expert testimony"); *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 142 (1997) (Federal Rules of Evidence "leave in place the 'gatekeeper' role of the trial judge in screening" scientific testimony); Dissent at 10-11.

The panel majority's approach to an otherwise unapportioned damages theory thus invites district courts to fall into the very trap that the recent amendments to Federal Rule of Evidence 702 were adopted to avoid. As the committee notes explain, "many courts have held that the critical questions of the sufficiency of an expert's basis, and the application of the expert's methodology, are questions of weight and not admissibility. ***These rulings are an incorrect application of Rules 702 and 104(a)***." Fed. R. Evid. 702, Advisory Committee Notes 2023. Rule 702 was amended expressly to place the burden on the proponent of expert testimony to demonstrate that "the testimony is the product of reliable principles and methods" and "reflects a reliable application of the

principles and methods to the facts of the case," which "was made necessary by the courts that have failed to apply correctly the reliability requirements of that rule." *Id.* "Judicial gatekeeping is essential because just as jurors may be unable, due to lack of specialized knowledge, to evaluate meaningfully the reliability of scientific and other methods underlying expert opinion, jurors may also lack the specialized knowledge to determine whether the conclusions of an expert go beyond what the expert's basis and methodology may reliably support." *Id.* That is true in spades when it comes to application of apportionment principles to today's world of high-tech, multi-feature products and standard-essential patents. This Court should grant rehearing *en banc* to course-correct this and resolve a deepening intra-circuit split. *Compare Mentor Graphics Corp. v. EVE-USA, Inc.*, 870 F.3d 1298, 1300 (Fed. Cir. 2017), *with id.* at 1303-04.

## III. THE REAL-WORLD CONSEQUENCE OF NOT ENFORCING APPORTIONMENT IS A DOWNWARD SPIRAL THAT ARTIFICIALLY INFLATES CONSUMER PRICES WHILE STIFLING INNOVATION

### A. The Panel Majority's Opinion Opens The Floodgates To Royalty Stacking, Risking Defendants Paying Repeatedly For The Full Value Of An Accused Technology

Apportionment is always important, but it is particularly so today,

when technology-heavy products frequently consist of hundreds or thousands of features and components—each of which may be covered by a patent. *E.g., Quanta Computer, Inc. v. LG Elecs., Inc.*, 553 U.S. 617, 635 (2008) ("each Intel microprocessor and chipset practices thousands of individual patents"). Failing to properly enforce apportionment principles leads to outsized royalty damages awards, coerced eve-of-trial settlements, and licensing uncertainty—which can be marshalled by plaintiffs to demand higher licenses and even greater damages awards. This feedback loop means creators of complex, multi-component products, such as *amici*, are increasingly vulnerable to opportunistic threats.

For example, in a 2014 case, Intel faced a $10 billion damages claim—several times larger than the largest patent verdict ever awarded—based on patents related only to discrete aspects of circuit architecture. *See* Simpson, *Intel Settles Patent Row That Future Link Valued At $10B*, Law360 (Aug. 18, 2017); *Intel Corp. v. Future Link Sys.*, LLC, No. 14-377, D.I. 541 at 3-5 (D. Del.) (asserting accused products "contain numerous other technologies" than those accused of infringement). One expert, opining regarding six patents, began with four allegedly comparable licenses, made no adjustments to the royalty rate based

on differences between those licenses and the hypothetical negotiation, and made no reference to apportionment (asserting it was "embedded" in the licenses' royalty rate). *Intel*, No. 14-377, D.I. 621 at 3; *Id.*, D.I. 541 at 8-9. Another expert, opining regarding the remaining patents, "did not conduct a technical apportionment analysis" by Future Link's own admission. *Id.*, D.I. 621 at 4; *Id.*, D.I. 541 at 12-16. The district court allowed both experts' testimony under Rule 702, asserting that the issues could be addressed by cross-examination. *Id.*, D.I. 621 at 3-4, 5-6. Had the case not settled, trial would have proceeded with the parties presenting the jury with damages goalposts nearly $10 billion apart. *See* Simpson (Intel assessed patents worth $10 million).

