No. 2023-1101

_____

**UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT**

_____

ECOFACTOR, INC.,

*Plaintiff-Appellee*,

v.

GOOGLE LLC,

*Defendant-Appellant.*

_____

Appeal from the United States District Court for the Western District of Texas,
Case No. 6:20-CV-00075-ADA | Judge Alan D. Albright

_____

**BRIEF FOR AMICUS CURIAE
INTELLECTUAL PROPERTY OWNERS ASSOCIATION
IN SUPPORT OF NEITHER PARTY**

_____

Samantha J. Aguayo, *Deputy Executive Director and Chief Policy Counsel*
INTELLECTUAL PROPERTY OWNERS ASSOCIATION
1501 M St. N.W., Suite 1150
Washington, D.C. 20005
(202) 507-4500

Julia G. Tabat
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, TX 75201
(214) 698-3100

Josh Krevitt
Brian A. Rosenthal
Kate Dominguez
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
(212) 351-4000

Jaysen S. Chung
GIBSON, DUNN & CRUTCHER LLP
One Embarcadero Center, Suite 2600
San Francisco, CA 94111
(415) 393-8200

*Counsel for Amicus Curiae
Intellectual Property Owners Association*

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

| | |
|---|---|
| **Case Number** | 23-1101 |
| **Short Case Caption** | EcoFactor, Inc. v. Google LLC |
| **Filing Party/Entity** | Intellectual Property Owners Association |

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 11/22/2024

Signature: /s/ Josh Krevitt

Name: Josh Krevitt

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. ☑ None/Not Applicable |
| Intellectual Property Owners Association | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐   Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☑ None/Not Applicable          ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐ Yes (file separate notice; see below)     ☐ No     ☑ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable          ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

Page

INTEREST OF THE *AMICUS CURIAE*.................................................1

SUMMARY OF ARGUMENT .............................................................2

ARGUMENT .................................................................................4

I.   The Gatekeeping Role of District Courts Under *Daubert* and Rule 702
     Has Been Eroded, Particularly With Respect to Damages Expert
     Testimony ..............................................................................5

     A.   The Sufficiency of the Basis for an Expert's Testimony and the
          Application of the Expert's Methodology Are Questions of
          Admissibility, *Not* Weight.................................................5

     B.   District Courts Must Ensure That Juries Are Presented With
          Damages Expert Testimony That Complies With the Principles Set
          Forth in the Relevant Precedent of the Supreme Court and This
          Court ................................................................................9

II.  The District Court's Gatekeeping Role Under FRE 702 Is Vital to
     Promoting Judicial Efficiency ....................................................13

     A.   The Litigation Process Would Benefit From the Efficiencies
          Obtained by Effective Gatekeeping at the *Daubert* Stage .................13

     B.   To Promote These Efficiencies at the *Daubert* Stage, District
          Courts Must Provide Reasoned Explanations for Their Decisions.....15

CONCLUSION ...........................................................................17

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Adasa Inc. v. Avery Dennison Corp.*,
    55 F.4th 900 (Fed. Cir. 2022) ..............................................................9

*Certain Underwriters at Lloyd's, London v. Axon Pressure Prods. Inc.*,
    951 F.3d 248 (5th Cir. 2020) ........................................................15, 16

*CloudofChange, LLC v. NCR Corp.*,
    No. 6:19-CV-00513-ADA, 2021 WL 11549625
    (W.D. Tex. Nov. 1, 2021) ....................................................................8

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
    509 U.S. 579 (1993) ........................................................................2, 6

*EcoFactor, Inc. v. Google LLC*,
    104 F.4th 243 (Fed. Cir. 2024), *reh'g en banc granted,*
    *opinion vacated*, 115 F.4th 1380 (Fed. Cir. 2024) ......................1, 11, 12, 15, 16

*Finalrod IP, LLC v. John Crane, Inc.*,
    838 F. App'x 562 (Fed. Cir. 2021) .....................................................15

*Garretson v. Clark*,
    111 U.S. 120 (1884) ............................................................................9

*Hillman Grp., Inc. v. KeyMe, LLC*,
    No. 2:19-CV-00209-JRG, 2021 WL 1248180
    (E.D. Tex. Mar. 30, 2021) ...................................................................8

