# United States Court of Appeals
# for the Federal Circuit

ECOFACTOR, INC.,

*Plaintiff-Appellee,*

— v. —

GOOGLE LLC,

*Defendant-Appellant.*

*On Appeal from the United States District Court for the
Western District of Texas in No. 6:20-cv-00075-ADA
Honorable Alan D. Albright*

**BRIEF OF ATLANTIC LEGAL FOUNDATION AS *AMICUS
CURIAE* IN SUPPORT OF APPELLANT AND REVERSAL**

Eric G. Lasker
Katherine E. Nolan
Hollingsworth LLP
1350 I Street, NW
Washington, DC 20005
(202) 898-5800
elasker@hollingsworthllp.com
knolan@hollingsworthllp.com

Lawrence S. Ebner
Atlantic Legal Foundation
1701 Pennsylvania Avenue, NW
Washington, DC 20006
(202) 729-6337
lawrence.ebner@atlanticlegal.org

*Counsel for Amicus Curiae*

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 23-1101

**Short Case Caption** EcoFactor, Inc. v. Google LLC

**Filing Party/Entity** Atlantic Legal Foundation

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 11/26/2024

Signature: /s/ Lawrence S. Ebner

Name: Lawrence S. Ebner

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. ☑ None/Not Applicable |
| Atlantic Legal Foundation | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐ Yes (file separate notice; see below) ☐ No ☑ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☐ **X** None/Not ~~Applicable~~ ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTEREST ................................................................ i

TABLE OF AUTHORITIES ................................................................ v

INTEREST OF THE *AMICUS CURIAE* ................................................ 1

INTRODUCTION ................................................................................ 3

ARGUMENT ...................................................................................... 4

  I.    The Evolution of Rule 702 Illuminates Its Scope and Purpose ...... 4

     A.    The history of judicial misapplication of Rule 702 ...................... 4

     B.    The 2023 Amendments to Rule 702 supersede prior case law .. 11

     C.    The Advisory Committee provides important guidance on the proper interpretation of Rule 702, as amended ........................ 13

  II.    This Case Affords the Court An Important and Timely Opportunity To Construe Rule 702, As Amended ........................ 17

  III.   Amended Rule 702 Must Be Properly Implemented As A Matter of Due Process ................................................................ 19

CONCLUSION .................................................................................. 22

CERTIFICATE OF COMPLIANCE ..................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allison v. McGhan Med. Corp.*,
 184 F.3d 1300 (11th Cir. 1999).........................................................21

*Amchem Products v. Windsor*,
 521 U.S. 591(1997)..........................................................................17

*City of Pomona v. SQM N. Am. Corp.*,
 750 F.3d 1036 (9th Cir. 2014)...........................................................9

*Class v. United States*,
 583 U.S. 174 (2018)..........................................................................14

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
 509 U.S. 579 (1993)................................................................. *passim*

*General Electric Co. v. Joiner*,
 522 U.S. 136 (1997)................................................................. 2, 5, 16

*Horenkamp v. Van Winkle & Corp.*,
 402 F.3d 1129 (11th Cir. 2005).........................................................14

*Hose v. Chi. Nw. Transp. Co.*,
 70 F.3d 968 (8th Cir. 1996).................................................................5

*Kumho Tire Co. v. Carmichael*,
 526 U.S. 137 (1999)................................................................... 2, 5, 8

*Liquid Dynamics Corp. v. Vaughan Co.*,
 449 F.3d 1209 (Fed. Cir. 2006)...........................................................9

*Manpower, Inc. v. Ins. Co. of Pa.*,
 732 F.3d 796 (7th Cir. 2013)...............................................................9

*Matthews v. Eldridge,*
424 U.S. 319 (1976) ..................................................................... 21

*MicroVention, Inc. v. Balt USA, LLC,*
No.: 8:19-cv-01335, 2022 WL 4596647 (C.D. Cal. Aug. 24, 2022) ................................................................................... 18

*Mississippi Publishing Corp. v. Murphree,*
326 U.S. 438 (1946) .......................................................... 16, 17

