**2023-1101**

# United States Court of Appeals for the Federal Circuit

ECOFACTOR, INC.,

*Plaintiff-Appellee,*

*v.*

GOOGLE LLC,

*Defendant-Appellant.*

*Appeal from the United States District Court for the Western District of Texas, in Case No. 6:20-cv-00075-ADA (Hon. Alan D. Albright, Judge)*

## BRIEF FOR *AMICUS CURIAE* LICENSING EXECUTIVES SOCIETY (U.S.A. & CANADA), INC. IN SUPPORT OF NEITHER PARTY

Daniel S. Stringfield
Matthew M. Zuziak
NIXON PEABODY LLP
70 West Madison Street, Suite 5200
Chicago, IL 60602
(312) 977-4400
dstringfield@nixonpeabody.com
mzuziak@nixonpeabody.com

NOVEMBER 26, 2024

Alec M. Royka
NIXON PEABODY LLP
677 Broadway, 10th Floor
Albany, NY 12207
(518) 427-2655
aroyka@nixonpeabody.com

*Counsel for Amicus Curiae, Licensing Executives Society (U.S.A. & Canada), Inc.*

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number**   2023-1101

**Short Case Caption**   ECOFACTOR, INC. V. GOOGLE LLC

**Filing Party/Entity**   Licensing Executives Society (U.S.A & Canada), Inc.

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 11/26/2024

Signature: /s/ Daniel S. Stringfield

Name: Daniel S. Stringfield

| 1. Represented Entities.<br>Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest.<br>Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders.<br>Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☑ None/Not Applicable |
| Licensing Executives Society (U.S.A & Canada), Inc. | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐    Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☑ None/Not Applicable          ☐ Additional pages attached

|  |  |  |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐ Yes (file separate notice; see below)    ☐ No    ☑ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable          ☐ Additional pages attached

|  |  |  |
|---|---|---|
|  |  |  |
|  |  |  |

# TABLE OF CONTENTS

## PAGE

CERTIFICATE OF INTEREST ..................................................................................i

TABLE OF AUTHORITIES ......................................................................................v

INTEREST OF *AMICUS CURIAE* ..........................................................................1

INTRODUCTION ......................................................................................................2

ARGUMENT ..............................................................................................................3

I.     Expert Testimony is Not Unique to Patent Law and a Trial Judge's Examination of a Damages Expert's Testimony Must Be Consistent with *Daubert* ..........................................................................................................3

II.    Trial Judges Have a Duty to Ensure That a Proposed Damages Award is Based Reliable Expert Opinions and Adequately Compensates the Patentee for Infringement ............................................................................5

III.   Courts Must Be Careful Not to Usurp the Role of the Jury ............................8

CONCLUSION ........................................................................................................10

# TABLE OF AUTHORITIES

## CASES

**Page(s)**

*Commonwealth Sci. & Indus. Research Org. v. Cisco Sys.*,
    809 F.3d 1295 (Fed. Cir. 2015)........................................................5

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
    509 U.S. 579 (1993)..............................................................*passim*

*EcoFactor, Inc. v. Google LLC*,
    115 F.4th 1380 (Fed. Cir. 2024) ..............................................1, 2

*Ericsson, Inc. v. D-Link Sys., Inc.*,
    773 F.3d 1201 (Fed. Cir. 2014)...................................................5

*Exmark Mfg. Co. v. Briggs & Stratton Power Prods., Grp., LLC*,
    879 F.3d 1332, 1348 (Fed. Cir. 2018)..........................................5

*Garretson v. Clark*,
    111 U.S. 120 (1884)....................................................................5

*i4i Ltd. P'Ship v. Microsoft Corp.*,
    598 F.3d 831 (Fed. Cir. 2010)......................................................9

*Kumho Tire Co. v. Carmichael*,
    526 U.S. 137 (1999).....................................................................4

*Libas, Ltd. v. United States*,
    193 F.3d 1361 (Fed. Cir. 1999)...................................................4

*Micro Chem., Inc. v. Lextron, Inc.*,
    317 F.3d 1387 (Fed. Cir. 2003)...................................................4

*Omega Patents, LLC v. CalAmp Corp.*,
    14 F.4th 1361 (Fed. Cir. 2021)..............................................6, 7, 8

*Vectura Ltd. v. GlaxoSmithKline LLC*,
    981 F.3d 1030 (Fed. Cir. 2020)..............................................6, 7, 8

**Statutes and Other Authorities:**

Fed. R. Evid. 702 ..................................................................................................2, 4

**INTEREST OF *AMICUS CURIAE***[1]

The Licensing Executives Society (U.S.A. and Canada), Inc. ("LES") is an independent, non-profit, professional organization dedicated to developing best practices in intellectual property ("IP") transactions, protection, and strategy. LES is committed to advancing the commercialization of IP and sustaining equitable ecosystems for both licensors and licensees, which ultimately serve for the benefit of the public. Established in 1965, LES fosters, educates, and develops best practices and standards in licensing, promotes the importance and value of IP, and advocates for policies that protect and incentivize innovation. LES enhances public awareness of IP's economic impact, provides education, and enables collaboration among its members.

