No. 23-1101

ECOFACTOR, INC.,

*Plaintiff-Appellee,*

*v.*

GOOGLE LLC,

*Defendant-Appellant.*

On Appeal from the United States District Court
for the Western District of Texas
No. 6:20-cv-00075-ADA
Hon. Alan D Albright

**BRIEF OF CISCO SYSTEMS, INC. AS
AMICUS CURIAE IN SUPPORT OF
APPELLANT**

E. Joshua Rosenkranz
ORRICK, HERRINGTON &
  SUTCLIFFE LLP
51 West 52nd Street
New York, NY 10019

Elizabeth R. Moulton
ORRICK, HERRINGTON &
  SUTCLIFFE LLP
405 Howard Street
San Francisco, CA 94105
(415) 773-5700

Edward H. Williams II
ORRICK, HERRINGTON &
  SUTCLIFFE LLP
2100 Pennsylvania Ave. NW
Washington, DC  20037

*Counsel for Amicus Curiae*

November 26, 2024

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

### <u>CERTIFICATE OF INTEREST</u>

| | |
|---|---|
| **Case Number** | 23-1101 |
| **Short Case Caption** | EcoFactor, Inc. v. Google LLC |
| **Filing Party/Entity** | Cisco Systems, Inc. |

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.


Date: 11/26/2024

Signature: /s/ Elizabeth R. Moulton

Name: Elizabeth R. Moulton

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☑ None/Not Applicable |
| CiscoSystems,Inc | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☑  None/Not Applicable   ☐  Additional pages attached

|  |  |  |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐  Yes (file separate notice; see below)   ☐  No   ☑  N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑  None/Not Applicable   ☐  Additional pages attached

|  |  |  |
|---|---|---|
|  |  |  |
|  |  |  |

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTEREST ..................................................................i

TABLE OF AUTHORITIES..................................................................v

INTRODUCTION AND STATEMENT OF INTEREST OF
*AMICUS CURIAE*............................................................................ 1

ARGUMENT ...................................................................................... 3

I. Rule 702 And *Daubert* Require The District Court To
Evaluate Whether Expert Testimony Is Admissible...................... 3

II. The Court's Guidance On Admissibility Of Expert Testimony
Is Desperately Needed. ............................................................. 7

    A. District courts do not consistently enforce reliability
    requirements surrounding "comparable" licenses................. 8

    B. District courts do not consistently enforce reliability
    requirements surrounding surveys. ................................... 14

    C. District courts do not consistently enforce
    apportionment rules.......................................................... 17

    D. District courts do not consistently enforce the
    requirement that expert testimony be based on
    specialized expertise. ........................................................ 21

CONCLUSION ................................................................................. 26

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Apple, Inc. v. Wi-LAN Inc.*,
25 F.4th 960 (Fed. Cir. 2022) ........................................................ 2, 10

*Atlas Glob. Techs. LLC v. TP-Link Techs. Co.*,
684 F. Supp. 3d 570 (E.D. Tex. 2023) ................................................ 24

*Barry v. Medtronic, Inc.*,
No. 1:14-cv-104, 2016 WL 7665773 (E.D. Tex. July 19, 2016) ........... 15

*Bio-Rad Lab'ys, Inc. v. 10X Genomics Inc.*,
967 F.3d 1353 (Fed. Cir. 2020) .................................................... 18, 19

*Centripetal Networks, Inc. v. Cisco Sys., Inc.*,
No. 2:18cv94, 2020 WL 5887916 (E.D. Va. Oct. 5, 2020) .................. 12

*CSIRO v. Cisco Sys., Inc.*,
809 F.3d 1295 (Fed. Cir. 2015) ............................................. 17, 18, 21

*D'Pergo Custom Guitars, Inc. v. Sweetwater Sound, Inc.*,
111 F.4th 125 (1st Cir. 2024) .............................................................. 4

*Daubert v. Merrill Dow Pharms., Inc.*,
509 U.S. 579 (1993) ........................................................................ 1, 6

*Elbit Sys. Land & C4I Ltd. v. Hughes Network Sys., LLC*,
927 F.3d 1292 (Fed. Cir. 2019) .......................................................... 18

*Ericsson, Inc. v. D-Link Sys., Inc.*,
773 F.3d 1201 (Fed. Cir. 2014) ............................................................ 3

*Exafer Ltd. v. Microsoft Corp.*,
719 F. Supp. 3d 749 (W.D. Tex. 2024) ................................................. 7

*Exmark Mfg. Co. v. Briggs & Stratton Power Prods. Grp., LLC*,
879 F.3d 1332 (Fed. Cir. 2018) ............................................................ 2

*Fenner Invs., Ltd. v. Hewlett-Packard Co.*,
No. 6:08-CV-273, 2010 WL 1727916 (E.D. Tex. Apr. 28, 2010) ......... 12

*Finjan, Inc. v. Cisco Sys., Inc.*,
No. 17-cv-72, 2020 WL 13180005 (N.D. Cal. Apr. 21, 2020).............. 23

