Nos. 23-1101

# United States Court of Appeals for the Federal Circuit

ECOFACTOR, INC.,

*Plaintiff-Appellee*,

v.

GOOGLE LLC,

*Defendant-Appellant.*

**Appeal from the United States District Court for the Western District of Texas in No. 6:20-cv-00075-ADA, Judge Alan D. Albright**

**BRIEF FOR *AMICI CURIAE* MEDTRONIC PLC AND ADVANCED MEDICAL TECHNOLOGY ASSOCIATION IN SUPPORT OF DEFENDANT-APPELLANT GOOGLE LLC**


Anneli E. Kawaoka
JONES DAY
110 North Wacker Drive
Suite 4800
Chicago, IL 60606
(312) 782-3939
akawaoka@jonesday.com

Gregory A. Castanias
Tracy A. Stitt
JONES DAY
51 Louisiana Avenue, N.W.
Washington, DC 20001
(202) 879-3939
gcastanias@jonesday.com

*Counsel for* Amici Curiae *Medtronic plc and Advanced Medical Technology Association*

# CERTIFICATE OF INTEREST

Case No. 2023-1101

*EcoFactor, Inc. v. Google LLC*

Filing Party/Entity: Medtronic plc; Advanced Medical Technology Association (AdvaMed)

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: November 26, 2024 Signature: */s/ Gregory A. Castanias*

Name: Gregory A. Castanias

**1. Represented Entities** (Fed. Cir. R. 47.4(a)(1)) – Provide the full names of all entities represented by undersigned counsel in this case.

Medtronic plc

Advanced Medical Technology Association

**2. Real Party in Interest** (Fed. Cir. R. 47.4(a)(2)) – Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.

Not Applicable

**3. Parent Corporations and Stockholders** (Fed. Cir. R. 47.4(a)(3)) – Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.

None

**4. Legal Representatives** – List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

None

**5. Related Cases** – Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5); see also Fed. Cir. R. 47.5(b).

N/A (amicus)

**6. Organizational Victims and Bankruptcy Cases** – Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

Not Applicable

# TABLE OF CONTENTS

**Page**

INTEREST OF THE *AMICI CURIAE* ........ 1

INTRODUCTION ........ 3

SUMMARY OF THE ARGUMENT ........ 4

ARGUMENT ........ 5

I. RULE 702 AND *DAUBERT* REQUIRE REASONED GATEKEEPING, ESPECIALLY WHERE ECONOMIC ANALYSIS IS PRESENTED ........ 6

II. DISTRICT COURTS SHOULD RIGOROUSLY ENFORCE THE APPORTIONMENT REQUIREMENT FOR PATENT DAMAGES ........ 11

A. "Built-In Apportionment" Should Not Be An Exception To The *Garretson* Rule ........ 12

B. Royalties For Individual Inventions Based On Broad Portfolio License Agreements Require Rigorous Scrutiny ........ 15

CONCLUSION ........ 20

## TABLE OF AUTHORITIES

**Page**

**CASES**

*ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312 (Fed. Cir. 2012) ....................18

*ADASA Inc. v. Avery Dennison Corp.*, 55 F.4th 900 (Fed. Cir. 2022) ....................17

*Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286 (Fed. Cir. 2014), *overruled on other grounds by Williamson v. Citrix Online, LLC*, 792 F.3d 1339 (Fed. Cir. 2015)....................18

*Apple Inc. v. Wi-LAN Inc.*, 25 F.4th 960 (Fed. Cir. 2022) ....................7

*Bio-Rad Laby's, Inc. v. 10X Genomics, Inc.*, 967 F.3d 1353 (Fed. Cir. 2020) ....................13

*Carlson v. Bioremedi Therapeutic Sys., Inc.*, 822 F.3d 194 (5th Cir. 2016) ....................8

*CSIRO v. Cisco Sys., Inc.*, 809 F.3d 1295 (Fed. Cir. 2015) ....................7

*Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).................... 3, 4, 5, 6, 7, 8, 9, 10, 12, 17, 20

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006)....................14

*EcoFactor, Inc. v. Google LLC*, 115 F.4th 1380 (Fed. Cir. 2024) ....................1, 5

*EcoFactor, Inc. v. Google LLC*, 104 F.4th 243 (Fed. Cir. 2024) ....................2, 5, 16, 17, 18

*Elbit Sys. Land & C4I Ltd. v. Hughes Network Sys., LLC*,
927 F.3d 1292 (Fed. Cir. 2019) ........................................................................13

