**UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT**

**ECOFACTOR, INC.,**
*Plaintiff-Appellee,*

**v.**

**GOOGLE LLC,**
*Defendant-Appellant.*

Appeal from the United States District Court for
the Western District of Texas,
Case No. 6:20-cv-00075
Judge Alan D. Albright

**BRIEF OF *AMICI CURIAE* 14 PATENT AND EVIDENCE LAW
PROFESSORS IN SUPPORT OF APPELLANT
ON REHEARING EN BANC**

Mark A. Lemley
William H. Neukom Professor
   of Law
STANFORD LAW SCHOOL
559 Nathan Abbott Way
(650) 723-4605
mlemley@law.stanford.edu

Phillip R. Malone
Nina K. Srejovic
JUELSGAARD INTELLECTUAL PROPERTY
   AND INNOVATION CLINIC
MILLS LEGAL CLINIC AT
   STANFORD LAW SCHOOL
559 Nathan Abbott Way
Stanford, CA 94305
(650) 725-6369
pmalone@stanford.edu

*Counsel for Amici Curiae*

# <u>CERTIFICATE OF INTEREST</u>

Pursuant to Federal Circuit Rules 29(a) and 47.4, counsel for *amici curiae* patent and evidence law professors certifies that:

1.     The full name of the *amici curiae* I represent is: *amici curiae* patent and evidence law professors (see Attachment A).

2.     The name of the real party in interest (if the party named in the caption is not the real party in interest) I represent is: N/A.

3.     All parent corporations and any publicly held companies that own 10 percent or more of the stock of the *amici curiae* I represent are: None.

4.     The names of all law firms and the partners or associates that appeared before the originating court for the *amici curiae* I represent or are expected to appear in this Court (and who have not or will not enter an appearance in this case) are: None.

5.     The title and number of any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this Court's decision in the pending appeal:

> *In re Ex Parte Reexamination of U.S. Patent No. 8,738,327, 90/014,915*
> (U.S. PTO Dec. 3, 2021)

*Google, LLC v. EcoFactor, Inc.*, 3:21-cv-01468
    (N.D. Cal. Mar. 1, 2021)

*Google, LLC v. EcoFactor, Inc.*, 4:21-cv-03220
    (N.D. Cal. April 30, 2021)

*EcoFactor, Inc. v. Google, LLC*, 5:22-cv-07661
    (N.D. Cal. Dec. 5, 2022)

*Google, LLC v. EcoFactor, Inc.*, 5:22-cv-00162
    (N.D. Cal. Jan. 10, 2022)

*EcoFactor, Inc. v. Google, LLC*, 4:24-cv-00175
    (N.D. Cal. Jan. 9, 2024)

6. All information required by Federal Rules of Appellate Procedure 26.1(b) and 26.1(c) that identifies organizational victims in criminal cases and debtors and trustees in bankruptcy cases is: None.

November 26, 2024          /s/ Phillip R. Malone

                          Phillip R. Malone
                          Nina K. Srejovic
                          JUELSGAARD INTELLECTUAL PROPERTY
                             AND INNOVATION CLINIC
                          MILLS LEGAL CLINIC AT STANFORD
                             LAW SCHOOL
                          559 Nathan Abbott Way
                          Stanford, CA 94305
                          (650) 725-6369
                          pmalone@stanford.edu

                          *Counsel for Amici Curiae*

# ATTACHMENT A TO CERTIFICATE OF INTEREST

*Amici curiae* patent and evidence law professors are listed below. Affiliation is provided for identification purposes only. All signatories are participating in their individual capacity, not on behalf of their institutions.

**Professor Jeremy W. Bock**
Tulane University Law School

**Professor Michael Carrier**
Rutgers Law School

**Professor Bernard Chao**
University of Denver Sturm College of Law

**Jorge L. Contreras**
University of Utah S.J. Quinney College of Law

**Professor Thomas F. Cotter**
University of Minnesota Law School

**Professor Charles Duan**
American University Washington College of Law

**Professor Paul R. Gugliuzza**
Temple University Beasley School of Law

**Professor Amy Landers**
Drexel University Kline School of Law

**Professor Mark A. Lemley**
Stanford Law School

**Professor Brian J. Love**
Santa Clara University School of Law

**Professor Jane Campbell Moriarty**
Duquesne University Thomas R. Kline School of Law

**Professor Jason Reinecke**
Marquette University Law School

**Professor Joseph Sanders**
University of Houston Law Center

**Professor Joshua D. Sarnoff**
DePaul University College of Law

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST ................................................................. i

ATTACHMENT A TO CERTIFICATE OF INTEREST ...................................... iii

TABLE OF CONTENTS ......................................................................... v

TABLE OF AUTHORITIES ..................................................................... vi

INTEREST OF *AMICI CURIAE* ............................................................. 1

SUMMARY OF ARGUMENT ................................................................. 2

ARGUMENT ........................................................................................ 3

    I.    Balance in the patent system requires courts to properly apportion damages. ........................................................................................ 3

    II.   Proper apportionment depends on courts enforcing Federal Rule of Evidence 702 and *Daubert*'s gatekeeping function. ................................ 7

        A.    Rule 702 and *Daubert* require judges to ensure that only reliable damages evidence is admitted. ................................................ 8

        B.    The district court and the panel erred in admitting unreliable expert testimony about apportionment and flawed license comparisons. ..... 12

        C.    The admission of EcoFactor's expert's testimony is part of a broader trend that circumvents apportionment by allowing evidence based on unreliable methodologies. ................................................... 19

    III.  The court should reverse the panel's decision and reaffirm the critical gatekeeper role courts must play in screening damages testimony. ........ 22

CONCLUSION .................................................................................... 25

APPENDIX A

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE WITH  TYPE-VOLUME LIMITATIONS

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adasa Inc. v. Avery Dennison Corp.*,
    55 F.4th 900, 915 (Fed. Cir. 2022) ..................................................... 12

*Allison v. McGhan Med. Corp.*,
    184 F.3d 1300 (11th Cir. 1999) ........................................................... 9

*ATA Airlines, Inc. v. Federal Express Corp.*,
    665 F.3d 882 (7th Cir. 2011) .............................................................. 22

