No. 23-1101

United States Court of Appeals
for the Federal Circuit

_____

ECOFACTOR, INC.,

*Plaintiffs–Appellee,*

v.

GOOGLE LLC,

*Defendant-Appellant.*

_____

On Appeal from the United States District Court for the Western District of
Texas, No. 6:20-cv-00075-ADA, Hon. Alan D. Albright

**CORRECTED BRIEF OF US\*MADE, THE NATIONAL RETAIL
FEDERATION, THE COMPUTER & COMMUNICATIONS
INDUSTRY ASSOCIATION, AND THE PUBLIC INTEREST PATENT
LAW INSTITUTE AS AMICI CURIAE
IN SUPPORT OF GOOGLE AND REVERSAL**

Joseph Matal
CLEAR IP, LLC
800 17th St., NW  Suite 500
Washington, DC 20006
(202) 654-4500
Joseph.Matal@clearpatents.com

*Counsel for Amici Curiae*

November 26, 2024

Debra J. McComas
David L. McCombs
HAYNES AND BOONE, LLP
2801 N. Harwood St., Suite 2300
Dallas, Texas 75201
(214) 651-5375
Debbie.McComas@haynesboone.com
David.McCombs@haynesboone.com

# CERTIFICATE OF INTEREST

Pursuant to Federal Circuit Rules 29(a) and 47.4, counsel for amici certifies that:

1.     The full names of the parties that I represent are the US Manufacturers Association for Development and Enterprise, the National Retail Federation, the Computer & Communications Industry Association, and the Public Interest Patent Law Institute

2.     There are no real parties in interest of the parties that I represent

3.     There are no parent corporations or publicly held companies that own ten percent or more of the stock of the parties that I represent

4.     No other law firms, partners, or associates who have not entered an appearance in this appeal either appeared for the parties that I represent in the originating court or are expected to so appear in this Court

5.     I do not know of any case in this or any other court or agency that will directly affect or be directly affected by this Court's decision in this case

6.     No disclosure regarding organizational victims in criminal cases or debtors or trustees in bankruptcy cases is required under Fed. R. App. P. 26.1(b) or (c).


November 26, 2024                                    /s/ *Joseph Matal*

# TABLE OF CONTENTS

Table of Authorities.................................................................................. ii

Interest of Amici Curiae ........................................................................ vii

Argument ................................................................................................1

   I.    Introduction: Rule 702 Requires The Court To Determine That An Expert's Evidence And Methods Are Reliable .........................................1

      A.   A Plaintiff That Fails To Meet Its Burden Of Proving Damages Is Entitled Only To Nominal Damages................................................... 2

   II. Rule 702 Requires Exclusion Of Testimony That Is Based On Self-Interested Data ................................................................................. 7

   III. There Is No Legal Or Factual Basis To Assume "Upward Pressure" On Licensing Rates For Every Adjudicated Patent ...................................... 11

   IV.  Kennedy's Testimony Failed To Account For The Possibility Of The Separate Enforcement Of The Non-Asserted Patents ...........................16

Conclusion ...........................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Al Qari v. Am. Steamship Co.*,
689 F. Supp. 3d 494 (E.D. Mich. 2023) ............................................................. 10

*Alpex Computer Corp. v. Nintendo Co., Ltd.*,
No. 86 Civ. 1749 (KMW) (S.D.N.Y. Dec. 5, 1994) ........................................... 13

*Apple Inc. v. Motorola, Inc.*,
757 F.3d 1286 (Fed. Cir. 2014) .............................................................................5

*Atkins v. Robbins, Salomon & Patt, Ltd.*,
97 N.E.3d 210 (Ill. App. 2018)...............................................................................4

*Ball Aerosol and Specialty Container, Inc. v. Limited Brands, Inc.*,
555 F.3d 984 (Fed. Cir. 2009) ............................................................................. 13

*Brenner v. Manson*,
383 U.S. 519 (1966) ................................................................................................6

*Cass Cnty. Joint Water Res. Dist. v. Erickson*,
918 N.W.2d 371 (N.D. 2018)..................................................................................2

*Centre Equities, Inc. v. Tingley*,
106 S.W.3d 143 (Tex. App. 2003) ..........................................................................4

*Chuparkoff v. Ohio Title Loans*,
131 N.E.3d 403 (Ohio App. 2019)..........................................................................4

*City of Westminster v. Centric-Jones Constructors*,
100 P.3d 472 (Colo. App. 2003) .............................................................................5

*Cooper v. Travelers Indem. Co. of Ill.*,
113 F. App'x 198 (9th Cir. 2004)............................................................................8

*Devex Corp. v. General Motors Corp.*,
667 F.2d 347 (3d Cir. 1981) ...................................................................................3

*Discover Bank v. Morgan*,
   363 S.W.3d 479 (Tenn. 2012)...................................................................3

*Dow Chemical Co. v. Mee Indus., Inc.*,
   341 F.3d 1370 (Fed. Cir. 2003) ...............................................................5

