No. 2023-1101

United States Court of Appeals for the Federal Circuit

ECOFACTOR, INC.,
*Plaintiff-Appellee,*

v.

GOOGLE LLC,
*Defendant-Cross-Appellant.*

_____

On Appeal from the United States District Court Western District of Texas
Case No. 6:20-cv-00075-ADA, Judge Alan D. Albright
_____

## PLAINTIFF-APPELLEE ECOFACTOR, INC.'S CORRECTED NON-CONFIDENTIAL EN BANC RESPONSE BRIEF

Reza Mirzaie
rmirzaie@raklaw.com
Marc A. Fenster
mfenster@raklaw.com
Brian Ledahl
bledahl@raklaw.com
Kristopher R. Davis
kdavis@raklaw.com
James N. Pickens
jpickens@raklaw.com
Minna Y. Chan
mchan@raklaw.com
Russ August & Kabat
12424 Wilshire Blvd., 12th Floor
Los Angeles, CA 90025
(310) 826-7474
*Counsel for Plaintiff-Appellee EcoFactor, Inc.*

January 16, 2025

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF INTEREST</u>

| | |
|---|---|
| **Case Number** | 2023-1101 |
| **Short Case Caption** | EcoFactor, Inc. v. Google LLC |
| **Filing Party/Entity** | Plaintiff-Appellant EcoFactor, Inc. |

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 01/16/2025

Signature: /s/ Brian D. Ledahl

Name: Brian D. Ledahl

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. ☑ None/Not Applicable |
| EcoFactor, Inc. | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable          ☐ Additional pages attached

| | | |
|---|---|---|
| Jason M. Wietholter | Matthew D. Aichele | Adam S. Hoffman |
| Paul A. Kroeger | Brian W. Lewis | C. Jay Chung |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☑ Yes (file separate notice; see below)     ☐ No     ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable          ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

Save for Filing

# TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................ 1

II. STATEMENT OF THE CASE ................................................................... 3

    A. EcoFactor Entered Into Multiple *Georgia Pacific* Factor 1 Licenses ....................................................................................... 3

    B. All Three Licenses Were Technically Comparable ............................ 4

    C. All Three Licenses Were Economically Comparable ......................... 5

    D. EcoFactor's Expert Considered The Rate That EcoFactor Would Expect In Licensing ......................................................................... 5

    E. EcoFactor's CEO Testified About The Three Licenses ...................... 6

    F. All Three Licenses Were Admitted Into Evidence Without Objection ......................................................................................... 7

    G. EcoFactor Offered Other Evidence To Support The Jury's Award ................................................................................................ 8

    H. The Jury Did Not Return A Verdict Based On The Challenged Opinions ......................................................................................... 12

III. SUMMARY OF ARGUMENT ................................................................ 13

IV. STANDARD OF REVIEW ....................................................................... 16

V. ARGUMENT ............................................................................................ 19

    A. The District Court Properly Admitted Mr. Kennedy's Testimony Regarding Comparable Licenses ....................................................... 19

    I. EcoFactor presented evidence showing that the licenses were based on a royalty rate recited on the face of the agreements ........... 20

    II. Mr. Kennedy properly accounted for the differences between the comparable licenses and the hypothetical negotiation. ..................... 24

    III. Mr. Kennedy's testimony met the requirements of Rule 702 ........... 26

    B. The Panel Opinion Correctly Applied This Court's Long-Standing Precedent For Admitting Expert Testimony ...................... 32

C.    Allowing Trial Judges To Evaluate The Credibility Of Evidence Relied On By An Expert Would Violate The Seventh Amendment ........................................................................ 41

D.    Google Failed To Show That Any Purported Error Was Not Harmless ............................................................................... 45

E.    The *Amici* Supporting Google Offer Incorrect Arguments ............... 49

F.    The Panel Opinion Affirming Judgment Of Infringement And No Invalidity Must Be Reinstated ...................................................... 52

G.    The Panel Opinion Should Be Reinstated Due To The Improper Nature Of This *En Banc* Proceeding ................................................. 52

VI.   CONCLUSION ........................................................................... 54

## CONFIDENTIAL MATERIAL OMITTED

The material omitted on pages 1, 4, 6-7, 9, 10-12, 20-23, 25, 29, 37-38, 40-41, and 47-48 consists of dollar amounts ("Amount"), percentages ("Percent"), and numbers ("Number") included in confidential license agreements, Google business documentation, license agreements, licensing negotiations correspondence, data regarding reasons for customer purchasing decisions, and financial information regarding Google's profits.

**Cases**

*Apple Inc. v. Wi-Lan Inc.*,
   25 F.4th 960 (Fed. Cir. 2022) ................................................................. 31

*Aro Mfg. Co. v. Convertible Top Replacement Co.*,
   377 U.S. 476 (1964) ............................................................................... 34

*Baker v. Canadian Nat'l/Ill. Cent. R.R.*,
   536 F.3d 357 (5th Cir. 2008) ................................................................. 17

*Bio-Rad Laboratories, Inc. v. 10X Genomics Inc.*,
   967 F.3d 1353 (Fed. Cir. 2020) ............................................................. 30

*C & F Packing Co., v. IBP, Inc.*,
   224 F.3d 1296 (Fed. Cir. 2000) ............................................................. 32

*Cates v. Creamer*,
   431 F.3d 456 (5th Cir. 2005) ................................................................. 17

*Commonwealth Scientific and Indus. Research Organisation v. Cisco Systems, Inc.*,
   809 F.3d 1295 (Fed. Cir. 2015) ............................................................. 25

*Compaq Comp. Corp. v. Ergonome Inc.*,
   387 F.3d 403 (5th Cir. 2004) ................................................................. 17

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
   509 U.S. 579 (1993) ......................................................................... 27, 42

*EcoFactor, Inc. v. Google LLC*,
   104 F.4th 243 (Fed. Cir. 2024) ...................................................... passim

*Energy Transp. Grp. Inc. v. William Demant Holding A/S*,
   697 F.3d 1342 (Fed. Cir. 2012) ............................................................. 16

*Engel Industries, Inc. v. Lockformer Co.*,
   166 F.3d 1379 (Fed. Cir. 1999) ............................................................... 8

*Finjan, Inc. v. Secure Computing Corp.*,
   626 F.3d 1197 (Fed. Cir. 2010) ............................................................. 32

*Garretson v. Clark*,
   111 U.S. 120 (1884) ............................................................................... 33

*General Electric Co. v. Joiner*,
   522 U.S. 136, (1997) ............................................................................. 17

*Georgia Pacific Corp. v. United States Plywood Corp.*,
  318 F. Supp. 1116 (S.D.N.Y. 1970) ............................................................. passim

*Georgia-Pacific Corp. v. U.S. Plywood Corp.*,
  318 F. Supp. 1118 (S.D.N.Y. 1970) ................................................... 34

*Gov't Fin. Servs. One L.P. v. Peyton Place, Inc.*,
  62 F.3d 767 (5th Cir.1995) ............................................................... 17

*i4i Ltd. P'ship v. Microsoft Corp.*,
  598 F.3d 831 (Fed. Cir. 2010) .......................................................... 17

*In re Paoli R.R. Yard PCB Litigation*,
  35 F.3d 717 (3d Cir. 1994) ............................................................... 28

*Johnson v. Thibodaux City*,
  887 F.3d 726 (5th Cir. 2018) ................................................. 17, 38, 39

*Jordan v. Maxfield & Oberton Holdings, L.L.C.*,
  977 F.3d 412 (5th Cir. 2020) ...................................................... 17, 45

*Koch v. United States*,
  857 F.3d 267 (5th Cir. 2017) .......................................................... 17

*Lucent Technologies, Inc., v. Gateway, Inc.*,
  580 F.3d 1301 (Fed. Cir. 2009) ...................................................... 34

*Lucent Techs., Inc. v. Gateway, Inc.*,
  580 F.3d 1301 (Fed. Cir. 2009) ...................................................... 19

*Markman v. Westview Instruments, Inc.*,
  517 U.S. 370 (1996) ........................................................................ 41

*MLC Intellectual Property, LLC v. Micron Technology, Inc.*,
  10 F.4th 1358 (Fed. Cir. 2021) ...................................................... 29

*Omega Patents, LLC v. CalAmp Corp.*,
  13 F.4th 1361 (Fed. Cir. 2021) ...................................................... 31

*Pavo Solutions LLC v. Kingston Technology Co., Inc.*,
  35 F.4th 1367 (Fed. Cir. 2022) ...................................................... 29

*Reeves v. Sanderson Plumbing Prods., Inc.*
  530 U.S. 133 (2000) ........................................................................ 36

*Rite-Hite Corp. v. Kelley Co., Inc.*,
  56 F.3d 1538 (Fed. Cir. 1995) ........................................................ 33

*Seymour v. McCormick*,
  57 U.S. 480 (1853) .......................................................................... 33

*Summit 6, LLC v. Samsung Electronics Co., Ltd.*,
   802 F.3d 1283 (Fed. Cir. 2015) ........................................................... 35

*Unisplay, S.A. v. Am. Elec. Sign Co.*,
   69 F.3d 512 (Fed. Cir. 1995) ............................................................... 34

*Virnetx, Inc. v. Cisco Sys., Inc.*,
   767 F.3d 1308 (Fed. Cir. 2014) .................................................... 19, 35

*Whitserve, LLC v. Comput. Packages, Inc.*,
   694 F.3d 10 (Fed. Cir. 2012) ....................................................... 19, 35

*Wordtech Sys., Inc. v. Integrated Networks Sols., Inc.*,
   609 F.3d 1308 (Fed. Cir. 2012) ................................................... 35, 40

**Statutes**

28 U.S.C. § 46 ...................................................................................... 16

28 U.S.C. § 46(c) ................................................................................. 53

35 U.S.C. § 284 .............................................................................. 33, 51

U.S. Const., Amendment VII ............................................................... 42

**Other Authorities**

Patent Act of 1836,
   Section 14, Pub. L. 24-357, 5 Stat. 117 (July 4, 1836) ....................... 34

Ronald J. Allen and Esfand Nafisi,
   *Daubert and its Discontents*, 76 BKNLR 131 (2010) ........................ 42

Wright & Miller, *Federal Practice & Procedure* (2d. Ed.) § 6665 ................. 23, 39

**Rules**

Fed. R. Civ. P. 61 ................................................................................ 18

Fed. R. Evid. 702 ......................................................................... passim

# I.    INTRODUCTION

Google's principal brief, and those of the *amici* supporting, can be summarized in a completely unsurprising way: tortfeasors argue that damages for committing torts should be minimal.  Google comes to this proceeding having been found to infringe EcoFactor's valid patent with its Nest smart thermostats.  A unanimous panel of this Court affirmed Google's liability in this case.  Both EcoFactor and Google had a full and fair opportunity to present their respective cases to an impartial jury, consistent with the Seventh Amendment to the Constitution.  That jury, after finding Google liable for infringement, found damages in the lump sum amount of $20,019,300.  This amount was significantly less than EcoFactor sought, and more than Google argued should be awarded.

