No. 2023-1101

# In the United States Court of Appeals for the Federal Circuit

---

**ECOFACTOR, INC.**,

*Plaintiff-Appellee*,

v.

**GOOGLE, INC.**,

*Defendant-Cross-Appellant.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TEXAS
CASE NO. 6:20-CV-00075-ADA, JUDGE ALAN D. ALBRIGHT

---

**BRIEF OF THE NEW CIVIL LIBERTIES ALLIANCE AS**
*AMICUS CURIAE* **IN SUPPORT OF PLAINTIFF-APPELLEE**

---

Gregory Dolin
  *Counsel Of Record*
NEW CIVIL LIBERTIES ALLIANCE
4250 N. Fairfax Drive, Suite 300
Arlington, VA 22203
(202) 869-5210
Greg.Dolin@ncla.legal

January 24, 2025              *Counsel for Amicus Curiae*

# CERTIFICATE OF INTEREST

The undersigned counsel for *amicus curiae* certifies the following in accordance with Fed. Cir. R. 47.4 and Fed. R. App. P. 26.1. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

***Amicus*:** *Amicus curiae* the New Civil Liberties Alliance states that it is a nonprofit organization under the laws of the District of Columbia. It has no parent corporation, and no publicly held corporation owns 10 percent or more of its stock. *Amicus curiae* the New Civil Liberties Alliance is a nonpartisan, nonprofit organization devoted to defending civil liberties. The New Civil Liberties Alliance was founded to challenge multiple constitutional defects in the modern administrative state through original litigation, *amicus curiae* briefs, and other means of advocacy. The brief is being filed pursuant to Court Order of September 25, 2024, which permitted filing of amicus briefs without further leave of the Court. No counsel for a party authored any part of this brief. And no one other than the *amicus curiae*, its members, or its counsel contributed money that was intended to finance the preparation or submission of this brief.

***Real Party in Interest:*** None.

***Counsel for Amicus*:** The New Civil Liberties Alliance is a nonpartisan, nonprofit corporation exempt from income tax under section 501(c)(3) of the Internal Revenue Code, 26 U.S.C. § 501(c)(3). It does not have a parent corporation, and no

publicly held company has a 10% or greater ownership interest in it. Gregory Dolin, Counsel of Record, is a Senior Litigation Counsel for the New Civil Liberties Alliance.

*Previous Counsel for Amicus*: None/Not Applicable.

*Related Cases:* None.

*Organizational Victims and Bankruptcy Cases:* None/Not Applicable

<u>/s/ Gregory Dolin</u>
Gregory Dolin
*Counsel for Amicus Curiae*

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................... iii
TABLE OF AUTHORITIES ..................................................................................... iv
INTEREST OF AMICUS CURIAE ............................................................................ 1
ARGUMENT ............................................................................................................. 2
   I.  THE LANGUAGE, HISTORY AND PURPOSE OF THE FEDERAL STATUTE
      AUTHORIZING *EN BANC* SITTINGS UNEQUIVOCALLY REQUIRE AN *EN BANC*
      COURT TO INCLUDE ALL JUDGES IN "REGULAR ACTIVE SERVICE" .................... 2
   II.  JUDGE NEWMAN IS IN "REGULAR ACTIVE SERVICE" ............................................ 8
   III. THE STATUTORY EXCEPTION PERMITTING FEDERAL CIRCUIT PANELS OF
       MORE THAN THREE JUDGES DOES NOT PERMIT A LIMITED *EN BANC*
       COURT ................................................................................................................ 9
CONCLUSION ........................................................................................................ 11
CERTIFICATE OF COMPLIANCE ........................................................................ 12
CERTIFICATE OF SERVICE .................................................................................. 13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Allen v. Johnson*,
　391 F.2d 527 (5th Cir. 1968) ............................................................................. 4, 10

*Arnold v. E. Air Lines, Inc.*,
　712 F.2d 899 (4th Cir. 1983) ..................................................................................... 5

*Bristol Reg'l Women's Ctr., P.C. v. Slatery*,
　993 F.3d 489 (6th Cir. 2021) ..................................................................................... 3