Additionally, a recent Dell case demonstrates the broad implications the panel majority's decision may have on future standards-related litigation. Dell faced a plaintiff who asserted that playing standard video files, together with audio, infringed three patents. *VideoLabs, Inc. v. Dell Techs. Inc. et al.*, No. 6:21-00456, D.I. 223 at 1 (W.D. Tex.). Thousands of other patents were purportedly essential to the standard. *Id.* Yet the plaintiff's expert opined that the full value of the standard was captured

by the three patents-in-suit, without ever conducting a technical or economic analysis of ***any*** of the other patents declared essential to the standard. *Id.* at 1, 12. Instead, he opined that those patents had "very little value, if any" because the standard could not be commercially practiced without, in his opinion, infringing the patents-in-suit. *Id.* at 14-15. If accepted, this logic, and that of the panel majority, would embolden any patentee with a standard-essential patent to likewise improperly claim that its patent is entitled to a royalty rate representing the entire value of the standard. Implementers of standards thus may face serial lawsuits, each wrongly seeking damages measured by the value of the standard, not the asserted patent. This would leave defendants exposed to future lawsuits seeking overlapping, duplicative damages for alleged infringement of other patents covering the same technologies or essential to the same standard.

### B. The Panel Majority's Opinion Will Upend Real-World Licensing Negotiations And Thereby Harm Consumers

The potential for windfall damages or favorable settlement agreements shown by these cases demonstrate why it is enticing for plaintiffs to seek judgments in the hundreds of millions or even billions of dollars based on patents directed toward nominal features of complex, high-tech

products. But the public pays a price for the uncertainty created without the predictable application of apportionment principles. Without knowing that a damages award will be limited to the incremental value of the patented technology, the parties' settlement negotiations lack an anchoring value for the technology actually at issue and are riddled with uncertainty. This inevitably leads to some settlements where the parties assign the same technology significantly varied values—not based on the footprint of the invention, but on the risk of unapportioned awards. In those circumstances, such risk-based settlements—not any technological apportionment—may become the basis for future damages awards, whether or not they have any relation to the actual value contributed by the patented invention. That approach is unmoored from the core apportionment principles the Supreme Court imposed 140 years ago.

Further, the uncertainty and risk of overcompensation caused by failing to enforce apportionment principles not only inevitably raises consumer prices for reasons having nothing to do with the technological value of patents, but imposes other social costs by discouraging innovation, investment, and the manufacture of complex products. As the Fed-

eral Trade Commission observed, "[p]atent damages that … overcompensate patentees for infringement compared to the market can have detrimental effects on innovation and competition." FTC, *The Evolving IP Marketplace* (2011), at 148; *see also* Michel, *Bargaining for RAND Royalties in the Shadow of Patent Remedies Law*, 77 Antitrust L.J. 889, 895 (2011) ("inflated damage awards can discourage innovation by raising the costs of product development and increasing the risks of investment for other innovators and manufacturers"). And as another commentator explained, "[w]hen patentees are compensated for more than their invention is worth … there is a corresponding disincentive for potential infringers to engage in beneficial commercial activity." Love, *Patentee Overcompensation and the Entire Market Value Rule*, 60 Stan. L. Rev. 263, 279 (2007). The costs of not just overcompensation, but also uncertainty and the risk from unpredictable (and exorbitant) jury awards, are ultimately born by consumers.

The threat is particularly acute in the realm of standard-essential patents. Thousands of patents are often declared essential for technology standards. *Ericsson*, 773 F.3d at 1209 (standards may implicate "hun-

dreds, if not thousands," of patents). *Amici* and similarly-situated companies often face challenges seeking to obtain a license to these patents. If *amici* entered into license agreements with each licensor at their respective asking prices, they would pay multiple times the actual value of the standard. The majority's opinion would validate licensors' arguments, putting *amici* and other licensees at risk of overcompensating for the value contributed by a standard. Consumers, in the end, would be forced to pay multiple times what a particular standardized technology is worth.

Patent damages should be predictable—not a lottery. For 140 years, meaningful application of apportionment principles has been critical to the "carefully crafted bargain for encouraging" innovation enacted by Congress. *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 150-151 (1989). This Court should grant rehearing to clarify apportionment law and reaffirm the critical gatekeeping role district courts must serve to enforce that law, particularly in light of the amendments to Federal Rule of Evidence 702.

## CONCLUSION

The petition for rehearing *en banc* should be granted.

July 31, 2024

Respectfully submitted,

/s/ *John C. O'Quinn*
John C. O'Quinn
Jason M. Wilcox
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., NW
Washington, DC 20004
(202) 389-5000
john.oquinn@kirkland.com
jason.wilcox@kirkland.com

Meredith Zinanni
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
(312) 862-2000
mzinanni@kirkland.com

*Counsel for Amici Curiae*

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION

This brief complies with the type-volume limitations of the Rules of Appellate Procedure and the Rules of this Court. According to the word processing system used to prepare it, the brief contains 2,491 words.

/s/ *John C. O'Quinn*
John C. O'Quinn