*Infernal Tech., LLC v. Sony Interactive Ent. LLC*,
    No. 2:19-CV-00248-JRG, 2021 WL 405813
    (E.D. Tex. Feb. 3, 2021) .....................................................................8

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
    694 F.3d 51 (Fed. Cir. 2012) ..........................................................9, 10

*MLC Intellectual Property, LLC v. Micron Tech., Inc.*,
    10 F.4th 1358 (Fed. Cir. 2021) ..........................................................16

*Mondis Technology Ltd. v. LG Electronics, Inc.*,
    407 F. Supp. 3d 482 (D.N.J. 2019) ....................................................13

*Omega Patents, LLC v. CalAmp Corp.*,
    13 F.4th 1361 (Fed. Cir. 2021) ..........................................................13

*Provisur Techs., Inc. v. Weber, Inc.*,
    119 F.4th 948 (Fed. Cir. Oct. 2, 2024) ................................................9

*ResQNet.com, Inc. v. Lansa, Inc.*,
    594 F.3d 869 (Fed. Cir. 2010) ........................................................10

*Rodriguez v. Riddell Sports, Inc.*,
    242 F.3d 567 (5th Cir. 2001) ...........................................................16

*ScentSational Techs. LLC v. PepsiCo, Inc.*,
    773 F. App'x 607 (Fed. Cir. 2019) ..................................................16

*Schwarz v. Folloder*,
    767 F.2d 125 (5th Cir. 1985) ...........................................................16

*VirnetX Inc. v. Cisco Systems, Inc.*,
    748 Fed. App'x 332 (Fed. Cir. 2019) ..............................................14

*VirnetX Inc. v. Cisco Systems, Inc.*,
    No. 6:10-cv-00417-RWS, ECF No. 1025 (E.D. Tex. Sep. 30, 2016) ...............14

*VirnetX Inc. v. Cisco Systems, Inc.*,
    No. 6:10-cv-00417-RWS, ECF No. 1107 (E.D. Tex. Sep. 1, 2020) ..................14

*VirnetX, Inc. v. Cisco Sys., Inc.*,
    767 F.3d 1380 (Fed. Cir. 2014) .................................................10, 14

*VSLI Technologies LLC v. Intel Corp.*,
    87 F.4th 1332 (Fed. Cir. 2023) ........................................................13

### Other Authorities

Advisory Committee Note to Fed. R. Evid. 702, 2000 Amendment.........................6

Advisory Committee Note to Fed. R. Evid. 702, 2023 Amendment.........................7

Advisory Committee Note to Fed. R. Evid. 702, 2023 Amendment.........................7

Order Amending the Federal Rules of Evidence,
    529 U.S. 1189 (2000)...........................................................................6

Report of the Advisory Committee on Evidence Rules, April 30, 2021 ..................7

Report of the Advisory Committee on Evidence Rules, May 15, 2022 ...................7

## INTEREST OF THE *AMICUS CURIAE*

*Amicus curiae* Intellectual Property Owners Association (IPO)[1] represents some of the most innovative companies in the United States. IPO's almost 200 corporate members develop, manufacture, and sell technology-based products in a wide range of industries. IPO is committed to serving the interests of all intellectual property owners in all industries and all fields of technology.[2]

IPO's corporate members invest tens of billions of dollars annually on research and development and employ hundreds of thousands of scientists, engineers, and others in the United States to develop, produce, and market innovative new products and services. To protect their inventions, IPO's members collectively hold tens of thousands of U.S. patents and account for a substantial portion of the patent applications filed every year at the United States Patent and Trademark Office (USPTO).

---

[1]    Counsel certifies that no counsel for a party authored this brief in whole or in part, nor has any counsel, party, or third person other than *amicus* or its counsel made any monetary contribution intended to fund the preparation or submission of this brief. Counsel further understands that the Court's order granting Google's petition for rehearing en banc stated, "Any briefs of amici curiae may be filed without consent and leave of the court." *EcoFactor, Inc. v. Google LLC*, 115 F.4th 1380, 1381 (Fed. Cir. 2024).

[2]    IPO procedures require approval of positions in briefs by a two-thirds majority of directors present and voting. The list of directors is attached to this brief.