*Phillips v. AWH Corp.,*
415 F.3d 1303 (Fed. Cir. 2005) ............................................. 20

*Rider v. Sandoz Pharms. Corp.,*
295 F.3d 1194 (11th Cir. 2002) ........................................... 21

*Stollings v. Ryobi Techs., Inc.,*
725 F.3d 753 (7th Cir. 2013) .................................................. 9

*Sundance Inc. v. Demonte Fabricating Ltd.,*
550 F.3d 1356 (Fed. Cir. 2008) ........................................... 19

*Tome v. United States,*
513 U.S. 150 (1995) ................................................................ 14

*United States v. Petri,*
731 F.3d 833 (9th Cir. 2013) ................................................ 17

*Weisgram v. Marley Co.,*
528 U.S. 440 (2000) ............................................................ 5, 6

*Whalen v. Ford Motor Credit Co.,*
684 F.2d 272 (4th Cir. 1982) (en banc) ............................... 17

*Wilmington v. J.I. Case Co.,*
793 F.2d 909 (8th Cir. 1986) .................................................. 9

**Rules**

Fed. R. Civ. P. 4(f) ..................................................................... 17

Fed. R. Civ. P. 23(b)(3) .............................................................. 17

Fed. R. Evid. 104(b) ................................................................ 15

Fed. R. Evid. 702, as amended Dec. 1, 2023,
    available at http://tinyurl.com/2azkurv5 .................................. *passim*

Fed. R. Evid. 702(a) ........................................................... 2, 15

Fed. R. Evis. 702(d) ........................................................... 7, 16

**Other Authorities**

Advisory Comm. on Evid. Rules, *Minutes of the Meeting of
    Nov. 13, 2020* in Advisory Comm. on Evid. Rules, Agenda
    Book 15 (Apr. 30, 2021), available at
    https://tinyurl.com/ycxvurnv ........................................... 11

Advisory Comm. on Evid. Rules, *Minutes of the Meeting of
    Oct. 20-21, 1997*, at 6, *available at*
    https://tinyurl.com/ms4cv5ds ........................................... 7

D. Bernstein & E. Lasker, *Defending Daubert*: *It's Time to
    Amend Federal Rule of Evidence 702,* 57 Wm. & Mary L.
    Rev. 1 (2015) ........................................................ 4, 7

Daniel J. Capra, Reporter, Mem. To: Advisory Comm. on
    Evid. Rules Re: Pub. comment suggesting an amendment
    to Rule 702 (Oct. 1, 2016) in Advisory Comm. on Rules of
    Evid. Agenda Book 259, 259 (Oct. 21, 2016), available at
    https://tinyurl.com/9x9jk6ff .......................................... 10

Daniel J. Capra, Reporter, Mem. To: Advisory Comm. on
    Evid. Rules (Mar. 1, 1999), *available at* http://perma.cc/
    9TQY-GJVB ............................................................ 6

E. Lasker and J. Leader, New Federal Rule of Evidence Rule
    702: A Circuit-by-Circuit Guide to Overruled "Wayward
    Caselaw", 57 WILLIAM & MARY L. REV. 1 (2015) .......................... 18

May 1, 1999 Report of the Advisory Committee on Evidence
    Rules to the Standing Committee on Rules of Practice and
    Procedure, *available at* http://perma.cc/CS23-DNGX ................... 6

Proposed Fed. R. Evid. 702 Advisory Committee's Note, Preliminary Draft of Proposed Amendments to the Federal Rules of Civil Procedure and Evidence: Request for Comment, 181 F.R.D. 18 (1998) ..................................................... 8

Report of the Advisory Committee on Evidence Rules (May 15, 2022), https://tinyurl.com/yu6f299b ........................................... 16

Report to the Standing Committee, Advisory Committee on Evidence Rules, at 6 (May 15, 2022) ................................................. 16