LES counts among its members lawyers, business leaders, academics, and service providers, many of whom are experts in IP strategy, business management, accounting, business development, supplier management, program management,

---

[1] Pursuant to this Court's Order of September 25, 2024 granting the Petition for Rehearing *En Banc*, amicus curiae are invited to submit briefs without consent and leave of the Court. *EcoFactor, Inc. v. Google LLC*, 115 F.4th 1380, 1381 (Fed. Cir. 2024). No party's counsel authored this brief, and no one other than LES and its counsel funded this brief. Specifically, after reasonable investigation, LES believes that (i) no member of its Board or Amicus Committee who voted to file this brief, or any attorney in the law firm or corporation of such a member, represents a party to this litigation in this matter; (ii) no representative of any party to this litigation participated in the authorship of this brief; and (iii) no one other than LES, or its members who authored this brief and their law firms or employers, made a monetary contribution to the preparation or submission of this brief.

sales, marketing, and IP valuation fields. Among these are representatives of innovation orientated companies from all business sectors, government agencies, and university labs. LES is a community of approximately 1,600 IP management professionals, and is member of a broader world-wide network (Licensing Executives Society International or "LESI").

## INTRODUCTION

The innovation ecosystem depends on robust and predictable IP rights. From fully integrated market incumbents to small and medium sized enterprises to academic innovators, robust and predictable IP rights enable contractual alliances essential to bringing innovative products from the lab to the marketplace. These rights serve as the backbone to agreements ranging from research funding to global supply chain management. By providing greater clarity to parties on the scope of IP rights, a firmer foundation allowing for greater investment and collaboration is created, helping to bring more innovation to our society.

In this case, the Court granted Google's *en banc* rehearing request in *EcoFactor, Inc. v. Google LLC*, 115 F.4th 1380 (Fed. Cir. 2024), focusing on the admissibility of expert testimony regarding patent damages. Specifically, the Court vacated the panel's previous decision that affirmed a damages award in favor of the patentee, calling for briefing on whether the district court properly exercised its gate-keeping role under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow*

*Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), by allowing testimony from EcoFactor's damages expert assigning a per-unit royalty rate to the three licenses in evidence.

The outcome of this *en banc* rehearing has important implications regarding a trial court's power to limit expert testimony on reasonable royalty damages, which, if taken too far, could allow a judge to decide the damages award outcome instead of a jury. LES submits this amicus brief in favor of neither party. Instead, LES encourages the Court, regardless of outcome, to articulate a ruling that faithfully adheres to the framework set out in *Daubert* and its progeny. Such a framework would ensure that trial judges have the ability to weed out unreliable expert testimony before it reaches the jury, while at the same time taking care not to usurp the jury's important role to evaluate and weigh competing damages evidence, or to place an unjustified heightened burden on patentees that does not apply to plaintiffs in other civil actions.

## ARGUMENT

### I.   Expert Testimony is Not Unique to Patent Law and a Trial Judge's Examination of a Damages Expert's Testimony Must Be Consistent with *Daubert*

LES encourages the Court to articulate a ruling that is consistent with *Daubert* and does not place a heightened burden on the admissibility of testimony offered by damages experts in patent cases. To determine whether expert testimony may

properly be admitted under Rule 702 of the Federal Rules of Evidence, courts rely on the framework set out in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and its progeny. Specifically, Rule 702 "imposes a special obligation upon a trial judge to 'ensure that any and all [expert] testimony … is not only relevant, but reliable.'" *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999) (quoting *Daubert*, 509 U.S. at 589)). In this manner, the trial judge "acts as a 'gatekeeper' to exclude expert testimony that is irrelevant or does not result from the application of reliable methodologies or theories to the facts of the case." *Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391 (Fed. Cir. 2003) (quoting *Daubert*, 509 U.S. at 589-92).