*Finjan, Inc. v. ESET, LLC*,
No. 17-CV-183-CAB-BGS, 2019 WL 5212394 (S.D. Cal.
Oct. 16, 2019) ..................................................................................... 23

*Fractus, S.A. v. Samsung*,
No. 6:09-cv-203-LED-JDL, 2011 WL 7563820 (E.D. Tex.
Apr. 29, 2011)..................................................................................... 15

*Fuma Int'l LLC v. R.J. Reynolds Vapor Co.*,
No. 1:19-CV-260, 2021 WL 4820738 (M.D.N.C. Oct. 15, 2021) ......... 25

*Imperium IP Holdings (Cayman), Ltd. v. Samsung Elecs. Co.*,
No. 4:14-CV-371, 2016 WL 3746523 (E.D. Tex. Jan. 28, 2016) ......... 24

*IPA Techs. Inc. v. Microsoft Corp.*,
No. CV 18-1-RGA, 2024 WL 1797394 (D. Del. Apr. 25, 2024) ........... 16

*LaserDynamics, Inc. v. Quanta Comput., Inc.*,
694 F.3d 51 (Fed. Cir. 2012) ................................................................. 3

*Lionra Techs. Ltd. v. Cisco Sys., Inc., et al.*,
No. 22-cv-305-JRG (E.D. Tex. March 4, 2024), ECF No. 288 ........... 22

*Lucent Techs., Inc. v. Gateway, Inc.*,
580 F.3d 1301 (Fed. Cir. 2009) ........................................................... 12

*Maxell, Ltd. v. Apple Inc.*,
No. 5:19-CV-00036-RWS, 2020 WL 8269548 (E.D. Tex.
Nov. 11, 2020) ..................................................................................... 15

*MLC Intell. Prop., LLC v. Micron Tech., Inc.*,
10 F.4th 1358 (Fed. Cir. 2021)............................................................ 13

*Mondis Tech. Ltd. v. LG Elecs., Inc.*,
407 F. Supp. 3d 482 (D.N.J. 2019)...................................................... 21

*Multimedia Pat. Tr. v. Apple Inc.*,
    No. 10-CV-2618-H KSC, 2012 WL 5873711 (S.D. Cal. Nov.
    20, 2012) .................................................................... 9, 10, 13

*NNCrystal US Corp. v. Nanosys, Inc.*,
    No. CV 19-1307-RGA, 2023 WL 2891453 (D. Del. Apr. 11,
    2023) ....................................................................................... 20

*Oyster Optics, LLC v. Cisco Sys., Inc.*,
    No. 2:20-cv-00211-JRG (E.D. Tex. Aug. 16, 2021), ECF
    No. 113 ............................................................................... 19, 20

*PACT XPP Techs., AG v. Xilinx, Inc.*,
    No. 2:07-CV-563-RSP, 2012 WL 1432618 (E.D. Tex. Apr.
    25, 2012) ................................................................................. 24

*Parallel Networks Licensing, LLC v. Microsoft Corp.*,
    No. CV 13-2073(KAJ), 2017 WL 11557655 (D. Del. Feb.
    22, 2017) ................................................................................. 16

*ResQNet.com, Inc. v. Lansa, Inc.*,
    594 F.3d 860 (Fed. Cir. 2010) ....................................... 10, 11

*Roche Diagnostics Corp. v. Meso Scale Diagnostics, LLC*,
    No. CV 17-189-LPS-CJB, 2019 WL 5310220 (D. Del. Oct.
    21, 2019) ................................................................................. 14

*Rude v. Westcott*,
    130 U.S. 152 (1889) ............................................................. 11

*Sonos, Inc. v. D & M Holdings Inc.*,
    297 F. Supp. 3d 501 (D. Del. 2017) ................................... 23

*Trading Techs. Int'l, Inc. v. IBG LLC*,
    No. 10 C 715, 2020 WL 12333010 (N.D. Ill. Oct. 21, 2020) ............... 24

*Vectura Ltd. v. Glaxosmithkline LLC*,
    981 F.3d 1030 (Fed. Cir. 2020) ..................................... 18, 19

*VirnetX Inc. v. Cisco Sys., Inc.*,
    No. 6:10-CV-417, 2013 WL 789288 (E.D. Tex. Mar. 1, 2013) ........... 17

*VirnetX, Inc. v. Cisco Sys., Inc.,*
    767 F.3d 1308 (Fed. Cir. 2014) ........................................... 8

*VLSI Tech. LLC v. Intel Corp.,*
    87 F.4th 1332 (Fed. Cir. 2023) ......................................... 17

*Whitserve, LLC v. Comput. Packages, Inc.,*
    694 F.3d 10 (Fed. Cir. 2012) ............................................ 13

## Rules and Regulations

Fed. R. App. P. 29(a)(4)(E) ...................................................... 1

Fed. R. Evid. 104(a) ............................................................... 6