*Flex–Foot, Inc. v. CRP, Inc.*,
238 F.3d 1362 (Fed. Cir. 2001) ........................................................................10

*Fuji Photo Film Co., Ltd. v. Int'l Trade Comm'n*,
474 F.3d 1281 (Fed. Cir. 2007) ........................................................................17

*Garretson v. Clark*,
111 U.S. 120 (1884)...................................................................................4, 14

*Gayton v. McCoy*,
593 F.3d 610 (7th Cir. 2010) ............................................................................8

*Gen. Elec. Co. v. Joiner*,
522 U.S. 136 (1997)...................................................................................6, 19

*Kumho Tire Co., Ltd. v. Carmichael*,
526 U.S. 137 (1999)..........................................................................................6

*LaserDynamics, Inc. v. Quanta Comput., Inc.*,
694 F.3d 51 (Fed. Cir. 2012) .....................................................................5, 17

*Lucent Techs., Inc. v. Gateway, Inc.*,
580 F.3d 1301 (Fed. Cir. 2009) ........................................................................17

*Markman v. Westview Instruments, Inc.*,
517 U.S. 370 (1996)........................................................................................19

*Midwest Indus., Inc. v. Karavan Trailers, Inc.*,
175 F.3d 1356 (Fed. Cir. 1999) ..........................................................................9

*Rembrandt Wireless Techs., LP v. Samsung Elecs. Co.*,
853 F.3d 1370 (Fed. Cir. 2017) ........................................................................18

*Sardis v. Overhead Door Corp.*,
10 F.4th 268 (4th Cir. 2021) ........ 8, 9

*Smith v. Jenkins*,
732 F.3d 51 (1st Cir. 2013) ........ 8

*Summit 6, LLC v. Samsung Elecs. Co.*,
802 F.3d 1283 (Fed. Cir. 2015) ........ 18

*Uniloc USA, Inc. v. Microsoft Corp.*,
632 F.3d 1292 (Fed. Cir. 2011) ........ 7, 9, 15

*United States v. Holguin*,
51 F.4th 841 (9th Cir. 2022) ........ 8

*Vectura Ltd. v. GlaxoSmithKline LLC*,
981 F.3d 1030 (Fed. Cir. 2020) ........ 13

*Weisgram v. Marley Co.*,
528 U.S. 440 (2000) ........ 6

**STATUTES**

35 U.S.C. § 101 ........ 10

35 U.S.C. § 102 ........ 10

35 U.S.C. § 103 ........ 10

35 U.S.C. § 112 ........ 10

35 U.S.C. § 271 ........ 10

35 U.S.C. § 284 ........ 10, 12, 16

**RULES**

Fed. R. Evid. 104(a) ........ 4, 19, 20

Fed. R. Evid. 702 ........ 3, 4, 5, 7, 8, 10, 12, 17, 18, 20

**OTHER AUTHORITIES**

Google LLC's Non-Confidential En Banc Opening Brief, *EcoFactor, Inc. v. Google LLC*, No. 23-1101 (Fed. Cir. Nov. 12, 2024), Doc. 84 ....................12

Fed. R. Evid. 702 advisory committee's note to 2023 amendment....................5, 18

Stuart Graham, Peter Menell, Carl Shapiro, & Tim Simcoe, *Final Report of the Berkeley Center for Law & Technology Patent Damages Workshop*, 25 Tex. Intell. Prop. L. J. 115, 128 (2017)....................15

William F. Lee & Mark A. Lemley, *The Broken Balance: How "Built-In Apportionment" and the Failure to Apply* Daubert *Have Distorted Patent Infringement Damages*, 37 Harv. J. L. & Tech. 255 (2024)....................14

## INTEREST OF THE *AMICI CURIAE*[1]

Founded in 1949 in Minneapolis, Minnesota as a medical-equipment repair shop, Medtronic has grown throughout the years to become the largest medical technology company in the world. It develops and manufactures devices and therapies to treat more than 30 chronic diseases, including heart failure, Parkinson's disease, urinary incontinence, Down syndrome, obesity, chronic pain, spinal disorders and diabetes. It often licenses the technology that it develops, and acquires licenses to other companies' technology, oftentimes in the same transactions, all with the goal of providing better patient care through the devices and therapies that Medtronic and its associated companies ultimately bring to the marketplace.