*Avocet Schindler v. Dravo Basic Materials Co., Inc.*,
    790 F. App'x 621 (5th Cir. 2019) ...................................................... 22

*Ball Aerosol & Specialty Container, Inc. v. Ltd. Brands, Inc.*,
    555 F.3d 984 (Fed. Cir. 2009).............................................................. 24

*Barefoot v. Estelle*,
    463 U.S. 880 (1983).............................................................................. 8

*Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*,
    489 U.S. 141 (1989).............................................................................. 4

*Cyntec Co., Ltd. v. Chilisin Elecs. Corp.*,
    84 F.4th 979 (Fed. Cir. 2023) ........................................................... 19

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
    509 U.S. 579 (1993).................................................................*passim*

*Dow Chem. Co. v. Mee Indus., Inc.*,
    341 F.3d 1370 (Fed. Cir. 2003)................................................... 15, 16

*Dowagiac Mfg. Co. v. Minnesota Moline Plow Co.*,
    235 U.S. 641 (1915).............................................................................. 4

*EcoFactor, Inc. v. Google LLC*,
   104 F.4th 243 (Fed. Cir.2024) ...................................................................*passim*

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*,
   535 U.S. 722 (2002) ............................................................................ 5

*Finjan, Inc. v. Blue Coat Sys., Inc.*,
   879 F.3d 1299 (Fed. Cir. 2018) ..................................................... 5, 22

*Frye v. United States*,
   293 F. 1013 (D.C. Cir. 1923) ........................................................... 10

*Garretson v. Clark*,
   111 U.S. 120 (1884) ........................................................................ 3, 7

*i4i Ltd. P'ship v. Microsoft Corp.*,
   598 F.3d 831 (Fed. Cir. 2010), *aff'd*, 564 U.S. 91 (2011) ........................... 11, 18

*In re Wireless Telephone Services Antitrust Litigation*,
   385 F. Supp. 2d 403 (S.D.N.Y. 2005)................................................... 22

*Info-Hold, Inc. v. Muzak LLC*,
   783 F.3d 1365 (Fed. Cir. 2015)........................................................... 15

*Kendall v. Winsor*,
   62 U.S. 322 (1858) ............................................................................. 4

*KSR Int'l Co. v. Teleflex Inc.*,
   550 U.S. 398 (2007)........................................................................... 24

*Kumho Tire Co. v. Carmichael*,
   526 U.S. 137 (1999) ........................................................................ 7, 8

*LaserDynamics, Inc. v. Quanta Comput., Inc.*,
   694 F.3d 51 (Fed. Cir. 2012)......................................................... 12, 20

*Lucent Techs., Inc. v. Gateway, Inc.*,
   580 F.3d 1301 (Fed. Cir. 2009)........................................................... 12

*MicroStrategy Inc. v. Bus. Objects, S.A.*,
429 F.3d 1344 (Fed. Cir. 2005) ......................................................... 19

*MLC Intellectual Property, LLC v. Micron Technology, Inc.*,
10 F.4th 1358 (Fed. Cir. 2021) .......................................................... 19

*Omega Pats., LLC v. CalAmp Corp.*,
13 F.4th 1361 (Fed. Cir. 2021) .......................................................... 13

*Seymour v. McCormick*,
57 U.S. 480 (1853) .............................................................................. 5

*Tagatz v. Marquette Univ.*,
861 F.2d 1040 (7th Cir. 1988) ........................................................... 22

*Uniloc USA, Inc. v. Microsoft Corp.*,
632 F.3d 1292 (Fed. Cir. 2011) ......................................................... 19

*Vectura Ltd. v. GlaxoSmithKline LLC*,
981 F.3d 1030 (Fed. Cir. 2020) ......................................................... 13

*VirnetX, Inc. v. Cisco Sys., Inc.*,
767 F.3d 1308 (Fed. Cir. 2014) .................................................... 13, 22

*VLSI Tech. LLC v. Intel Corp.*,
87 F.4th 1332 (Fed. Cir. 2023) .......................................................... 20

**Other Authorities**

Amy L. Landers, *Patent Claim Apportionment, Patentee Injury, and Sequential Invention*, 19 Geo. Mason L. Rev. 471, 506–07 (2012) [https://perma.cc/D7CY-WJUH] ................................................................................................. 4

Arthur J. Gajarsa et al., *Breaking the* Georgia-Pacific *Habit: A Practical Proposal to Bring Simplicity and Structure to Reasonable Royalty Damages Determinations*, 26 Tex. Intell. Prop. L.J. 51, 52 (2018) [https://perma.cc/2A53-6UTC] ................................................................................................. 12

Bernard Chao, *Lost Profits in a Multicomponent World*, 59 B.C. L. Rev. 1321, 1342 (2018) [https://perma.cc/X2D8-TQ67] ............................................ 7

Christopher S. Storm, *Measuring the Inventor's Contribution*, 21 U.N.H. L. Rev. 167 (2022) [https://perma.cc/AL38-P29M] .................................................. 22, 25

Fed. R. Evid. 702 ....................................................................................*passim*

Gideon Parchomovsky & R. Polk Wagner, *Patent Portfolios*, 154 U. Pa. L. Rev. 1 (2005) [https://perma.cc/EWR7-E6KR] ............................................................ 19

Layne S. Keele, *Patent Infringement Damages After* ResQNet*: The Dangers of Litigation Licenses as Evidence of a Reasonable Royalty*, 20 Tex. Intell. Prop. L.J. 181 (2012) [https://perma.cc/K35A-7BDA] .......................................... 21, 22

Learned Hand, *Historical and Practical Considerations Regarding Expert Testimony*, 15 Harv. L. Rev. 40 (1901) [https://perma.cc/JP9F-WJBY] ........ 9, 10

Steve Lohr, *Apple-Samsung Patent Shifts to Trial*, N.Y. Times (July 28, 2012) [https://perma.cc/2GXB-JMD3] ............................................................................ 8

Thomas F. Cotter et al., *Reasonable Royalties*, *in* Patent Remedies and Complex Products: Toward a Global Consensus 6 (C. Bradford Biddle et al., eds., Cambridge Univ. Press 2019) [https://perma.cc/72T7-3LBT] ............................. 5

*USPTO Advanced Patent Public Search*, https://ppubs.uspto.gov/pubwebapp/ (last visited Nov. 19, 2024)........................................................................................ 17