*General Motors Corp. v. Blackmore*,
   53 F.2d 725 (6th Cir. 1931) .............................................................14, 15

*Georgia-Pacific Corp. v. U.S. Plywood Corp.*,
   318 F. Supp. 1116 (S.D.N.Y. 1970) ........................................................13

*Graphnet, Inc. v. Retarus, Inc.*,
   250 N.J. 24 (N.J. 2022) ..........................................................................4

*In re Holmes*,
   63 F.2d 642 (1933) .................................................................................6

*Jacked Up, L.L.C. v. Sara Lee Corp.*,
   807 F. App'x 344 (5th Cir. 2020)............................................................9

*Jerkins v. Lincoln Elec. Co.*,
   103 So.3d 1 (Ala. 2011) ..........................................................................3

*Juicy Whip, Inc. v. Orange Bang, Inc.*,
   185 F.3d 1364 (Fed. Cir. 1999) ...............................................................6

*Kerns v. Wells Fargo Bank, N.A.*,
   296 Va. 146 (Va. 2018) ...........................................................................4

*Legacy Builders, LLC v. Andrews*,
   335 P.3d 1063 (Wy. 2014).......................................................................3

*Lindemann Maschinenfabrik GmbH v. Am. Hoist & Derrick Co.*,
   895 F.2d 1403 (Fed.Cir.1990) .................................................................5

*Mader v. Duquesne Light Co.*,
   663 Pa. 201 (Pa. 2020)............................................................................2

*Mahurkar v. C.R. Bard, Inc.*,
   79 F.3d 1572 (Fed. Cir. 1996) ...............................................................12

*Manzanares v. City Of Albuquerque*,
628 F.3d 1237 (10th Cir. 2010) ...........................................................4

*MCR Federal, LLC v. JB&A, Inc.*,
294 Va. 446 (Va. 2017)..........................................................................2

*Mercedes-Benz USA, Inc. v. Coast Auto. Grp.*,
Ltd., 362 F. App'x 332 (3d Cir. 2010) ...................................................8

*Nickson Indus., Inc. v. Rol Mfg. Co.*,
847 F.2d 795 (Fed. Cir. 1988)..............................................................15

*Niemi v. Lasshofer*,
770 F.3d 1331 (10th Cir. 2014)..............................................................2

*ORP Surgical, LLC v. Howmedica Osteonics Corp.*,
92 F.4th 896 (10th Cir. 2024) ................................................................4

*Panduit Corp. v. Stahlin Bros. Fibre Works*,
Inc., 575 F.2d 1152 (6th Cir. 1978).................................................12, 15

*In re Paoli R.R. Yard PCB Litig.*,
35 F.3d 717 (3d Cir. 1996)......................................................................8

*Puryer v. HSBC Bank USA*,
391 Mont. 361 (Mont. 2018)..................................................................4

*Rodríguez v. Hospital San Cristobal, Inc.*,
91 F.4th 59 (1st Cir. 2024) ...................................................................10

*Sardis v. Overhead Door Corp.*,
10 F.4th 268 (4th Cir. 2021)..................................................................10

*SCA Hygiene Products Aktiebolag v. First Quality Baby Products, LLC*,
580 U.S. 328 (2017) ................................................................................7

*Seymour v. McCormick*,
57 U.S. 480 (1853)................................................................................16

*State Farm Fire & Cas. Co. v. Electrolux Home Prods., Inc.*,
980 F. Supp. 2d 1031 (N.D. Ind. 2013)..................................................8

*Stiftung v. Renishaw PLC*,
   945 F.2d 1173 (Fed. Cir. 1991) ........................................................... 6

*Trio Process Corp. v. L. Goldstein's Sons, Inc.*,
   533 F.2d 126 (3d Cir. 1976) ........................................................... 14, 15

*Tumey, LLP v. Mycroft AI, Inc.*,
   84 F.4th 775 (8th Cir. 2023) ........................................................... 10

*Weiss v. Smulders*,
   313 Conn. 227 (Conn. 2014) ........................................................... 2

### Statutes and Regulations

37 C.F.R. 1.321(c)(3) ........................................................... 17

37 C.F.R. 1.321(d)(3) ........................................................... 17

35 U.S.C. § 101 ........................................................... 5, 6

35 U.S.C. § 284 ........................................................... 12

### Rules

Fed. R. Evid. 702 advisory committee's note ................................... *passim*

Fed. R. Evid. 702 ........................................................... *passim*

Fed. R. Evid. 104(a) ........................................................... 1, 18

### Treatises

25 C.J.S. Damages § 18 (May 2024) ........................................... 3

25A C.J.S. Damages § 292 (May 2024) ....................................... 2

Patent Damages Law and Practice § 3:10 (Nov. 2023) ................. 13, 14

### Other Authorities

HTIA Comments to USPTO on Standard-Essential Patents, Feb. 7,
   2022 ........................................................... 7

Mark A. Lemley and William Lee, "The Broken Balance: How 'Built-In Apportionment' and the Failure to Apply *Daubert* Have Distorted Patent Infringement Damages," 37 Harv. J.L. & Tech. 255 (2024) ...............................................................9, 17-18

**INTEREST OF AMICI CURIAE**

The U.S. Manufacturers Association for Development and Enterprise is a nonprofit association representing companies manufacturing diverse goods in the United States. US*MADE members range from some of the largest U.S. manufacturers to the smallest father-and-son business. While US*MADE members have collectively received hundreds of thousands of patents to undergird their innovative enterprises, they have also been the targets of abusive patent litigation.