In this *en banc* proceeding, the sole issue to be addressed was the District Court's admission of the expert opinion of EcoFactor's damages expert based on a specific $ ██ AMOUNT per-unit royalty amount recited on the face of three licenses from EcoFactor to competitors of Google in the smart thermostat market.  The underlying licenses reciting this royalty rate were admitted at trial without objection.  EcoFactor's expert considered the recitals on the face of the licenses, as well as extensive materials relating to the negotiation of these licenses, testimony from the CEO of EcoFactor relating to both EcoFactor's licensing policies generally and to the negotiation of these three specific licenses, and information about the relative

1

market share of those licensees as compared to Google's share of the smart thermostat market. He also considered relevant differences between the licenses and the circumstances of a hypothetical negotiation at the time of Google's first infringement. The expert did exactly what this Court has repeatedly demanded: he offered an opinion about a reasonable royalty specifically tied to the facts of this case.

Having failed to persuade the jury, the District Court or any judge on the panel of this Court that it was not liable for infringing EcoFactor's patent, Google now argues that the District Court abused its discretion in allowing EcoFactor's damages expert to testify to his opinion that was tied to the facts of this case. The relevant standard of review requires that even if error is shown, such error must be shown not to have been harmless. Google does not even address this core issue. Instead, Google and *amici* supporting it argue that the District Court should have independently weighed the evidence to determine if the facts recited on the face of admitted license agreements as well as the associated evidence and testimony were sufficiently believable to support the expert's opinion.

Neither the Supreme Court, nor this Court, has ever held that in evaluating the admissibility of an expert's opinion under Fed. R. Evid. 702, a trial court may weigh the credibility of the underlying facts on which an expert relies. To do so would invade the province of the jury required under the Seventh Amendment. While trial

courts must determine whether an expert has appropriately relied on facts that support the expert's opinion, that does not permit the trial court (or this Court) to weigh the underlying evidence and determine the underlying facts. Such weighing is exclusively the province of the jury. Google and its supporting *amici* ask this Court to craft entirely new rules of evidence out of whole cloth which are unsupported by either statute or precedent and which would violate the Seventh Amendment rights of litigants. This Court should decline Google's invitation and affirm the jury verdict, the trial court, and the majority of a panel of this Court, all of which carefully considered this case.

## II. STATEMENT OF THE CASE

The briefing during the panel stage of this case contained an extensive discussion of the procedural history of this matter. EcoFactor does not repeat all of that history here, but highlights certain facts relevant to this *en banc* proceeding.

### A. EcoFactor Entered Into Multiple *Georgia Pacific* Factor 1 Licenses

Prior to trial in this matter, EcoFactor entered into three license agreements with competitors of Google in the smart thermostat market. Those licenses were with Daikin (Appx10389-10399), Schneider (Appx10400-10410), and Johnson Controls (Appx10411-10419). The '327 patent at issue in this matter was licensed by EcoFactor in all three of these licenses. It was specifically identified as a patent that had been asserted in litigation against the licensee in the Daikin and Schneider

licenses.  Appx10398, Appx10409.  Because each of the three licenses included a license to the patent-in-suit, they were all properly considered in the reasonable royalty analysis under *Georgia Pacific* factor 1.  *See Georgia Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970) .

All three licenses contained a provision referencing a royalty of $██ per unit. Despite these references, Google contends that the licenses were not actually based on this royalty rate.  The Daikin and Johnson licenses recite that "Ecofactor represents that it has agreed to the payment set forth in this Agreement based on what Ecofactor believes is a reasonable royalty calculation of $██ per unit for estimated past and [licensee]'s projected future sales of products accused of infringement in the Litigation."  Appx10389, Appx10411.  The Schneider license contained slightly different language: "Ecofactor represents that it has agreed to the payment set forth in this Agreement based on what Ecofactor believes is a reasonable royalty calculation of $██ per unit for what it has estimated is past and projected future sales of products accused of infringement in the Litigation, although nothing in this clause should be interpreted as agreement by Schneider that $██ per unit is a reasonable royalty."  Appx10400.

## B.     All Three Licenses Were Technically Comparable

EcoFactor's technical expert testified to the technical comparability of each of the three license agreements.  Appx5578-5582.  Google did not suggest in its

opening brief on appeal that the licenses were not technically comparable, and it makes no such argument in its *en banc* brief. At trial, Google's expert conceded that Google had not offered evidence to dispute the technical comparability of the three licenses. Appx6269-6270.

## C. All Three Licenses Were Economically Comparable

EcoFactor's expert, Mr. Kennedy provided clear testimony that the three license agreements were sufficiently economically comparable to the hypothetical negotiation to be considered for purposes of a damages analysis. Appx5759, Appx5763. While Google argues that it disputes the economic comparability of these licenses, its own expert admitted the predicate facts of comparability at trial. Appx6268-6269 (confirming that the licensees were competitors in the smart thermostat market, that they were from close in time to the hypothetical negotiation, that they licensed the patent-in-suit, that they were licenses for products similar to Google's accused products, and that it was appropriate to use settlement agreements to ascertain a reasonable royalty).

## D. EcoFactor's Expert Considered The Rate That EcoFactor Would Expect In Licensing

Under *Georgia Pacific* factors 4, 12 and 15, Mr. Kennedy evaluated the amount that EcoFactor would seek from a potential licensee in licensing its patents. *See Georgia Pacific Corp.*, 318 F. Supp. At 1120. Mr. Kennedy obviously

considered the language contained in the licenses themselves, which recited EcoFactor's understanding. He described that agreements which contain such recitations are rare and noteworth. Appx5767. He also relied on the testimony of EcoFactor's CEO, who signed the licenses, about EcoFactor's licensing policies for its smart thermostat technology, which set a minimum royalty rate of $<span>AMOUNT</span> ██. Appx5774.

## E. EcoFactor's CEO Testified About The Three Licenses

As discussed above, EcoFactor's CEO, Shayan Habib, testified about EcoFactor's prior licensing of its patents (including the '327 patent) to Daikin, Schneider, and Johnson Controls. Appx5666-5673. He explained EcoFactor's licensing expectations in licensing its patents, the rates that EcoFactor would expect, and how EcoFactor understood the royalty of each of the three licenses, including why EcoFactor understood that each lump sum was calculated with the rate stated in the agreements. Mr. Habib explained that for each agreement, the royalty amount paid by the licensee was determined based upon applying the stated rate to the relevant past and projected future sales of the licensee. Appx5667-5670. Mr. Habib also explained that the resulting lump sum amounts were consistent with his expectations given the licensees' small market share compared to the dominant players in the market, like Google. Appx5672. He further testified that the stated rate was based on his experience in the relevant market, his understanding of

EcoFactor's margins and products, as well as his consultation with advisors. Appx5670-5671.

## F. All Three Licenses Were Admitted Into Evidence Without Objection

During Mr. Habib's testimony, EcoFactor moved into evidence each of the three license agreements. Appx5667-5669. In each instance, Google's lead trial counsel, Mr. Van Nest, stated "No objection, Your Honor." *Id.* Thus, each of the three license agreements, and each license's recitation of the $[AMOUNT] rate, was properly before the jury and available for consideration, even without Mr. Kennedy's testimony. Google also made no objection to Mr. Habib testifying about the royalty rate described in the licenses, and Google has never argued on appeal that the District Court erred in admitting Mr. Habib's testimony about those agreements and the royalty rates recited therein.

Google argues in its *en banc* principal brief that it objected to the rate amount in the licenses being admitted to the jury. First, as noted above, Google's argument is inconsistent with the trial record where its lead trial counsel clearly stated "no objection" on the record. Google suggests that it made this objection in an *in limine* motion that the trial court denied. If Google wished to preserve this objection, it had the opportunity to do so during the trial, but instead affirmatively told the trial court that it had no objection to the admission of the unredacted licenses into evidence.

Even if Google had properly made this objection at trial, it failed to preserve this objection on appeal. In its opening brief on appeal (the Yellow Brief in the underlying appeal), Google never assigned any error to the District Court based on the failure to redact the rate amount from the three license agreements.[1] Accordingly, this issue was waived by Google. *Engel Industries, Inc. v. Lockformer Co.*, 166 F.3d 1379, 1383 (Fed. Cir. 1999) ("An issue that falls within the scope of the judgment appealed from but is not raised by the appellant in its opening brief on appeal is necessarily waived."). Just as an appellant cannot raise new arguments on appeal in its reply brief, it certainly cannot do so even later merely because the Court has permitted *en banc* rehearing.

## G. EcoFactor Offered Other Evidence To Support The Jury's Award

During the trial of this matter, Mr. Kennedy's testimony regarding EcoFactor's three licenses was not the only evidence that supported the jury's damage verdict. EcoFactor presented other evidence that independently supported the jury's award.