*Brnovich v. Democratic Nat'l Comm.*,
　594 U.S. 647 (2021) ................................................................................................. 2

*EcoFactor, Inc. v. Google LLC*,
　115 F.4th 1380 (Fed. Cir. 2024) ............................................................................. 10

*Gundy v. United States*,
　588 U.S. 128 (2019) ................................................................................................. 6

*Hart v. Massanari*,
　266 F.3d 1155 (9th Cir. 2001) ................................................................................... 5

*McQuiggin v. Perkins*,
　569 U.S. 383 (2013) ................................................................................................. 4

*Nunes v. Ashcroft*,
　375 F.3d 810 (9th Cir. 2004) ..................................................................................... 8

*Textile Mills Sec. Corp. v. Comm'r*,
　314 U.S. 326 (1941) .......................................................................................... 4, 5, 6

*United States v. Am.-Foreign S. S. Corp.*,
　363 U.S. 685 (1960) ................................................................................................. 9

*Yovino v. Rizo*,
　586 U.S. 181 (2019) ................................................................................................. 9

*Zahn v. Int'l Paper Co.*,
　469 F.2d 1033 (2d Cir. 1972) .................................................................................... 7

**Statutes**

28 U.S.C. § 44 .............................................................................................................. 6, 7

28 U.S.C. § 455 ............................................................................................................ 9

28 U.S.C. § 46 ................................................................................................... 2, 3, 6, 9

Act of January 13, 1912,
  ch. 9, 37 Stat. 52 ................................................................................................... 5

Act of March 3, 1911,
  ch. 231, 36 Stat. 1087 ........................................................................................... 4

Act of Oct. 20, 1978,
  Pub. L. 95-486, 92 Stat. 1629 ............................................................................ 6, 7

Judiciary Act of 1891,
  ch. 517, 26 Stat. 826 (March 3, 1891) .................................................................. 4

**Rules**

5th Cir. R. 40.2.6 ........................................................................................................ 7

6th Cir. I.O.P. 40(g) .................................................................................................... 7

Fed. R. App. P. 40 ...................................................................................................... 6

**Other Authorities**

*En Banc*,
  Black's Law Dictionary 546 (7th ed. 1999) ............................................................ 3

*In re Complaint No. 23-90015*
  (Orders of Sept. 6, 2024 and Sept. 20, 2023) ........................................................ 8

Letter from Sandra Day O'Connor, Associate Justice, United States Supreme
  Court to Hon. Byron R. White, Chair, White Commission (June 23, 1998) ............... 7

Pamela Ann Rymer,
  *The "Limited" En Banc: Half Full, Or Half Empty?*, 48 Ariz. L. Rev. 317 (2006) ........... 8

**INTEREST OF AMICUS CURIAE**

The New Civil Liberties Alliance ("NCLA") is a nonpartisan, nonprofit civil-rights organization devoted to defending constitutional freedoms from the administrative state's depredations. The "civil liberties" of the organization's name include rights at least as old as the U.S. Constitution itself: such as due process of law, the right to live under laws made by the nation's elected lawmakers through constitutionally prescribed channels, the right to have executive power exercised only by actors directed by the President, and the right to a trial by jury, which is at stake in this appeal. Yet these selfsame rights are also very contemporary—and in dire need of renewed vindication—because Congress, federal administrative agencies, and even sometimes the courts, have neglected them for so long.

NCLA aims to defend civil liberties—primarily by reasserting constitutional constraints on the administrative state. Although Americans still enjoy the shell of their Republic, a very different sort of government has developed within it—a type, in fact, that the Constitution was designed to prevent. This unconstitutional administrative state within the Constitution's United States is the focus of NCLA's concern.

NCLA is particularly disturbed by the ongoing and unlawful suspension, by an administrative body, of Federal Circuit Judge Pauline Newman from her judicial office which in turn deprives the litigants of their right to have their cases heard by the *court*, rather than merely a subset of same. The federal statute which authorizes Courts of

1

Appeals to sit *en banc* (absent explicit exceptions not applicable here) only authorizes courts to act as a *whole body*, not as a rump body.