Because of the investment of its members, this case presents a question of substantial practical importance to IPO: namely, adherence by district courts to Federal Rule of Evidence 702 ("Rule 702") and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), in performing their necessary gatekeeping role regarding the admissibility of expert testimony, including damages expert testimony in patent cases. IPO believes that the district court in this case did not adhere to the requirements of Rule 702 and *Daubert* with respect to the testimony of EcoFactor's damages expert. Therefore, IPO respectfully requests that this Court reverse the decision of the panel majority, or, at a minimum, remand for a new trial on damages.

## SUMMARY OF ARGUMENT

The district court in this case failed to fulfill its gatekeeping role under *Daubert* and Rule 702 by allowing EcoFactor's damages expert, David Kennedy, to present the jury with unreliable testimony that also violates the Supreme Court's and this Court's damages precedent. That failure is representative of a widespread erosion of that gatekeeping role in many district courts across this country. District courts therefore require a clear directive from this Court to ensure consistent compliance with these obligations in patent cases.

**I.** District courts repeatedly have failed to fulfill their gatekeeping role under *Daubert* and Rule 702 in two particular respects. Despite attempts to clarify

that the sufficiency of the basis for an expert's testimony, as well as the application of the expert's methodology, are questions of admissibility, *not* weight, district courts continue to take the opposite approach—in direct contravention of the most recent amendments to Rule 702. In addition, district courts' gatekeeping role also includes ensuring that damages expert testimony complies with the Supreme Court's and this Court's relevant precedent, which has consistently made clear that any damages awarded to a patentee must be limited to the economic value of the patented invention. Yet, courts continue to allow damages expert testimony that at best purports to—but ultimately does not—comply with those principles. Here, the district court failed to fulfill its gatekeeping role with respect to Mr. Kennedy's testimony on both counts.

II. If district courts consistently fulfill their obligations under *Daubert* and Rule 702, numerous benefits to the litigation process would result. For instance, district courts' failures to police unreliable damages expert testimony frequently results in excessive verdicts and protracted litigation concerning both the verdicts and the underlying testimony. Adequately addressing those problems at the *Daubert* stage, for instance, would save considerable resources and time resolving the resulting issues that repeatedly arise in post-trial motions and on appeal to this Court. Furthermore, the lack of a reasoned explanation from a district court for its decision concerning the admissibility of damages expert testimony causes significant

inefficiencies, including by frustrating the review of this Court and increasing the chance of a reversal or remand—which only further prolongs litigation. Thus, district courts should be required to provide this Court and parties with the necessary context and rationale for their decisions concerning the admissibility of that testimony.

## ARGUMENT

The failures of the district court in this case to fulfill its gatekeeping role under *Daubert* and Rule 702 are emblematic of the erosion of that role in district courts across the country. For example, district courts repeatedly confuse questions of admissibility concerning expert testimony with questions of weight, despite the most recent amendments to Rule 702 clarifying that the sufficiency of the basis for an expert's testimony and the application of their methodology go to admissibility, *not* weight. In addition, district courts have continued to allow juries to be presented with damages expert testimony that falls far short of meeting the strict requirements set forth in the Supreme Court's and this Court's relevant precedent, which makes clear that any damages award must be limited to the economic value of the patented invention. These continued failures only frustrate the jury's important role as the factfinder, which is already complicated given the often-complex technological and scientific issues presented in patent cases. This Court should provide a clear directive to district courts as to their fulfillment of this vital gatekeeping role.

## I.  The Gatekeeping Role of District Courts Under *Daubert* and Rule 702 Has Been Eroded, Particularly With Respect to Damages Expert Testimony

Essential to a jury's ability to carry out its vital factfinding function is a district court ensuring that expert testimony presented to the jury is actually reliable, helpful, and complies with the relevant law.  "If courts simply toss expert testimony off to the jury under a let it all in philosophy, unreliable expert testimony may assume a posture of mystic infallibility in the eyes of a jury of laymen."  Linda S. Simard & William G. Young, *Daubert's Gatekeeper: The Role of the District Judge in Admitting Expert Testimony*, 68 Tul. L. Rev. 1457, 1462 (1994) (internal quotation makes omitted).  Nevertheless, district courts—including the district court in this case—repeatedly eschew that responsibility.  A significant course correction is necessary.