## INTEREST OF THE *AMICUS CURIAE*[1]

Established in 1977, the Atlantic Legal Foundation (ALF) is a national, nonprofit, public interest law firm. Its mission is to advance the rule of law and civil justice by advocating for individual liberty, free enterprise, property rights, limited and responsible government, sound science in judicial and regulatory proceedings, and effective education, including parental rights and school choice. With the benefit of guidance from the distinguished legal scholars, corporate legal officers, private practitioners, business executives, and prominent scientists who serve on its Board of Directors and Advisory Council, ALF pursues its mission by participating as *amicus curiae* in carefully selected appeals before the

---

[1] The Court's Order of September 25, 2024 states that "[a]ny briefs of amici curiae may be filed without consent and leave of the court." Counsel for *amicus curiae* Atlantic Legal Foundation certify that (i) no counsel for a party authored this brief in whole or in part; (ii) no party or party's counsel contributed money that was intended to fund the preparation or submission of this brief; and (iii) no person or entity—other than the *amicus curiae*, its supporters, or its counsel—contributed money that was intended to fund the preparation or submission of this brief.

Supreme Court, federal courts of appeals, and state appellate courts. *See* atlanticlegal.org.

ALF has long been one of the nation's foremost advocates for ensuring that federal district courts fulfill their gatekeeping role under Federal Rule of Evidence 702 by admitting into evidence, or otherwise considering, only expert testimony that is reliable.

For example, on behalf of esteemed scientists such as Nicholaas Bloembergen (a Nobel laureate in physics) and Bruce Ames (one of the world's most frequently cited biochemists), ALF submitted amicus briefs in each of the "*Daubert* trilogy" of cases—*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993); *General Electric Co. v. Joiner*, 522 U.S. 136 (1997); and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999)—concerning admissibility of expert testimony under Federal Rule of Evidence 702. In *Daubert*, 509 U.S. at 580, the Supreme Court quoted ALF's brief on the meaning of "scientific . . . knowledge" as used in Federal Rule of Evidence 702(a).

More recently, ALF submitted to the U.S. Judicial Conference's Committee on Rules of Practice and Procedure (commonly known as the

"Standing Committee") written comments supporting Rule 702 Amendments that reinforce a federal district court's duty to serve as an expert testimony gatekeeper. These clarifying Amendments became effective on December 1, 2023.

## INTRODUCTION

Plaintiff-Appellee EcoFactor filed suit against Defendant-Appellant Google in the U.S. District Court for the Western District of Texas, alleging that Google's Nest smart thermostats infringed several EcoFactor patents. The jury held Google liable for infringing one claim of one patent. EcoFactor sought damages measured by a reasonable royalty rate. EcoFactor's expert calculated this rate based upon lump-sum license agreements from three much smaller companies—two of which expressly stated that they did not reflect royalties, while the third agreement did not include the asserted patent. The EcoFactor damages expert also failed to isolate the value of the asserted patent in calculating the royalty rate.

*Amicus curiae* Atlantic Legal Foundation leaves it to the parties to address the details of the expert's opinions adherence—or lack thereof—

to the requirements of Federal Rule of Evidence 702. This amicus brief instead seeks to assist the Court in its analysis of the district court's exercise of its gatekeeping responsibility by reviewing the history of Rule 702 (as most recently elucidated in the December 2023 Amendments to the Rule), and the persistent problem of judicial misunderstanding of Rule 702's admissibility standard that led to the Amendments. This case provides an ideal and timely vehicle for this Court to reinforce the correct understanding of Rule 702, thereby clarifying the Rule's requirements for more uniform and rigorous application of *Daubert* in cases nationwide.

## ARGUMENT

## I. The Evolution of Rule 702 Illuminates Its Scope and Purpose

### A. The history of judicial misapplication of Rule 702

For thirty years courts have failed to consistently fulfill their gatekeeping responsibility to reject unreliable expert testimony, as required by the landmark case of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and its progeny. *See* D. Bernstein & E. Lasker, *Defending Daubert*: *It's Time to Amend Federal Rule of Evidence* 702, 57 Wm. & Mary L. Rev. 1 (2015), *available at*

https://tinyurl.com/3znahmfn. In the years immediately following *Daubert*, lower courts' deviations from the Supreme Court's expert testimony gatekeeping mandate arose from arguably imprecise language in the opinion. Fatally misconstruing the Court's discussion, *e.g.*, of an expert's methodology versus her conclusion, some courts mistakenly asserted, for example, that "the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination." *Hose v. Chi. Nw. Transp. Co.*, 70 F.3d 968, 974 (8th Cir. 1996).