However, *Daubert* is "not a rigid formula." *Libas, Ltd. v. United States*, 193 F.3d 1361, 1369 (Fed. Cir. 1999). The Supreme Court has explained that "the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Kumho Tire Co.*, 526 U.S. at 152. Thus, the inquiry as to whether expert testimony should be admitted at trial is not a one size fits all test, but a flexible one, dependent "on the nature of the issue, the witness's expertise, and the subject of the testimony." *Micro Chem., Inc.*, 317 F.3d at 1391. Moreover, the *Daubert* inquiry is not unique to patent law. *Id.* at 1390-91 ("[w]hether proffered evidence should be admitted in a trial is a procedural

issue not unique to patent law"). Thus, the Court's ruling should avoid creating a heightened burden on the admissibility of expert testimony in patent cases.

## II. Trial Judges Have a Duty to Ensure That a Proposed Damages Award is Based on Reliable Expert Opinions and Adequately Compensates the Patentee for Infringement

As this Court has repeatedly held, "the essential requirement for reliability under *Daubert* is that the ultimate reasonable royalty award must be based on the incremental value that the patented invention adds to the end product," *i.e.*, "apportionment." *Commonwealth Sci. & Indus. Research Org. v. Cisco Sys.*, 809 F.3d 1295, 1301 (Fed. Cir. 2015); *see also Exmark Mfg. Co. v. Briggs & Stratton Power Prods., Grp., LLC*, 879 F.3d 1332, 1348 (Fed. Cir. 2018) ("[a] reasonable royalty award 'must be based on the incremental value that the patented invention adds to the end product'") (quoting *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014). Apportionment is not a new concept, and dates back to at least *Garretson v. Clark*, 111 U.S. 120 (1884). *See Commonwealth Sci. & Indus. Research Org.*, 809 F.3d at 1301. However, as with nearly all legal principles, because no two cases are ever exactly the same, and calculating damages is highly fact dependent, "there may be more than one reliable method for estimating a reasonable royalty." *Id.* Thus, an "integral part of the admissibility inquiry is whether the data utilized in the methodology is sufficiently tied to the facts of the case." *Id.* (cleaned up).

One accepted methodology for determining an appropriate royalty may be to use "a sufficiently comparable license" if the facts of the case warrant. *See Vectura Ltd. v. GlaxoSmithKline LLC*, 981 F.3d 1030, 1040 (Fed. Cir. 2020). When relying on a comparable license approach proffered by an expert, this Court has held that "further apportionment may not necessarily be required" if the comparable license has built-in apportionment. *Id.* Built-in apportionment means that the negotiators of the comparable license "settled on a royalty rate and royalty base combination embodying the value of the asserted patent." *Id.* at 1041. However, because the patentee has the burden of proving damages, the burden of proving that a license is sufficiently comparable, and thus that the license has built-in apportionment, necessarily rests on the patentee. *Omega Patents, LLC v. CalAmp Corp.*, 14 F.4th 1361, 1377 (Fed. Cir. 2021).

Comparing this Court's opinions in *Vectura* and *Omega Patents* is an instructive guide when evaluating the sufficiency of an expert's reliance on comparable licenses to establish a reasonable royalty opinion. For example, in *Vectura*, this Court affirmed a district court's decision allowing a damages expert to testify in support of a damages theory that adopted a royalty rate from an allegedly comparable license agreement without further apportionment. *Vectura Ltd.*, 981 F.3d at 1041. Despite the fact that the allegedly comparable license agreement "encompassed rights to more than 400 patents," and not just the one asserted patent,

this Court agreed that the evidence supported a damages award based on a finding that the prior license agreement was sufficiently comparable. *Id.* In particular, this Court focused on evidence introduced by the patentee indicating that a key component of the prior license agreement was the licensee's ability to use "roughly similar technologies" to that of the asserted patent. *Id.* Thus, because the patentee had presented evidence that the allegedly comparable license attributed a per unit royalty to the value of the asserted patent, no further apportionment was required. *See id.*

Conversely, in *Omega Patents*, this Court found that a damages expert had failed to establish that earlier license agreements were sufficiently comparable because there was no evidence that suggested that these allegedly comparable agreements attributed a per unit royalty to the value of the asserted patent at issue. *Omega Patents, LLC*, 14 F.4th at 1379-81. Absent evidence that these allegedly comparable agreements attributed a per unit royalty to the value of the asserted patent, the Court required that the patentee's expert "adequately account for substantial 'distinguishing facts' between the proffered licenses and a hypothetical negotiation over a single-patent license to the [asserted patent]" *i.e.*, apportionment. *Id.* at 1380.