Fed. R. Evid. 403 ................................................................ 12

Fed. R. Evid. 702 ................................ 1, 2, 3, 4, 5, 6, 7, 14, 16, 22, 25, 26

Fed. R. Evid. 702(a) ............................................................ 22

## Other Authorities

William F. Lee & Mark A. Lemley, *The Broken Balance: How
    'Built-In Apportionment' and the Failure to Apply
    Daubert Have Distorted Patent Infringement Damages*, 37
    Harv. J.L. & Tech. 255 (2024) ......................................... 17

## INTRODUCTION AND STATEMENT OF
## INTEREST OF *AMICUS CURIAE*[1]

Expert testimony plays a vital role in patent infringement

litigation. Juries depend on expert testimony to resolve complex

technical and economic issues that arise at trial. This is particularly

true when the parties ask a jury to determine the appropriate amount

of damages for patent infringement. That assessment must be a

reliable approximation of real-world negotiations based on the value of

the patent's technological contributions, which is nearly always based

on testimony from technical and economic experts. The decision on en

banc review permitted expert testimony that fails the reliability

safeguards imposed by Federal Rule of Evidence 702 and *Daubert v.*

*Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and should be

reversed.

*Amicus Curiae* Cisco Systems, Inc. is a leading innovator in the

networking, communications, computer hardware and software

industries, spending $7.9 billion a year inventing new ways to connect

---

[1] Pursuant to Fed. R. App. P. 29(a)(4)(E), *amicus* states that no party's
counsel authored this brief in whole or in part. No party, party's
counsel, or any person other than amicus and its members or its counsel
contributed money intended to fund preparing or submitting this brief.

the world and protect the safety of the internet. Cisco owns tens of thousands of patents and relies on a strong but balanced intellectual property system to protect its own inventions and investments in new products. Whether as a patentee or alleged infringer, Cisco relies on consistent and predictable rules for the admission of expert testimony in patent litigation.

The admission of unreliable expert testimony that results in unjustified infringement verdicts and damages awards has serious consequences in the real world. Junk science transforms patents from a system designed to encourage the disclosure of new ideas to a lottery system that rewards aggressive litigation tactics. And when district courts fail to perform the gatekeeping function contemplated by Rule 702 and *Daubert*, that failure must be corrected on appeal, wasting significant judicial and litigation resources, especially where a jury trial has gone to verdict. *See, e.g., Apple, Inc. v. Wi-LAN Inc.*, 25 F.4th 960, 971-74 (Fed. Cir. 2022) (concluding that the district court "abused its discretion in denying Apple's motion for a new trial on damages" because the same expert's testimony at issue here—Mr. Kennedy— should have been excluded); *Exmark Mfg. Co. v. Briggs & Stratton*

*Power Prods. Grp., LLC*, 879 F.3d 1332, 1349-51 (Fed. Cir. 2018)

(vacating damages award and remanding for new trial because

damages expert's opinion should have been excluded); *LaserDynamics,*

*Inc. v. Quanta Comput., Inc.*, 694 F.3d 51, 78-81 (Fed. Cir. 2012)

(district court erred in permitting the jury to hear damages expert's

testimony regarding royalty rate).  The panel majority's decision here

abandons *Daubert* and Rule 702's requirements and permits patentees

to recover damages based on unreliable expert testimony that is

unconnected to the "incremental value that the patented invention adds

to the end product." *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201,

1226 (Fed. Cir. 2014).

## ARGUMENT

I.  **Rule 702 And *Daubert* Require The District Court To Evaluate Whether Expert Testimony Is Admissible.**

Federal Rule of Evidence 702 provides in relevant part:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. Rule 702 was amended in 2023 to clarify how the rule is expected to operate.[2] The Advisory Committee for the Federal Rules of Evidence amended Rule 702 to "clarify and emphasize" that the burden of demonstrating admissibility is on the proponent of the testimony, that the proponent of the testimony must demonstrate its compliance with Rule 702 by a preponderance of the evidence, and that the admissibility of the testimony is a decision for the court and not the jury.

---

[2] Although Rule 702 was amended after the trial in this case concluded, the 2023 amendments did not substantively change the Rule. *See* Notes to Fed. R. Evid. 702 ("Nothing in the amendment imposes any new, specific procedures."). Instead, the amendments merely clarified the Rule's operation. *See id.* (noting throughout that the 2023 amendments were intended to "clarify and emphasize"); *see also D'Pergo Custom Guitars, Inc. v. Sweetwater Sound, Inc.*, 111 F.4th 125, 140 n.11 (1st Cir. 2024) (noting that "the 2023 amendments do not meaningfully affect [the Rule 702] analysis"). Accordingly, this Court can and should clarify the requirements for the admission of expert testimony under Rule 702 as amended.