The Advanced Medical Technology Association (AdvaMed) is the world's largest medical-technology association representing device, diagnostics, imaging, and digital technology manufacturers that are transforming healthcare through earlier disease detection, less-invasive medical procedures, and more-effective treatments. Its 400-plus member companies span every field of medical science,

---

[1] This brief is filed pursuant to the Court's order: "Any briefs of amici curiae may be filed without consent and leave of the court." *EcoFactor, Inc. v. Google LLC*, 115 F.4th 1380, 1381 (Fed. Cir. 2024). Counsel certifies that neither party's counsel authored this brief in whole or in part, and no person or entity other than *amici* and their counsel contributed money intended to fund the preparation or submission of this brief.

and range from cutting-edge startups to multinational manufacturers. AdvaMed's members are dedicated to advancing clinician and patient access to safe, effective medical technologies. They also require a well-functioning patent system to continue to innovate in ways that save lives.

Medical-device manufacturers, such as *amicus* Medtronic and *amicus* AdvaMed's member companies, find themselves as plaintiffs in some patent-infringement cases, and as defendants in others. They are also both licensors and licensees of patents in their daily businesses, even apart from litigation. Their licensing programs, much of which is in the nature of lump-sum, portfolio licenses (and in many cases cross-licenses) to other companies' patents rather than licenses to individual patents, often find their way into litigation. There, expert witnesses are allowed, if their testimony is not cabined by a district judge acting as a gatekeeper, to transform those much different licenses into evidence of a reasonable royalty for an individual patent. As the dissent from the now-vacated panel decision below noted, "deriving a reasonable royalty from a lump-sum license and requiring the patentee to confine its damages to the value of the patented technology" has long been a challenge faced by this Court's decisions. 104 F.4th 243, 257 (Fed. Cir. 2024) (Prost, J., dissenting-in-part).

*Amici*'s interest in the outcome of this case is that it result in greater clarity, greater certainty, and an evidentiary regime in which judges will more carefully

scrutinize expert testimony at the threshold. In this way, juries will be presented with evidence of "the value of the patented technology," not methodologically unreliable testimony whose only guardrail is the jury itself. What is important to *amici* for the future, regardless of the side of litigation on which they find themselves, is that the outcome of this en banc rehearing be a more disciplined and predictable regime of expert testimony generally, and particularly where experts use license agreements as the basis for their testimony. The end result of this case should be that district judges are more empowered to utilize the gatekeeping powers conferred upon them by Rule 702 and *Daubert*, and that they are instructed to use those powers in all patent cases so that juries are presented with expert testimony that better matches the economic realities of patent licensing.

## INTRODUCTION

This case presents the Court with a critical opportunity, sitting en banc, to clarify and rationalize the law of reliable expert testimony for the benefit of all future patent litigation in this country. While the dispute before the Court involves two parties in the "high-tech" industry, this Court's decision will reach every aspect of district-court patent litigation in cases involving parties in every technological sector. *Amici*, representing some of the world's largest medical-device manufacturers, which are both plaintiff and defendant in patent-infringement litigation with some regularity, offer their perspective to aid the Court

in reaching a conclusion that is sound and workable, consistent with Supreme Court precedent and the Federal Rules of Evidence, and most likely to carry out this Court's congressionally mandated charge to spur the growth of technology and innovation.

## SUMMARY OF THE ARGUMENT

I. On the broader, threshold issues of the admissibility of reliable expert testimony in general, the en banc Court should hold: (i) that *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), and Federal Rules of Evidence 104(a) and 702 impose meaningful threshold burdens on the proponents of expert evidence; (ii) that district courts, when presented with a challenge to the reliability of expert evidence, must make explicit, reasoned findings and conclusions, either oral or written, to justify their decisions and to ensure an adequate basis for appellate review; and (iii) that in patent cases, these issues are matters of Federal Circuit law rather than regional circuit law.

II. On the specific issues related to the testimony regarding the per-unit royalty rate and apportionment, the en banc court should further hold: (i) there is no "built-in apportionment" exception to the requirement, set forth in the Supreme Court's decision in *Garretson v. Clark*, 111 U.S. 120, 121 (1884), that "[t]he patentee … must in every case give evidence tending to separate or apportion … the patented feature and the unpatented features, and such evidence must be

reliable and tangible, and not conjectural or speculative"; (ii) when experts seek to ground their opinions in comparable licenses, "a loose or vague comparability … does not suffice," *LaserDynamics, Inc. v. Quanta Comput., Inc.*, 694 F.3d 51, 79 (Fed. Cir. 2012); and (iii) such expert opinions alleging comparability must be rigorously filtered at the threshold by trial judges, acting in their gatekeeping role, and cannot be presented to the jury on the theory, adopted by the now-vacated panel majority in this case, that comparability is "best addressed by cross examination and not by exclusion." 104 F.4th at 255, 256. The 2023 Advisory Committee Note to Rule 702 has made clear that such challenges to reliability go to the "admissibility" of the expert opinion and not simply its evidentiary "weight" before the jury.