William F. Lee & A. Douglas Melamed, *Breaking the Vicious Cycle of Patent Damages*, 101 Cornell L. Rev. 385, 391 (2016) [https://perma.cc/9LHE-KGFS] ................................................................................................................................ 6, 22

William F. Lee & Mark A. Lemley, *The Broken Balance: How Built-In Apportionment And The Failure To Apply Daubert Have Distorted Patent Infringement Damages*, 37 Harv. J. L. & Tech. 255 (2024) [https://perma.cc/4RUC-DPBC] .................................................................*passim*

**Statute**
35 U.S.C. § 284....................................................................................................... 2

# INTEREST OF *AMICI CURIAE*

*Amici curiae* are professors of patent and evidence law at universities throughout the United States.[1] *Amici* include professors who regularly write and teach about patents, patent damages, and evidence. Their scholarship addresses issues implicated by this case. *See, e.g.*, William F. Lee & Mark A. Lemley, *The Broken Balance: How "Built-In Apportionment" And the Failure to Apply Daubert Have Distorted Patent Infringement Damages*, 37 Harv. J. L. & Tech. 255 (2024) [https://perma.cc/4RUC-DPBC].[2] *Amici* have no personal or financial interest in the outcome of this case. They share a professional interest in ensuring that the law of patent damages and expert testimony regarding damages continues to serve the public interest and preserve the critical balance embodied in the patent system. In particular, *amici* write from their broader perspectives on the importance of this Court not only correcting the panel's misapplication of Federal Rule of Evidence 702 and *Daubert* but also providing clear guidance to district courts and panels of

---

[1] *Amici* submit this brief pursuant to the Court's en banc order. Neither the parties nor their counsel have authored this brief in whole or in part, and neither they nor any other person or entity other than *amici curiae* and their counsel contributed money that was intended to fund preparing or submitting this brief.

[2] A list of *amici curiae* law professors and their institutional affiliations, for identification purposes only, is provided in Appendix A.

this Court in future cases that Rule 702's gatekeeping requirements must be met when considering expert damages testimony.[3]

## SUMMARY OF ARGUMENT

Patent damages are supposed to be "adequate to compensate for the infringement." 35 U.S.C. § 284. But in recent years, patentees in many cases have been permitted to seek and recover unreasonable damages that stretch far beyond the value of the technology they invented. This has had serious negative consequences. Excessive patent damages discourage innovation, increase the risk and cost of production, and, in turn, increase the cost of products to consumers.

Patent law has a solution to this broken balance: apportionment. This principle, which dates to the nineteenth century, holds that damages must be limited to the value of just the patented invention and cannot capture the value of other features or technology. When applied as intended, apportionment ensures the patent balance. Patentees recover the value of what they invented but no more. But in recent years, many courts have been backsliding from the principle of apportionment. These courts have failed to properly apply Federal Rule of Evidence 702 and *Daubert* to exclude unreliable apportionment testimony. As a result, patentees can

---

[3] *Amici* wish to thank Stanford Law School Juelsgaard Intellectual Property and Innovation Clinic Certified Law Students Victoria Gardner and Gregory D. Schwartz for their substantial assistance in drafting this brief.

use allegedly comparable licenses with apportionment already "built-in" to skip the apportionment step entirely. They can analogize to licenses that contain more than the asserted patents and not apportion further. Or they can inflate the value of a feature covered by the license, giving that feature a greater share of the infringing product's value.

This case provides this Court a critical opportunity to correct the panel's errors and to ensure that the appropriate patent balance is not disrupted by improper application of Rule 702 to apportionment or comparable-license testimony. District courts and panels of this Court must do the hard work at the *Daubert* stage of ensuring that apportionment is effective and reliable. Inventors, businesses, and the balance undergirding the patent system depend on it.

## ARGUMENT

### I.  Balance in the patent system requires courts to properly apportion damages.

The Supreme Court has long mandated that, when the entire value of the infringing product is not "properly and legally attributable to the patented feature," "the patentee . . . must in every case give evidence tending to separate or apportion the defendant's profits and the patentee's damages between the patented feature and the unpatented features." *Garretson v. Clark*, 111 U.S. 120, 121 (1884) (citation omitted) (internal quotation marks omitted). This guidance from the Court reflects a fundamental truth in the patent system: proper apportionment is vital for maintaining

balance. "Permitting patentees to recover for more than is invented imposes higher costs on those engaged in independent [and subsequent] research and innovation." Amy L. Landers, *Patent Claim Apportionment, Patentee Injury, and Sequential Invention*, 19 Geo. Mason L. Rev. 471, 506 (2012) [https://perma.cc/D7CY-WJUH]. Without proper apportionment, patentees can recover damages for something they did not invent, which subverts the patent system's goal of fostering innovation.

The patent system "embodies a carefully crafted bargain for encouraging the creation and disclosure of new, useful, and nonobvious advances in technology and design in return for the exclusive right to practice the invention for a period of years." *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 150–51 (1989). This bargain's "primary object" is "the benefit to the public or community at large." *Kendall v. Winsor*, 62 U.S. 322, 328 (1858). To ensure that the exclusive right granted to a patentee is commensurate with that benefit, "[i]n so far as the profits from the infringing sales [are] attributable to the patented improvements they belong[] to the plaintiff, and in so far as they [are] due to other parts or features they belong[] to the defendants." *Dowagiac Mfg. Co. v. Minnesota Moline Plow Co.*, 235 U.S. 641, 646 (1915). The value attributable to the infringing features is not the value attributable to the entire product but rather the "profit or cost saving [one] derives from the use of the patented technology over the next best available noninfringing alternative." Thomas F. Cotter et al., *Reasonable Royalties*, *in* Patent Remedies and

Complex Products: Toward a Global Consensus 6, 19 (C. Bradford Biddle et al., eds., Cambridge Univ. Press 2019) [https://perma.cc/72T7-3LBT]. Apportionment allows a factfinder to determine the true value of infringing features by separating it from the value of the product itself.