The National Retail Federation is the world's largest retail trade association. Retail is by far the largest private-sector employer in the United States, supporting one in four U.S. jobs—approximately 52 million American workers—and contributing $3.9 trillion to the annual GDP.

The Computer & Communications Industry Association is an international, not-for-profit trade association representing a broad cross section of communications and technology firms. For more than fifty years, CCIA has promoted open markets, open systems, and open networks. CCIA members employ more than 1.6 million workers, invest more than $100 billion in research and development, and contribute trillions of dollars in productivity to the global economy. CCIA members are at the forefront of research and development in technological fields such as artificial intelligence and machine learning, quantum computing, and other computer-related inventions. CCIA members are also active participants in the patent system, holding

approximately 5% of all active U.S. patents and significant patent holdings in other jurisdictions such as the EU and China.

The Public Interest Patent Law Institute is a nonprofit, nonpartisan public interest organization dedicated to ensuring the patent system promotes innovation and access for the benefit of all members of the public. PIPLI frequently works with researchers, open-source technology developers, small businesses, and consumers who depend on access to standard-compliant products, but face obstacles accessing them due to abusive SEP licensing and litigation practices.

Amici have a strong interest in ensuring that district courts properly exercise their gatekeeping functions and exclude unreliable expert-witness damages testimony from the courtroom.[1]

---

[1] No counsel for any party wrote any part of this brief. No party other than amici curiae's members contributed any money that was intended to fund the preparation or submission of this brief. (Although Google is a member of CCIA, it did not participate in the decision to file or the preparation of this brief or provide funding intended for this brief.) This brief is filed pursuant to the invitation extended in the Court's September 25, 2024 order.

# ARGUMENT

## I. Introduction: Rule 702 requires the court to determine that an expert's evidence and methods are reliable

On December 1, 2023, the Judicial Conference of the United States amended Federal Rule of Evidence 702 to reaffirm the federal judiciary's duty to ensure that an expert witness's testimony is relevant and reliable. The amendments add language to Rule 702 providing that the proponent of expert testimony must "demonstrate[] to the court that it is more likely than not" that the proffered testimony is, among other things, based on sufficient facts or data and is the product of reliable principles and methods.

The Note accompanying the amendments explains that "emphasizing the preponderance standard in Rule 702 specifically was made necessary by the courts that have failed to apply correctly the reliability requirements of that rule." Fed. R. Evid. 702 advisory committee's note. The Note criticizes decisions that "have held that the critical question of the sufficiency of an expert's basis, and the application of the expert's methodology, are questions of weight and not admissibility"—the Note makes clear that "[t]hese rulings are an incorrect application of Rules 702 and 104(a)." *Id.*; *see also id.* ("The amendment clarifies that the preponderance standard applies to the three reliability-based requirements added in 2000—requirements that many courts have incorrectly determined to be governed by the more permissive Rule 104(b) standard.").

The district court in this case adopted the very approach that the Judicial Conference has condemned.  It effectively treated the sufficiency of the expert's evidentiary basis and the reliability of his methods as matters to be addressed by cross examination.  As a result, the court allowed the admission of expert testimony that relied on the patent owner's own unverified assertions about its past licensing rates and that did not account for non-asserted patents in the portfolios that were used for comparison.

### A.  A plaintiff that fails to meet its burden of proving damages is entitled only to nominal damages

"Generally, the plaintiff bears the burden of proof to establish all damages." 25A C.J.S. Damages § 292 (May 2024).  "The party claiming damages has the burden of establishing the existence of damages by competent, or probative, evidence or a preponderance of the evidence." *Id.*  "The party claiming damages also has the burden of proof to establish the amount of damages incurred." *Id.* [2]

---

[2] The plaintiff's burden to prove its damages is widely recognized across jurisdictions. *See, e.g.*, *Niemi v. Lasshofer*, 770 F.3d 1331, 1355 (10th Cir. 2014) ("A plaintiff bears the burden of proving his damages."); *Mader v. Duquesne Light Co.*, 663 Pa. 201, 230 (Pa. 2020) ("[T]he plaintiff bears the burden of proof to establish all damages."); *Cass Cnty. Joint Water Res. Dist. v. Erickson*, 918 N.W.2d 371, 376 (N.D. 2018) ("The party claiming damages has the burden of proof to establish the amount of damages incurred."); *MCR Federal, LLC v. JB&A, Inc.*, 294 Va. 446, 461 (Va. 2017) ("The plaintiff bears the burden of proving with reasonable certainty the amount of damages and the cause from which they resulted.") (citation omitted); *Weiss v. Smulders*, 313 Conn. 227, 253-54 (Conn. 2014) ("It is axiomatic that the burden of proving damages is on the party claiming them. Damages are recoverable only