First, EcoFactor provided evidence regarding the apportioned profit Google received from its infringement. EcoFactor's technical expert analyzed a Google

---

[1] Google did raise the issue of admission of the unredacted licenses in its Rule 59 motion to the trial court. SAppx979-980. It did not, however, pursue this issue as a ground of its appeal in its Principal and Response (Yellow) Brief to this Court. *See* Google's Red Brief at 30-40.

survey regarding various features of the accused products which showed that **PERCENT** ▮% of the purchasing decision for the accused products was attributable to the features enabled by the '327 patent. Appx5572-5578, Appx10295. Mr. Kennedy relied on this technical analysis to apportion Google's profits. Appx5755-5758. Mr. Kennedy first calculated Google's gross profits from the sale of an accused thermostat as **AMOUNT** $▮ per unit. Id. This excluded revenues attributable to manufacturing and other costs of goods sold. Id.; see also Appx5813 (677:1-10), Appx5820 (684:2-12). Then, using Mr. de la Iglesia's conclusion that the '327 Patent is responsible for the three **PERCENT** surveyed attributes representing ▮% of the product purchasing decision, Mr. **PERCENT** **AMOUNT** **AMOUNT** Kennedy attributed ▮% of Nest's profits, or $▮ out of $▮ per unit, to the features covered by the '327 Patent. Appx5755-5758 (619:16-622:13), Appx5775-5777 (639:22-641:7). He also explained which attributes only correspond to the '382 Patent not at issue in this appeal. *Id*. Mr. Kennedy explained that in the **AMOUNT** hypothetical negotiation, the parties would have negotiated to split this $▮ in **AMOUNT** apportioned profit, and that the $▮ royalty rate sought by EcoFactor would represent a reasonable split of the apportioned profit attributable to infringement of the '327 patent, while allowing Google to retain a significantly larger portion of the apportioned profit. Appxs5778-5780. This testimony alone provided a sufficient basis to support the jury's verdict independent of any opinions regarding EcoFactor's licenses. It also supported Mr. Kennedy's opinion on the licenses.

EcoFactor also provided additional evidence from which the jury could reach its damages verdict independent of the royalty rate recited in the license agreements. Google notes that the three license agreements' payment terms involved payment of a lump sum amount. EcoFactor provided evidence about the relative market share of the licensees and Google in the relevant smart thermostat market that would allow the jury to compare the lump sums in those agreements to an amount appropriate for Google's market share. Mr. Kennedy explained that Google's market share was significantly greater than the three licensees. Appx5819. The jury saw a 2016 Google document showing Google's market share to be ███ PERCENT %, with EcoFactor listed as a small competitor, and with the three licensees too small to make the list of primary competitors. Appx5745-5746, Appx5775, Appx10467. Mr. Kennedy confirmed that he had seen similar data for 2021. *Id.* Google also conceded that its market share is many times larger than the licensees. Appx6251-6253, Appx6255-6258. In particular, Google's expert conceded that the referenced Google document showed that 98% of the market was made up by companies other than the three licensees. Appx6252-6253. He further conceded that each of the three EcoFactor licensees had 1% or less of the relevant market could be compared to Google's ███ PERCENT %. Appx6259. He also conceded that multiplying the lump sum amounts of the three licenses by the ███ PERCENT times larger market share of Google would yield lump sums between $20 and $70 million. SAppx1009-1010. The jury could have relied on this

10

evidence in order to reach its approximately $20 million lump sum reasonable royalty determination without even considering the opinions Google challenges on appeal.

Other evidence relating to the license agreements also provided separate support for Mr. Kennedy's use of the rate recited in those license agreements. In particular, the jury received negotiation correspondence between Johnson Controls and EcoFactor which showed that the license amount agreed upon was, in fact, based upon application of the recited royalty rate. Appx10797-10799. Google's expert testified about these documents and admitted that Johnson's counsel had written that Johnson was applying the $██ AMOUNT rate as part of the negotiation of the license. Appx6276-6280. Google's expert conceded that there was nothing in the Johnson agreement inconsistent with this statement. SAppx1012-1013. The jury was entitled to credit this evidence regarding the royalty rate recited in the license independent of Mr. Kennedy's opinions about that rate.

Further, as the majority pointed out in the panel opinion, the final clause of the provision reciting the royalty rate in the Schneider agreement could be interpreted as an admission by Schneider that the agreement's royalty was calculated based on the $██ AMOUNT rate, while contesting that such a rate constituted a reasonable royalty. *EcoFactor, Inc. v. Google LLC*, 104 F.4th 243, 253-54 (Fed. Cir. 2024) , Appx10400. As the panel majority recognized, the jury could rely on this language

as an admission that the lump sum in the Schneider license was calculated based on the $ AMOUNT rate independent of Mr. Kennedy's testimony about that rate.

## H. The Jury Did Not Return A Verdict Based On The Challenged Opinions

Google challenges the opinion of Mr. Kennedy that damages should be calculated by applying the same $ AMOUNT royalty rate set forth in each of the three comparable license agreements to Google's infringing sales. Mr. Kennedy specifically calculated that this royalty applied to Google's past sales of infringing devices amounted to approximately $ AMOUNT . Appx5782. Mr. Kennedy also opined that damages should include additional royalties at the same rate applied to Google's future sales. Appx5740-5741. The jury ultimately awarded a single lump sum of $20,019,300 and did not award any additional royalty for future sales. Appx49-50. Thus, the jury awarded substantially less than even the amount that would result from applying the royalty rate from the licenses only to Google's past sales, and much less than the amount that would be attributable to all sales during the full span of infringement during the life of the patent. There is no way that the jury's verdict could have been calculated from the royalty rate opined by Mr. Kennedy and challenged by Google.

## III. SUMMARY OF ARGUMENT

Google challenges the admission of evidence. The relevant standard of review requires a showing of an abuse of discretion **_and_** a showing that even if the trial court abused its discretion, that any error was not harmless. Google has never addressed the second part of this standard on appeal. It cannot meet this standard because it cannot show that the jury's verdict was based on the challenged testimony. Multiple other sources of evidence in the record independently support the jury's verdict. This alone requires affirmance of the jury's verdict without any further consideration of the propriety of the challenged testimony. This Court should not reach the broader question of the application of Fed. R. Evid. 702 to Mr. Kennedy's testimony and should refrain from offering unnecessary and inappropriate advisory opinions on those issues in light of Google's failure to overcome the applicable harmless error standard.

Even if the Court reaches the Rule 702 question raised in this appeal, the only appropriate result is to affirm. Mr. Kennedy's testimony far exceeded the requirements of Rule 702 for the admission of expert opinions. Rule 702 requires that an expert opinion be based upon sufficient expertise, reliable methodology, sufficient facts, and a reliable application of the methodology to the facts. Google makes no challenge to the first of these. There can also be no doubt that Mr. Kennedy applied a reliable methodology. His opinion about applicable license rates

was based on the widely accepted methodology of analysis of comparable licenses under the rubric of the hypothetical negotiation under the *Georgia Pacific* factors. Mr. Kennedy's opinion was based upon sufficient facts. This Court has long held that an expert's opinion on damages is admissible if it is adequately tied to the facts of the case. Mr. Kennedy tied his royalty opinions to facts that were extensively proven, including through testimony of EcoFactor's CEO, evidence recited on the face of license agreements admitted into evidence, negotiation correspondence with two of the licensees (Daikin and Johnson) confirming the application of the royalty rate, admissions on the face of another license agreement Schneider) about the application of the rate, as well as evidence confirming the relative market shares of the licensees and Google. Mr. Kennedy appropriately based his opinions upon facts specific to this case and specific to the license agreements at issue in this case. This is what Rule 702 requires and nothing more. Google also does not meaningfully challenge that Mr. Kennedy reliably applied the appropriate methodology to the facts – it only challenges the facts themselves, which had a more than sufficient evidentiary basis. Ultimately deciding the credibility of those facts is a question for the jury, not a judge.

The panel opinion in this case applied this Court's long-standing precedent requiring that experts tie their opinions to the facts of the case. The panel opinion applied the correct legal standard and properly recognized that Mr. Kennedy's

opinions were extensively tied to the specific facts of this case. The panel appropriately did not import a new "credibility of the facts" standard that has never been applied by this Court, nor by the Supreme Court, and is not a part of Rule 702. It recognized that evaluating the credibility of the evidence relied upon by an expert is exclusively the province of the jury.

Charging district courts with adding a new "credibility of the evidence relied upon" test to Rule 702 would conflict with Rule 702, with the precedents of the Supreme Court, and with the Seventh Amendment to the Constitution. Experts have always been permitted to offer opinions based upon a postulated or assumed set of facts. Those facts must be sufficient to justify the opinions offered by the expert, but evaluating the truth of those underlying facts is exclusively the province of a jury. Questions about the credibility of the facts relied upon by the expert are quintessentially matters that go to the weight to be given to the expert's opinion by the jury, not to its admissibility. Here, of course, extensive evidence supported the credibility of the underlying fact that the licenses were based on the royalty rate recited on their face. But weighing that question of credibility has always been, and must remain, a task consigned to the jury as the trier of fact. It is the jury's responsibility to decide the facts of the case, not that of a judge.

Because the Order granting the petition for *en banc* review vacated the panel opinion, but did not seek any further consideration of any issue of infringement or

validity, the panel's opinion on those issues must be reinstated regardless of the Court's views on the Rule 702 issues identified for this *en banc* proceeding. Additionally, EcoFactor objects to this *en banc* proceeding as improper under both 28 U.S.C. § 46 insofar as at least one active member of this Court, Circuit Judge Newman, has been excluded from participation in this proceeding. EcoFactor also objects to Judge Newman's exclusion from these proceedings as a violation of EcoFactor's rights to due process.

## IV. STANDARD OF REVIEW

Google misstates the applicable standard of review in its principal brief by only stating half of the standard. Google is correct that the district court's decisions on evidentiary matters, including the admission of the challenged testimony of Mr. Kennedy, are reviewed under the deferential abuse of discretion standard. Google fails, however, to recognize the other portion of the applicable standard, that any error in admission of evidence must also be shown not to be a harmless error. Google failed to make this showing during the panel stage, and it continues that failure here.