Because in Judge Newman's absence the putative *en banc* court is improperly and deficiently constituted, it cannot lawfully act. For that reason, the Court should sit with its full complement of judges. Alternatively, rehearing *en banc* should be vacated as improvidently granted, and the panel's opinion reinstated.

## ARGUMENT

### I. THE LANGUAGE, HISTORY AND PURPOSE OF THE FEDERAL STATUTE AUTHORIZING *EN BANC* SITTINGS UNEQUIVOCALLY REQUIRE AN *EN BANC* COURT TO INCLUDE ALL JUDGES IN "REGULAR ACTIVE SERVICE"

First, the text. *See Brnovich v. Democratic Nat'l Comm.*, 594 U.S. 647, 667 (2021) ("Today, our statutory interpretation cases almost always start with a careful consideration of the text, and there is no reason to do otherwise here.").

Consideration of cases by Courts of Appeals is governed by Section 46 of Title 28. Under that section, a "court may authorize the hearing and determination of cases and controversies by separate panels, each consisting of three judges." 28 U.S.C. § 46(b). Furthermore, for all courts of appeals, except the Federal Circuit, "[c]ases and controversies shall be heard and determined by a court or panel of not more than three

2

judges … unless a hearing or rehearing before the court in banc is ordered." *Id.* § 46(c).[1]
However the "Federal Circuit exception," which will be discussed, *see* Part III, *post*, applies only to the size and composition of *panels*, not the size or the composition of the *en banc* court. The statute thus gives courts a choice—sit in a panel of three or "*in banc*,"[2] with the three-judge panel being a default rule for the determination of a vast majority of cases. *See Bristol Reg'l Women's Ctr., P.C. v. Slatery*, 993 F.3d 489, 490 (6th Cir. 2021) (Moore, J., dissenting from grant of *en banc* review) ("28 U.S.C. § 46 designates a three-judge panel as the default for federal appellate review").

The words "*en banc*" have a clear and well settled definition. They mean "[w]ith all judges present and participating; in full court." *En Banc*, Black's Law Dictionary 546 (7th ed. 1999). There is no evidence that when Congress adopted Section 46(c) of Title 28 it meant anything different.

The import of the language of Section 46 is clear—"the Court has to sit either in panels of three judges or *all* the judges. Any opportunity or possibility of the outcome being affected by a choice of more than three but less than all, whether fortuitous or

---

[1] The statute permits the Federal Circuit to "determine by rule the number of judges, not less than three, who constitute a panel," 28 U.S.C. § 46(b), and "sit in panels of more than three judges if its rules so provide," *id.* § 46(c). This issue is addressed below.

[2] The statute uses "in" rather than "en."

3

purposeful, was [through Congressional legislation] avoided." *Allen v. Johnson*, 391 F.2d 527, 532 (5th Cir. 1968).

Next, the history. *See McQuiggin v. Perkins*, 569 U.S. 383, 398, n.3 (2013) ("Congress legislates against the backdrop of existing law"). The history of the creation of an *en banc* process confirms the understanding that the *en banc* court must consist of *all* judges in regular active service. Prior to the creation of courts of appeals, appeals were heard by circuit courts each of which "consist[ed] of three judges." *See* Judiciary Act of 1891, ch. 517, § 2, 26 Stat. 826 (March 3, 1891). Circuit and district judges, as well as Justices of the Supreme Court were "competent to sit as judges of the circuit court of appeals within their respective circuit." *Id.* § 3. In other words, a "circuit court of appeals was to be composed of only three judges who were to be drawn from the three existing groups of judges—the circuit justice, the circuit judges, and the district judges." *Textile Mills Sec. Corp. v. Comm'r*, 314 U.S. 326, 328-29 (1941) (footnote omitted).