### A.  The Sufficiency of the Basis for an Expert's Testimony and the Application of the Expert's Methodology Are Questions of Admissibility, *Not* Weight

District courts continue to allow juries to be presented with unreliable expert testimony, erroneously reasoning that the sufficiency of the basis for the expert's testimony and the application of their methodology are questions of weight.  That is directly contrary to *Daubert* and Rule 702, which was most recently amended to address this error and explains that these questions go to admissibility, *not weight*.  To resolve this continued confusion, this Court should provide clear guidance that,

consistent with Rule 702, whether there is a sufficient factual basis for an expert's testimony and whether the application of the expert's methodology is reliable are questions of admissibility that cannot be passed to the jury.

The Supreme Court established the *Daubert* standard in response to "sharp divisions among the courts regarding the proper standard for the admission of expert testimony" under Rule 702. *Daubert v. Merrell Dow Pharmaceuticals., Inc.*, 509 U.S. 579, 585 (1993). The Court explained that district courts have a "gatekeeping role" to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Id.* at 589, 597. Following its decision, the Court in 2000 adopted an amendment to Rule 702 and codified the *Daubert* standard. *See* Order Amending the Federal Rules of Evidence, 529 U.S. 1189, 1195 (2000). Recognizing the Supreme Court's charge to district courts to act as gatekeepers, the Advisory Committee observed that "[t]he amendment affirms the trial court's role as gatekeeper and provides some general standards that the trial court must use to assess the reliability and helpfulness of proffered expert testimony." Advisory Committee Note to Fed. R. Evid. 702, 2000 Amendment.

In 2023, given continued "incorrect application[s]" of Rule 702 by district courts that treated "the critical questions of the sufficiency of an expert's basis[] and the application of the expert's methodology" as "questions of weight and not admissibility," the Supreme Court adopted a subsequent amendment to the rule.

Advisory Committee Note to Fed. R. Evid. 702, 2023 Amendment. Notably, the amendments clarify that the proponent of an expert's testimony must prove, by a preponderance of the evidence, to the court that Rule 702 is satisfied:

> [E]xpert testimony may *not be admitted* unless the proponent demonstrates to the court that it is more likely than not that the proffered testimony meets the admissibility requirements set forth in the rule. This is the preponderance of the evidence standard that applies to most of the admissibility requirements set forth in the evidence rules.

Advisory Committee Note to Fed. R. Evid. 702, 2023 Amendment (emphasis added). The Advisory Committee further warned that whether "all requirements of Rule 702 are met by a preponderance of evidence" must not be "punted to the jury, but judges often do so." Report of the Advisory Committee on Evidence Rules, April 30, 2021, at 25; *see also* Report of the Advisory Committee on Evidence Rules, May 15, 2022, at 6 (noting that courts' treatment of expert testimony as presumptively admissible "misstate[s] Rule 702" and ignores the Supreme Court's holdings that "admissibility requirements are to be determined by court[s] under the preponderance standard").

Despite these unambiguous directives, district courts have engaged in a pattern of not policing unreliable damages expert testimony, including on the issue of damages, incorrectly reasoning that the basis for the testimony goes to its weight.[3]

---

[3] *See, e.g.*, *CloudofChange, LLC v. NCR Corp.*, No. 6:19-cv-00513-ADA, 2021 WL 11549625, at *3 (W.D. Tex. Nov. 1, 2021) (holding that an expert's reliance on

Likewise, in this case, the district court failed to fulfill its gatekeeping role by allowing EcoFactor's damages expert, David Kennedy, to present testimony assigning a per-unit royalty rate based on license agreements that were incompatible with his opinion. Indeed, Google filed a *Daubert* motion on this basis and others. *EcoFactor, Inc. v. Google LLC*, No. 6:20-cv-00075-ADA (W.D. Tex.), D.I. 114 ("Google's *Daubert* Motion") at 14. Yet, the district court denied that motion and issued that ruling in an order that simply said "Denied," presumptively concluding that Google's challenge went only to the weight of the expert's opinions.[4] Appx2254. In reversing that decision, this Court should explain that the sufficiency of the basis for Mr. Kennedy's opinions was not a question of weight that could be passed to the jury, and that it was EcoFactor's burden to establish by a preponderance of the evidence that those opinions met the requirements of Rule 702.