The Supreme Court sought to remedy this post-*Daubert* confusion in *General Electric Co. v. Joiner*, 522 U.S. 136 (1997), and again in *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999). The three cases together, often referred to as the *"Daubert* trilogy,*"* should have provided lower courts with decisive guidance on how to interpret and apply Rule 702. To avoid any doubt, the Court in *Weisgram v. Marley Co.*, 528 U.S. 440 (2000) unambiguously stated that *Daubert* established "exacting

standards of reliability" for the admissibility of expert testimony. *Id*. at 455.

Unfortunately, by this time, the jurisprudence was littered with conflicting case law that was purporting to apply the *Daubert* standards. In 1999, the Reporter to the Standing Committee's Advisory Committee on Evidence Rules, Professor Daniel J. Capra, noted:

> [E]ven without any obvious conflicts on the specifics, the courts have divided over how to even approach a *Daubert* question. Some courts seem to approach *Daubert* as a rigorous exercise requiring the trial court to scrutinize, in detail, the expert's basis, methods, and application. Other courts seem to think that all *Daubert* requires is that the trial court assure itself that the expert's opinion is something more than mere unfounded speculation – all other possible defects go to the jury.[2]

*See also* Bernstein & Lasker, *supra* at 17-19.

In 2000, the Judicial Conference of the United States, with the endorsement of the Supreme Court and Congress, amended Rule 702 to resolve this confusion.[3] The amended Rule 702 was a codification of the

---

[2] Daniel J. Capra, Reporter, Mem. To: Advisory Comm. on Evid. Rules at 47-48 (Mar. 1, 1999), *available at* http://perma.cc/ 9TQY-GJVB.

[3] *See* May 1, 1999 Report of Advisory Comm. on Evid. Rules to the Standing Committee on Rules of Practice and Procedure 5-7, *available at* http://perma.cc/CS23-DNGX.

"more rigorous and structured approach" to the court's gatekeeping role, and it should have put the issue to rest once and for all.[4] Subdivisions (b), (c), and (d) were added to the Rule and expressly directed courts to evaluate and confirm not only the reliability of the factual bases and methodologies used by experts but the reliability as well of the expert's application of those facts and methodologies in reaching their conclusions.

The 2000 Amendments to Rule 702 took specific aim at courts that had disclaimed any gatekeeping responsibility with respect to an expert's application of her stated methodology in reaching her conclusions. The Advisory Committee identified this responsibility as one of its guiding principles during its first meeting on the potential Rule 702 Amendment.[5] The Advisory Committee codified this responsibility in Rule 702(d), and it made clear in its 2000 Advisory Committee Notes that "[t]he amendment specifically provides that the trial court *must*

---

[4] *Id.* at 7; Bernstein & Lasker, *supra* at 6-7.

[5] *See* Advisory Comm. on Evid. Rules, Minutes of the Meeting of Oct. 20-21, 1997, at 6, *available at* https://tinyurl.com/ms4cv5ds.

scrutinize not only the principles and methods used by the expert, but also whether those principles and methods have been properly applied to the facts of the case." Fed. R. Evid. 702 Advisory Comm.'s Notes to 2000 Amendment (emphasis added).

As the Supreme Court explained in *Kumho Tire*, the issue before a trial court under Rule 702 is not simply "the reasonableness in general" of an expert's methodology but also the expert's "particular method of analyzing the data thereby obtained, to draw a conclusion regarding the particular matter to which the expert testimony was directly relevant." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 153-54 (1999). Indeed, *Kumho Tire* expressly endorsed the Advisory Committee's above-quoted (then-draft) note on this issue. *Id.*, 526 U.S. at 156-57 (quoting Proposed Fed. R. Evid. 702 Advisory Committee's Note, Preliminary Draft of Proposed Amendments to the Federal Rules of Civil Procedure and Evidence: Request for Comment, 181 F.R.D. 18, 148 (1998)).