Accordingly, and as discussed *supra*, this Court's prior opinions on apportionment and comparable licenses provide a workable framework for reliably

determining reasonable royalty damages. In other words, the status quo need not be disrupted. When attempting to rely on a comparable license in an effort to adopt the comparable license's royalty rate and royalty base without further apportionment and without proving that the infringing feature was responsible for the entire market value of the accused product, a patentee must present evidence that the allegedly comparable agreement supports a per unit royalty for the value of the asserted patent. *See Omega Patents, LLC*, 14 F.4th at 1379; *Vectura Ltd.*, 981 F.3d at 1041. Absent such evidence, the patentee must "adequately account for substantial 'distinguishing facts' between the proffered licenses and a hypothetical negotiation over" the asserted patents. *See Omega Patents, LLC*, 14 F.4th at 1380.

Plainly stated, absent evidence indicating that the allegedly comparable agreement supports a per unit royalty for the value of the asserted patent, further apportionment of an adopted royalty rate is required. *See id.* at 1379. In such a circumstance, failure by an expert to make the necessary further apportionment mandates exclusion by the trial judge. *See id.*

## III. Courts Must Be Careful Not to Usurp the Role of the Jury

Historically, debates over an expert's reasonable royalty determination and the underlying information and evidence used to make that determination, *inter alia*, the extent to which licenses are comparable, is for the jury to evaluate, not the trial court judge. Indeed, this Court has held that "it is not the district court's role under

*Daubert* to evaluate the correctness of fact underlying an expert's testimony." *See i4i Ltd. P'Ship v. Microsoft Corp.*, 598 F.3d 831, 856 (Fed. Cir. 2010). Further, "the Supreme Court explained in *Daubert*, 'vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'" *See id* (quoting *Daubert*, 509 U.S. at 596). Given this backdrop, courts must be careful to not invade the province of the jury, which is charged with ultimately evaluating the credibility of the competing expert opinions.

LES recognizes the difficulty in attempting to maintain this delicate balance between a judge's gatekeeping role and the jury's responsibility to weigh the evidence and make credibility determinations. Over the past several years, LES has worked towards developing a suite of standards related to IP licensing, including patent valuation.[2] This task, while not always easy, and always a work in progress, remains a worthwhile endeavor. A robust, fair, reliable, and easily understood and articulated standard is helpful to preserving the balance reflected in our patent system between incentivizing innovation and ensuring the proper balance of competition.

---

[2] The LES standards are available for download and viewing online. LES Standards, https://members.lesusacanada.org/general/custom.asp?page=lesstandards (last visited Nov. 22, 2024).

LES believes that a standard that preserves this balance while faithfully adhering to the framework set out in *Daubert* exists within this Court's jurisprudence. Accordingly, LES encourages this Court to use this opportunity to articulate that framework more clearly, such that when an expert offers a damages theory that relies on an allegedly comparable license agreement, the burden is on the patentee to present evidence that the allegedly comparable agreement supports a per unit royalty for the value of the asserted patent. When such evidence exists, it should be admitted, and disputes about comparability and the adequacy of the adopted royalty rate become questions for the jury to decide. However, when a patentee fails to present evidence tied to the facts of the case that the allegedly comparable agreement supports a per unit royalty for the value of the asserted patent, it is the role of the trial judge to preclude such testimony.

## CONCLUSION

This Court's decision will have an important impact on the rights and behaviors of both patent holders and implementers of technology. LES encourages the Court, regardless of outcome, to articulate a ruling that faithfully adheres to the framework set out in *Daubert* and its progeny. LES believes that such a framework already exists within this Court's jurisprudence. However, to the extent that the Court should be inclined to depart from its existing jurisprudence, LES encourages the Court to adopt a solution that continues to ensure that trial judges have the ability

to perform their important gatekeeping role in excluding unreliable expert testimony, while at the same time being careful not to place a heightened burden on patentees in their attempts to prove what damages will compensate them for the adjudged infringement.

Respectfully submitted,

ALEC M. ROYKA
NIXON PEABODY LLP
677 Broadway,
10th Floor
Albany, NY 12207
(518) 427-2655

/s/ Daniel S. Stringfield
DANIEL S. STRINGFIELD
MATTHEW M. ZUZIAK
NIXON PEABODY LLP
70 West Madison St.,
Suite 5200
Chicago, IL 60602
(312) 977-4400

*Counsel for Amicus Curiae Licensing Executives Society (U.S.A. & Canada), Inc.*

November 26, 2024

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS</u>

**Case Number:** 2023-1101

**Short Case Caption:** ECOFACTOR, INC. V. GOOGLE LLC

> **Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑ the filing has been prepared using a proportionally-spaced typeface and includes 2,435 words.

☐ the filing has been prepared using a monospaced typeface and includes _____ lines of text.

☐ the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: 11/26/2024

Signature: /s/ Daniel S. Stringfield

Name: Daniel S. Stringfield