In particular, the Committee understood that district courts were not consistently enforcing the requirement that "expert testimony may not be admitted unless the proponent demonstrates to the court that it is more likely than not that the proffered testimony meets the admissibility requirements set forth in the rule." Notes to Fed. R. Evid. 702. The Committee further emphasized:

> Judicial gatekeeping is essential because just as jurors may be unable, due to lack of specialized knowledge, to evaluate meaningfully the reliability of scientific and other methods underlying expert opinion, jurors may also lack the specialized knowledge to determine whether the conclusions of an expert go beyond what the expert's basis and methodology may reliably support.

*Id.* The en banc Court should likewise "clarify and emphasize" the admissibility standards to which district courts should hold all experts.

**Burden is on proponent of the testimony.** The Advisory Committee amended Rule 702 to make explicit that the proponent of testimony bears the burden of demonstrating the admissibility of the testimony. Specifically, the Committee was concerned that "many courts have held that the critical questions of the sufficiency of an expert's basis, and the application of the expert's methodology, are questions of weight and not admissibility," and explained that those

courts "incorrect[ly] appli[ed] … Rules 702 and 104(a)." Notes to Fed. R. Evid. 702.

**Burden of proof on admissibility is preponderance of the evidence.** The Advisory Committee also sought to correct another error proliferating among federal courts: applying the wrong standard of review. The Committee explained that "emphasizing the preponderance standard in Rule 702 specifically was made necessary by the courts that have failed to apply correctly the reliability requirements of that rule." Notes to Fed. R. Evid. 702.

**Courts are required to determine admissibility of expert testimony.** In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court explained that Rule 702 encompasses "a gatekeeping role for the judge," and lamented that although that function will "inevitably on occasion … prevent the jury from learning of authentic insights and innovations," that "is the balance that is struck by Rules of Evidence designed not for the exhaustive search for cosmic understanding but for the particularized resolution of legal disputes." 509 U.S. 579, 597 (1993). However, courts failed to heed that instruction and Rule 702 was amended in 2023 to "emphasize that each

expert opinion must stay within the bounds of what can be concluded from a reliable application of the expert's basis and methodology." Notes to Fed. R. Evid. 702.

Some courts have started to apply the lessons from the 2023 amendments, specifically referencing the burden of demonstrating admissibility, and excluding patent damages experts where the proponent of the testimony "failed to meet its burden to show that [the expert's] damages theory [was] based on a sufficiently reliable methodology such that it should go before a jury." *Exafer Ltd. v. Microsoft Corp.*, 719 F. Supp. 3d 749, 754 (W.D. Tex. 2024). But, as explained in Google's briefing, the trial court here did not adhere to that required standard. Google OB 23-41. Below, Cisco further explains why the Court's guidance is needed for the admissibility of all types of expert testimony.

## II. The Court's Guidance On Admissibility Of Expert Testimony Is Desperately Needed.

Patent litigation often relies heavily on expert testimony. Plaintiffs and defendants use technical experts to explain infringement, invalidity, and technical apportionment, and rely on economic experts to prove damages. All of this expert testimony is subject to Rule 702

and *Daubert* standards. Certain expert topics and theories are frequently subject to *Daubert* challenges in patent litigation. Cisco summarizes some of these issues with examples of when district courts appropriately policed expert opinions, and counterexamples where district courts failed to apply *Daubert* and allowed unreliable expert testimony to infect jury trials. Ultimately, a strong patent system requires a consistent approach to the admission or exclusion of expert testimony and this Court's en banc review should clarify the district court's gatekeeping function.

## A. District courts do not consistently enforce reliability requirements surrounding "comparable" licenses.

Both plaintiffs and defendants use "comparable" licenses to estimate damages for the patents-in-suit. To use a license, the Court has explained it must be both economically and technologically comparable to the hypothetical negotiation. *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1330 (Fed. Cir. 2014). District courts do not reliably enforce either requirement, and they permit parties to introduce licenses that not only do not assist the jury in determining a reasonable royalty for the asserted patents, but also mislead the jury by inflating the value of the invention. Lay jurors are unlikely to be able

to determine on their own the comparability of the licenses presented to them, let alone place licenses in their economic context.  For example, a lay juror will not necessarily have experience with the benefits of a portfolio license to an accused infringer, or the benefits of a cross-license between two competitors, or the business pressures that motivate companies to settle litigation.  Expert testimony must account for those economic circumstances so that jurors can give licenses their proper weight.

Instead of requiring expert testimony that addresses economic and technological differences, district courts have interpreted this Court's precedents as permitting reliance on any license that is not "radically different" from the hypothetical negotiation, including licenses that "grant rights to additional patents, include international rights, were related to different products, were in settlement of active litigation, and are dated several years after [the] hypothetical negotiation date." *Multimedia Pat. Tr. v. Apple Inc.*, No. 10-CV-2618-H KSC, 2012 WL 5873711, at *7 (S.D. Cal. Nov. 20, 2012).