## ARGUMENT

The Order granting en banc review indicates that the Court is focused on the following issue: "the district court's adherence to Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), in its allowance of testimony from EcoFactor's damages expert assigning a per-unit royalty rate to the three licenses in evidence in this case." 115 F.4th 1380, 1380 (Fed. Cir. 2024) (order granting en banc rehearing). Both of these issues—a disciplined and uniform application of Federal Rule of Evidence 702 and *Daubert* generally in patent cases tried across this Nation, as

well as a rigorous and consistent application of apportionment law specifically—are of significant concern to *amici*.

## I. RULE 702 AND *DAUBERT* REQUIRE REASONED GATEKEEPING, ESPECIALLY WHERE ECONOMIC ANALYSIS IS PRESENTED

In *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), the Supreme Court established the essential "gatekeeping role for the judge," *id.* at 597, in which the district court, exercising a "screening" function, "must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Id.* at 589. The Court has repeatedly reaffirmed the importance of this gatekeeping function in subsequent decisions. *See, e.g.*, *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999) ("conclud[ing] that *Daubert*'s general holding—setting forth the trial judge's general 'gatekeeping' obligation—applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge," including "the testimony of engineers and other experts who are not scientists") (quoting Fed. R. Evid. 702); *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 142-43 (1997) (rejecting lower courts' efforts to apply a different standard of review to "outcome determinative" gatekeeping evidentiary exclusions); *see also Weisgram v. Marley Co.*, 528 U.S. 440, 455 (2000) (affirming lower courts' authority to grant JMOL to defendants upon exclusion of plaintiffs' unreliable expert evidence under *Daubert* and noting

that "[s]ince *Daubert* … parties relying on expert evidence have had notice of the exacting standards of reliability such evidence must meet").

*Daubert*'s "screening"—or "gatekeeping"—obligation thus requires district courts to police whether experts' conclusions are "reliable," including, in the words of Rule 702, determining that the expert's opinion "reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702(d). *See, e.g.*, *Apple Inc. v. Wi-LAN Inc.*, 25 F.4th 960, 971-74 (Fed. Cir. 2022) (holding that expert's "methodological and factual errors in analyzing the comparable license agreements render his opinion untethered to the facts of this case" and reversing the district court's denial of Apple's new-trial motion for abuse of discretion); *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1315 (Fed. Cir. 2011) (holding "as a matter of Federal Circuit law that the 25 percent rule of thumb is a fundamentally flawed tool for determining a baseline royalty rate in a hypothetical negotiation" and "thus inadmissible under *Daubert* and the Federal Rules of Evidence, because it fails to tie a reasonable royalty base to the facts of the case at issue"). Indeed, this Court has recognized the particular importance of the district court's gatekeeping role in the context of expert testimony on patent damages, "given the great financial incentive parties have to exploit the inherent imprecision in patent valuation." *CSIRO v. Cisco Sys., Inc.*, 809 F.3d 1295, 1301 (Fed. Cir. 2015).

Because of the critical nature of expert testimony to patent-infringement cases, including (but scarcely limited to) damages-related issues, it is essential that district courts provide explicit findings on the record. "Where the admissibility of expert testimony is specifically questioned, Rule 702 and *Daubert* require that the district court make explicit findings, whether by written opinion or orally on the record, as to the challenged preconditions to admissibility." *Sardis v. Overhead Door Corp.*, 10 F.4th 268, 283 (4th Cir. 2021). *See also United States v. Holguin*, 51 F.4th 841, 853 (9th Cir. 2022) ("Reliability findings must be made 'explicit' on the record—an 'implicit' finding does not suffice."); *Carlson v. Bioremedi Therapeutic Sys., Inc.*, 822 F.3d 194, 201 (5th Cir. 2016) ("At a minimum, a district court must create a record of its *Daubert* inquiry and articulate its basis for admitting expert testimony.") (internal quotation marks omitted); *Smith v. Jenkins*, 732 F.3d 51, 65 (1st Cir. 2013) (reversing because "[t]here are no statements on the record indicating that the court conducted a *Daubert* analysis. … [A] court cannot rely on the jury to determine the relevance and reliability of the proffered testimony in the first instance; *Daubert* and its progeny place this responsibility in the hands of the district court"); *Gayton v. McCoy*, 593 F.3d 610, 616 (7th Cir. 2010) ("[T]he court must provide more than just conclusory statements of admissibility or inadmissibility to show that it adequately performed its gatekeeping function."). "Without the explicit findings required under *Daubert*, 'it