The need for apportionment is well-established by existing law. The Supreme Court has stressed the crucial role of apportionment, cautioning that it would be a "very grave error to instruct a jury that as to the measure of damages the same rule is to govern, whether the patent covers an entire machine or an improvement on a machine." *Seymour v. McCormick*, 57 U.S. 480, 491 (1853) (internal quotation marks omitted). The Federal Circuit has reaffirmed that "[w]hen the accused technology does not make up the whole of the accused product, apportionment is required." *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1309 (Fed. Cir. 2018).

The balance of the patent system requires proper apportionment to ensure that patentees can recover damages for their inventions—and only their inventions. On one side of the scale, inventors must be able to recover for infringing use of their inventions since they "rely on the promise of the law to bring the invention forth." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 731 (2002) (citation omitted). At the same time, the patent system cannot allow someone to recover damages for something they did not invent. Doing so would undermine "the ultimate goal of fostering innovation." William F. Lee & A. Douglas Melamed,

*Breaking the Vicious Cycle of Patent Damages*, 101 Cornell L. Rev. 385, 391 (2016) [https://perma.cc/9LHE-KGFS].

In particular, permitting a patentee to recover damages for something they did not invent "raises costs and disincentivizes product companies from innovating" and could "induce inventors to obtain patents for the wrong reasons." William F. Lee & Mark A. Lemley, *The Broken Balance: How "Built-In Apportionment" And the Failure to Apply Daubert Have Distorted Patent Infringement Damages*, 37 Harv. J. L. & Tech. 255, 270–71 (2024) [https://perma.cc/4RUC-DPBC]. "[I]magine giving the inventor of a fundamental television technology the right to capture all of the profits from any kind of television, even those that incorporate later-developed improvements . . . . Other inventors would have no incentive to develop better televisions because the original patentee would get all of the profits." Bernard Chao, *Lost Profits in a Multicomponent World*, 59 B.C. L. Rev. 1321, 1342 (2018) [https://perma.cc/X2D8-TQ67].

Apportionment has become even more important in recent years because of the increased complexity of inventions and patents. Modern technology and life sciences products "often consist of hundreds or thousands of features and components." Lee & Lemley, *supra*, at 259–60; *see also* Steve Lohr, *Apple-Samsung Patent Shifts to Trial*, N.Y. Times (July 28, 2012) [https://perma.cc/2GXB-JMD3]. When a large number of patented features are included in a product, improper

apportionment can dramatically inflate damages awards. The complexity of modern devices also makes it easier for patentees to capture, intentionally or inadvertently, the value of features they did not invent. *See* Lee & Lemley, *supra*, at 259–60.

## II. Proper apportionment depends on courts enforcing Federal Rule of Evidence 702 and *Daubert*'s gatekeeping function.

Evidence offered by the patentee to "apportion the defendant's profits and the patentee's damages between the patented feature and the unpatented features [] must be reliable and tangible, and not conjectural or speculative." *Garretson v. Clark*, 111 U.S. 120, 121 (1884) (citation omitted) (internal quotation marks omitted). When this evidence comes in the form of expert testimony, "Federal Rule of Evidence 702 imposes a special obligation upon a trial judge to 'ensure that any and all scientific testimony . . . is not only relevant, but reliable.'" *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999) (quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993)).

This judicial gatekeeping requirement is critical to ensure jurors are not asked to assess the reliability of expert testimony—especially complicated and technical damages testimony. Indeed, "[i]t is just because [jurors] are incompetent for such a task that the expert is necessary at all." Learned Hand, *Historical and Practical Considerations Regarding Expert Testimony*, 15 Harv. L. Rev. 40, 54 (1901) (elaborating on conclusions which would be quoted in *Kumho*, 526 U.S. at 148–49) [https://perma.cc/JP9F-WJBY]. The federal admissibility standard for expert

testimony set by the Supreme Court in *Daubert* prevents unreliable testimony from being presented to jurors. *Daubert*, 509 U.S. at 589.

This case presents this Court with the opportunity to reaffirm the importance of applying properly rigorous Rule 702 and *Daubert* scrutiny to patent damages testimony. To ensure proper apportionment and damages calculations, this Court should reverse the panel's decision affirming the admission of EcoFactor's damages expert and stress the critical requirement that district courts and panels of this Court properly perform their gatekeeping role.

## A. Rule 702 and *Daubert* require judges to ensure that only reliable damages evidence is admitted.

In *Daubert v. Merrell Dow Pharms., Inc.*, the Supreme Court explained that Rule 702 charges courts with the responsibility to prevent specious expert testimony from reaching jurors by gatekeeping evidence that fails to be both relevant and reliable. 509 U.S. at 589. Since "the expert's testimony often will rest 'upon an experience confessedly foreign in kind to [the jury's] own,'" *Kumho*, 526 U.S. at 149 (quoting Hand, *supra*, at 54), "[t]he trial judge's effort to assure that the specialized testimony is reliable and relevant can help the jury evaluate that foreign experience." *Id*. Even before writing the *Daubert* opinion, Justice Blackman questioned "how juries are to separate valid from invalid expert opinions when the 'experts' themselves are so obviously unable to do so." *Barefoot v. Estelle*, 463 U.S. 880, 929 (1983) (Blackmun, J., dissenting).

Judicial gatekeeping under Rule 702 remains critical. In December 2023, Rule 702 was amended "to emphasize that each expert opinion must stay within the bounds of what can be concluded from a reliable application of the expert's basis and methodology," Fed. R. Evid. 702 advisory committee's note to 2023 amendment, by clarifying the requirement that an "expert's opinion reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702(d).  The amendment also added the explicit requirement that a party seeking to introduce expert testimony demonstrate to the court that it is more likely than not that the Rule's requirements have been satisfied. Fed. R. Evid. 702. And it emphasized that "[j]udicial gatekeeping is essential because [] jurors may be unable, due to lack of specialized knowledge, to evaluate meaningfully the reliability of scientific and other methods underlying expert opinion . . . [and] determine whether the conclusions of an expert go beyond what the expert's basis and methodology may reliably support." Fed. R. Evid. 702 advisory committee's note to 2023 amendment.

While some judges may hesitate to assume this gatekeeping role, the "Supreme Court has obviously deemed [judges as gatekeepers] less objectionable than dumping a barrage of questionable scientific evidence on a jury, who would likely be even less equipped than the judge to make reliability and relevance

determinations and more likely than the judge to be awestruck by the expert's mystique." *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1310 (11th Cir. 1999).