This rule extends to patent law. Courts have long recognized that "[t]he goal of assessing royalties in patent infringement cases is to place the plaintiff in the same position it would have been in if the patent had not been infringed," *Devex Corp. v. General Motors Corp.*, 667 F.2d 347, 361 (3d Cir. 1981)—and that "[t]he burden is on the party seeking damages to show the amount of those damages." *Id.*

A plaintiff that does not meet its burden to produce competent evidence of its damages is entitled only to nominal damages:

> Nominal damages are awarded where the violation of a right is shown, substantial damages claimed, and some actual loss proved, and yet the damages are not susceptible of reasonable certainty of proof as to their extent.

25 C.J.S. Damages § 18 (May 2024); *see also id.* ("The law infers some damage from the invasion of a property right, and that right may be vindicated through an award

---

to the extent that the evidence affords a sufficient basis for estimating their amount in money with reasonable certainty.") (citation omitted); *Legacy Builders, LLC v. Andrews*, 335 P.3d 1063, 1070 (Wy. 2014) ("It is well established in Wyoming that the party seeking recovery of damages carries the burden of proof."); *id.* ("The burden of proving the damages, beyond nominal ones, is upon the party seeking the recovery.") (citation omitted); *Discover Bank v. Morgan*, 363 S.W.3d 479, 496 (Tenn. 2012) ("The burden of proving damages rests on the party seeking them."); *Jerkins v. Lincoln Elec. Co.*, 103 So.3d 1, 10 (Ala. 2011) ("The rule has long been established that the party claiming damages has the burden of establishing the existence of and amount of those damages by competent evidence.") (citation omitted).

of nominal damages, even if the damage cannot be quantified or established by proof.").[3]

---

[3] A plaintiff's entitlement to only nominal damages if it fails to produce sufficient and reliable evidence of compensatory damages is also widely recognized across jurisdictions and causes of actions. *See, e.g.*, *ORP Surgical, LLC v. Howmedica Osteonics Corp.*, 92 F.4th 896, 925 (10th Cir. 2024) (because claimant's "theories for awarding damages—fair market value, lost profits, and disgorgement"—all were "either derived from flawed factual assumptions or otherwise unsupported by the evidence," an award of "nominal damages serve[s] the purpose of vindicating the party's legal rights") (breach of contract); *Manzanares v. City Of Albuquerque*, 628 F.3d 1237, 1241 (10th Cir. 2010) ("Under the common law, nominal damages may be awarded to a litigant who has established a cause of action but has not established that he is entitled to compensatory damages.") (quoting Restatement (Second) of Torts § 907 (1979)); *Graphnet, Inc. v. Retarus, Inc.*, 250 N.J. 24, 38 (N.J. 2022) ("With regard to defamation cases, if a statement is found to be defamatory without a finding of actual harm"—or "where the extent of loss is not shown"—then "only nominal damages can be awarded.") (citation omitted); *Kerns v. Wells Fargo Bank, N.A.*, 296 Va. 146, 159-60 (Va. 2018) ("Nominal damages are appropriate when there is a legal right to be vindicated against an invasion that has produced no actual, present loss of any kind or where, from the nature of the case, some injury has been done but the proof fails to show the amount.") (citation omitted) (breach of contract); *Puryer v. HSBC Bank USA*, 391 Mont. 361, 368 (Mont. 2018) ("In the absence of proof of actual damages recovery may be for nominal damages.") (citing Restatement (Second) of Contracts § 346 (1981)); *Chuparkoff v. Ohio Title Loans*, 131 N.E.3d 403, 408 (Ohio App. 2019) ("Nominal damages may be awarded where an injury has been proven but the evidence fails to establish the extent of loss to the plaintiff.") (trespass); *Atkins v. Robbins, Salomon & Patt, Ltd.*, 97 N.E.3d 210, 222-23 (Ill. App. 2018) ("If the plaintiff proves it is entitled to damages but does not provide a proper basis for computing those damages, only nominal damages can be recovered.") (citation omitted) (legal malpractice); *Centre Equities, Inc. v. Tingley*, 106 S.W.3d 143, 154 (Tex. App. 2003) ("When there are not sufficient facts by which to accurately measure the

Amici emphasize these principles because in their experience, plaintiffs' damages experts in patent cases frequently cite ambiguous statements from this Court's earlier decisions[4] to argue that a patent owner is presumptively entitled to substantial damages merely upon showing infringement. In amici's view, application of such a presumption undermines the proper enforcement of Rule 702.