Google challenges the district court's denial of its motion for new trial under Rule 59. This Court reviews a district court's denial of such motions under the law of the regional circuit. *Energy Transp. Grp. Inc. v. William Demant Holding A/S,* 697 F.3d 1342, 1350 (Fed. Cir. 2012). Here, the challenge is based on the admission of evidence that Google contends should have been excluded. The Fifth Circuit

reviews such rulings for an abuse of discretion. *See Cates v. Creamer,* 431 F.3d 456, 460 (5th Cir. 2005) (citing *Gov't Fin. Servs. One L.P. v. Peyton Place, Inc.,* 62 F.3d 767, 774 (5th Cir.1995))*; Koch v. United States,* 857 F.3d 267, 277 (5th Cir. 2017); *i4i Ltd. P'ship v. Microsoft Corp.,* 598 F.3d 831, 841 (Fed. Cir. 2010), *aff'd,* 564 U.S. 91 (2011) (citing *Baker v. Canadian Nat'l/Ill. Cent. R.R.,* 536 F.3d 357, 363-64 (5th Cir. 2008))*.* The Supreme Court has confirmed that the deferential abuse of discretion standard must be applied to a district court's admission or exclusion of expert testimony under Fed. R. Evid. 702. *General Electric Co. v. Joiner*, 522 U.S. 136, 139, 142-143 (1997).

If an abuse of discretion is identified, "the harmless error doctrine applies unless a substantial right of the complaining party was affected." *Compaq Comp. Corp. v. Ergonome Inc*., 387 F.3d 403, 408 (5th Cir. 2004); *Johnson v. Thibodaux City*, 887 F.3d 726, 736 (5th Cir. 2018) (same quotation). "Courts do not grant new trials unless it is reasonably clear that prejudicial error has crept into the record or that substantial justice has not been done, and the burden of showing harmful error rests on the party seeking the new trial." *Jordan v. Maxfield & Oberton Holdings, L.L.C.*, 977 F.3d 412, 417 (5th Cir. 2020).

The application of the harmless error doctrine is also mandated by Fed. R. Civ. P. 61, which provides that "Unless justice requires otherwise, no error in admitting or excluding evidence—or any other error by the court or a party—is

ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order. At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights." Fed. R. Civ. P. 61.

While Google does not place much emphasis on the 2023 amendment to Fed. R. Evid. 702 in its brief, many of the *amici* supporting Google spend significant time addressing the amendment. While the importance and application of the amendment to Rule 702 may present interesting issues, those issues are purely academic in this case. The trial court's evidentiary rulings at issue here were rendered in 2022, prior to the amendment to Rule 702 which only became effective in December 2023. Nothing in the amendment suggests or states in any way that it has retroactive application. This Court cannot reasonably evaluate the decision of a district court in an evidentiary matter based upon a Rule of Evidence that did not exist at the time of the district court's evidentiary ruling. As explained further in the subsequent sections of this brief, EcoFactor respectfully submits that the district court's admission of Mr. Kennedy's testimony was proper, and certainly not ground for a new trial in this case, under either version of Rule 702. To the extent that the change in rule would affect the outcome, this Court must apply the version of Rule 702 in force at the time of trial.

## V. ARGUMENT

## A. The District Court Properly Admitted Mr. Kennedy's Testimony Regarding Comparable Licenses

This Court has long held that the proponent of expert testimony relating to damages must show that the expert's opinions are tied to the facts of the case at bar, rather than mere speculation or conjecture. *See Virnetx, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1333-34 (Fed. Cir. 2014); *Whitserve, LLC v. Comput. Packages, Inc.*, 694 F.3d 10, 30 (Fed. Cir. 2012); *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1330 (Fed. Cir. 2009).

Mr. Kennedy testified to his opinion about a royalty rate on which the two parties to the hypothetical negotiation (EcoFactor and Google) would have agreed. He based this testimony on significant evidence specific to the facts of this case, just as this Court's many precedents have held that he should. He examined three licenses granted by EcoFactor to competitors of Google in the smart thermostat market. Appx5758-5759, Appx5762-5773. All three licenses included a license to the '327 patent at issue here. Appx5666, Appx5763, Appx10389-10419. All three licenses were with large companies, but which had relatively small shares of the relevant smart thermostat market. Appx5666, Appx5746, Appx5801, Appx5819, Appx10467. EcoFactor's technical expert opined that all three licenses were technically comparable to a license that would result from the hypothetical

negotiation and explained that they focused on the same features that were provided by Google's infringement of the '327 patent. Appx5578-5582. Mr. Kennedy also explained that all three licenses were close in time to the January 2020 hypothetical negotiation date. Appx5763.

### I. EcoFactor presented evidence showing that the licenses were based on a royalty rate recited on the face of the agreements

Mr. Kennedy analyzed these three comparable licenses, as well as many other facts specific to this case to reach his opinion on a reasonable royalty rate. First, in examining the licenses themselves, Mr. Kennedy explained that the licenses recited on their face that the lump sum license amount paid by the licensee was based on what EcoFactor believed to be a reasonable royalty calculation of $ AMOUNT ▮ per unit for both past and future anticipated sales. Appx5764, Appx5769, Appx5772-5773. Mr. Kennedy also considered testimony from Mr. Habib, EcoFactor's CEO who negotiated the three licenses. Appx5764-5765, Appx5769-5770, Appx5794. Mr. Habib explained his understanding of how the license amounts in the three licenses were calculated. Appx5666-5670. Mr. Habib also testified about why EcoFactor sought that royalty rate in its license agreements. Appx5670-5673. He further explained that while he did not have access to the specific sales data of the licensees, his experience in the market and knowledge of these licensees and their business confirmed that the lump sum amounts in the agreements were consistent with the

recited royalty rate. Appx5672. He also testified that the recited royalty rate was accepted by the parties to each license. Appx5671.

Additional evidence specific to this case also supported Mr. Kennedy's opinions about the royalty rate recited in the licenses. First, the Schneider license contained language on its face (clearly inserted at Schneider's request) that nothing in the clause reciting the royalty rate "should be interpreted as agreement by Schneider that $ AMOUNT ██ per unit is a reasonable royalty." Appx10400. This language may be understood as an admission by Schneider that the license fee was, in fact, calculated using a $ AMOUNT ██ per unit royalty rate, but that Schneider did not concede that such an amount constituted a "reasonable royalty." Google suggests in its brief that this language somehow refutes Mr. Kennedy's opinions. The opposite is true. The jury (and Mr. Kennedy) were entitled to find that the language in the Schneider agreement was a concession that the $ AMOUNT ██ rate was used to determine the royalty payment. Indeed, two judges of this Court found this to be an appropriate reading of the Schneider agreement in the panel opinion. *EcoFactor*, 104 F.4th at 253-54.

Still other evidence also supported Mr. Kennedy's opinions. EcoFactor introduced into evidence correspondence from the negotiation of the Johnson Controls license which showed that the parties were applying the $ AMOUNT ██ rate. Appx10797-10799, Appx6278-6280. As with the other evidence, the jury (and Mr. Kennedy) were entitled to conclude that these communications further confirmed

that the Johnson license fee was determined using the $<span style="background:black">   </span> rate recited on the face
of the license.  Mr. Kennedy also relied on negotiation evidence regarding the Daikin
license that further supported the application of the recited rate.   Appx1245
(Kennedy Expert Report at ¶ 197 and n. 170).

Mr. Kennedy also relied on market share evidence establishing that Daikin,
Schneider, and Johnson have very low sales in the smart thermostat market, which
is consistent with the modest lump sum amounts paid by each licensee resulting from
application of the recited rate to the licensees' estimated sales figures. Appx5746,
Appx5801, Appx5804, Appx5819, Appx10467. Google did not dispute this market
share evidence. Appx6252. Mr. Kennedy also relied on Mr. Habib's understanding
that the lump sums are consistent with the licensees' sales, because each licensee
only recently entered the smart thermostat market and it "makes sense that their sales
numbers would be low since they'd recently started." Appx5672.

The majority of Google's challenge to Mr. Kennedy's testimony seems to rest
on the argument that EcoFactor did not prove beyond all possible doubt that the
royalty sum paid in each of the three licenses was calculated using a $<span style="background:black">   </span> per unit
rate.  Obviously, no precedent of the Supreme Court or of this Court requires such a
level of proof on any issue in a patent case, and certainly not in testing the
admissibility of an expert opinion.  EcoFactor presented multiple pieces of evidence
described above from which a reasonable jury could conclude that one or more of

the three licenses to the patent-in-suit involved a royalty payment based upon a royalty rate of $ ▮ per unit.

AMOUNT

To the extent that Google disputed that this was, in fact, the basis for the royalty payment in those agreements, Google could have sought evidence from the licensees to try to dispute that the license payments were based on the stated royalty. It chose not to present any such evidence.

Importantly, even if Google had obtained evidence to dispute the basis for the royalty payments, that would not have rendered Mr. Kennedy's opinions inadmissible. Rather, it would merely be additional evidence that the jury could consider in evaluating the credibility of Mr. Kennedy's opinions. As will be discussed further in the subsequent sections of this brief, it is not for a judge to decide the facts of the case. How the payment amount in the licenses was determined is a fact question for the jury to resolve. Mr. Kennedy offered an opinion based upon evidence that the payment amounts were based upon the recited royalty rate, where the same per-unit rate also appears in negotiation correspondence applicable to the Johnson and Daikin licenses, as well as a statement that could be understood as a concession that the rate was used to calculate the royalty amount in the Schneider license. So long as EcoFactor presented evidence from which a reasonable jury could conclude that this premise was correct, Mr. Kennedy's opinion is admissible. *See* Wright & Miller, *Federal Practice & Procedure* (2d. Ed.) § 6665. EcoFactor

presented evidence from which a reasonable jury could conclude that the license payments were based upon the recited royalty rate. Thus, Mr. Kennedy's opinions were clearly admissible.

## II. Mr. Kennedy properly accounted for the differences between the comparable licenses and the hypothetical negotiation.

As discussed above, Google's primary argument focuses on the factual question of whether the license payments in the three comparable licenses were based upon the recited royalty rate. EcoFactor presented significant evidence to support a finding that they were. Google also, however, suggests that Mr. Kennedy's opinions should have been excluded based upon some other aspect of his testimony.

Mr. Kennedy offered explanations for how the differences between the comparable licenses and the hypothetical negotiation would impact the royalty for the hypothetical negotiation. For example, he addressed the fact that the licenses were settlements of litigation that included all of the patents in EcoFactor's portfolio. Appx5767-5768, Appx5771-5772. He specifically noted that it is common in that circumstance to negotiate for a license to the patent or patents actually asserted, and that the remainder of the portfolio typically accounts for very little value. *Id.* He nonetheless opined that this issue would provide some downward pressure on the license rate, but that the dispute over validity and infringement in the actual licenses

would lead to countervailing upward pressure on the royalty rate in the hypothetical negotiation.  Appx5770.