When Congress abolished old circuit courts and instead created courts of appeals, *see* Act of March 3, 1911, ch. 231, 36 Stat. 1087, the change resulted in some circuits having more than three judges. *See Textile Mills*, 314 U.S. at 329 (noting that at that time, the relevant statute "provided for four circuit judges in the Second, Seventh, and Eighth Circuits."). In 1912, Congress clarified that "The circuit judges in each circuit shall be judges of the circuit court of appeals in that circuit." Act of January 13,

4

1912, ch. 9, 37 Stat. 52, 53. The change made "it clear that the circuit judges in the various circuits of the United States shall constitute the circuit court of appeals." *Textile Mills*, 314 U.S. at 330-31 (quoting 47 Cong. Rec., Pt. 3, p. 2736 (statement of Sen. Howard Sutherland)). This clarification meant that "the size of each circuit court of appeals was *not to be less* than the number of circuit judges authorized by law." *Id.* at 331 (emphasis added). As the *Textile Mills* Court explained, the 1911 and 1912 Acts created new courts that could act *either* as panels of three judges *or* as a *whole court*. *Id.* at 333. Five years later, when it enacted Section 46(c), Congress codified *Textile Mills*. *See Hart v. Massanari*, 266 F.3d 1155, 1174 (9th Cir. 2001).

What is evident from this history is that Congress *always* expected appellate courts to act as a whole court unless statutorily authorized to act by a smaller subset. Under the old circuit court system, the whole court was always composed of three judges and only three judges, though the identity of the judges may have varied from case to case. Once courts of appeals were created, however, in order to act *as a court*, they had to act only through a panel of three judges or by a full complement of judges.[3]

---

[3] This conclusion is not undermined by the possibility that occasionally judges may recuse themselves. Once a judge recuses from a case, "he is *out of service* insofar as that particular case is concerned." *Arnold v. E. Air Lines, Inc.*, 712 F.2d 899, 904 (4th Cir. 1983) (*en banc*) (emphasis in original). Thus, a recused judge is simply not a member of the court for purposes of that case. This is the case with Judge Cunningham. But Judge Newman has not recused herself from this case and therefore remains a member of the Court in "regular active service."

5

Finally, the purpose. *See Gundy v. United States*, 588 U.S. 128, 140 (2019) (describing "statutory interpretation as a 'holistic endeavor' which determines meaning by looking not to isolated words, but to text in context, along with purpose and history.") (plurality opinion). The purpose of the *en banc* process is evident from both the text of the Federal Rules of Appellate Procedure and judicial opinions that preceded and followed the enactment of § 46(c) and the relevant rules.

The purpose of rehearing cases *en banc* is to 1) resolve inter- or intra-circuit conflicts, Fed. R. App. P. 40(b)(2)(A, C); 2) bring circuit law into compliance with a decision of the United States Supreme Court, *id.* 40(b)(2)(B); or 3) resolve cases which "involve[] one or more questions of exceptional importance," *id.* 40(b)(2)(D). For that reason, when an *en banc* rehearing is ordered, "[a] court … shall consist of all circuit judges in regular active service." 28 U.S.C. § 46(c).[4]

In order to accomplish the goals of the rule, a court of appeals must *necessarily* speak as a whole court because only by doing so can "[c]onflicts within a circuit [] be avoided [and] [f]inality of decision in the circuit courts of appeal [] be promoted." *Textile Mills*, 314 U.S. at 335. As Judge Mansfield explained, "[t]he goal of § 46(c) and of Rule

---

[4] Courts of appeals with more than 15 authorized judgeships may utilize an alternative *en banc* process where the *en banc* court can consist of fewer than all active members. *See* Act of Oct. 20, 1978, Pub. L. 95-486, § 6, 92 Stat. 1629, 1633. This proviso further solidifies the point that the Federal Circuit may not convene an *en banc* court consisting of fewer than all active members, because it has only 12 authorized judgeships. 28 U.S.C. § 44.