---

a document prepared by an intern for apportionment opinions "might weigh on . . . credibility" but did not "justify the exclusion of such testimony"); *Hillman Grp., Inc. v. KeyMe, LLC*, No. 2:19-CV-00209-JRG, 2021 WL 1248180, at *2 (E.D. Tex. Mar. 30, 2021) (holding that the basis of expert's apportionment analysis went "to weight rather than admissibility"); *Infernal Tech., LLC v. Sony Interactive Ent. LLC*, No. 2:19-CV-00248-JRG, 2021 WL 405813, at *2 (E.D. Tex. Feb. 3, 2021) (holding that the basis of expert's opinion was an "issue[] of weight rather than admissibility").

[4]      The order refers to the January 25, 2022, Final Pretrial Conference, but the transcript from that conference is not publicly available or otherwise accessible to IPO.

**B.**     **District Courts Must Ensure That Juries Are Presented With Damages Expert Testimony That Complies With the Principles Set Forth in the Relevant Precedent of the Supreme Court and This Court**

The gatekeeping role of district courts also includes ensuring that damages expert testimony complies with the Supreme Court's and this Court's relevant precedent, which repeatedly has made clear that any patent damages award must be limited to the economic value of the patented invention. *See, e.g.*, *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 68, 81 (Fed. Cir. 2012).[5] As in this case, however, district courts frequently allow damages expert testimony that fails to comply with these fundamental principles.

It has been well over a century since the Supreme Court articulated that a patent owner "must in every case give evidence tending to separate or apportion the defendant's profits and the patentee's damages between the patented feature and the unpatented features, and such evidence must be reliable and tangible, and not conjectural or speculative." *Garretson v. Clark*, 111 U.S. 120, 121 (1884). This Court has since followed and applied that principle in numerous cases, explaining that "[i]t is not enough to merely show that the [patented feature] is viewed as

---

[5]     This Court repeatedly has made clear, in the context of a variety of damages issues, that expert testimony must be based in fact. *Provisur Techs., Inc. v. Weber, Inc.*, 119 F.4th 948, 958 (Fed. Cir. Oct. 2, 2024) (apportionment); *Adasa Inc. v. Avery Dennison Corp.*, 55 F.4th 900, 914-15 (Fed. Cir. 2022) (license comparability).

valuable, important, or even essential to the use of the [overall product]," and instead the "reasonable royalty analysis" requires "carefully t[ying] proof of damages to the claimed invention's footprint in the market place." *See LaserDynamics*, 694 F.3d at 68; *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 869, 869 (Fed. Cir. 2010). "These strict requirements . . . ensure that a reasonable royalty 'does not overreach and encompass components not covered by the patent.'" *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1380, 1326 (Fed. Cir. 2014) (quoting *LaserDynamics*, 694 F.3d at 70). Likewise, this Court has made clear that "[w]hen relying on licenses to prove a reasonable royalty, alleging a loose or vague comparability between different technologies or licenses does not suffice." *LaserDynamics*, 694 F.3d at 79.

Nevertheless, district courts have continued to allow damages expert testimony that fails to comply with or even apply these principles. As one commentator observed, "some district courts have been lax in their application of *Daubert* to issues of patent damages and, in particular apportionment. . . . [T]oo many courts have allowed plaintiffs to rely on made-for-litigation econometric models that purport to apportion but are instead designed through a series of complex steps to produce unreasonable damages numbers." Lee, William F. and Mark A. Lemley, *The Broken Balance: How "Built-In Apportionment" and the Failure to Apply Daubert Have Distorted Patent Infringement Damages*, 37 Harv. J.L. & Tech.