Unfortunately, the 2000 Amendments to Rule 702 did not accomplish their goal. *See* Bernstein & Lasker, *supra* at 19-25. Some courts continued to hold (incorrectly) that "[t]he district court usurps the

role of the jury, and therefore abuses its discretion, if it unduly scrutinizes the quality of the expert's data and conclusions rather than the reliability of the methodology the expert employed." *Manpower, Inc. v. Ins. Co. of Pa.*, 732 F.3d 796, 806 (7th Cir. 2013) (citing *Stollings v. Ryobi Techs., Inc.*, 725 F.3d 753, 765 (7th Cir. 2013)). Other courts mistakenly held that it was an abuse of discretion for a trial court to exclude an expert for failing to reliably apply her stated methodology. *See City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1048-49 (9th Cir. 2014) (holding that "only a faulty methodology or theory, as opposed to imperfect execution of laboratory techniques, is a valid basis to exclude expert testimony"). And in a 2006 opinion, this Court seemingly ignored the *Daubert* trilogy and 2000 Rule 702 Amendments altogether, relying on a pre-*Daubert* Eighth Circuit opinion for the by-then squarely rejected proposition that inadequacies in an expert opinion are a matter of weight, not admissibility. *Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209, 1221 (Fed. Cir. 2006) (citing *Wilmington v. J.I. Case Co.*, 793 F.2d 909, 920 (8th Cir. 1986)). Several other federal courts made similar pronouncements. *See generally* Bernstein & Lasker, *supra*.

Faced with these opinions, the Standing Committee's Advisory Committee on Evidence Rules ("Advisory Committee") took another look at judicial application of Rule 702.[6] Seventeen years after his 1999 analysis, Professor Daniel J. Capra once again informed the Advisory Committee of a pervasive problem of "wayward caselaw." *Id.* at 261. Dismayed by the state of the law, Professor Capra lamented that federal courts had been "far more lenient about admitting expert testimony than any reasonable reading of the Rule would allow." *Id.* at 262. Professor Capra went on to conclude that "courts have *defied* the Rule's requirements," and he raised alarm at the extent to which the requirements of Rule 702 were being blatantly "disregarded by courts." *Id.* at 268, 271.

Following up on this report, the Advisory Committee conducted its own review and similarly found that in a "number of federal cases . . . judges did not apply the preponderance standard of admissibility to [Rule

---

[6] *See* Daniel J. Capra, Reporter, Mem. To: Advisory Comm. on Evid. Rules Re: Pub. comment suggesting an amendment to Rule 702 (Oct. 1, 2016) in Advisory Comm. on Evid of Rules. Agenda Book 259, 259 (Oct. 21, 2016), *available at* https://tinyurl.com/9x9jk6ff.

702's] requirements of sufficiency of basis and reliable application of principles and methods, instead holding that such issues were ones of weight for the jury."[7] The Advisory Committee concluded that this continued judicial recalcitrance had to be rectified, and on December 1, 2023, Federal Rule of Evidence 702 was again amended.

## B. The 2023 Amendments to Rule 702 supersede prior case law

As the Supreme Court recognized in *Daubert*, the admissibility of expert testimony is governed by Federal Rule 702, not by case law. *Daubert*, 509 U.S. at 587. The language of Rule 702 now reads as follows (with changes emphasized):

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise *if the proponent demonstrates to the court that it is more likely than not that*:
> a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> b) the testimony is based on sufficient facts or data;
> c) the testimony is the product of reliable principles and methods; and

---

[7] Advisory Comm. on Evid. Rules, Minutes of the Meeting of Nov. 13, 2020 in Advisory Comm. on Evid. Rules, Agenda Book 15, 17 (Apr. 30, 2021), *available at* https://tinyurl.com/ycxvurnv.

d) ~~the expert has reliably applied~~ *the expert's opinion reflects a reliable application of* the principles and methods to the facts of the case.