This Court's prior cases have frequently allowed an imperfect match between the economic and technological circumstances of a prior

license, provided the damages expert "account[s] for" differences between the proffered license and the hypothetical negotiation.  *Apple Inc. v. Wi-LAN Inc.*, 25 F.4th 960, 971-74 (Fed. Cir. 2022).  District courts too often find that the party opposing the damages opinion can simply cross-examine the expert on whether they properly "accounted for" the differences, instead of applying *Daubert*'s reliability requirements to exclude licenses and damages theories that should never have been presented to the jury.  *Multimedia Pat. Tr.*, 2012 WL 5873711, at *7 ("shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion").  This Court should clarify that overbroad standards like "not radically different" or having no "discernible link to the claimed technology," *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 870 (Fed. Cir. 2010), are not the proper standards for admissibility, and that any reliance on licenses must be supported by reliable, specific testimony on both the economic and technological differences between the comparable license and the hypothetical negotiation.

The failure to police economic comparability has become a widespread problem.  And when that analysis is improperly policed by

district courts, it can result in a failure to recognize the limited probative value of settlement licenses, the failure to recognize collusive pre-litigation licenses that drive up royalties with no economic consequences to the licensees, and a failure to appreciate the lack of comparability when converting lump-sum licenses into running royalties. These failures mislead the jury into awarding inaccurate damages amounts and perpetuate troubling incentives for patent-holders.

*Settlement licenses*: In *Rude v. Westcott*, the Supreme Court explained that

> a payment of any sum in settlement of a claim for an alleged infringement cannot be taken as a standard to measure the value of the improvements patented, in determining the damages sustained by the owners of the patent in other cases of infringement. Many considerations other than the value of the improvements patented may induce the payment in such cases. The avoidance of the risk and expense of litigation will always be a potential motive for a settlement.

130 U.S. 152, 164 (1889). Courts have strayed far away from the Supreme Court's warning against reliance on settlement licenses, and now regularly allow parties to rely on settlement licenses to prove damages despite the inherent risk of deception and troubling incentives.

*See, e.g., ResQNet.com, Inc.*, 594 F.3d at 872 (finding "the most reliable license in this record arose out of litigation"); *but see, e.g., Fenner Invs., Ltd. v. Hewlett-Packard Co.*, No. 6:08-CV-273, 2010 WL 1727916, at *1-3 (E.D. Tex. Apr. 28, 2010) (Love, M.J.) (granting patentee's motion in limine to exclude under Rule 403 evidence of prior settlement agreements and negotiations). Because settlement licenses are unreliable sources of data for patent infringement damages, courts should presume that settlement licenses are *not* admissible, and should allow damages testimony based on settlement licenses only if the expert directly addresses and accounts for the economic factors surrounding settlement.

Cisco itself has been subject to a massive damages award—over $750 million—based primarily on an unreliable prior settlement purporting to establish a 10% running royalty rate. *See Centripetal Networks, Inc. v. Cisco Sys., Inc.*, No. 2:18cv94, 2020 WL 5887916, at *58 (E.D. Va. Oct. 5, 2020), *vacated and remanded on other grounds* (judge's disqualification), 38 F.4th 1025, 1027 (Fed. Cir. 2022).

*Lump-sum licenses*: There are "[s]ignificant differences … between a running royalty license and a lump-sum license." *Lucent*

*Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1326 (Fed. Cir. 2009). This Court has thus required that experts attempting to derive a per-unit royalty from a lump-sum license "explain[] how" the lump sum supports the running royalty. *Whitserve, LLC v. Comput. Packages, Inc.*, 694 F.3d 10, 30 (Fed. Cir. 2012). And the Court has vacated damages awards where the running royalty opinions presented to the jury were "incompatible with the … [prior lump-sum] agreement." *MLC Intell. Prop., LLC v. Micron Tech., Inc.*, 10 F.4th 1358, 1368 (Fed. Cir. 2021). But district courts still permit patentees to derive running royalty rates from licenses involving vastly different circumstances than the hypothetical negotiation. *E.g.*, *Multimedia Pat. Tr.*, 2012 WL 5873711, at *8.

That is part of what happened here. EcoFactor's "comparable" licenses were with low-volume companies, who agreed to pay a fixed lump-sum amount for a portfolio-wide license. EcoFactor then attempted to apply a very high per-unit royalty to Google's much higher sales volume, without considering that obvious difference in economic circumstances between the licensees. Dissent 4-5. The result is a per-unit royalty that distorts economic reality, contradicts the parties'

actual licensing practices, and fails the admissibility requirements of Rule 702 and *Daubert*.

## B. District courts do not consistently enforce reliability requirements surrounding surveys.

Another frequently used expert tool is a survey of a random sample of the infringer's customers or potential customers. A survey could determine how frequently customers used an accused feature or a customer's willingness to pay for infringing features. When confronted with survey evidence, courts often punt expert testimony to the jury, leaving lay jurors to evaluate the testimony based on cross-examination. *See, e.g.*, *Roche Diagnostics Corp. v. Meso Scale Diagnostics, LLC*, No. CV 17-189-LPS-CJB, 2019 WL 5310220, at *3 (D. Del. Oct. 21, 2019) (acknowledging the accused infringer "raises numerous, legitimate concerns about Dr. Befurt's [survey] analysis" but still admitting the testimony because "[i]t will be for the jury to assess the impact of Roche's potentially persuasive critiques of Dr. Befurt's analysis and what weight, if any, to accord Dr. Befurt's opinions."). This Court's clarification that it is the trial judge's job as gatekeeper to ensure that expert testimony meets *Daubert*'s reliability standards

would reduce instances of shoddy survey evidence making its way to the jury.