is impossible on appeal to determine whether the district court carefully and meticulously reviewed the proffered evidence or simply made an off-the-cuff decision to admit the expert testimony.'" *Sardis*, 10 F.4th at 283 (quoting *Smith*, 732 F.3d at 64). This Court should join its sister circuits in requiring district courts to make express findings when the reliability of expert testimony is challenged, both to ensure that *Daubert*'s gatekeeping obligation is honored, and also to ensure that meaningful, searching appellate review can follow.

Indeed, this Court may also wish to consider whether Federal Circuit law, rather than regional circuit law, should govern the substance of the reliability and gatekeeping role for expert testimony in patent cases. That is what this Court did in *Uniloc*, where it held "as a matter of Federal Circuit law" that the 25 percent "rule of thumb" was inadmissible under *Daubert* and the Federal Rules of Evidence. 632 F.3d at 1315. Such a holding would fit comfortably with this Court's longstanding pronouncements that "a procedural issue that is not itself a substantive patent law issue is nonetheless governed by Federal Circuit law if the issue pertains to patent law, if it bears an essential relationship to matters committed to our exclusive control by statute, or if it clearly implicates the jurisprudential responsibilities of this court in a field within its exclusive jurisdiction." *Midwest Indus., Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356, 1359 (Fed. Cir. 1999) (en banc in relevant part) (internal citations and quotation marks

omitted); *see also Flex–Foot, Inc. v. CRP, Inc.*, 238 F.3d 1362, 1365 (Fed. Cir. 2001) ("We answer this question on an issue by issue basis, and will apply the law of the regional circuit to which the district court appeal normally lies unless 'the issue pertains to or is unique to patent law,' in which case we will apply our own law to both substantive and procedural issues 'intimately involved in the substance of enforcement of the patent right.'") (quoting *Amana Refrigeration, Inc. v. Quadlux, Inc.*, 172 F.3d 852, 855-56 (Fed. Cir. 1999)).

Such a holding would also be consistent with allowing this Court to build up a body of Federal Circuit law that governs patent cases nationally on issues that are peculiar to the substance of federal patent law, such as infringement, invalidity, and, as presented here, patent damages. Where the expert testimony in question "pertains to" infringement under 35 U.S.C. § 271; invalidity under 35 U.S.C. §§ 101, 102, 103, or 112; damages under 35 U.S.C. § 284; or any other issue that is "intimately involved in the substance of enforcement of the patent right," then it would make good sense for Federal Circuit law, rather than regional circuit law, to supply the rule of decision. *See Flex–Foot*, 238 F.3d at 1365.

In sum, this Court should hold that *Daubert* and Rule 702 are significant threshold hurdles for expert evidence in patent cases; that district courts must, in the exercise of their gatekeeping obligations, make explicit findings on the record—at least orally, and preferably in written form—in admitting or excluding

such evidence; and that such determinations, at least in the context of patent cases, are matters of Federal Circuit law.

## II. DISTRICT COURTS SHOULD RIGOROUSLY ENFORCE THE APPORTIONMENT REQUIREMENT FOR PATENT DAMAGES

At the petition stage of this en banc rehearing, the Court received numerous *amicus curiae* briefs. Many if not most of these briefs were filed by companies in the space often generically called "high-tech"—including industries such as communications, computer hardware, and computer software. But the issues that this Court will decide in this en banc case involve a singular patent statute and rules of evidence which apply to all industries and all technologies, and the issues that are decided by this Court in this case will affect all parties that come before it in all kinds of patent cases involving all manner of industries and technologies.