Judicial gatekeeping is particularly important in the context of expert testimony offered to support a reasonable royalty for patent damages. In such cases, even when expert testimony is properly limited to reliable and relevant evidence, jurors are tasked with weighing up to fifteen different factors. *See Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970). Without rigorous *Daubert* scrutiny, the open-ended *Georgia-Pacific* test can "lead to damages awards that systematically overcompensate patent holders." Arthur J. Gajarsa et al., *Breaking the* Georgia-Pacific *Habit: A Practical Proposal to Bring Simplicity and Structure to Reasonable Royalty Damages Determinations*, 26 Tex. Intell. Prop. L.J. 51, 52 (2018) [https://perma.cc/2A53-6UTC].

Prior to *Daubert*, the federal courts often applied the *Frye* standard, which only evaluated whether a novel scientific theory was "sufficiently established to have gained general acceptance in the particular field in which it belongs." *Frye v. United States*, 293 F. 1013, 1014 (D.C. Cir. 1923). But the *Daubert* trilogy and the subsequent amendments to Rule 702 now require courts to take a more active role in evaluating the reliability and relevance of evidence. *Daubert*, 509 U.S. at 593–94; *General Electric Co. v Joiner*, 522 U.S. 136, 142 (1997); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999). The 2023 Amendment to Rule 702 further

highlights the role of the court by emphasizing that "[j]udicial gatekeeping is essential" because "jurors may also lack the specialized knowledge to determine whether conclusions of an expert go beyond what the expert's basis and methodology may reliably support." Fed. R. Evid. 702 advisory committee's note to 2023 amendment.

In accordance with the Supreme Court's mandate, judges must embrace their gatekeeping responsibility under Rule 702 to meaningfully evaluate whether methodological flaws in damages calculations are issues that go to the weight rather than the admissibility of expert testimony. Although the Federal Circuit has sometimes found "disputes about the degree of relevance or accuracy" to go to "testimony's weight, but not its admissibility," it also has stressed that doing so is only appropriate when testimony has surpassed the "minimum threshold" at which "the methodology is sound, and the evidence relied upon sufficiently related to the case at hand." *i4i Ltd. P'ship v. Microsoft Corp.,* 598 F.3d 831, 852 (Fed. Cir. 2010), *aff'd,* 564 U.S. 91 (2011). And indeed, the advisory committee's note to the 2023 amendment to Rule 702 makes clear that, while "many courts have held that the critical questions of the sufficiency of an expert's basis, and the application of the expert's methodology, are questions of weight and not admissibility," such conclusions "are an incorrect application of Rules 702 and 104(a)." Fed. R. Evid. 702.

While jurors ultimately determine the weight to give expert testimony, they should only be asked to do so for testimony that the court first finds by a preponderance of the evidence to be both reliable and relevant, and as such, admissible under Rule 702. "The refrain that 'this goes to weight, not admissibility' should not be used as a substitute for the *Daubert* analysis." Lee & Lemley, *supra*, at 327; *see also EcoFactor, Inc. v. Google LLC*, 104 F.4th 243, 262 (Fed. Cir. 2024) (Prost, J., dissenting) (citation omitted) ("But we must pay close attention to the reliability of the methodology underlying expert testimony to ensure that the jury can fulfill its proper role as the factfinder.").

## B. The district court and the panel erred in admitting unreliable expert testimony about apportionment and flawed license comparisons.

The district court erroneously admitted patent damages testimony based on a variety of unreliable methodologies and insufficient facts that mistakenly found other licenses comparable and undermined proper apportionment, violating the standard recognized by this Court and set by Rule 702 and the Supreme Court in its *Daubert* trilogy. This Court has stressed that "[w]hen relying on licenses to prove a reasonable royalty, alleging a loose or vague comparability between different technologies or licenses does not suffice." *LaserDynamics, Inc. v. Quanta Comput., Inc.*, 694 F.3d 51, 79 (Fed. Cir. 2012). Instead, the relied-upon licenses must be "sufficiently comparable to the hypothetical license at issue in suit." *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1325 (Fed. Cir. 2009) (citation omitted).

Comparable licenses must be truly both technologically and economically comparable. *See Adasa Inc. v. Avery Dennison Corp.*, 55 F.4th 900, 915 (Fed. Cir. 2022). In all instances, Rule 702 requires that "the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702(d).

Importantly, comparable licenses must be apportioned to just the value of the patents that are held to be infringed. *Omega Pats., LLC v. CalAmp Corp.*, 13 F.4th 1361, 1380–81 (Fed. Cir. 2021). Courts sometimes permit the adoption of a sufficiently comparable license's royalty rate without further apportionment in a practice known as "built-in apportionment." *See Vectura Ltd. v. GlaxoSmithKline LLC*, 981 F.3d 1030, 1040 (Fed. Cir. 2020). But even then, such methodology is limited by the rule that "[n]o matter what the form of the royalty, a patentee must take care to seek only those damages attributable to the infringing features." *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1326 (Fed. Cir. 2014).

The testimony of EcoFactor's damages expert regarding the use of built-in apportionment in this case was not reliable, not based on sufficient facts or data, and should not have been admitted under Rule 702. He testified that three prior lump-sum licenses were sufficiently comparable to support EcoFactor's damages claim without any further apportionment. *EcoFactor,* 104 F.4th at 252 (Fed. Cir. 2024) (noting that "each of the [comparable] agreements included the same $X royalty rate

at issue here"). That testimony was admitted despite two critical methodological shortcomings: (1) it did not adequately account for the non-asserted patents in the prior licenses, and (2) it derived a royalty rate based only on unilateral recitals of the patentee's beliefs instead of an actual payment of royalties.

First, EcoFactor's damages expert did not provide any justification for his reliance on licenses that included over sixty non-asserted patents. *EcoFactor*, 104 F.4th at 260 (Prost, J., dissenting) (explaining that the licenses are to "all patents . . . that are now, or ever come to be, assigned to, owned by, or controlled by EcoFactor"); *USPTO Advanced Patent Public Search*, https://ppubs.uspto.gov/pubwebapp/ (last visited Nov. 19, 2024) (listing sixty-three patents assigned to EcoFactor and published before EcoFactor entered into the Johnson license in 2021, sixty-two patents excluding patent '327). EcoFactor's damages expert conducted no apportionment to the value set by the prior licenses. The expert argued that the other patents provided no or very little additional value, but he provided no justification for this claim with any analysis tethered to the facts of the case. *EcoFactor*, 104 F.4th at 260 (Prost, J., dissenting).