The Patent Act provides no basis to assume that a patent is entitled to substantial compensatory damages—a presumption that would effectively shift the burden of proof to the defendant. Although an issued patent is presumed valid, it is not presumed to be economically valuable: the USPTO does not examine claimed inventions for their economic benefits.

Indeed, the Patent Act only requires that an invention be "useful," 35 U.S.C. § 101, and the courts have made clear that "the threshold of utility is not high: An

---

amount of the loss that has resulted, nominal damages may be awarded upon pleading and proof of a right of recovery.") (tortious interference); *City of Westminster v. Centric-Jones Constructors*, 100 P.3d 472, 481 (Colo. App. 2003) ("Nominal damages are recoverable for a breach of contract even if no actual damages resulted or if the amount of actual damages has not been proved.").

[4] *See, e.g.*, *Dow Chemical Co. v. Mee Indus., Inc.*, 341 F.3d 1370, 1381-82 (Fed. Cir. 2003) ("In patent law, the fact of infringement establishes the fact of damage because the patentee's right to exclude has been violated.") (quoting *Lindemann Maschinenfabrik GmbH v. Am. Hoist & Derrick Co.*, 895 F.2d 1403, 1406 (Fed.Cir.1990)). *But see Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1328 (Fed. Cir. 2014) (noting that "if the patentee's proof is weak, the court is free to award a low, perhaps nominal, royalty").

invention is 'useful' under section 101 if it is capable of providing some identifiable benefit." *Juicy Whip, Inc. v. Orange Bang, Inc.*, 185 F.3d 1364, 1366 (Fed. Cir. 1999) (citing *Brenner v. Manson*, 383 U.S. 519, 534 (1966)). For example, a patent can satisfy the utility requirement even if the claimed invention is only "useful to some extent and in certain applications." *Stiftung v. Renishaw PLC*, 945 F.2d 1173, 1180 (Fed. Cir. 1991). The invention "need not be the best or the only way to accomplish a certain result." *Id.* Once this minimum level of utility is met, "it is immaterial upon the question of patentability whether the invention be of greater or less usefulness than like devices or products shown in the prior art." *In re Holmes*, 63 F.2d 642, 643 (1933).

A presumption that a patent is economically valuable is particularly inappropriate in the context of many of the standard-essential patents that amici confront. A standard-development group often has multiple options to choose from when it is creating a technical standard, none of which offers any substantial advantage over other options. The principal value of the standard usually derives from the fact that *a* standard was selected and that different products are now interoperable, not from the particular options that were chosen for the standard. There is no reason to assume that a standard-essential patent's claim to "six of one" is inherently valuable—

it is frequently the case that multiple publicly available "half a dozen others" could have been selected when the standard was developed.[5]

Moreover, when a patent is deemed to be automatically entitled to *some* compensatory damages simply because infringement has been shown, this places pressure on the court to allow *some* evidence of those damages—regardless of the evidence's reliability. In this way, a presumption of entitlement to reasonable-royalty damages undermines the proper enforcement of Rule 702.

As part of its clarification of the application of Rule 702 to patent-damages testimony, this Court should reaffirm the common-law rule that the plaintiff bears the burden of producing competent evidence of its reasonable-royalty damages—and that a failure to meet that burden will result in an entitlement to only nominal damages. *See SCA Hygiene Products Aktiebolag v. First Quality Baby Products, LLC*, 580 U.S. 328, 340 (2017) ("Patent law is governed by the same common-law principles, methods of statutory interpretation, and procedural rules as other areas of civil litigation.") (citation omitted).

## II. Rule 702 requires exclusion of testimony that is based on self-interested data

The district court allowed EcoFactor's expert witness to rely on "licensing rates" that EcoFactor itself had invented. There is no independent evidence that

---

[5] *See generally* HTIA Comments to USPTO on Standard-Essential Patents, Feb. 7, 2022, at 8-9, available at https://www.regulations.gov/comment/ATR-2021-0001-0151.

any licensee actually agreed to pay these rates, nor was EcoFactor or its expert even aware of unit sales by the licensees. The only validation of EcoFactor's purported per-unit rate was the assertions of EcoFactor's own CEO—who, again, did not himself know the number of units that were sold and even felt the need to defend what were evidently inflated rates by making unverified assertions that the licensees' sales must have been low. *See EcoFactor*, 104 F.4th at 253.