Mr. Kennedy also considered EcoFactor's licensing policies under *Georgia Pacific* factor 4, and the fact that EcoFactor would seek to license its smart thermostat technology at a minimum rate of $ ▮ per unit, as explained by Mr. Habib.  Appx5774.  This Court has specifically approved of the use of a patentee's standard royalty rate expectations in analyzing reasonable royalty damages, even where those standard rates had not resulted in particular licenses.  *See Commonwealth Scientific and Indus. Research Organisation v. Cisco Systems, Inc.*, 809 F.3d 1295, 1306 (Fed. Cir. 2015).  Mr. Kennedy properly analyzed all of the relevant *Georgia Pacific* factors in reaching his conclusions.  He specifically explained that he did not simply adopt the rate from the comparable license agreements, but rather considered how those agreements, along with EcoFactor's policies, the nature of the agreements, and other considerations would weigh in the hypothetical negotiation.  Appx5778-5780.  Thus, as noted, Mr. Kennedy's opinions did not simply pluck the rate from comparable agreements, but rather evaluated whether the differences between those agreements and the hypothetical negotiation would lead to a different rate when considering the various factors in the *Georgia Pacific* analysis.

AMOUNT

### III. Mr. Kennedy's testimony met the requirements of Rule 702

Fed. R. Evid. 702 contemplates a three-part test where an expert has specialized knowledge or expertise to assist the trier of fact. The expert must base the testimony on sufficient facts or data; the expert's opinion must be the product of reliable principles and methods; and the expert's opinion must reflect a reliable application of the principles and methods to the facts of the case. Fed. R. Evid. 702.

Mr. Kennedy's testimony met all three requirements, though Google only really challenges the first prong – sufficient facts or data. Google argues that Mr. Kennedy's opinion was not based on sufficient facts or data, largely because it disputes whether the comparable license payments were based on the royalty rate recited on the face of the agreements. The facts underlying that issue are addressed above. Google does not meaningfully suggest that Mr. Kennedy failed to apply reliable principles and methods. He evaluated damages under the rubric of the hypothetical negotiation and the various relevant *Georgia Pacific* factors. This Court has endorsed that methodology for decades as an appropriate and reliable mechanism to evaluate a reasonable royalty. Likewise, Google does not meaningfully challenge Mr. Kennedy's application of this methodology to the facts of the case except in contending that Mr. Kennedy misapprehended the relevant facts.

With respect to the "sufficient facts or data" prong, Mr. Kennedy's opinions easily met the requirements of Rule 702 (both before and after the 2023 amendments to that rule). This requirement did not change with the 2023 amendments. Those amendments merely clarified that the proponent of expert testimony bears the burden of demonstrating its admissibility. The sufficient facts or data prong was added to Federal Rule 702 by the 2000 amendments to that rule following a group of Supreme Court cases beginning with *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). The Advisory Committee notes to the 2000 amendments confirm that "When facts are in dispute, experts sometimes reach different conclusions based on competing versions of the facts. The emphasis in the amendment on 'sufficient facts or data' is not intended to authorize a trial court to exclude an expert's testimony on the ground that the court believes one version of the facts and not the other." Advisory Committee Note to the 2000 amendment to Fed. R. Evid. 702. The Advisory Committee reiterated this same point in connection with the 2023 amendment, stating:

> "It will often occur that experts come to different conclusions based on contested sets of facts. Where that is so, the Rule 104(a) standard does not necessarily require exclusion of either side's experts. Rather, by deciding the disputed facts, the jury can decide which side's experts to credit. '[P]roponents 'do not

have to demonstrate to the judge by a preponderance of the evidence that the assessments of their experts are correct, they only have to demonstrate by a preponderance of evidence that their opinions are reliable... The evidentiary requirement of reliability is lower than the merits standard of correctness.'"

Advisory Committee Note to the 2023 amendment to Fed. R. Evid. 702 (citing Advisory Committee Note to the 2000 amendment to Rule 702, quoting *In re Paoli R.R. Yard PCB Litigation*, 35 F.3d 717, 744 (3d Cir. 1994)).

Thus, the Advisory Committee on the Federal Rules clarified both in 2000 and again in 2023, that the "sufficient facts or data" prong of Rule 702 was a test of whether the expert testimony was tied to facts that <u>might be</u> proven in a case. It did not empower trial judges to decide the underlying facts. Evaluating those facts is exclusively the role of the trier of fact. As noted, the 2023 amendment to Rule 702 merely clarified that the proponent of the evidence bears a preponderance burden to establish the admissibility of the evidence (not the ultimate correctness of the underlying expert opinion).

Here, EcoFactor clearly met that burden. It presented extensive evidence demonstrating the admissibility of Mr. Kennedy's opinions in response to a motion to exclude those opinions. EcoFactor's brief and exhibits presented to the trial court showed the admissibility of Mr. Kennedy's testimony by far more than the

preponderance standard.  SAppx852-960; SAppx997-1005.  EcoFactor presented the trial court with extensive evidence showing that Mr. Kennedy's opinions were based on a reliable analysis and were appropriately tied to the facts of the case.

Mr. Kennedy did not, as Google argued, simply manufacture a royalty rate with no basis in the evidence.  He relied on specific evidence (including the recitation of the rate on the face of the license agreements and negotiation documents reciting the $ AMOUNT ██ per unit rate) which clearly tied his analysis to specific facts in this case. As EcoFactor pointed out to the trial court, this was far different from cases where this Court has held that an expert improperly extracted a rate from a lump sum agreement without any connection to the underlying evidence.  *See, e.g.*, *MLC Intellectual Property, LLC v. Micron Technology, Inc.*, 10 F.4th 1358, 1368-69 (Fed. Cir. 2021) (affirming exclusion of expert testimony that licenses were based on a particular royalty rate when there was no evidence on the face of the agreement or in any calculation tying the rate to the agreements).  Instead, this is a case where the royalty rate derives directly from the executed licenses and the evidence surrounding those licenses.  *Pavo Solutions LLC v. Kingston Technology Co., Inc.*, 35 F.4th 1367, 1379 (Fed. Cir. 2022) (affirming admission of expert testimony that relied on a representation clause in a license agreement as a means to derive a royalty rate from the agreement).  Much like the situation in *Pavo*, here, the rate was recited on the face of the agreements themselves.  This Court similarly upheld a damages verdict

29

based on comparable licenses in the *Bio-Rad* case. *Bio-Rad Laboratories, Inc. v. 10X Genomics Inc.*, 967 F.3d 1353 (Fed. Cir. 2020). There, the Court confirmed long-standing precedent that if a license meets a baseline level of comparability, the ultimate question of the degree of comparability is a factual issue to be addressed by the jury. *Id.* at 1373-74. This Court also upheld the damages verdict based on a royalty rate from license agreements that the defendant argued was not the rate actually paid under those licenses. *Id.* at 1374-76. There, the plaintiff presented evidence from other witnesses supporting the reasonableness of the applied 15% royalty. *Id.* Likewise, here in addition to the recitations on the face of the three licenses, Mr. Habib, who negotiated the licenses, also testified about the manner in which the rates were calculated as discussed previously. The rate was also independently supported by negotiation documents relating to both the Daikin and Johnson agreements, and additional language on the face of the Schneider agreement. Each of these three agreements, by itself, was sufficient to support Mr. Kennedy's opinions. Thus, this case presents facts like *Pavo* and *Bio-Rad* where the expert's testimony about a rate was grounded in a representation clause on the face of a license agreement, and not like *MLC* where the underlying license contained nothing to tie the agreement to the rate proposed by the expert.

Other cases from this Court relied upon by Google like *Omega Patents* and *Apple* are significantly different than the facts of this case. In *Omega Patents*, the

Court rejected an expert's attempt to show that a royalty rate was supported by other agreements with different rates involving different patents merely by reference to a most-favored-nations clause that the plaintiff's expert admitted would not necessarily even apply. *Omega Patents, LLC v. CalAmp Corp.*, 13 F.4th 1361, 1379-80 (Fed. Cir. 2021). Specifically, the patentee relied on certain licenses, but contended that a most favored nations clause in an entirely different agreement (not one of the comparable licenses) somehow indicated the rate that would apply to the comparable licenses, even though the patentee's expert conceded that the clause would not actually apply. *Id.* Further, the expert did not offer an explanation for the differences between the proffered licenses and the hypothetical negotiation license. *Id.* at 1380-81. Here, by contrast, Mr. Kennedy relied on licenses that recited the same rate and explained and accounted for differences between those licenses and the hypothetical negotiation.

Similarly, in *Apple*, this Court rejected a damages theory in which the expert relied on licenses that were argued to be comparable, but which licensed many patents other than the patents-in-suit, and which disclosed no evidence that the patents-in-suit were key patents or otherwise were a focus of the licenses. *Apple Inc. v. Wi-Lan Inc.*, 25 F.4th 960, 972-973 (Fed. Cir. 2022) . The Court found that the expert failed to provide any testimony that any of the patents-in-suit were important components of the licenses considered, and that testimony to that effect was

untethered to any facts in evidence. *Id.* Here, by contrast, the '327 patent was specifically asserted and called out as an important patent on Exhibit A in the Daikin and Schneider licenses (unlike the situation in *Apple* where there was no evidence that the patents-in-suit were even discussed with the licensee). Further, here, EcoFactor's technical expert provided testimony about the technical comparability of each license and the technologies at issue in the asserted patents as matching the technologies enabled by the patent at issue in this case. Thus, unlike the *Apple* case, the expert here relied on specific record evidence that directly connected the identified royalty rate to the facts of this case and the specific licenses considered (including clear testimony relating to both technical and economic comparability of the licenses). *See, e.g.*, Appx5578-5582, Appx5759, Appx5763.