[40(b)[5]] is to achieve intracircuit uniformity by assuring that where questions of exceptional importance are presented the law of the circuit will be established by the vote of a majority of the *full court* rather than by a three-judge panel." *Zahn v. Int'l Paper Co.*, 469 F.2d 1033, 1041 (2d Cir. 1972) (Mansfield, J., concurring), *aff'd by* 414 U.S. 291 (1973) (citing H.R. Rep. No. 1246, 77th Cong., 1st Sess. (1941); Hearings on S. 1053; before a Subcommittee of the Senate Committee, 77th Cong., 1st Sess. 14-16 (1941)) (emphasis added). Any alternative approach undermines the very purpose of the *en banc* process.

Indeed, the only court that has utilized a "limited" *en banc* process (as it is authorized to do, *see supra* n.4), has been criticized for doing so. *See, e.g.*, Letter from Sandra Day O'Connor, Associate Justice, United States Supreme Court to Hon. Byron R. White, Chair, White Commission 2 (June 23, 1998), https://tinyurl.com/5xmauxvk (arguing that the Ninth Circuit's limited *en banc* procedures "cannot serve the purposes of *en banc* hearings as effectively as do the *en banc* panels consisting of all active judges that are used in the other circuits.").[6] Even the members of that court conceded that

---

[5] The original opinion refers to Rule 35(a); however, in 2024, the contents of Rule 35 were transferred to Rule 40.

[6] Perhaps for this reason, neither the United States Court of Appeals for the Fifth Circuit, with its 17 authorized judgeships, *see* 28 U.S.C. § 44(a), nor the United States Court of Appeals for the Sixth Circuit, with its 16 authorized judgeships, *see id.*, has chosen to use a "limited *en banc*" process, *see* 92 Stat. 1633, though both are authorized to do so. *See* 5th Cir. R. 40.2.6; 6th Cir. I.O.P. 40(g).

7

"occasionally, the *en banc* vote does not reflect the true sentiment of the majority of the court." *Nunes v. Ashcroft*, 375 F.3d 810, 818 (9th Cir. 2004) (Reinhardt, J., dissenting from denial of rehearing *en banc*). *See also* Pamela Ann Rymer, *The "Limited" En Banc: Half Full, Or Half Empty?*, 48 Ariz. L. Rev. 317, 317-18 (2006) ("[A] full bench, comprising *all active* members of the court, serves important collegiality, efficiency, and accountability functions that a limited *en banc*, consisting of judges randomly selected on a case-by-case basis, cannot possibly perform. For this reason, I see a 'limited' *en banc* as half empty.") (footnote omitted).

But at the very least, whatever the drawbacks to the Ninth Circuit's proceedings may be, those proceedings are explicitly authorized by statute. In contrast, for a smaller court like the Federal Circuit, Section 46(c) provides no exception to the requirement that the *en banc* court shall consist of all judges in regular active service.

In summary, the text, history and purpose of the statutory language authorizing *en banc* proceedings lead to the same conclusion—*all* non-recused judges in regular active service must sit whenever a case is reheard *en banc*.

## II. JUDGE NEWMAN IS IN "REGULAR ACTIVE SERVICE"

One might think that the prior orders of the Judicial Council of the Federal Circuit suspending Judge Newman from hearing cases, *see In re Complaint No. 23-90015* (Orders of Sept. 6, 2024 and Sept. 20, 2023), mean she is not in "regular active service." However, such a conclusion would fly in the face of the U.S. Supreme Court's clear and

8

unambiguous definition of that phrase. "The literal meaning of the words ["regular active service"] seems plain enough. An 'active' judge is a judge who has not retired 'from regular active service.' … There is *nothing* in the history of the legislation to indicate that these words should be understood to mean anything else than what they say." *United States v. Am.-Foreign S. S. Corp.*, 363 U.S. 685, 688-69 (1960) (emphasis added) (citations omitted).[7] Judge Newman has not retired, and therefore is in "regular active service." She thus *must* sit during any *en banc* proceedings unless required to recuse under 28 U.S.C. § 455. Because she has not recused herself under that statute, an *en banc* court that excludes her is constituted in contravention of the "plain enough" language of Section 46(c).