2 (Spring 2024) at 264. Indeed, "[m]any of these 'models' have not been published, peer reviewed, or validated in any way." *Id.*

That is precisely what occurred here. Mr. Kennedy's per-unit royalty rate "rest[ed] on EcoFactor's self-serving, unilateral 'recitals' of its 'beliefs' in the license agreements" at issue. *EcoFactor, Inc. v. Google LLC*, 104 F.4th 243, 257 (Fed. Cir. 2024) (Prost, J., dissenting-in-part), *reh'g en banc granted, opinion vacated*, 115 F.4th 1380 (Fed. Cir. 2024). Even beyond the question of whether the license agreements used that per-unit royalty rate, the rate improperly "includes the value of other patents." *Id.* at 260. Thus, to comply with the apportionment requirement, Mr. Kennedy must have either (1) reduced that rate from the agreements to an amount reflective of *only* the patent-in-suit, or (2) provided evidence that the rate from the agreements are reflective of *only* the patent-in-suit even though they include rights to other patents, so as to justify not making the reduction. But Mr. Kennedy did neither. He simply took the per-unit value from the agreements and applied it in this case. As purported justification, he concluded that "since, 'in the real world,' 'the rest of the patents are thrown in usually either for nothing or very little additional value,' the presence of these non-asserted patents would place 'downward pressure on the royalty rate' in a hypothetical negotiation over the '327 patent." *Id.* This "generic testimony," however, failed to "ask the

necessary question under our law—what effect the *specific* non-asserted patents in EcoFactor's portfolio would have on the hypothetical negotiation." *Id.*

Mr. Kennedy offered additional justifications for his conclusions, but they still failed to comply with the apportionment requirement. For instance, he purported to apply a discount that "reflects a risk that that EcoFactor's patents would be found not infringed or invalid." *EcoFactor*, 104 F.4th at 255 (citing Appx1276). But there is no connection between that discount, which is patent agnostic, and the actual apportionment that must be done to exclude the value of unasserted patents. In addition, Mr. Kennedy referred to a separate analysis where he apparently calculated the profitability of the accused products as it relates to the patent-in-suit, contending that because this amount would be more than the per-unit royalty rate, the royalty rate "would be a very reasonable and conservative first offer." *Id.* at 255-56 (citing Appx5779 (643: 17–18)) (internal quotation marks omitted). Again, however, this supposed "reasonableness check" does nothing to address the apportionment requirement; namely, accounting for the difference between the value of the entire portfolio for each agreement and just the patent-in-suit.

Despite these fundamental failures of Mr. Kennedy's opinions, the district court allowed that testimony over Google's objection. *See* Google's *Daubert* Motion at 9-19. This Court should clarify that a district court's gatekeeping role

includes ensuring that damages expert testimony complies with the relevant law and that the district court failed to do so here.

## II. The District Court's Gatekeeping Role Under FRE 702 Is Vital to Promoting Judicial Efficiency

District courts' fulfillment of their gatekeeping role, including by providing reasoned explanations for their decisions regarding the admission or exclusion of damages expert testimony, promotes the efficient use of judicial resources and can save parties considerable costs and time.

### A. The Litigation Process Would Benefit From the Efficiencies Obtained by Effective Gatekeeping at the *Daubert* Stage

District courts' fulfillment of their gatekeeping role would significantly decrease these inefficiencies and save considerable time and resources for both the courts and parties.

For instance, unreliable damages expert testimony frequently results in excessive verdicts that are ultimately overturned post-trial or on appeal.[6] In addition, challenging unreliable damages expert testimony—whether in *Daubert* motions, post-trial motions, or on appeal—itself requires considerable time and resources from both the parties and the courts. As an initial matter, such challenges are often

---

[6] *See, e.g.*, *VSLI Technologies LLC v. Intel Corp.*, 87 F.4th 1332, 1339, 1347-49 (Fed. Cir. 2023) (vacating $1.5 billion damages award); *Omega Patents, LLC v. CalAmp Corp.*, 13 F.4th 1361 (Fed. Cir. 2021) (vacating $4.6 million damages award); *Mondis Technology Ltd. v. LG Electronics, Inc.*, 407 F. Supp. 3d 482 (D.N.J. 2019) (vacating $45 million damages award).