Fed. R. Evid. 702, as amended Dec. 1, 2023, *available at* https://tinyurl.com/2azkurv5. The 2023 Amendments to Rule 702 thus supersede judicial misinterpretations of early versions of the Rule, and they resolve the persistent misapplication of Rule 702 in a number of important ways.

First, the Amendments clarify that the proponent of an expert witness must establish *by a preponderance of the evidence* that the expert's testimony separately satisfies each of the four elements of Rule 702.

Second, the Amendments expressly state that *the court* must find that each of the four elements have been satisfied. The amended Rule thus squarely rejects the reasoning of courts that had held that reliability disputes over an expert's factual bases or application of stated methodologies were questions of weight that should be resolved by a jury.

Third, the Amendments confirm that the trial court must ensure that an expert's *conclusions reflect a reliable application* of the principles

and methods to the fact of the case, once more answering any lingering confusion over the discussion in *Daubert* about methodologies and conclusion.

Finally, by explicitly directing the court's attention to an "expert's opinion," the latest Rule 702 Amendments reinforce the principle that the court's gatekeeping duty is continuous throughout the trial, ensuring that juries are protected from experts overstating the conclusions that can be reliably drawn from their analyses.

## C. The Advisory Committee provides important guidance on the proper interpretation of Rule 702, as amended

To ensure that the case law does not once again veer from the requirements of Rule 702, courts exercising their gatekeeping responsibility should be guided, in part, by the drafting history of the 2023 Amendments, as set forth in the writings of the Advisory Committee.

Advisory Committee's Notes provide the most succinct and readily accessible guide to the proper application of federal court rules. Published alongside the rules themselves, the Advisory Committee's Notes are

subject to the same rule-making process; public notice and comment; and Supreme Court and congressional review and approval as the rules themselves. *See Class v. United States*, 583 U.S. 174, 187-88 n.2 (2018) ("Advisory Committee's Notes are adopted by the committee that drafts the rule; they are considered by the Judicial Conference when it recommends promulgation of the rule; they are before this Court when we prescribe the rule under the Rules Enabling Act . . . ."). As such, "[a]lthough not binding, the interpretations in the Advisory Committee Notes are nearly universally accorded great weight in interpreting federal rules." *Horenkamp v. Van Winkle & Corp.*, 402 F.3d 1129, 1132 (11th Cir. 2005) (internal quotation marks omitted); *see, e.g.*, *Tome v. United States*, 513 U.S. 150, 160 (1995) ("We have relied on [the] well-considered [Advisory Committee's] Notes [to the Federal Rules of Evidence] as a useful guide in ascertaining the meaning of the Rules.") (citations omitted).

The Advisory Committee's Notes to the 2023 Rule 702 Amendments explain that Rule 702 was amended "to clarify and emphasize that expert testimony may not be admitted unless the proponent demonstrates to the

court that it is more likely than not that the proffered testimony meets the admissibility requirements set forth in the rule." Fed. R. Evid. 702 Advisory Comm.'s Notes to 2023 Amendments ("2023 Notes"). [8] Most tellingly, the 2023 Notes repeatedly voice concern about the improper influence of wayward case law on the admissibility of expert testimony.

The 2023 Notes admonish the "many courts [that] have held that the critical questions of the sufficiency of an expert's basis, and the application of the expert's methodology, are questions of weight and not admissibility," and expressly state that those rulings are "an incorrect application of Rules 702 and 104(a)." 2023 Notes, *supra*. The Notes explain that "emphasizing the preponderance [of the evidence] standard in Rule 702 specifically was made necessary by the courts that have failed to apply correctly the reliability requirements of that Rule." *Id*. The Notes specify that the 2023 Amendments "clarif[y] that the preponderance standard applies to the three reliability-based requirements . . . that many courts have incorrectly determined to be governed by the more permissive Rule 104(b) standard." *Id*. And the Notes call out courts that

---

[8] *Available at* https://tinyurl.com/2azkurv5.

had improperly held "that argument about the sufficiency of an expert's basis always go to weight and not admissibility." *Id.*