A recurring problem with survey questions asking about the value of the patented technology is whether the questions accurately reflect the claims. Courts often hold that "whether a claim limitation is covered by a survey question is a factual dispute that should be resolved on cross-examination, not in a motion to exclude." *Maxell, Ltd. v. Apple Inc.*, No. 5:19-CV-00036-RWS, 2020 WL 8269548, at *17 (E.D. Tex. Nov. 11, 2020) (citing *Barry v. Medtronic, Inc.*, No. 1:14-cv-104, 2016 WL 7665773, at *2 (E.D. Tex. July 19, 2016)). Evaluating whether a survey accurately reflects the asserted claims is the job of the judge considering a motion to exclude the testimony. *Fractus, S.A. v. Samsung*, No. 6:09-cv-203-LED-JDL, 2011 WL 7563820, at *1 (E.D. Tex. Apr. 29, 2011) (survey evidence not "tied directly to Plaintiff's technology confuses the issues and must be excluded."). Once a jury hears the survey evidence, a defendant cannot un-ring the bell through cross-examination. And survey evidence can be extremely inflated and misleading. In one case, plaintiff's survey expert opined that "the average consumer would be willing to pay up to $47 more for the infringing feature while the

average cost of Windows 10 was $65." *IPA Techs. Inc. v. Microsoft Corp.*, No. CV 18-1-RGA, 2024 WL 1797394, at *20 (D. Del. Apr. 25, 2024), *reconsideration denied*, 2024 WL 1962070 (D. Del. May 2, 2024). Despite multiple problems with the survey design—including an extremely small sample size—the court denied a motion to exclude and held that "mere technical unreliability goes to the weight accorded a survey, not its admissibility." *Id*. at *21. The jury ultimately awarded $242,000,000 before the parties settled for a confidential amount.

Other courts have enforced Rule 702 when evaluating survey evidence. For example, when faced with a survey that did not accurately separate infringing from noninfringing uses, the district court excluded the opinions because the survey lacked "an adequate 'fit' between expert evidence and the purpose for which that evidence is offered," and was thus irrelevant. *Parallel Networks Licensing, LLC v. Microsoft Corp.*, No. CV 13-2073(KAJ), 2017 WL 11557655, at *3 (D. Del. Feb. 22, 2017). Similarly, when an expert attempted to derive an apportionment factor in a suit against Cisco from a vague survey that found "70% of customers valued VoIP security," the district court properly granted Cisco's motion to exclude because the survey-based

"apportionment factor is a poor substitute for the type of analysis one should undertake when parsing an alleged infringer's profits for patented versus unpatented features." *VirnetX Inc. v. Cisco Sys., Inc.¸* No. 6:10-CV-417, 2013 WL 789288, at *2 (E.D. Tex. Mar. 1, 2013).

The Federal Circuit should clarify that the district court must determine whether the survey measures the value of the claimed invention (or whether the expert's other apportionment analyses reliably limit the expert's opinion to the claimed invention), and not leave questions about "fit" to the jury.

## C. District courts do not consistently enforce apportionment rules.

"[T]o be admissible, all expert damages opinions must separate the value of the allegedly infringing features from the value of all other features." *CSIRO v. Cisco Sys., Inc.*, 809 F.3d 1295, 1301 (Fed. Cir. 2015). Even though reliable apportionment is "required," *VLSI Tech. LLC v. Intel Corp.*, 87 F.4th 1332, 1345 (Fed. Cir. 2023), district courts frequently allow shoddy apportionment analyses that improperly inflate damages in favor of patentees. While these "apportionment" analyses come in many flavors, this and other recent cases highlight the specific problem of "built-in" apportionment theories. William F. Lee & Mark A.

Lemley, *The Broken Balance: How 'Built-In Apportionment' and the Failure to Apply* Daubert *Have Distorted Patent Infringement Damages*, 37 Harv. J.L. & Tech. 255, 288-99 (2024).