*Amici* here, leaders in the medical-device industry, see similar issues in the litigation in which it has been involved. Indeed, the damages issues that have arisen in this case are a commonplace in the medical-device industry, and they reflect significant distortions between the realities of patent licensing and the artifice of expert testimony meant to construct a hypothetical "reasonable royalty" from these real-world license agreements. This occurs for two principal reasons: One is because many of their products, like those of these other *amici*, also consist of myriad features, only one of which may be the subject of a litigated patent. The other is because real-world licenses are negotiated in a way that rarely resembles

the bare reasonable royalty for a single patent that is typically sought under 35 U.S.C. § 284. These twin asymmetries between the reality of innovation and licensing on the one hand, and the artificiality of litigation on the other, invite abuses, particularly when skilled expert witnesses' testimony is not thoroughly screened at the threshold by the presiding judge.

Rigorous enforcement of the basic rule of apportionment, through *Daubert* and Rule 702, will go a long way toward correcting this asymmetry. Appellant's brief has correctly explained that "[t]he cardinal principle governing the damages inquiry in this case, as in all patent infringement cases, is that the damages award must be apportioned—limited—to the value of the patented invention." Google LLC's Non-Confidential En Banc Opening Brief at 20, *EcoFactor, Inc. v. Google LLC*, No. 23-1101 (Fed. Cir. Nov. 12, 2024), Doc. 84 (citing *Garretson*, 111 U.S. at 121; *Seymour v. McCormick*, 57 U.S. 480 (1853)). This apportionment principle is reflected in the language of the patent-damages statute, which emphasizes that damages are to be "adequate to compensate *for the infringement*," and, where the damages are measured as a "reasonable royalty," that royalty is "for the use made *of the invention* by the infringer." 35 U.S.C. § 284 (emphasis added).

### A. "Built-in Apportionment" Should Not Be An Exception To The *Garretson* Rule

Appellant's opening en banc brief addresses, in some detail, the concerns with the so-called doctrine of "built-in apportionment." *See* Google Opening Brief

at 41-58 (No. 23-1101). Under this theory, "when a sufficiently comparable license is used as the basis for determining the appropriate royalty, further apportionment may not necessarily be required." *Vectura Ltd. v. GlaxoSmithKline LLC*, 981 F.3d 1030, 1040 (Fed. Cir. 2020). This concept of "built-in apportionment" has been regularly abused by damages experts—like the one in the case before the en banc Court—using it as a basis for relying on licenses that bear little resemblance to a royalty for a single patent without any apportionment. *See, e.g.*, *Elbit Sys. Land & C4I Ltd. v. Hughes Network Sys., LLC*, 927 F.3d 1292, 1299-1303 (Fed. Cir. 2019) (affirming damages award based on expert's testimony that apportionment was "essentially embedded" and "implicitly considered" in the royalty rate of the relied-on settlement agreement covering different patents and products); *Bio-Rad Laby's, Inc. v. 10X Genomics, Inc.*, 967 F.3d 1353, 1372-77 (Fed. Cir. 2020) (affirming damages award based on expert's reliance without adjustment on a license involving more than 500 patents and a 15% royalty rate negotiated in contemplation of possible competition between the parties); *Vectura*, 981 F.3d at 1039-42 (affirming damages award for infringement of one patent claim where expert relied on a license to more than 400 patents, adopted the license's royalty base and 3% royalty rate, and then removed the license's royalty cap).

But the notion that apportionment can be somehow "built in" to a license cannot be squared with the Supreme Court's longstanding holding that "[t]he patentee … must in every case give evidence tending to separate or apportion … the patented feature and the unpatented features, and such evidence must be reliable and tangible, and not conjectural or speculative." *Garretson*, 111 U.S. at 121. The entire-market-value rule, under which "the entire value of the whole machine, as a marketable article, is properly and legally attributable to the patented feature," *id.*, is *Garretson*'s only recognized exception to its "must in every case" rule. For this reason, and the reasons outlined in William F. Lee & Mark A. Lemley, *The Broken Balance: How "Built-In Apportionment" and the Failure to Apply* Daubert *Have Distorted Patent Infringement Damages*, 37 Harv. J. L. & Tech. 255 (2024), this Court "should end the 'built-in apportionment' exception to the apportionment requirement." *Id.* at 323.

Requiring experts to give evidence of apportionment, and not allowing reliance on claims of "built-in apportionment" without the presentation of actual evidence of apportionment, would not only honor the Supreme Court's decision in *Garretson* and the language of the damages statute; it would also be consistent with the Supreme Court's and this Court's consistent rejection of "categorical rule[s]" and "rules of thumb" in cases like *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 393-94 (2006) (rejecting "categorical rule" of presumed irreparable harm

in permanent-injunction motions following infringement verdicts) and *Uniloc*, 632 F.3d at 1312-18 (rejecting "the 25 percent rule of thumb" as "a fundamentally flawed tool for determining a baseline royalty rate in a hypothetical negotiation").