Instead, EcoFactor's expert replaced a detailed analysis of the value of the patents actually at issue with fact-agnostic hand-waving. He acknowledged that the royalty rate would go down as a license covering over sixty patents was dropped to just one, but he said that decrease would be exactly offset by the fact that the patent

in question was now known to be valid and infringed. *Id.* at 255 (recounting EcoFactor's expert's testimony that the fully apportioned value of the infringed patents was precisely the royalty rate recited in the purported comparable licenses). While a reasonable expert could indeed calculate fact-based adjustments for both factors, EcoFactor's expert did not do so. His mere assertion—without evidence—that they will have an equal and offsetting effect and can therefore be ignored is not "based on sufficient facts or data" or grounded in any "reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702(b), (d).

This Court has long held that parties cannot simply assume that a non-infringed patent has no value. *See, e.g.*, *Dow Chem. Co. v. Mee Indus., Inc.*, 341 F.3d 1370, 1381–82 (Fed. Cir. 2003); *Info-Hold, Inc. v. Muzak LLC*, 783 F.3d 1365, 1372 (Fed. Cir. 2015) (citing *Dow Chem. Co.*, 341 F.3d at 1381-82). But when parties make generic assertions, based on insufficient facts and data, that the patents at-issue constitute the entirety of the value of a license that includes many other patents, they do just that. Companies often negotiate licenses not to an individual patent—or even to a handful of patents—but to an entire portfolio that includes dozens or hundreds of patents. Gideon Parchomovsky & R. Polk Wagner, *Patent Portfolios*, 154 U. Pa. L. Rev. 1, 27–29 (2005) [https://perma.cc/EWR7-E6KR]. A damages calculation methodology cannot include critical elements such as an established error rate,

standard of review, or any other way of checking its reliability unless it asks what effect the specific non-asserted patents would have on the hypothetical negotiation.

The unreliability of a method that simply assumes the non-infringed patents have no value is also well known, Lee & Lemley, *supra*, at 285–86, and its use contradicts this Court's precedent. *See, e.g.*, *Dow Chem. Co.*, 341 F.3d at 1381–82 (Fed. Cir. 2003). Still, EcoFactor's expert's testimony was admitted under Rule 702 even though he valued the non-asserted patents as negligible without providing any fact-specific justification. Applying Rule 702, this Court should not find testimony, especially testimony which claims to "build in" any and all necessary apportionment, to be reliable when it contains such critical gaps.

Second, EcoFactor's damages expert imputed a royalty rate from prior lump-sum payments based not on any prior payment of a royalty rate, but only on EcoFactor's unilateral claim that the lump sum payment would be equivalent to such a royalty. *EcoFactor*, 104 F.4th at 258 (Prost, J., dissenting). Experts must provide a fact-specific justification to infer a royalty rate from lump sum payments. *Whitserve, LLC v. Comput. Packages, Inc.*, 694 F.3d 10, 30 (Fed. Cir. 2012); *see EcoFactor*, 104 F.4th at 258-60 (Prost, J., dissenting). But EcoFactor's expert provided no "sales data or other background testimony" for the calculation of his proffered royalty rate. 104 F.4th at 257 (Prost, J., dissenting). The only support was EcoFactor's own recital of its "beliefs." *Id*.

Testimony based only on recitals is unreliable, especially where, as here, the recitals merely state that lump sum amount is "based on" what the patentholder unilaterally "believes is a reasonable royalty calculation of [$X] per-unit," and the recitals have no binding effect on the licensee's rights or costs. *EcoFactor*, 104 F.4th at 252 (quoting J.A. 10389; J.A 10400; J.A. 10411). Testimony based only on nonbinding unilateral recitals is especially unreliable. EcoFactor had an incentive to introduce an inflated estimation in their prior licenses. Doing so cost EcoFactor nothing, cost the licensee nothing, and allowed EcoFactor to pursue massive damages against future defendants. *See* Layne S. Keele, *Res"Q"Ing Patent Infringement Damages After* ResQNet*: The Dangers of Litigation Licenses as Evidence of a Reasonable Royalty*, 20 Tex. Intell. Prop. L.J. 181, 228 (2012) [https://perma.cc/K35A-7BDA] (describing how, when non-binding recitals are considered comparable licenses, it is rational for repeat plaintiffs to structure settlements with a low dollar amount and high per-unit royalty).

Failing to apply properly rigorous Rule 702 and *Daubert* scrutiny to expert testimony, as happened in this case, creates perverse incentives, particularly for repeat non-practicing entity plaintiffs. It becomes lucrative for them to file suit against defendants with little market share, settle for a trivial lump sum derived from a large percentage royalty applied to a limited royalty base, and use those agreements

to assert artificially high royalties in damages claims against more profitable companies. Lee & Lemley, *supra*, at 263, 286–87.

For smaller defendants, paying the small dollar equivalent of a greatly inflated royalty rate can be less costly than further legal proceedings. Accordingly, they rationally acquiesce, giving the plaintiff evidence for an inflated royalty rate and an improved position that it can then use in later settlement negotiations and damages hearings against larger defendants. *Id.* at 287. This dangerous incentive structure is well known. *Id.*; Lee & Melamed, *supra*, at 418; Keele, *supra*, at 228; Christopher S. Storm, *Measuring the Inventor's Contribution*, 21 U.N.H. L. Rev. 167, 207 (2022) [https://perma.cc/AL38-P29M]. Given these incentives and established practices, testimony that relies on recitals and converts lump-sum payments into royalty rates without fact-specific analysis allows plaintiffs to introduce unreliable evidence masquerading as built-in apportionment. Such unreliably inflated royalty rates from "comparable" licenses also disrupt the balance of the patent system by allowing patentholders to claim damages greater than the value of the infringing features to which they may be entitled.