Expert testimony based on such self-interested data is not reliable and should have been excluded. Courts applying Rule 702 routinely bar reliance on unverified information provided by a party to the litigation, which has an interest in pleading its own case. *See In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 762 (3d Cir. 1996) (holding that it was proper to exclude the testimony of experts who "based their conclusion as to a plaintiff's symptoms solely on the plaintiff's self-report of illness in preparation for litigation"); *Cooper v. Travelers Indem. Co. of Ill.*, 113 F. App'x 198, 201 (9th Cir. 2004) (holding that it was proper to exclude lost-profits expert testimony based on unverified "client-provided data;" self-reported data is not "the type of data on which experts in economics would reasonably rely"); *Mercedes-Benz USA, Inc. v. Coast Auto. Grp.*, Ltd., 362 F. App'x 332, 334 (3d Cir. 2010) (holding that expert's testimony was properly excluded where he "fail[ed] to independently verify [the plaintiff's] claims of unfair allocation"); *State Farm Fire & Cas. Co. v. Electrolux Home Prods., Inc.*, 980 F. Supp. 2d 1031, 1048 (N.D. Ind. 2013) ("[A]n expert's proffered opinion that merely parrots information provided to her by a party is generally

excluded. . . . [W]hen an expert relies upon information given to [her] by a party or counsel, she must independently verify that information before utilizing it in her calculations.") (citations omitted); *see also Jacked Up, L.L.C. v. Sara Lee Corp.*, 807 F. App'x 344, 349 (5th Cir. 2020) ("The Federal Rules of Evidence and the requirements of *Daubert* are not satisfied where, as here, the expert fails to show any basis for believing someone else's projections.") (citation omitted).

It is widely recognized that repeat-litigator patentees will add terms to licensing agreements for the purpose of supporting inflated damages demands in future lawsuits. A patent owner "will often structure its licensing and litigation campaign to generate spurious 'comparable' licenses it can then point to in later litigation." Mark A. Lemley and William Lee, "The Broken Balance: How 'Built-In Apportionment' and the Failure to Apply *Daubert* Have Distorted Patent Infringement Damages," 37 Harv. J.L. & Tech. 255, 263 (2024).[6] "In the worst case, those licenses are actually collusive, with the parties agreeing to a number no one actually pays." *Id.*; *see also id.* at 296, 313.

These observations conform with amici's experience. When non-practicing entities in particular settle an infringement action, *everything* they add to the license is done with an eye toward future patent assertions. Defendants, on the other hand,

---

[6] Available at https://tinyurl.com/2s3w5979.

often have little interest in negotiating over "whereas" clauses and other non-binding terms, so long as the total settlement amount is reasonable. *See id.* at 296-97. No reasonable economist seeking to gauge the value of a patent would rely on such self-interested and unverified data.

The district court failed to enforce Rule 702. Again, Rule 702 requires "the court" to determine "that it is *more likely that not*" that the expert has a sufficient basis for his testimony. FRE 702 (emphasis added). Treating the inquiry into the "sufficiency of an expert's basis, and the application of the expert's methodology" as "questions of weight and not admissibility" is "an incorrect application of Rules 702." *Id.*, advisory committee's note.[7] The district court's summary denial of Google's *Daubert* motion and admission of expert testimony that relied on such biased and unreliable data was clear error.[8]

---

[7] Although the recent amendments to Rule 702 were not finally adopted until December 2023, courts have applied them to pending cases even before they became final, *see, e.g.*, *Sardis v. Overhead Door Corp.*, 10 F.4th 268, 283-84 (4th Cir. 2021), because the amendments clarify "how Rule 702 should have been applied all along." *Al Qari v. Am. Steamship Co.*, 689 F. Supp. 3d 494, 499 (E.D. Mich. 2023).

[8] A district court's factual determinations applying Rule 702 are reviewed for clear error. *See Rodríguez v. Hospital San Cristobal, Inc.*, 91 F.4th 59, 71 (1st Cir. 2024); *Tumey, LLP v. Mycroft AI, Inc.*, 84 F.4th 775, 776 (8th Cir. 2023).

### III. There is no legal or factual basis for applying "upward pressure" on licensing rates for every adjudicated patent

The three licensing agreements that Kennedy relied on consisted of dozens of patents. Thus in addition to the asserted '327 patent, the agreements that were used to determine damages included many other patents that were not a basis for damages in this lawsuit.

Here is how Kennedy accounted for the non-asserted patents included in the licenses: he "addressed and distinguished the remaining patents" by testifying that these additional patents would place "downward pressure . . . on the $X royalty rate." *EcoFactor*, 104 F.4th at 256. Kennedy then concluded that this downward pressure was offset by "upward pressure on the $X royalty rate" that is supposedly created by assuming that the '327 patent was valid and infringed. *Id.* Kennedy also argued that EcoFactor was entitled to the same rate regardless of which patents were asserted. *See id.* at 260-61 (Prost., J., dissenting).

The reasoning that Kennedy employed is so generic that it could be used to "apportion" for non-asserted patents in every single case and in any set of circumstances. If a license includes multiple other patents that may not even "cover[] the same technological areas as the asserted patents," *EcoFactor*, 104 F.4th at 260 (Prost, J., dissenting), all the expert needs to do to secure admission of his testimony under the district court's approach is to acknowledge that the non-asserted patents would

place "downward pressure" on the licensing rate. The expert can then cite offsetting "upward pressure" that supposedly applies in the hypothetical negotiation—again, a circumstance that would be present in every single case—and thereby justifying relying on non-asserted patents to set a rate for asserted patents.