## B. The Panel Opinion Correctly Applied This Court's Long-Standing Precedent For Admitting Expert Testimony

Here, as the panel opinion correctly concluded, Mr. Kennedy's opinion was properly tied to the facts of the case and not based on mere speculation or conclusory assertions. *EcoFactor*, 104 F.4th at 253 (citing *Finjan, Inc. v. Secure Computing Corp.,* 626 F.3d 1197, 1212 (Fed. Cir. 2010); *C & F Packing Co., v. IBP, Inc.*, 224 F.3d 1296, 1304-05 (Fed. Cir. 2000)). The panel's decision was entirely consistent with this Court's precedents on this issue.

Any analysis of patent damages issues must begin with the language of the relevant statute, which provides that upon a finding for a patentee, "the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court." 35 U.S.C. § 284. The statute further provides that "[t]he court may receive expert testimony as an aid to the determination of damages or of what royalty would be reasonable under the circumstances." *Id.* Thus, given the findings of infringement and validity, the trial court was obliged to award damages to EcoFactor. The statute requires that those damages must be adequate to compensate EcoFactor for Google's infringement, and that the damages may not be less than a reasonably royalty for the use made of the invention by Google. The statute does not provide that the damages cannot exceed a reasonable royalty. It states the opposite, that the damages cannot be *less* than a reasonable royalty. Thus, Congress provided that a reasonable royalty is a floor, not a ceiling, for a damages award for patent infringement. *See Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1544 (Fed. Cir. 1995) (*en banc*) ("the purpose of this alternative is not to direct the form of compensation, but to set a floor below which damage awards may not fall").

The Supreme Court has never interpreted this statutory requirement. Google and some of the *amici* cite to cases from the 19th century such as *Garretson v. Clark*,

111 U.S. 120 (1884), and *Seymour v. McCormick*, 57 U.S. 480 (1853). Those cases, however, long predate the current version of section 284. *Seymour* recites various iterations of the damages statute, beginning with the Patent Act of 1790. *Seymour*, 57 U.S. at 488. The version applicable at the time of the decision, the Patent Act of 1836, provided that upon a verdict for the plaintiff in an action for infringement, "it shall be in the power of the court to render judgment for any sum above the amount found by such verdict as the actual damages sustained by the plaintiff, not exceeding three times the amount thereof, according to the circumstances of the case, with costs . . . ." Patent Act of 1836, Section 14, Pub. L. 24-357, 5 Stat. 117 (July 4, 1836). That statute referred to "actual damages" and made no reference to a "reasonable royalty." At most the Supreme Court has tangentially addressed the statutory language in considering whether damages could separately be recovered from a contributor to direct infringement when the direct infringer has already been licensed. *See Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 507-510 (1964).

This Court has long recognized at least two primary approaches to determining patent damages: an "analytical method" to assess the difference in profits that the infringer realized from the infringement over the profits that would have been realized without the infringement, and a hypothetical negotiation approach. *See Lucent Technologies, Inc., v. Gateway, Inc.*, 580 F.3d 1301, 1324

(Fed. Cir. 2009) (citing *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1118, 1120 (S.D.N.Y. 1970)).  This Court further explained that the hypothetical negotiation approach "necessarily involves an element of approximation and uncertainty." *Lucent*, 580 F.3d at 1325 (quoting *Unisplay, S.A. v. Am. Elec. Sign Co.*, 69 F.3d 512, 517 (Fed. Cir. 1995)).

In the context of the hypothetical negotiation approach, where a party relies on comparable license agreements, the Court has required that the expert's opinion be properly tied to the facts of the case.  *Virnetx, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1333-34 (Fed. Cir. 2014); *Whitserve, LLC v. Comput. Packages, Inc.*, 694 F.3d 10, 30 (Fed. Cir. 2012).  This Court has excluded expert testimony on damages when the expert speculated or had no basis in the evidence to connect a rate to the agreements considered.  *Whitserve*, 694 F.3d at 30-33; *Wordtech Sys., Inc. v. Integrated Networks Sols., Inc.*, 609 F.3d 1308, 1320 (Fed. Cir. 2012).  This inquiry is not, however, an invitation for a trial court to weigh the evidence or decide for itself the credibility of the expert's ultimate opinion.  *See Summit 6, LLC v. Samsung Electronics Co., Ltd.*, 802 F.3d 1283, 1296 (Fed. Cir. 2015) ("But where the methodology is reasonable and its data or evidence are sufficiently tied to the facts of the case, the gatekeeping role of the court is satisfied, and the inquiry on the correctness of the methodology and of the results produced thereunder belongs to the factfinder.").

The dissent at the panel stage argued that Mr. Kennedy's opinion should have been excluded because the evidence Mr. Kennedy relied upon from the licenses agreements was purportedly "self-serving." The dissent did not dispute that these recitals appear on the face of the licenses. Instead, it argued that the trial court should have made a determination as to the credibility of those recitals and then excluded the damages opinion that considereed them. The panel opinion was correct in rejecting the dissent's approach. "How much weight should be given to the provisions in the license agreements, including whether they are 'self-serving' as Google claims, and the EcoFactor-Johnson email is a question for the jury." *EcoFactor*, 104 F.4th at 253. The proper question for the trial court was whether the expert relied upon facts and evidence in the case in support of his opinion. Evaluating the credibility of those underlying facts is a separate matter for the jury. The facts relied upon by Mr. Kennedy, if true, clearly constitute sufficient facts to support his opinions. That is the only question for admissibility under Rule 702. The truth of those underlying facts is a question only the trier of fact – the jury – may decide. The panel opinion correctly recognized this distinction and notes that such credibility determinations are the province of the jury, not the trial judge and certainly not an appellate court. *EcoFactor*, 104 F.4th at 256-57 (citing *Reeves v. Sanderson Plumbing Prods., Inc.* 530 U.S. 133, 150 (2000).

The dissent also provided specific arguments based upon the record challenging the finding by the panel that there was sufficient evidence that the $█ [AMOUNT] per unit royalty rate in each license was applied. 104 F.4th at 258. However, each of those arguments fails to definitively refute the numerous facts showing that this royalty rate was applied to derive the lump sum in at least one of the licenses. Indeed, as the panel observed, "the Johnson license agreement alone would suffice," and this Court's damages precedent "does not demand 'absolute precision'" but rather tolerates "some degree of approximation and uncertainty." *Id.* at 254 n. 6. Because there are facts in the record evidencing that the $█ [AMOUNT] per unit rate was applied, the panel correctly found Mr. Kennedy's opinion admissible, notwithstanding the presence of other facts arguably supporting a different view of what happened.

First, the dissent concluded that the recitals in the Daikin and Schneider licenses are not sufficient evidence because a separate term in each license states that the lump sum payment is "not based upon sales and does not reflect or constitute a royalty." *EcoFactor*, 104 F.4th at 258 (citing Appx10391, Appx10402). But the provision stating that the lump sum is not "based upon sales" or is not a "royalty" does not refute the recital stating that the lump sum amount was determined using $█ [AMOUNT] per unit applied to "*past and projected future sales.*" Appx10389, Appx10400. Indeed, as the panel majority explained, this provision "does not mean the parties did not use the $█ [AMOUNT] royalty rate. 104 F.4th at 254 n.6. EcoFactor's expert reached

the same conclusion that the panel majority did. The panel correctly recognized that a reasonable juror could conclude from the totality of the evidence that the $█████ [AMOUNT] per unit rate was used with estimates of past and future sales to derive the lump sums. For example, consistent with the recital in the Daikin license, Mr. Kennedy relied upon Daikin negotiation documents reciting the same $███ [AMOUNT] per unit rate. Appx1245 (Kennedy Expert Report at ¶ 197 and n. 170). And the Schneider license's $███ [AMOUNT] per unit recital included an additional clause, inserted by Schneider, which strongly indicates that this rate was actually used. Appx10400. There would be no reason for Schneider to add the provision "although nothing in this clause should be interpreted as agreement by Schneider that $███ [AMOUNT] per unit is a reasonable royalty" unless Schneider did, in fact, use that rate to derive the lump sum amount. The panel correctly found that this provision would entitle a reasonable jury to find that the language in the Schneider agreement was a concession that the $███ [AMOUNT] rate was used to determine the royalty payment. 104 F.4th at 253-54.

Second, acknowledging the panel majority's conclusion that "the Johnson license agreement alone would suffice" (104 F. 4th at 254, n. 6), the dissent argued that the recital in the Johnson licenses is not sufficient evidence, even though the Johnson license has no terms which even arguably contradict the earlier recitation of the $███ [AMOUNT] per unit rate. 104 F.4th at 258-259. The dissent contends that the recital in the Johnson license is not evidence, arguing that "the Johnson license contains no

language describing how its lump-sum payment was calculated" and dismissing the recital stating exactly that because it "reflect[s] only EcoFactor's transparent attempt to manufacture a royalty rate using its 'belief.'" *Id.* The dissent emphasizes a single phrase in the recital referring to EcoFactor's belief about the "reasonable[ness]" of the rate, arguing that the entirety of the clause should be deemed a one-sided belief of EcoFactor and not evidence of whether the rate was actually used. Appx10411. Neither Mr. Kennedy nor the panel majority interpreted the agreement the way that the dissent did. And where, as here, a provision is subject to competing interpretations, that hardly renders the provision *irrelevant* to the admissibility inquiry, as the dissent asserts. No precedent entitles the Court to conclude that a contractual provision describing how a lump sum payment was calculated is not "sufficient facts or data" for an expert's opinion merely because that provision arguably recites the "belief" of one of the contracting parties. Nor is there any precedent requiring damages experts or Courts to **disbelieve** the patent licensor where a reasonable jury could do otherwise.

In any event, here, as the panel majority noted, EcoFactor introduced at trial an email where *Johnson itself* said it was "'applying the [$X rate].'" 104 F.4th at 253 (quoting Appx10798). The record thus shows that, not only did Johnson agree to include the recital of the rate in the license without objection, but Johnson also told EcoFactor during negotiations that it was applying that same rate. This clearly

establishes that Johnson *did* apply the rate; and at the very least it establishes that there were *sufficient facts* supporting a jury's conclusion that Johnson did so and supporting EcoFactor's understanding that Johnson did so. Considering the Johnson email, Mr. Kennedy was clearly entitled to offer his opinion. Experts are permitted to "assume the facts [underlying their testimony] to be true" where there is "evidence in the record that would support each of those facts." 30 Wright & Miller, Federal Practice and Procedure § 6665 (2d ed.). In that situation, "[t]he judge does not determine if those facts are true; rather the judge simply decides whether a reasonable jury could find them based on the evidentiary record." *Id.* Here, both the Johnson recital and the Johnson email are "evidence in the record" allowing a reasonable jury to find that Johnson applied $▮ per unit, rendering Mr. Kennedy's opinion admissible.