### III. THE STATUTORY EXCEPTION PERMITTING FEDERAL CIRCUIT PANELS OF MORE THAN THREE JUDGES DOES NOT PERMIT A LIMITED *EN BANC* COURT

Uniquely among courts of appeals, the Federal Circuit is permitted to sit in panels larger than three. *See* 28 U.S.C. § 46(b, c). However, in order to do so, the Federal Circuit must "determine by rule the number of judges, not less than three, who constitute a panel." *Id.* § 46(b). The closest that the Federal Circuit has come is Fed. Cir. R. 47.2, which states that "[w]hen not heard *en banc*, cases and controversies will be heard and determined by a panel consisting of an odd number of at least three

---

[7] The part of the holding that concluded that a senior judge cannot be a member of an *en banc* court was superseded by statute. *See Yovino v. Rizo*, 586 U.S. 181, 185 (2019).

9

judges.'"[8] On its face, that rule does not actually specify how many judges must sit on any panel.[9]

However, even if Rule 47.2 can be construed as authorizing panels larger than three, it cannot be relied on in this case. The Rule explicitly excludes from its coverage, cases that are "heard *en banc*." Since the Court's order of September 25, 2024, *explicitly* ordered "rehearing en banc," *EcoFactor, Inc. v. Google LLC*, 115 F.4th 1380 (Fed. Cir. 2024) (ordering rehearing *en banc*), Rule 47.2 is inapplicable to the proceedings.[10]

In short neither the statute nor the Federal Circuit's Rule 47.2 provides any shelter for the Court's insupportable decision to rehear this case in a panel comprised of "more than three but less than all" judges. *Allen*, 391 F.2d at 532.

---

[8] Rule 47.2, however, does not specify under what conditions a panel composed of more than three judges is to be convened.

[9] The "at least three judges" language simply complies with the statutory requirements that cases must be heard in panels.

[10] Even if Rule 47.2 and the Court's September 25, 2024 orders could be read (contrary to their plain language) as authorizing a large, but not "en banc" panel, the currently constituted panel would still fail to comply with Rule's requirement that "a panel [must] consist[] of an odd number of … judges." Fed. Cir. R. 47.2 (emphasis added). As the Court's September 25, 2024 Order indicates, ten judges participated in issuing the order, and assuming that that number does not change during the actual consideration of the case, the number of participating judges would be an even and not an odd number as required by the Rule.

## CONCLUSION

The Court should convene an *en banc* court consistent with the requirements of the statute, the Federal Rules of Appellate Procedure, and its own internal rules, which would mean one comprised of *all* non-recused judges in "regular active service," including Judge Newman. Alternatively, the Court must vacate the order granting rehearing *en banc* and reinstate the panel's decision. Any other approach would result in a judgment rendered by an unlawfully constituted tribunal.

Respectfully submitted,

*/s/ Gregory Dolin*
Gregory Dolin
    *Counsel of Record*
NEW CIVIL LIBERTIES ALLIANCE
4250 N. Fairfax Drive, Suite 300
Arlington, VA 22203
(202) 869-5210
Greg.Dolin@ncla.legal

January 24, 2025

# CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the typeface requirements of Rule 32(a)(5) and the typestyle requirements of Rule 32(a)(6) because this brief was prepared in 14-point Garamond, a proportionally spaced typeface, using Microsoft Word. *See* Fed. R. App. P. 29(a)(4), (b)(4), 32(g)(1). This brief complies with the type-volume limitation of Rule 29(a)(5) because it contains 2,799 words, excluding the parts exempted under Rule 32(f).

*/s/ Gregory Dolin*

## CERTIFICATE OF SERVICE

I hereby certify that on January 24, 2025 an electronic copy of the foregoing brief *amicus curiae* was filed with the Clerk of Court for the United States Court of Appeals for the Federal Circuit using the appellate CM/ECF filing system and that service will be accomplished using the appellate CM/ECF system.

I further certify that on January 27, 2025 an electronic copy of the foregoing brief *amicus curiae* with Court-required corrections to the Certificate of Interest (and no other changes) was filed with the Clerk of Court for the United States Court of Appeals for the Federal Circuit using the appellate CM/ECF filing system and that service will be accomplished using the appellate CM/ECF system.

*/s/ Gregory Dolin*