successful, as around one-third of patent damages awards are reduced post-trial. James Donohue & Marie Sanyal, *Patent Damages Jury Verdicts Aren't Always End of the Story*, Law360 (May 7, 2024, 3:08 PM), https://media.crai.com/wp-content/uploads/2024/05/08142400/Patent-Damages-Jury-Verdicts-Arent-Always-End-Of-The-Story-Donohue-Sanyal-Law360-2024.pdf; Bao Tran, *Patent Damages Statistics: What Innovators Should Know*, PatentPC (June 29, 2024), https://patentpc.com/blog/patent-damages-statistics-what-innovators-should-know. Furthermore, the timeline for resolving a patent case given underlying problems with a damages award based on faulty expert testimony can be extremely long. For example, one commentator calculated an average of 84 days required to rule on a *Daubert* motion. James C. Cooper, *Timing and Disposition of Daubert Motions in Federal District Courts: An Empirical Examination*, 10-11 (2015) (timing measured from the filing of the last brief). Likewise, cases have lingered in the district courts and before this Court for years. For example, *VirnetX, Inc. v. Cisco Systems, Inc.* lasted over ten years to complete, and required two trials and two appeals.[7]

---

[7] *VirnetX, Inc. v. Cisco Systems, Inc.*, 767 F.3d 1308, 1314 (Fed. Cir. 2014) (case originally filed in August 2010, verdict reached in November 2012, and damages award vacated in September 2014); *VirnetX Inc. v. Cisco Systems, Inc.*, No. 6:10-cv-00417-RWS, ECF No. 1025 (E.D. Tex. Sep. 30, 2016) (final judgment after new trial on remand); *VirnetX Inc. v. Cisco Systems, Inc.*, 748 Fed. App'x 332 (Fed. Cir. 2019); *VirnetX Inc. v. Cisco Systems, Inc.*, No. 6:10-cv-00417-RWS, ECF No. 1107 (E.D. Tex. Sep. 1, 2020).

These inefficiencies could be significantly reduced or entirely avoided if district courts more consistently comply with their duties at the *Daubert* stage to police unreliable damages expert testimony.

**B.    To Promote These Efficiencies at the *Daubert* Stage, District Courts Must Provide Reasoned Explanations for Their Decisions**

District courts also must explain their decisions concerning the admission or exclusion of damages expert testimony.  As Judge Prost stated in this case, "[w]hen reviewing a district court's exercise of discretion on a critical, often-complicated evidentiary decision such as a damages-expert *Daubert*, it usually helps to see the court's explanation for its decision." *EcoFactor*, 104 F.4th at 257 n.3.  Indeed, when a district court fails to provide such explanations, "a reviewing court has no way of knowing whether that gatekeeping responsibility has been adequately performed," and is left to guess.  *Certain Underwriters at Lloyd's, London v. Axon Pressure Prods. Inc.*, 951 F.3d 248, 269-70 (5th Cir. 2020).

Both this Court and other appeals courts have admonished and reversed district courts that do not adequately explain their *Daubert* decisions.  This Court, for example, has explained that a district court abused its discretion when it "failed to articulate an explanation for its ruling" on the admissibility of expert testimony. *Finalrod IP, LLC v. John Crane, Inc.*, 838 F. App'x 562, 563 (Fed. Cir. 2021) (vacating and remanding for the district court to reconsider admissibility).  The Fifth Circuit likewise has warned that a district court must "articulate its basis" or "give

reasons for" its decision to admit or exclude expert testimony. *Rodriguez v. Riddell Sports, Inc.*, 242 F.3d 567, 581 (5th Cir. 2001); *Axon Pressure*, 951 F.3d at 269-70. On the other hand, when district courts have detailed their rationales for evidentiary decisions, this Court has relied on those explanations to affirm their decisions. *See, e.g.*, *MLC Intellectual Property, LLC v. Micron Tech., Inc.*, 10 F.4th 1358, 1373-75 (Fed. Cir. 2021) (affirming exclusion of expert testimony because, "[a]s the district court properly explained," the expert failed to properly apportion damages); *ScentSational Techs. LLC v. PepsiCo, Inc.*, 773 F. App'x 607, 609 (Fed. Cir. 2019) (affirming after closely reviewing the district court's "exceptionally detailed analysis" of proffered damages expert testimony).

Here, the district court "gave no explanation for its decision" "at both the *Daubert* stage and in the context of Google's new-trial motion," leaving it to this Court to guess at why the district court believed the expert's methodology satisfied *Daubert* and Rule 702. *EcoFactor*, 104 F.4th at 257 n.3. "A statement of reasons is one of the handmaidens of judging." *Schwarz v. Folloder*, 767 F.2d 125 (5th Cir. 1985). As exemplified by the inefficiencies caused by the lack of a reasoned explanation from the district court in this case, district courts must provide a "statement of reasons" in critical and complicated evidentiary disputes like these.