The 2023 Notes also clarify "that each expert opinion must stay within the bounds of what can be concluded from a reliable application of the expert's basis and methodology" under Rule 702(d). *Id.* This clarification of Rule 702(d) is consistent with *General Electric Co., v. Joiner*, 522 U.S. 136 (1997), in which the Court declared that a trial court must consider not only the expert's methodology but also the expert's conclusion because the methodology must not only be reliable—it must be reliably applied. *See* Report to the Standing Committee, Advisory Committee on Evidence Rules, at 6 (May 15, 2022).[9]

Gatekeeper judges should also refer to Advisory Committee working papers. There is a substantial body of judicial authority holding that Advisory Committee deliberations provide important guidance in the interpretation of federal rules. In *Mississippi Publishing Corp. v. Murphree*, 326 U.S. 438 (1946), for example, the Supreme Court looked

---

[9] Mem. for Hon. John D. Bates from Hon. Patrick J. Schiltz, Report of the Advisory Committee on Evidence Rules (May 15, 2022), https://tinyurl.com/yu6f299b.

to statements from the Advisory Committee's spokesperson when construing the meaning of Fed. R. Civ. P. 4(f). *Id.* at 444. Later, in *Amchem Products v. Windsor*, 521 U.S. 591(1997), the Supreme Court relied upon public statements by the Advisory Committee reporter to assist in determining the meaning of Fed. R. Civ. P. 23(b)(3). *Id.* at 613-19. *See also United States v. Petri*, 731 F.3d 833, 839-40 (9th Cir. 2013); *Whalen v. Ford Motor Credit Co.*, 684 F.2d 272 (4th Cir. 1982) (en banc). As noted above, the Advisory Committee's working papers leading up to the 2023 Amendments are also replete with admonitions about the body of existing case law that had applied an overly permissive standard to admit unreliable expert testimony. *See, e.g.*, Advisory Committee, Minutes of the Meeting of Nov. 13, 2020, *supra* at 7 ("[F]ederal cases . . . revealed a pervasive problem with courts discussing expert admissibility requirements as matters of weight.").

## II. This Case Affords the Court An Important and Timely Opportunity To Construe Rule 702, As Amended

In the wake of the Amendments to Rule 702, courts are tasked not merely with implementing the new Rule as written, but also with recognizing that an extensive body of prior case law—previously

influential in shaping lower court decisions on expert admissibility—has been superseded and implicitly rejected.[10] As such, courts should be wary in following prior judicial authority that fails to properly apply the preponderance of the evidence standard to each of the express requirements of the four subparts of Rule 702.

The confusion engendered by this prior mistaken case law extends beyond the Federal Circuit to every circuit court of appeals in the country. As such, it is particularly crucial that federal appellate courts provide clarity as to the proper application of Rule 702, as their holdings can have far ranging repercussions. For example, this Court's mistaken discussion of the Rule 702 standard in 2006 in *Vaughan Co.* continued to be cited by federal district courts as recently as 2022.[11] This case thus

---

[10] *See* E. Lasker and J. Leader, New Federal Rule of Evidence Rule 702: A Circuit-by-Circuit Guide to Overruled "Wayward Caselaw", 57 WILLIAM & MARY L. REV. 1 (2015) (a circuit-by-circuit guide to key cases which fail to meet the standards of Rule 702).

[11] *See, e.g.*, *MicroVention, Inc. v. Balt USA, LLC*, No.: 8:19-cv-01335, 2022 WL 4596647, *4 (C.D. Cal. Aug. 24, 2022) (citing this Court's 2006 holding in *Vaughan Co.* in admitting expert testimony despite "significant limitations to the value of [an expert's] testing and opinions").

presents an important opportunity for the Court to realign judicial practice with the Rule's intended safeguards, thereby ensuring a uniform application of gatekeeping responsibilities that uphold the integrity of expert testimony admissibility—not only in the Federal Circuit, but across federal courts.