A built-in apportionment theory posits that a comparable license may not need further apportionment specific to the asserted patents, litigating parties, and accused products. *Vectura Ltd. v. Glaxosmithkline LLC*, 981 F.3d 1030, 1041 (Fed. Cir. 2020). For example, in *CSIRO*, the Court approved of a district court's reliance on prior negotiations between the two parties, for a license to the asserted patent, for use in the accused products. 809 F.3d at 1300-03. The Court agreed that the prior negotiation was a reasonable starting point for determining a reasonable royalty. *Id.* at 1303. But later cases have expanded the case-specific reasoning of *CSIRO* to permit reliance on unapportioned royalty rates that are *not* keyed to the specific circumstances of the hypothetical negotiation. *See Elbit Sys. Land & C4I Ltd. v. Hughes Network Sys., LLC*, 927 F.3d 1292 (Fed. Cir. 2019); *Bio-Rad Lab'ys, Inc. v. 10X Genomics Inc.*, 967 F.3d 1353 (Fed. Cir. 2020). The Court's decision in *Bio-Rad* represented a stark departure from the facts of *CSIRO*, and permitted reliance on an unaltered license

rate where the "comparable" licenses were to different patents, different parties, and different products. *Bio-Rad*, 967 F.3d at 1375. The Court continued its lax approach to apportionment in *Vectura*, 981 F.3d at 1040-41, again approving of damages based on unadjusted licenses to different patents and different products. The Court doubled down on its built-in apportionment caselaw, agreeing that "a party relying on a sufficiently comparable license can adopt the comparable license's royalty rate and royalty base without further apportionment and without proving that the infringing feature was responsible for the entire market value of the accused product." *Id.* at 1041. And relying on *Vectura*, the panel majority here allowed EcoFactor to rely on built-in apportionment.

Cisco too has been subjected to expert damages testimony that failed to properly apportion to the allegedly infringed invention by inappropriately relying on built-in apportionment. *See* Cisco Inc.'s Mot. To Strike Ops. of Expert Stephen Dell, and Related Technical Ops. of Dr. Keith Goossen, Because of Failure to Conduct a Proper Apportionment Analysis, *Oyster Optics, LLC v. Cisco Sys., Inc.*, No. 2:20-cv-00211-JRG (E.D. Tex. Aug. 16, 2021), ECF No. 113. In *Oyster*

*Optics*, the patentee's damages expert relied on built-in apportionment, but wholly failed to "analyze the relative value of the licensed patent to the licensed product (in the allegedly comparable license)" or "compare that value to the value of the Patent-in-Suit to the accused product." *Id.* at 2. That analytical failure mirrors Mr. Kennedy's failure here in attempting to apply a royalty rate from a license to different patents to different products with different relative values.

Meanwhile, in other cases, district courts have properly excluded expert testimony when the expert fails to properly apportion to the patent-in-suit. For example, the court in *NNCrystal US Corp. v. Nanosys, Inc.* excluded expert testimony on built-in apportionment where the expert relied on licenses to "a broader portfolio of intellectual property or technology rights, than would be present in a hypothetical negotiation" and did not "provide support for the assertion the royalty rates in these licenses specifically embody the value of the [asserted patent] (or similar technology) and its contributions to manufacturing components (i.e., the shells) of quantum dots, as opposed to the value of the [asserted patent] with other patents and technology." No. CV 19-1307-RGA, 2023 WL 2891453, at *3 (D. Del. Apr. 11, 2023). And in

*Mondis Technology Ltd. v. LG Electronics, Inc.* the court vacated a jury verdict where expert testimony improperly relied on built-in apportionment and "did not account for or adjust for the differences so as to satisfy the apportionment requirement." 407 F. Supp. 3d 482, 493 (D.N.J. 2019).

The en banc court should clarify that built-in apportionment is only available in narrowly limited to circumstances like *CSIRO*, where, for example, the comparable license was between the same parties, for a license to the asserted patent, and for use in the same products. 809 F.3d at 1300-03. While licenses that are not so analogous to the hypothetical negotiation may still be comparable, built-in apportionment may not be used as a shortcut for determining the technological contribution of the asserted patent to the accused products.

### D. District courts do not consistently enforce the requirement that expert testimony be based on specialized expertise.

Beyond damages testimony, district courts have permitted unreliable and irrelevant technical expert testimony on willfulness and indirect infringement. Enforcing *Daubert*'s requirements that expert

testimony be helpful to the jury and be based on technical expertise should prevent this testimony from reaching the jury.

A first and basic threshold for technical experts is qualification. Fed. R. Evid. 702(a). Yet Cisco has faced experts who were *not* qualified in the technical field of the asserted patent. *See, e.g.*, Cisco's *Daubert* Motion and Motion to Strike the Opinions of Lionra's Expert Dr. Eric Cole, *Lionra Techs. Ltd. v. Cisco Sys., Inc., et al.*, No. 22-cv-305-JRG (E.D. Tex. March 4, 2024), ECF No. 288. Despite having no experience with integrated circuits—the subject matter of the claims—the patentee's technical expert purported to opine on infringement, validity, and how a person of ordinary skill in the art would understand the patent. Rule 702 and *Daubert* do not permit experts who are not qualified in the field of the asserted patent to offer technical opinions.