### B. Royalties For Individual Inventions Based On Broad Portfolio License Agreements Require Rigorous Scrutiny

Another problem arising from the asymmetry between the realities of licensing and the demands of litigation frequently occurs because the allegedly comparable patent license typically involves a vastly different set of rights than the singular, non-exclusive license to a single patent that is the usual premise of the reasonable-royalty negotiation. *See generally* Stuart Graham, Peter Menell, Carl Shapiro, & Tim Simcoe, *Final Report of the Berkeley Center for Law & Technology Patent Damages Workshop*, 25 Tex. Intell. Prop. L. J. 115, 128 (2017) ("The context of such litigated disputes typically is far from that of the idealized licensing scenario in which parties negotiate an *ex ante* license for a comparable patent.").

That is the case before the en banc Court: The allegedly comparable licenses are licenses to a portfolio of patents (as well as other rights, including the settlement of pending litigation), not just the patent in suit in which the expert offered superficial reasons for finding the license comparable. The district court wrongly allowed that opinion to go to the jury on the theory that the expert's reasons go to the "weight" and not the "admissibility" of the expert's opinion. *See*

104 F.4th at 254-55 (now-vacated panel opinion; holding that "[t]he degree of comparability of license agreements is a 'factual issue[] best addressed by cross examination and not by exclusion.'") (quoting *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1333 (Fed. Cir. 2012)).

The medical-device industry sees this fact pattern recur all the time. A patent license may, and typically does, involve a portfolio of tens or even hundreds of patents. The patents being licensed may claim both devices and methods of operation. The scope of the rights being licensed may be exclusive, or they may be nonexclusive, and may also include sublicensing rights. They may be global, or territorial, or limited to a field of use, rather than national in nature. They may be time-limited, rather than for the life of the patent. There may be supply agreements included as a term of the overall deal. And the bargain may not be for any particular intellectual-property right, but for a general freedom to operate, such that one party grants to the other (or both parties mutually grant) a covenant not to sue the other.

The asymmetry with patent-infringement litigation is clear. In infringement litigation, the goal of the reasonable-royalty analysis under 35 U.S.C. § 284 is to arrive at the value for the use of the invention, which may be a single claim drawn to a particular device. Among other things, no rights (other than a right to money to the verdict-winner, and an implied license to the party paying the infringement

judgment, *see Fuji Photo Film Co., Ltd. v. Int'l Trade Comm'n*, 474 F.3d 1281, 1294-95 (Fed. Cir. 2007)) are granted, and the verdict-loser receives no exclusive rights to the patent as a result of its payment. But too often, such wide-ranging licenses are taken as the starting point by expert witnesses for valuing the single invention at issue, with a "reasonable royalty" that bears no resemblance to the reality of the license or licenses that served as the starting points. Here, for example, the expert started with the allegedly comparable licenses and alleged that certain differences between the licenses and the facts of the litigated case created an unquantified "upward" or "downward" "pressure" toward the expert's ultimate conclusion. *See* 104 F.4th at 255-56 (three references to "upward pressure"); *id.* at 260-61 (Prost, J., dissenting-in-part) (four references to "downward pressure").

Some of this Court's panel opinions are emphatic in holding that such "a loose or vague comparability … does not suffice." *LaserDynamics*, 694 F.3d at 79; *see also ADASA Inc. v. Avery Dennison Corp.*, 55 F.4th 900, 915 (Fed. Cir. 2022); *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1325-32 (Fed. Cir. 2009). The Court should embrace these decisions, and the rigorous review of the expert testimony that these decisions have insisted upon, in its en banc opinion.

However, the approach taken by the panel majority in this case, and by certain prior panels of this Court, is too indulgent: *Daubert* and Rule 702 must stand as meaningful filters against allowing this kind of testimony reaching the

jury as a basis for a damages verdict. The notion that such challenges to reliability simply go to "weight" and not "admissibility," *e.g.*, *Rembrandt Wireless Techs., LP v. Samsung Elecs. Co.*, 853 F.3d 1370, 1381 (Fed. Cir. 2017); *Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1299 (Fed. Cir. 2015); *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1314-15 (Fed. Cir. 2014), *overruled on other grounds by Williamson v. Citrix Online, LLC*, 792 F.3d 1339 (Fed. Cir. 2015); *ActiveVideo*, 694 F.3d at 1333, has now been clearly rejected by the 2023 Advisory Committee Note to Rule 702 as "an incorrect application of Rules 702 and 104(a)." Fed. R. Evid. 702 advisory committee's note to 2023 amendment. Yet several of these "weight, not admissibility" decisions shaped the now-vacated panel majority decision here. *See* 104 F.4th at 251-55. Consistent with the Advisory Committee Note, the Court should, in no uncertain terms, reject "weight, not admissibility"—or, in the now-vacated panel decision's words, "best addressed by cross-examination and not by exclusion"—as a basis for allowing challenged expert testimony into evidence.