Rule 702 and *Daubert* require judges to only admit evidence for which "the methodology is sound" and "the evidence relied upon [is] sufficiently related to the case at hand." *i4i Ltd. P'ship v. Microsoft Corp.,* 598 F.3d 831, 852 (Fed. Cir. 2010), *aff'd*, 564 U.S. 91 (2011). But the expert testimony the district court admitted relied

entirely on a recital for its royalty rate conversion, providing no other analysis or supporting evidence. EcoFactor's expert alleged that his comparison was legitimate, despite ignoring critical flaws and variables which could dramatically affect the analysis. The district court did not rigorously apply Rule 702 to this flawed testimony. As a result, EcoFactor's expert was allowed to mislead the jury by failing to properly analyze a license which contained non-asserted patents and by inflating the value of that license in relation to the infringing product.

## C. The admission of EcoFactor's expert's testimony is part of a broader trend that circumvents apportionment by allowing evidence based on unreliable methodologies.

Because of its methodological shortcomings, EcoFactor's expert's testimony was unreliable and should not have been admitted under Rule 702. Judges do not improperly assume the role of jurors when they require expert methodologies to be valid. Over a century of evidentiary jurisprudence has held that this determination is not the jurors' role. For the last thirty years after the *Daubert* decision*, assessing the reliability of expert methodology has been the judges' role. When experts do not consider factors that could entirely change their results, those results are unreliable and should not be presented to a jury.

This Court has regularly affirmed district court decisions excluding unreliable expert testimony offered in support of damages claims. *See, e.g., MLC Intellectual Property, LLC v. Micron Technology, Inc.*, 10 F.4th 1358, 1373 (Fed. Cir. 2021);

*MicroStrategy Inc. v. Bus. Objects, S.A.*, 429 F.3d 1344, 1356 (Fed. Cir. 2005); *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1318 (Fed. Cir. 2011). However, in patent damages proceedings, district judges sometimes fail to carry out their required gatekeeping role under *Daubert. See, e.g., Cyntec Co., Ltd. v. Chilisin Elecs. Corp.*, 84 F.4th 979, 987–88 (Fed. Cir. 2023); *VLSI Tech. LLC v. Intel Corp.*, 87 F.4th 1332, 1348 (Fed. Cir. 2023); *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 80 (Fed. Cir. 2012).

When judges fail to do so with license comparisons, "built-in" apportionment claims allow parties to almost entirely circumvent the apportionment process. And while the district court and panel decisions in this case are examples of the troubling relaxation of *Daubert* towards patent damages evidence, the flawed methodologies in EcoFactor's testimony are only some of the potential evidentiary defects that inadequate *Daubert* scrutiny fails to exclude.

First, license comparison testimony can also mislead jurors by undervaluing nonpatent assets. In *EcoFactor*, the damages expert failed to account for the non-asserted patents included in his proffered comparative license. But non-asserted patents are far from the only assets which proper license comparisons must exclude. Many patent licenses convey value beyond patent rights, such as other intellectual property rights, unpatented know-how, business assistance, or even the provision of physical goods. *See* Lee & Lemley, *supra*, at 283-84. Unapportioned comparisons

to licenses which include such additional assets can inflate damages in the same way as comparisons to licenses that include non-asserted patents.

Second, testimony can mislead jurors by comparing infringement to a license that involves the same patent but a different product. This is because the appropriate royalty for a patent embodied in one device can be radically different for the same patent embodied in a different device. Lee & Lemley, *supra*, at 286 ("[A] 0.1% royalty rate may make sense for the use of the audio file deletion invention in an MP3 player, but not in a server that has many more unpatented components and features."). Comparing such licenses without further apportionment is, again, an unreliable and unsound practice.

Finally, business factors such as negotiation leverage, personal risk tolerance, and time constraints affect the price of every license as well. Storm, *supra*, at 207 ("License negotiations are influenced by a variety of factors having nothing to do with the value of the asserted patent."). As such, to be admissible under *Daubert*, expert testimony must explain how these factors were accounted for, what the range of their unaccounted effect might be, and why that range is plausible. Without this information, the expert's methodology cannot be tested, have a known error rate, have standards controlling its operation, or be evaluated by any scientific community.

Any of these variables can dramatically change the value of a license. As such, testimony that fails to properly assess them—yet still purports to build-in all necessary apportionment—cannot be sufficiently reliable and relevant to pass Rule 702 and *Daubert*'s screen. If admitted, such evidence wrongly allows patentees to circumvent proper apportionment.

### III. The court should reverse the panel's decision and reaffirm the critical gatekeeper role courts must play in screening damages testimony.

This Court should reverse the panel's decision because it upheld the admission of expert testimony that all but ignored critical discrepancies between the case at issue and the proffered comparable license. The panel's approach is inconsistent with this Court's precedent requiring effective apportionment. *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1309 (Fed. Cir. 2018); *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1326 (Fed. Cir. 2014). It is also inconsistent with the rule in other circuits, where courts have repeatedly found that expert testimony which omits key considerations is not admissible under Rule 702 and *Daubert*. *See, e.g.*, *Schindler v. Dravo Basic Materials Co., Inc.*, 790 F. App'x 621, 625 (5th Cir. 2019) (excluding expert testimony for assuming key facts); *ATA Airlines, Inc. v. Federal Express Corp.*, 665 F.3d 882, 893-96 (7th Cir. 2011); *In re Wireless Telephone Services Antitrust Litigation*, 385 F. Supp. 2d 403, 427–28 (S.D.N.Y. 2005) (finding that failure to include even "obvious and significant alternative explanations render[ed] [plaintiff's experts'] analysis 'essentially worthless.'" (quoting *Tagatz v.*

*Marquette Univ.*, 861 F.2d 1040, 1045 (7th Cir. 1988)). There is no basis for applying a different standard to Rule 702 and *Daubert* gatekeeping requirements in patent cases than in other types of cases.

Where, as here, a damages expert seeks to testify that a hypothetical license has the exact same value as a real license which (1) covered non-asserted patents and (2) required a lump-sum payment, courts must carefully scrutinize such testimony. Specifically, courts must ensure that admitted testimony includes an explicit, fact-specific analysis that justifies the comparison and considers all key variables. Because that did not happen here, the panel's decision was error. This en banc rehearing presents the full Federal Circuit with the critical opportunity to correct the panel's misapplication of Rule 702 and *Daubert*, and to provide clear guidance to district courts and panels of this Court in future cases that Rule 702 and *Daubert*'s requirements must be met when considering testimony comparing purportedly comparable licenses.