Kennedy's approach of applying "upward pressure" to the rates indicated by comparable licenses whenever a patent has been held valid and infringed is legally and factually baseless and serves only to distort the damages inquiry. Yet it is an argument that, in amici's experience, plaintiffs' damages experts employ with some frequency.

In *Panduit Corp. v. Stahlin Bros. Fibre Works*, Inc., 575 F.2d 1152 (6th Cir. 1978), in an opinion written by a CCPA judge sitting by designation, the court did advocate for generic upward adjustments of negotiated rates. The court suggested that the hypothetical negotiation's reasonable royalty is a "legal fiction," *id.* at 1159, that rests on "a pretense that the infringement never happened," *id.* at 1158, that it ignores the plaintiff's litigation costs, and that it amounts to "impos[ing] a 'compulsory license' on every patent owner." *Id.*

In *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572 (Fed. Cir. 1996), however, this Court expressly disavowed allowing an extra-statutory "*Panduit* kicker" to be applied to royalty rates. The Court emphasized that enhancements to reasonable-royalty damages are governed by 35 U.S.C. § 284, and that compensation for attorney's fees is provided for in § 285. *See id.* at 1581.

Some lower courts and commentators have also taken the view that royalty rates supported by evidence of comparable licenses should always be upwardly adjusted because in litigation, the patent has been found valid and infringed. For example, *Alpex Computer Corp. v. Nintendo Co., Ltd.*, No. 86 Civ. 1749 (KMW) (S.D.N.Y. Dec. 5, 1994), permitted a plaintiff to ignore actual licensing evidence and argue for inflated rates because of "the assumption that the patent is valid and infringed." *Id.* at *41; *see also* Patent Damages Law and Practice § 3:10, n. 1 (Nov. 2023).

Applying such an across-the-board "upward adjustment" simply because a patent has been adjudicated valid and infringed has no legal or factual basis. A litigated patent is no more inherently valuable than one that has been licensed. In the case of the litigated patent, "courts do not declare patents to be valid"—they "only declare that they have not been proved to be invalid." *Ball Aerosol and Specialty Container, Inc. v. Limited Brands, Inc.*, 555 F.3d 984, 994 (Fed. Cir. 2009). It is frequently the case that a patent upheld in one lawsuit will be invalidated in a later case. And in licensing negotiations, licensees typically assume that *some* of the patents are valid; if they did not, they would challenge the patents rather than agree to pay a license.

Nor does legal precedent support the application of an evidence-free "upward adjustment" to all adjudicated patents. The court's landmark opinion in *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970), which ex-

haustively catalogued factors that are considered in a reasonable-royalty determination, makes no mention of increasing rates beyond what negotiated rates show simply because a patent has been adjudicated valid and infringed.

The precedents that are occasionally cited to support such an automatic upward adjustment are *Trio Process Corp. v. L. Goldstein's Sons, Inc.*, 533 F.2d 126 (3d Cir. 1976), and *General Motors Corp. v. Blackmore*, 53 F.2d 725 (6th Cir. 1931).[9] A careful reading of these cases indicates that they support no such rule.

*General Motors v. Blackmore*—on which *Trio Process* relies—begins by emphasizing that "licenses granted at other times, and between other parties, and upon private negotiations, . . . may be extremely helpful in determining the reasonable rate to be applied." 53 F.3d at 729. The court also notes that a history of widespread infringement of a patent may depress negotiated licensing rates—and that when *such circumstances are shown to be present*, a court should upwardly adjust the negotiated rate by assuming that the patent is valid and "respected:"

> [I]f there has been a general infringement, and the patent is in wide disrepute and openly defied, these individual and private compacts may even lose much of their probative force as indicating the reasonable royalty. . . . [The] diminished royalty rate to which the patentee may have been driven in individual cases by the disrepute of his patent and the open defiance of his rights should likewise not be taken as the true measure of a reasonable royalty where no established royalty is shown. The reasonable royalty must still be determined from proofs of acceptance,

---

[9] *See, e.g.*, Patent Damages Law and Practice § 3:10, n. 1 (Nov. 2023) (citing *Trio Process*).

utility, value, and demand, and upon the hypothesis that the patent was valid and would be respected.

*Id.*; *see also id.* (emphasizing that "[an infringer] may not profit by a general infringement to which his own conduct contributes"); *Trio Process*, 533 F.3d at 129-30 (quoting *General Motors v. Blackmore*); *Nickson Indus., Inc. v. Rol Mfg. Co.*, 847 F.2d 795, 798 (Fed. Cir. 1988) ("[A] higher figure may be awarded when the evidence clearly shows that widespread infringement made the established royalty artificially low.") (citing *Trio Process*).