AMOUNT

Finally, the dissent argues that Mr. Kennedy lacked "sales data" and that Mr. Habib's testimony "offers no support" because Mr. Habib did not see the licensees' confidential sales data. But *Wordtech* does not require actual sales evidence where there is other evidence for the rate, as here. In any event, Mr. Kennedy relied upon market share evidence showing that Daikin, Schneider, and Johnson have very low sales in the smart thermostat market, which is consistent with the modest lump sum amounts paid by each licensee resulting from application of the recited rate to the licensees' estimated sales figures. Appx5746, Appx5801, Appx5804, Appx5819,

Appx10467. Google did not dispute this market share evidence. Appx6252. Mr. Kennedy also relied on Mr. Habib's understanding that the lump sums are consistent with the licensees' sales. "[D]espite being shielded from the licensees' confidential sales numbers, [Mr. Habib] believed, based on his understanding of the market, that the lump sums reasonably reflected the licensees' sales" because the licensees were new entrants in the market so it "makes sense that their sales numbers would be low since they'd recently started." 104 F.4th at 253. Far from conjuring the $ █ AMOUNT ██ rate from nothing, the panel correctly found that Mr. Kennedy had "sufficient facts or data" for that rate.

## C. Allowing Trial Judges To Evaluate The Credibility Of Evidence Relied On By An Expert Would Violate The Seventh Amendment

As discussed above, the panel dissent focused on the purportedly "self-serving" nature of information contained on the face of undeniably comparable license agreements. Essentially the dissent, Google, and its *amici*, argue that district courts should perform such credibility analyses as part of the gatekeeping inquiry under Fed. R. Evid. 702. That approach, however, would directly violate the Seventh Amendment.

The Seventh Amendment's mandate is simple: "In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise re-examined in any

Court of the United States, than according to the rules of the common law." U.S. Const., Amendment VII. The Supreme Court recognizes that patent infringement actions implicate the Seventh Amendment right to a trial by jury. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 377 (1996). Here, there is no dispute that EcoFactor exercised its Seventh Amendment right to have its claim for infringement tried to a jury.

Where the Seventh Amendment applies, it mandates that questions of fact are the exclusive province of the jury. Rule 702 presents questions at the intersection of the role of the judge in assessing the admissibility of evidence, and the role of the jury in determining the facts in a case. Some have argued that *Daubert* and its implementation in Rule 702 is itself violative of the Seventh Amendment. *See* Ronald J. Allen and Esfand Nafisi, *Daubert and its Discontents*, 76 BKNLR 131, 146-148 (2010).

EcoFactor does not argue that Rule 702 necessarily violates the Seventh Amendment, but it must not be applied in a manner which oversteps the role of the court and invades the role of the jury. Striking such a balance is relatively straightforward. A district court can reasonably evaluate whether an expert has employed a reliable methodology, whether that expert has relied upon actual or assumed facts that have an evidentiary basis in the record, whether such facts if accepted by the jury would support the expert's opinions, and whether the expert has

reliably applied an appropriate methodology to those facts. What a district court should not do is attempt to weigh the underlying evidence or substitute its own conclusions about the underlying facts for those of the jury.

The Advisory Committee notes to Rule 702 confirm that the trial court must strike this balance and avoid weighing the underlying facts itself. In discussing the 2000 amendment to Rule 702 which codified the *Daubert* standard and added the "sufficient facts or data" prong to the rule, it stated: "When facts are in dispute, experts sometimes reach different conclusions based on competing versions of the facts. The emphasis in the amendment on 'sufficient facts or data' is not intended to authorize a trial court to exclude an expert's testimony on the ground that the court believes one version of the facts and not the other." Advisory Committee Note to 2000 Amendment to Fed. R. Evid. 702.

What the dissent from the panel opinion, Google, and many of the *amici* advocate is to violate the Advisory Committee's clear direction. They advocate encouraging a district court to pick which version of the facts it chooses to believe, and to mandate that only expert opinions that apply that version of the facts may be admitted. Such an approach would exceed the prescription of the Advisory Committee that created Rule 702 and would violate the Seventh Amendment in doing so. Google points to no authority that would authorize a trial court to assume such a function in evaluating expert testimony. Certainly, the Supreme Court has

never suggested that a district court may choose the "correct" version of the facts that an expert must apply. Likewise, Google points to no case where this Court or any Court of Appeals has ever endorsed such an approach. Google and the *amici* supporting it largely ask this Court to recast Rule 702 into a tool to deprive parties of their Seventh Amendment right to have questions of fact resolved by a jury. This Court should decline such an invitation.

Here, when the Court applies Rule 702 as it is written and as clearly explained by the Advisory Committee notes, the judgment of the trial court must be affirmed. EcoFactor presented evidence from which the fact finder could conclude that each of the three comparable licenses to the patent-in-suit was based upon a particular per-unit royalty. The evidence included recitations on the face of each license agreement, testimony from EcoFactor's CEO who negotiated the agreements, and negotiation evidence relating to the royalty paid. From any or all of this evidence, the jury could reasonably conclude that the factual premise that one or all of the three licenses included payment based upon the recited royalty rate. This fact supports Mr. Kennedy's opinion and provides a more than sufficient factual basis for that opinion under Rule 702. Google argued that the jury should reach a different factual conclusion about each license and its payment terms. It was exclusively the role of the jury, not the trial judge, to weigh the evidence and determine which factual premise to accept. Mr. Kennedy's opinion was supported by sufficient facts which

were tied to record evidence that would support the jury finding those facts.  That is all that Rule 702 requires to satisfy the "sufficient facts or data" prong.

## D. Google Failed To Show That Any Purported Error Was Not Harmless

As discussed above, the district court made no error in admitting Mr. Kennedy's opinions regarding a reasonable royalty in this case.  EcoFactor respectfully submits that the Court should affirm the district court's judgment on that basis.  However, the Court need not reach that issue (and the Rule 702 issues that it presents) because even if Google could show that the district court erred in admitting Mr. Kennedy's opinions, it has failed to show that any such purported error was not harmless.

As noted previously, Fed. R. Civ. P. 61 and Fifth Circuit precedent require that any alleged error in admitting evidence must be shown to be <u>both</u> and abuse of discretion <u>and</u> not harmless.  *See* Section IV, *supra*.  Further, the burden on appeal to show that the error was not harmless rests with Google.  *Jordan v. Maxfield & Oberton Holdings, L.L.C.*, 977 F.3d 412, 417 (5th Cir. 2020).  Google cannot carry that burden here and has failed to show that the alleged error was in any way prejudicial here.

As an initial matter, Google's principal brief in the underlying panel appeal failed to make any meaningful showing that the asserted error in admitting Mr.

Kennedy's testimony was not harmless. Having failed to demonstrate a necessary element of its appeal in its principal brief, Google waived that issue for appeal and cannot resurrect it in this *en banc* proceeding. The district court's judgment should be affirmed on this basis alone.

Regardless of waiver, Google repeats its failure in its *en banc* principal brief. The word "harmless" does not even appear in Google's brief, and it fails to show that the admission of Mr. Kennedy's opinion, even if an error, was anything but harmless. First, Google's complaint is with Mr. Kennedy's discussion of a royalty rate recited on the face of three comparable license agreements. As discussed previously, the three license agreements were admitted into evidence without objection, so that the royalty rate recited on the agreements was before the jury regardless. Further, Mr. Habib testified to the royalty rate and to his understanding that each license fee was based on the application of that royalty rate. Google did not object to this testimony and has never argued on appeal that its admission was error. Google suggested in its *en banc* principal brief that it objected to admission of the royalty rate clause within the license agreements before the trial court, but it failed to raise that issue as an error in its appeal, thereby waiving the issue. These facts alone show that the admission of Mr. Kennedy's opinions about the licenses, even if erroneous as Google contends, was harmless because the same information was before the jury without objection.

Any purported error was also harmless because the jury's verdict was not calculated using the rate opined by Mr. Kennedy. The jury chose to award an amount substantially less than Mr. Kennedy opined. He opined that damages for past infringement based on application of the royalty rate recited in the license agreements was more than $[AMOUNT]. He explained that Google would also need to pay that rate for future sales after the verdict to compensate EcoFactor at that royalty rate. The jury, however, awarded only $20,019,300. That amount was not limited to past infringement but was identified by the jury as a one-time lump sum royalty. Thus, it covered Google's infringement for the life of the patent but was substantially less than the amount Mr. Kennedy calculated for only the past damages. And even if future sales are disregarded, the jury's verdict ($20,019,300) indicates a per-unit rate of $[AMOUNT] when applied to the [NUMBER] million infringing units identified as the royalty base by Mr. Kennedy. Appx5740. *That* rate is almost identical to the per-unit profit Google derives from the infringing HVAC Monitoring feature (one of Google's infringing features) according to EcoFactor's experts' analyses of Google's conjoint survey evidence showing that [PERCENT]% of the profits are attributable to this feature and that Google earns $[AMOUNT] per-unit in total profits. Separately from his discussion of EcoFactor's licenses, Mr. Kennedy opined that Google earns $[AMOUNT] per-unit in profit and explained that Mr. de la Iglesia's analysis of the three infringing features in Google's conjoint survey can be applied to that figure to

calculate a per-unit profit for each feature. Appx5757. The jury heard substantial evidence from Mr. de la Iglesia that the HVAC Monitoring feature attributable to infringement of the '327 patent constituted PERCENT ██% of the total. Appx5576-5577. Thus, as Mr. Kennedy opined, Mr. de la Iglesia's analysis of the HVAC Monitoring feature as representing PERCENT ██% can be applied to Google's $ AMOUNT ████ figure to calculate a per-unit profit for that '327 infringing feature of $ AMOUNT ███. Appx5757. This is almost identical to the rate that yields the jury's award ($20,019,300) when applied to the volume of infringing units Mr. Kennedy described.