# CONCLUSION

IPO respectfully request that this Court provide clear guidance to district courts concerning their gatekeeping role under *Daubert* and Rule 702, which also requires ensuring damages expert testimony complies with the strict requirements of the Supreme Court's and this Court's relevant precedent. Here, the district court failed to fulfill those responsibilities. Those failures require reversal or, at a minimum, a remand for a new trial on damages.

Dated: November 22, 2024

Respectfully submitted,

*/s/ Josh Krevitt*

Samantha J. Aguayo, *Deputy Executive Director and Chief Policy Counsel*
INTELLECTUAL PROPERTY OWNERS ASSOCIATION
1501 M St. N.W., Suite 1150
Washington, D.C. 20005
(202) 507-4500

Josh Krevitt
Brian A. Rosenthal
Kate Dominguez
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
(212) 351-4000

Julia G. Tabat
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, TX 75201
(214) 698-3100

Jaysen S. Chung
GIBSON, DUNN & CRUTCHER LLP
One Embarcadero Center, Suite 2600
San Francisco, CA 94111
(415) 393-8200

*Counsel for Amicus Curiae*
*Intellectual Property Owners Association*

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Federal Circuit Rule 32(b)(1) because it contains 3,889 words, excluding the parts of the brief exempted by Federal Circuit Rule 32(b)(2) and Rule 32(f) of the Federal Rules of Appellate Procedure.

2. This brief complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 32(a)(5) and 32(a)(6) because it has been prepared in a monospaced typeface using Microsoft Word in 14-point, Times New Roman font.

Dated: November 22, 2024       */s/ Josh Krevitt*

                   Josh Krevitt

**Members of the Board of Directors**
**Intellectual Property Owners Association**

Steve Akerley
    InterDigital

David Alban
    Xylem

Brett Alten
    Hewlett Packard Enterprise

Matthew Anderson
    Medtronic, Inc.

Ronald Antush
    Nokia of Americas Corp.

Estelle Bakun
    Exxon Mobil Corp.

Scott Barker
    Micron Technology, Inc.

Thomas R. Beall
    Corning Incorporated

Tyrome Brown
    Dolby Laboratories

John J. Cheek
    Tenneco Inc.

Brandon Clark
    SLB

Karen Cochran
    Shell USA, Inc.

Tonya Combs
    Eli Lilly and Co.

Jamie Davis
    Bayer Intellectual Property GmbH

Anthony DiBartolomeo
    SAP SE

Daniel Enebo
    Cargill, Inc.

Andrea Evensen
    Danaher Corp.

Yen Florczak
    3M Innovative Properties Co.

Louis Foreman
    Enventys

Scott M. Frank
    AT&T

Darryl P. Frickey
    Dow Chemical Co.

Mike Geise
    General Mills, Inc.

Robert Giles
    Qualcomm Inc.

Laura Ginkel
    Merck & Co.

Krish Gupta
    Dell Technologies

Henry Hadad
    Bristol-Myers Squibb Co.

Scott Hayden
    Amazon

Emily Johnson
    Amgen

Thomas R. Kingsbury
    Bridgestone Americas, Inc.

Laurie Kowalsky
    Koninklijke Philips N.V.

Christine Lam
        NetApp

David Lane
        Johnson & Johnson

Hsin Lin
        The Goodyear Tire & Rubber Co.

Alexander Long
        GE Aerospace

Ceyda Maisami
        HP Inc.

Kelsey L. Milman
        Caterpillar Inc.

Jeffrey Myers
        Apple Inc.

Troy Prince
        RTX Corporation

Kaveh Rashidi-Yazd
        Eaton Corporation

Corey Salsberg
        Novartis

Matthew Sarboraria
        Oracle USA Inc.

Derek Scott
        Roche, Inc.

Laura Sheridan
        Google Inc.

Jessica Sinnott
        DuPont

Thomas Smith
        GlaxoSmithKline

Daniel Staudt
        Siemens Corp.

Gillian Thackray
        Thermo Fisher Scientific Inc.

Mark Vallone
        IBM Corp.

Bryan Zielinski
        Pfizer Inc.