## III. Amended Rule 702 Must Be Properly Implemented As A Matter of Due Process

At its core, federal patent litigation involves highly technologically and scientifically complex issues, many of which will go beyond the knowledge of a layperson. As a result, expert witnesses are necessary in patent cases, and the impact of their role cannot be understated. In all litigation, especially in highly complex patent cases, unreliable expert opinions are so prejudicial to fair trials and due process, they must be ruled inadmissible. As the Supreme Court cautioned in *Daubert*: "Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it." *Daubert* 509 U.S. at 595; *see also Sundance Inc. v. Demonte Fabricating Ltd.*, 550 F.3d 1356, 1365 n.8 (Fed. Cir. 2008) ("A technically unqualified patent attorney can do much mischief by leading the jury to seemingly sound conclusions without ever providing a

well-grounded factual basis in the pertinent art."); *Phillips v. AWH Corp.*, 415 F.3d 1303, 1318 (Fed. Cir. 2005) ("[E]xtrinsic evidence consisting of expert reports and testimony is generated at the time of and for the purpose of litigation and thus can suffer from bias that is not present in intrinsic evidence."). This is why it is imperative that trial courts, including in patent-related litigation, properly fulfill their Rule 702 gatekeeping responsibilities.

These concerns are evident in the 2023 Rule 702 Amendments. The Advisory Committee's Notes to the 2023 Amendments recognize that judicial gatekeeping "is essential" to protect juries from unreliable opinions. Acknowledging that "jurors may be unable, due to lack of specialized knowledge, to evaluate meaningfully the reliability of scientific and other methods underlying expert opinion, jurors may also lack the specialized knowledge to determine whether the conclusions of an expert go beyond what the expert's basis and methodology may reliably support." Fed. R. Evid. 702 Advisory Comm.'s Notes to 2023 Amendments.

Due process requires that litigants subjected to potential deprivations of life, liberty, or property are provided a fair trial based on reliable evidence. The improper admission of expert evidence poses a particular danger to due process rights and requires careful scrutiny. *See, e.g., Matthews v. Eldridge*, 424 U.S. 319, 335 (1976) (holding that, where the risk of improper deprivation of rights is high, higher procedural protection is due). "While meticulous *Daubert* inquiries may bring judges under criticism for donning white coats and making determinations that are outside their field of expertise, the Supreme Court," as reflected in Rule 702, "has obviously deemed this less objectionable than dumping a barrage of questionable scientific evidence on a jury, who would likely be even less equipped than the judge to make reliability and relevance determinations and more likely than the judge to be awestruck by the expert's mystique." *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1310 (11th Cir. 1999); *Rider v. Sandoz Pharms. Corp.*, 295 F.3d 1194, 1197 (11th Cir. 2002) (same). Excluding unreliable expert testimony from the courtroom thus fosters due process and judicial fairness

# CONCLUSION

The 2023 Amendments to Rule 702 confirm and clarify the exacting standards for admissibility of expert testimony, including in this Federal Circuit. As a matter of the proper administration of justice and due process, the Court should take this opportunity to embrace these standards and help prevent any future confusion engendered by prior case law that has misapplied Rule 702.

Respectfully submitted,

/s/ *Lawrence S. Ebner*
LAWRENCE S. EBNER
ATLANTIC LEGAL FOUNDATION
1701 Pennsylvania Ave., NW
Washington, D.C. 20006
Tel.: (202) 729-6337
Fax: (202) 580-6559
lawrence.ebner@atlanticlegal.org

ERIC G. LASKER
KATHERINE E. NOLAN
HOLLINGSWORTH LLP
1350 I St., NW
Washington, D.C. 20005
Tel.: (202) 898-5800
Fax.: (202) 682-1639
elasker@hollingsworthllp.com
knolan@hollingsworthllp.com

*Counsel for Amicus Curiae*
*Atlantic Legal Foundation*

November 26, 2024

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS</u>

**Case Number:** 23-1101

**Short Case Caption:** EcoFactor, Inc. v. Google LLC

> **Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑ the filing has been prepared using a proportionally-spaced typeface and includes _4255_ words.

☐ the filing has been prepared using a monospaced typeface and includes _____ lines of text.

☐ the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: 11/26/2024

Signature: /s/ Lawrence S. Ebner

Name: Lawrence S. Ebner