Even when patentees have qualified experts, they improperly ask those experts to opine on nontechnical issues. For example, patentees asserting willful infringement often try to introduce expert testimony purporting to opine on whether the accused infringer deliberately or intentionally infringed to asserted patents. Most district courts exclude such testimony as "not helpful to the jury and, therefore, not

admissible." *Sonos, Inc. v. D & M Holdings Inc.*, 297 F. Supp. 3d 501, 521 (D. Del. 2017). For example, in *Sonos* the patentee's expert pointed to evidence that the accused infringer was "aware of" the asserted patents and "sought to make products with" similar features, and then opined that the accused infringer copied "Sonos's patented technology." *Id.* The district court excluded this evidence because the expert's qualifications, "which are based on his education and work experience, are not pertinent to his conclusions about copying. The jury may draw its own inferences" about whether the technical evidence supported a finding of copying or willfulness. *Id.* at 521-22. Likewise in *Finjan, Inc. v. Cisco Systems, Inc.*, the district court excluded opinions from technical experts about whether "Cisco knew or should have known that it was infringing" Finjan's patents as "speculative" and "not within the purview of technical experts." No. 17-cv-72, 2020 WL 13180005, at *2 (N.D. Cal. Apr. 21, 2020).

Similarly, opinions about what "a reasonable company" would do "upon learning of [the patentee] and its enforcement of its patent portfolio," were held inadmissible as "likely to mislead and confuse the jury." *Finjan, Inc. v. ESET, LLC*, No. 17-CV-183-CAB-BGS, 2019 WL

5212394, at *4-5 (S.D. Cal. Oct. 16, 2019); *see also Trading Techs. Int'l, Inc. v. IBG LLC*, No. 10 C 715, 2020 WL 12333010, at *2 (N.D. Ill. Oct. 21, 2020) ("it is not helpful to jurors for an expert to tell them what he thinks about an institution's intent"*).*

But other courts have allowed similar testimony, including opinions that "defendants should have known of the high risk of infringement." *Imperium IP Holdings (Cayman), Ltd. v. Samsung Elecs. Co.*, No. 4:14-CV-371, 2016 WL 3746523, at *2 (E.D. Tex. Jan. 28, 2016). The district court in *Imperium* held that because those opinions were drawn "at least in part, on [the expert's technical conclusions]," the opinions were admissible and could be dealt with on cross-examination. *Id.*

District courts likewise sometimes exclude (but other times allow) technical expert testimony going to an accused infringer's intent to infringe—as necessary for indirect infringement—or even willful blindness. *See Atlas Glob. Techs. LLC v. TP-Link Techs. Co.*, 684 F. Supp. 3d 570, 577 (E.D. Tex. 2023) (excluding opinions "that Defendants knew or were willfully blind to the infringement" or had "the requisite intent to induce infringement."); *PACT XPP Techs., AG v.*

*Xilinx, Inc.*, No. 2:07-CV-563-RSP, 2012 WL 1432618, at *2 (E.D. Tex. Apr. 25, 2012) (denying motion to exclude expert testimony that accused infringer "'likely' knew of the asserted patents and patent applications" through "due diligence.").

Merely citing technical conclusions is not enough to admit expert testimony on intent or reasonable behavior in the market. Instead, where technical expert's opinion "do[es] not involve technical analysis"—such as "[e]xpert testimony about an alleged infringer's intent, motive, or state of mind"—that testimony "is inadmissible." *Fuma Int'l LLC v. R.J. Reynolds Vapor Co.*, No. 1:19-CV-260, 2021 WL 4820738, at *2-3 (M.D.N.C. Oct. 15, 2021); *see id.* at *3 (excluding testimony on "whether an infringer complied with or acted inconsistently with industry standards."). An opinion from the en banc Court clarifying that expert testimony must comport with Rule 702's requirement that the testimony be based on "the expert's scientific, technical, or other specialized knowledge" will cabin these problematic opinions from technical experts on corporate intent and corporate behavior.

## CONCLUSION

The cases above illustrate that district courts are regularly failing to perform their gatekeeping function. The admission of unreliable expert testimony is detrimental to the strong patent system that Cisco and other technology companies need to foster innovation. Accordingly, this Court should clarify that district courts must enforce Rule 702's admissibility requirements.

Respectfully submitted,

*/s/ Elizabeth R. Moulton*

E. Joshua Rosenkranz
ORRICK, HERRINGTON &
  SUTCLIFFE LLP
51 West 52nd Street
New York, NY 10019

Elizabeth R. Moulton
ORRICK, HERRINGTON &
  SUTCLIFFE LLP
405 Howard Street
San Francisco, CA 94105
(415) 773-5700

Edward H. Williams
ORRICK, HERRINGTON &
  SUTCLIFFE LLP
2100 Pennsylvania Ave. NW
Washington, DC 20037

*Counsel for Amicus Curiae*

November 26, 2024

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. Cir. R. 35(g), because this brief contains 4886 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 365 in Century Schoolbook 14-point font.

ORRICK, HERRINGTON & SUTCLIFFE LLP

*/s/ Elizabeth R. Moulton*
Elizabeth R. Moulton
*Counsel for Amicus Curiae*