* * * *

This case now presents this Court with the opportunity to clarify, and to stress to the district courts under its review, that rigor and careful attention to the facts and analytical methodology utilized by damages experts, will be expected, such that experts' conclusions as to the value contributed by a particular patent

must be searchingly scrutinized so that juries are presented with reliable estimates of value grounded in the data and not fanciful damages claims untethered to reality. "A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered," *Gen. Elec.*, 522 U.S. at 146, and so a judge must exclude expert evidence that fails to meet a minimum threshold of reasonableness.

So long as district judges adequately carry out their gatekeeping duty, require the party propounding the expert to satisfy a meaningful burden of demonstrating the reliability of that testimony, *see* Fed. R. Evid. 104(a), and provide reasoned decisions grounded in rigorous analysis of the facts utilized by the experts, this Court can then review those decisions using a coherent national standard, under an abuse-of-discretion standard of review, thereby contributing to making the national patent litigation system clearer and in better service of the innovation economy. This will be consistent with the congressional charge that created this Court: "It was just for the sake of such desirable uniformity that Congress created the Court of Appeals for the Federal Circuit as an exclusive appellate court for patent cases, H.R. Rep. No. 97-312, pp. 20-23 (1981), observing that increased uniformity would 'strengthen the United States patent system in such a way as to foster technological growth and industrial innovation.' *Id.*, at 20." *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 390 (1996).

## **CONCLUSION**

For these reasons, the Court, en banc, should hold that district courts must carry out their gatekeeping duties under Rule 702 and *Daubert* with rigor, and with reasoned, written opinions, and should require, consistent with Rules 104(a) and 702, that the proponent of expert testimony establish the reliability of that testimony by a preponderance of the evidence.

The Court, en banc, should further hold that so-called "built-in apportionment" is not an exception to the apportionment requirement, but that patentees and their experts must offer reliable, non-speculative evidence of apportionment in order to cross the threshold of admissibility, and that patentees and their experts may not rely on mere loose or vague comparability between allegedly comparable licenses. And in all events, the reliability of an expert's evidence of apportionment is a threshold question for the trial judge, carrying out *Daubert*'s and Rule 702's gatekeeping obligation, and cannot be dismissed as going to the "weight, not admissibility," of the testimony.

Dated: November 26, 2024

Respectfully submitted,

*<u>/s/ Gregory A. Castanias</u>*
Gregory A. Castanias
Tracy A. Stitt
JONES DAY
51 Louisiana Avenue, N.W.
Washington, DC 20001
(202) 879-3939
gcastanias@jonesday.com

Anneli E. Kawaoka
JONES DAY
110 North Wacker Drive
Suite 4800
Chicago, IL 60606
(312) 782-3939
akawaoka@jonesday.com

*Counsel for* Amici Curiae *Medtronic plc and Advanced Medical Technology Association*

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), the undersigned hereby certifies that this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) and Circuit Rule 32(b).

1. Exclusive of the exempted portions of the brief, as provided in Federal Rule of Appellate Procedure 32(a)(7)(B), the brief contains 4,721 words.

2. The brief has been prepared in proportionally spaced typeface using Microsoft Word 2016 in 14 point Times New Roman font. As permitted by Federal Rule of Appellate Procedure 32(g), the undersigned has relied upon the word count feature of this word processing system in preparing this certificate.

Dated: November 26, 2024

*/s/ Gregory A. Castanias*
Gregory A. Castanias

**CERTIFICATE OF SERVICE**

I hereby certify that on November 26, 2024, I caused the foregoing BRIEF FOR *AMICI CURIAE* MEDTRONIC PLC AND ADVANCED MEDICAL TECHNOLOGY ASSOCIATION to be electronically filed via CM/ECF with the U.S. Court of Appeals for the Federal Circuit, which electronically served the brief on all counsel of record.

*/s/ Gregory A. Castanias*
Gregory A. Castanias