The panel's error cannot be justified by the refrain that flaws in expert testimony "go to weight, not admissibility." As emphasized by the Advisory Committee on Evidence Rules, "many courts have held that the critical questions of the sufficiency of an expert's basis, and the application of the expert's methodology, are questions of weight and not admissibility. These rulings are an incorrect application of Rules 702 and 104(a)." Fed. R. Evid. 702 advisory committee's note

to 2023 amendment. This case provides an opportunity for this Court to emphasize that Rule 702's gatekeeping requirement is not eliminated by statements that disputes are for the jury to decide.

Additionally, this Court should reverse the decision of the panel because it did not require the district court to provide a meaningful explanation for admitting the expert's testimony under Rule 702 and *Daubert*. Such explanations are helpful for reviewing courts, especially "on a critical, often-complicated evidentiary decision such as a damages-expert *Daubert*." *EcoFactor*, 104 F.4th at 257 n.3 (Prost, J., dissenting). In other contexts, such as obviousness, this Court has followed the Supreme Court's guidance that "[t]o facilitate review, [the court's] analysis should be made explicit." *Ball Aerosol & Specialty Container, Inc. v. Ltd. Brands, Inc.*, 555 F.3d 984, 993 (Fed. Cir. 2009) (quoting *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 418 (2007)).

Such explanations would also be helpful to other district courts. There are particular methodologies that recur in patent litigation, such as comparisons to licenses which include non-asserted patents. If district court *Daubert* decisions included fully articulated explanations of how the court evaluated the reliability and relevance of the preferred methodologies, similar methodologies could be better analyzed in subsequent cases. These more transparent, detailed decisions would encourage more rigorous applications of Rule 702 and *Daubert* and, over time,

contribute to a body of precedent to better guide the decisions of courts in future cases. As such, this case also provides a critical opportunity for this Court to reaffirm that district courts must provide detailed explanations of their admissibility decisions under Rule 702 and Daubert.

Failing to rigorously apply Rule 702 and *Daubert* and admitting unreliable and irrelevant evidence like the testimony presented in this case—testimony that potentially confuses or misleads a jury—circumvents proper apportionment and undermines the balance of the patent system.

## CONCLUSION

This Court should reverse the panel's upholding of the admission of EcoFactor's expert's damages testimony because of its flawed methodology and provide important direction for district courts to engage in more rigorous, transparent Rule 702 and *Daubert* scrutiny as part of their critical gatekeeping function.

November 26, 2024

Respectfully submitted,

By: /s/ Phillip R. Malone

Phillip R. Malone
Juelsgaard Intellectual Property
  and Innovation Clinic
Mills Legal Clinic at Stanford
  Law School
559 Nathan Abbott Way
Stanford, CA 94305
Tel: (650) 725-6369
pmalone@stanford.edu
*Counsel for Amici Curiae*

# APPENDIX A

*Amici curiae* patent and evidence law professors are listed below. Affiliation is provided for identification purposes only. All signatories are participating in their individual capacity, not on behalf of their institutions.

**Professor Jeremy W. Bock**
Tulane University Law School

**Professor Michael Carrier**
Rutgers Law School

**Professor Bernard Chao**
University of Denver Sturm College of Law

**Jorge L. Contreras**
University of Utah S.J. Quinney College of Law

**Professor Thomas F. Cotter**
University of Minnesota Law School

**Professor Charles Duan**
American University Washington College of Law

**Professor Paul R. Gugliuzza**
Temple University Beasley School of Law

**Professor Amy Landers**
Drexel University Kline School of Law

**Professor Mark A. Lemley**
Stanford Law School

**Professor Brian J. Love**
Santa Clara University School of Law

**Professor Jane Campbell Moriarty**
Duquesne University Thomas R. Kline School of Law

**Professor Jason Reinecke**
Marquette University Law School

**Professor Joseph Sanders**
University of Houston Law Center

**Professor Joshua D. Sarnoff**
DePaul University College of Law

## CERTIFICATE OF SERVICE

I hereby certify that on November 26, 2024, I caused the foregoing BRIEF

OF *AMICI CURIAE* 14 PATENT AND EVIDENCE LAW PROFESSORS IN

SUPPORT OF APPELLANT ON REHEARING EN BANC to be served by

electronic means via the Court's CM/ECF system on all counsel registered to

receive electronic notices.

November 26, 2024                                  /s/ Phillip R. Malone

                                                         Phillip R. Malone
                                                         JUELSGAARD INTELLECTUAL PROPERTY
                                                             AND INNOVATION CLINIC
                                                         MILLS LEGAL CLINIC AT STANFORD
                                                             LAW SCHOOL
                                                         559 Nathan Abbott Way
                                                         Stanford, CA 94305
                                                         (650) 725-6369
                                                         pmalone@stanford.edu

                                                         *Counsel for Amici Curiae*

## CERTIFICATE OF COMPLIANCE WITH
## TYPE-VOLUME LIMITATIONS

I hereby certify as follows:

1.     The foregoing BRIEF OF *AMICI CURIAE* 14 PATENT AND EVIDENCE LAW PROFESSORS IN SUPPORT OF APPELLANT ON REHEARING EN BANC complies with the type-volume limitation of Fed. Cir. R. 29(b) as specified in paragraph 6 of this Court's June 30, 2023 order. The brief is printed in proportionally spaced 14-point type, and the brief has 5,817 words according to the word count of the word-processing system used to prepare the brief (excluding the parts exempted by Fed. R. App. P. 32(f) and Fed. Cir. R. 32(b)).

2.     The brief complies with the typeface and type style requirements of Federal Rule of Appellate Procedure 27(d)(1)(E), 32(a)(5), and 32(a)(6). The brief has been prepared in a proportionally spaced typeface using Microsoft Word for Mac in 14-point Times New Roman font.

November 26, 2024

/s/ Phillip R. Malone

Phillip R. Malone
JUELSGAARD INTELLECTUAL PROPERTY
   AND INNOVATION CLINIC
MILLS LEGAL CLINIC AT STANFORD
   LAW SCHOOL
559 Nathan Abbott Way
Stanford, CA 94305
(650) 725-6369
pmalone@stanford.edu

*Counsel for Amici Curiae*