In other words, the "valid and infringed" upward adjustment that Kennedy incorporated into his analysis applies only when it has been shown that widespread infringement has artificially depressed negotiated license rates for the patent—a showing that Kennedy and EcoFactor have made no effort to make in this case.

As convenient as it would be for damages expert witnesses to be able to incorporate a *Panduit* kicker or upward adjustment into their testimony in every adjudicated patent case, there is no legal or logical basis for doing so. Kennedy's evidence-free adoption of such an increase in his proposed rate is an unreliable methodology and should have resulted in the exclusion of his testimony under Rule 702.

**IV. Kennedy's testimony failed to account for the possibility of the separate enforcement of the non-asserted patents**

It is particularly troubling that the district court permitted Kennedy to argue for a patent-agnostic approach—that the same full-portfolio rate should apply regardless of which patent or subset of patents from the portfolio is asserted. It is not uncommon for patent holding companies to assert different patents via multiple LLCs. Under the damages theory that EcoFactor was allowed to advance, the individual patents in a portfolio could be distributed to a dozen different entities—who could then sue a defendant serially, demanding the same rate for each patent that would be commanded by the portfolio as a whole.

This is exactly what the Supreme Court warned against when it required apportionment—that without limiting patent damages to the value of the claimed technology, "the unfortunate mechanic may be compelled to pay treble his whole profits to each of a dozen or more several inventors"—and that "actual damages" may be "converted into an unlimited series of penalties on the defendant." *Seymour v. McCormick*, 57 U.S. 480, 491 (1853).

In some circumstances, Kennedy's supposition that one patent has the same value as the whole portfolio could be supported. For example, had Kennedy or other experts shown that the patents claimed the same technology—and were subject to terminal disclaimers to overcome obviousness-type double patenting—then there could be a basis for treating one patent as fungible with the portfolio. Such terminal

16

disclaimers, in addition to indicating that the claims are patentably indistinct, require the patent owner to foreswear separate enforcement of the patents.[10]

But Kennedy presented no such evidence. His methodology would effectively allow EcoFactor to charge a defendant the full value of the portfolio for each of the dozens of patents. This methodology was unsound and Kennedy's testimony should have been excluded.

Finally, the district court's allowance of cross examination does not compensate for its failure to enforce Rule 702. "[C]ross examination is always available and cannot, by itself, eliminate the *Daubert* gatekeeping function." Lemley, *supra*, at 314 "[E]xamination of untested methodologies never shown to be reliable is not the task of the jury." *Id.* A jury typically "has no expertise in scientific methods and may inappropriately defer to a persuasive-sounding expert." *Id.* This is why Rule 702 exists.

---

[10] *See* 37 C.F.R. 1.321(c)(3) ("[The follow-on patent] shall be enforceable only for and during such period that said patent is commonly owned with the application or patent which formed the basis for the judicially created double patenting."); *id.* 1.321(d)(3) ("[The follow-on patent shall include a provision] waiving the right to separately enforce [the follow-on patent and] any patent granted on the application which formed the basis for the double patenting, and that [the follow-on patent] shall be enforceable only for and during such period that [it and the patent] which formed the basis for the double patenting are not separately enforced.").

Again, Rule 702 was recently clarified to emphasize that it is "the court" that must decide whether it is "more likely than not" that an expert's evidence and methodology are relevant and reliable. FRE 702. Treating "the critical question of the sufficiency of an expert's basis, and the application of the expert's methodology, [as] questions of weight and not admissibility" is "an incorrect application of Rules 702 and 104(a)." *Id.*, advisory committee's note. The court, not the jury, should have assessed whether Kennedy's data and methods were relevant and reliable. The district court's failure to exclude Kennedy's testimony was clear error.

# CONCLUSION

The district court's admission of EcoFactor's expert testimony should be reversed.

Respectfully submitted,

/s/ *Joseph Matal*

Joseph Matal
CLEAR IP, LLC
800 17th St., NW
Suite 500
Washington, DC 20006
(202) 654-4500
Joseph.Matal@clearpatents.com

Debra J. McComas
David L. McCombs
HAYNES AND BOONE, LLP
2801 N. Harwood St., Suite 2300
Dallas, Texas 75201
(214) 651-5375
Debbie.McComas@haynesboone.com
David.McCombs@haynesboone.com

*Counsel for Amici Curiae*

Dated: November 26, 2024

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), the undersigned counsel for amici curiae certifies that this brief:

(1)     complies with the type-volume limitation of Federal Circuit Rules 29(b) and 32(b) because it contains 4956 words, including footnotes and excluding the parts of the brief exempted by Federal Circuit Rule 32(b) and Federal Rule of Appellate Procedure 32(f); and

(2)     complies with the typeface and style requirements of Federal Rules of Appellate Procedure 32(a)(5) and 32(a)(6) because this document has been prepared using Microsoft Office Word and is set in the Equity A font in a size equivalent to 14 points or larger.


Dated:  November 26, 2024                    /s/ *Joseph Matal*