Similarly, as discussed previously, the jury heard evidence of the comparative market share of the smart thermostat market that Google had as contrasted with that of the three licensees. It heard specific evidence that multiplying the lump sums in the three comparable licenses by a factor to equate to Google's market share would yield a lump sum between $ AMOUNT ██████ and $ AMOUNT ██████. SAppx1009-1010.

Under these circumstances, Google cannot credibly argue that Mr. Kennedy's testimony, even if admitted in error, was prejudicial. Google makes the conclusory and unsupported assertion that Mr. Kennedy's opinion regarding the $ AMOUNT ███ per unit rate "anchored" the jury's verdict. But Google offers no explanation of how Mr. Kennedy's testimony to that rate could provide such an anchor while Mr. Habib's un-objected testimony to the same rate would not. Quite simply Google's assertion

that admission of Mr. Kennedy's testimony about the rate alone was prejudicial and not harmless is a factual impossibility.

**E.    The *Amici* Supporting Google Offer Incorrect Arguments**

A number of *amici* filed briefs with this Court supporting Google.  The Court should be wary of many of these briefs as they are submitted by entities with various types of business relationships with Google including, for example, Apple, Dell, the Intellectual Property Owners Association (of which Google is a member), Samsung, Uber, Unified Patents (of which several of the *amici* are members), and others. Further, many of these *amici* focus their briefs on issues that the Court has made clear are not part of this *en banc* proceeding.  For example, the briefs of Apple, Askeladden, Dell, Professor Lemly and other professors, Medtronic, and Samsung, focus on apportionment issues that this Court has indicated would not be considered in this proceeding.  Others, such as the Atlantic Legal Foundation, the Chamber of Commerce, Cisco, and Lawyers for Civil Justice focus their arguments on the interpretation of the 2023 amendments to Rule 702 which do not apply in this case since the trial of this matter was in February 2022, long before the amendments took effect in December 2023.

Still other *amici*, such as SAS, Uber, Unified Patents, and US Made primarily argue generically that patent damages should be minimal so that infringement can be more profitable for infringers.  These arguments are particularly useless in this

proceeding.  None of these *amici* have engaged meaningfully with the facts of this case.  Broadly speaking, many of the *amici* supporting Google are frequently accused of (and often found liable for) infringement.  It should come as no surprise that they believe damages for patent infringement should be minimal.

Numerous technology companies like the *amici* supporting Google seek to benefit from the concept of "efficient infringement."  When confronted with patents held by smaller entities, large companies such as the many *amici* here will routinely refuse to even discuss a possible license with the patent holder unless and until a lawsuit is filed, and even then will force the patent holder to expend millions of dollars on that litigation, which is far beyond the means of many patent holders.  These infringers believe, too often correctly, that many legitimate infringement claims will simply disappear because the patent holder lacks the means to enforce its rights in costly litigation.  Further, even if these large infringers eventually are found to infringe, they argue that the damages should be no more than the reasonable royalty they would have paid without forcing the patentee to undergo the exorbitantly expensive gauntlet of litigation.  These giant infringers (indeed the United States Government has proven in court that Google itself is an illegal monopolist) argue that meaningful patent damages somehow stifle innovation.  This argument is absurd on its face.  Patent damages are available only from an infringer of a patent found to be valid.  By definition, infringement is not innovation.  The

innovation was by the patentee who was first to invent the technology subsequently used by the infringer. Infringers calling themselves innovators is nothing more than gaslighting that this Court should easily see through.

Fair patent damages that properly compensate patent holders for the value of their inventions as used by the infringer (the standard required by 35 U.S.C. § 284) are best measured by juries that can hear the arguments of both sides in a trial and weigh the evidence using unbiased common sense. Of course, infringers would prefer to pay lower damages when they are finally held to account for their infringement of the rights of others. They are free to explain to juries, as Google did in this case, why the fair damages to compensate the patent holder should be lower than the patentee requests. When juries award higher damages, it does not speak to a flaw in our system, but rather to the true merit of these infringers' arguments. Juries can evaluate the arguments and contentions of these infringers in an unbiased manner and consider what is fair compensation. Neither district judges, nor the members of this Court have any better or more useful expertise as to the proper amount of compensation needed to redress infringement than the juries of citizens who evaluate such matters in a trial. That is why the framers placed this role solely in the hands of jurors in the Seventh Amendment.

**F.  The Panel Opinion Affirming Judgment Of Infringement And No Invalidity Must Be Reinstated**

This Court vacated the panel opinion in this matter in its Order granting the petition for *en banc* review.  That Order, however, restricted the *en banc* review to only the issue of the admission of Mr. Kennedy's testimony under Rule of Evidence 702.  The Court subsequently issued a Precedential Order confirming the scope of this *en banc* proceeding and rejecting Google's attempt to include additional issues of apportionment of damages.  The panel opinion regarding the issues of infringement and of invalidity was unanimous in affirming the district court's judgment of infringement and of no invalidity.  This Court has not granted *en banc* review of either of those issues.  Accordingly, regardless of the Court's decision on the sole issue identified for *en banc* briefing, this Court must reinstate its ruling affirming the judgment of the district court as to all issues of infringement and validity of the '327 patent.

**G.  The Panel Opinion Should Be Reinstated Due To The Improper Nature Of This *En Banc* Proceeding**

In the Order granting Google's petition for *en banc* review, this Court noted that Circuit Judges Newman and Cunningham did not participate in the decision to grant *en banc* review.  The Order stated no reason for either judge's non-

participation. EcoFactor presumes that, at least with respect to Judge Newman, this Court's suspension of Judge Newman was the reason for her non-participation.

Congress requires that "A court in banc shall consist of all circuit judges in regular active service, or such number of judges as may be prescribed in accordance with section 6 of Public Law 95-486 (92 Stat. 1633) . . . ." 28 U.S.C. § 46(c). The referenced exception, Section 6 of Public Law 95-486 applies only to courts of appeal having more than 15 active judges. This Court does not have more than 15 active judges, so the exception is inapplicable. Judge Newman remains a judge of this court in regular active service under this section and EcoFactor is unaware of any recusal by Judge Newman from this matter.[2] EcoFactor respectfully submits that Judge Newman's exclusion from this *en banc* proceeding constitutes an improper *en banc* proceeding under Section 46(c). Accordingly, EcoFactor respectfully submits that the Court cannot properly issue any ruling in this *en banc* proceeding which would in any way alter the decision of the panel in this matter, and that the panel opinion should therefore be reinstated.

EcoFactor further submits that Judge Newman's exclusion (and Judge Cunningham's if not recused) constitutes a violation of EcoFactor's right to due process under the Fifth Amendment to the Constitution. An *en banc* proceeding of

---

[2] EcoFactor presumes that Judge Cunningham has recused herself from this proceeding. If that is not the case, her exclusion also constitutes a violation of Section 46.

this Court that is comprised only of a subset of the active judges of the Court, while excluding other judges, cannot result in a fair outcome. EcoFactor is entitled to have all active members of the Court participate in the discussions and deliberations of the issues in this matter. The very number of votes needed to determine a majority is skewed by the exclusion of some judges of the Court. Further, the deliberation of the Court should be informed by all members of the Court, not just a chosen subset. Judges may be influenced by the opinions voiced by other members of the Court during deliberation and the ultimate nature of a decision may be shaped by the voices of multiple judges, not just those who author a majority opinion. If the Court is to hear this case *en banc*, then fairness dictates that its deliberations must include the views of all judges of the Court. The failure to do so constitutes a violation of EcoFactor's rights to due process under the Fifth Amendment. For this independent reason, the opinion of the panel should be reinstated in this matter and the Court's mandate should issue accordingly.

## VI.    CONCLUSION

Google has not shown that the district court erred in admitting the testimony of EcoFactor's damages expert, Mr. Kennedy. Mr. Kennedy applied the reliable methodology of the hypothetical negotiation to his analysis. His analysis was based on sufficient facts to support his analysis, and he reliably applied his methodology to those facts. Google has failed to show that the district court abused its discretion

in admitting Mr. Kennedy's testimony. Further, Google has failed to show that, even if erroneous, the district court's admission of Mr. Kennedy's testimony was anything but harmless. For these, and the other reasons articulated above and in the proceedings at the panel stage and in the panel majority opinion, EcoFactor respectfully submits that the judgment of the district court should be affirmed, and the Court's mandate issued accordingly.

                                        Respectfully submitted,

 January 16, 2025                       */s/ Brian Ledahl*
                                        Reza Mirzaie
                                        rmirzaie@raklaw.com
                                        Marc A. Fenster
                                        mfenster@raklaw.com
                                        Brian Ledahl
                                        bledahl@raklaw.com
                                        Kristopher R. Davis
                                        kdavis@raklaw.com
                                        James N. Pickens
                                        jpickens@raklaw.com
                                        Minna Y. Chan
                                        mchan@raklaw.com
                                        Russ, August & Kabat
                                        12424 Wilshire Blvd., 12th Floor
                                        Los Angeles, CA 90025
                                        Tel: (310) 826-7474

                                        *Attorneys for Plaintiff-Appellee
                                        EcoFactor, Inc.*

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION**

The undersigned hereby certifies that the foregoing brief complies with the relevant type-volume limitations of the Federal Rules of Appellate Procedure and Federal Circuit Rules because the brief has been prepared using a proportionally spaced typeface using Microsoft Word in 14-point or larger Times New Roman Font or another proportionally spaced typeface with serifs and includes 13,158 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f), Federal Circuit Rule 32(b)(2), and Federal Circuit Rule 28(a)(12).

January 16, 2025

*/s/ Brian Ledahl*
Reza Mirzaie
rmirzaie@raklaw.com
Marc A. Fenster
mfenster@raklaw.com
Brian Ledahl
bledahl@raklaw.com
Kristopher R. Davis
kdavis@raklaw.com
James N. Pickens
jpickens@raklaw.com
Minna Y. Chan
mchan@raklaw.com
Russ, August & Kabat
12424 Wilshire Blvd., 12th Floor
Los Angeles, CA 90025
Tel: (310) 826-7474

*Attorneys for Plaintiff-Appellee*
*EcoFactor, Inc.*