# United States Court of Appeals
# for the Federal Circuit

---

ECOFACTOR, INC.,
*Plaintiff-Appellee,*
v.
GOOGLE LLC,
*Defendant-Appellant.*

---

On Appeal from the United States District Court
for the Western District of Texas
Case No. 6:20-cv-00075-ADA
Hon. Alan D. Albright

---

## GOOGLE LLC'S NON-CONFIDENTIAL EN BANC REPLY BRIEF

---

VINCENT Y. LING
MUNGER, TOLLES & OLSON LLP
350 S. Grand Avenue
  50th Floor
Los Angeles, CA 90071
Telephone: (213) 683-9573
Email: vincent.ling@mto.com

GINGER D. ANDERS
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Avenue NW
  Suite 500E
Washington, DC 20001
Telephone: (202) 220-1100
Email: ginger.anders@mto.com

*Counsel for Defendant-Appellant Google LLC*

(Additional counsel on inside cover)

February 18, 2025

EVAN MANN
MUNGER, TOLLES & OLSON LLP
560 Mission Street
  27th Floor
San Francisco, CA 94105
Telephone: (415) 512-4000
Email: evan.mann@mto.com

ROBERT A. VAN NEST
LEO L. LAM
EUGENE M. PAIGE
R. ADAM LAURIDSEN
KRISTIN E. HUCEK
STEPHANIE J. GOLDBERG
KEKER, VAN NEST & PETERS LLP
633 Battery Street
San Francisco, CA 94111
Telephone: (415) 391-5400
Email: rvvannest@keker.com

*Counsel for Defendant-Appellant Google LLC*

# CERTIFICATE OF INTEREST

Counsel for Google LLC certifies the following:

1.      The full name of every party represented by me is:

Google LLC

2.      The names of the real parties in interest represented by me are:

None

3.      All parent corporations and any publicly held companies that own 10% or more of stock in the parties represented by me are:

XXVI Holdings Inc. and Alphabet Inc.

4.      The names of all law firms and the partners or associates that appeared for the parties now represented by me before the originating court or that are expected to appear in this court (and who have not or will not enter an appearance in this case) are:

Keker, Van Nest & Peters LLP:
      Eric B. Hanson
      Jennifer A. Huber (now with the San Francisco City Attorney's Office)
      Matthias Andreas Kamber (now with Paul Hastings LLP)
      Patrick E. Murray (now with Gibson, Dunn & Crutcher LLP)
      Anna Porto (now in-house counsel with Mercury)
      Gregory D. Washington (now with Jenner & Block LLP)

Potter Minton PC:
      Michael E. Jones
      Shaun William Hassett

Allen & Overy LLP (now A&O Shearman):
      Shamita D. Etienne-Cummings (now with Paul Hastings LLP)
      James P. Gagen (now with Paul Hastings LLP)
      Eric Lancaster (now with Paul Hastings LLP)
      James Reed (now with Crowell & Moring LLP)
      Bijal V. Vakil (now with Skadden, Arps, Slate, Meagher & Flom LLP)

White & Case LLP:
      Henry Yee-Der Huang

Michael J. Songer

5.   The title and number of any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this Court's decision in the pending appeal is:

> In re *Ex Parte* Reexamination of U.S. Patent No. 8,738,327, 90/014,915
> (U.S. PTO Dec. 3, 2021)
>
> *Google, LLC v. EcoFactor, Inc.*, 3:21-cv-01468
> (N.D. Cal. Mar. 1, 2021)
>
> *Google, LLC v. EcoFactor, Inc.*, 4:21-cv-03220
> (N.D. Cal. April 30, 2021)
>
> *EcoFactor, Inc. v. Google, LLC*, 5:22-cv-07661
> (N.D. Cal. Dec. 5, 2022)
>
> *Google, LLC v. EcoFactor, Inc.*, 5:22-cv-00162
> (N.D. Cal. Jan. 10, 2022)
>
> *EcoFactor, Inc. v. Google, LLC*, 4:24-cv-00175
> (N.D. Cal. Jan. 9, 2024)

6.   Organizational Victims and Bankruptcy Cases: Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees) are not applicable because this is not a criminal or bankruptcy case.  See Fed. Cir. R. 47.4(a)(6).

None

DATED: February 18, 2025          By: */s/ Ginger D. Anders*
                                       Ginger D. Anders

# TABLE OF CONTENTS

<u>Page</u>

CERTIFICATE OF INTEREST ...............................................................i

CONFIDENTIAL MATERIAL OMITTED ......................................... iii

INTRODUCTION ..............................................................................1

ARGUMENT .....................................................................................3

I.  This Court Should Reject EcoFactor's Efforts to Nullify Rule 702. ..............3

II. Rule 702 Requires Exclusion of Kennedy's Assignment of a **NRR** Rate to the Licenses. ..................................................................10

    A.  Kennedy's opinion is unreliable under Rule 702(b) and (c). ..............11

    B.  Precedent confirms that Kennedy's testimony should have been excluded...........................................................................20

    C.  EcoFactor's defense of the panel's decision is meritless....................22

III. Kennedy's Testimony Was Prejudicial. ........................................23

CONCLUSION ...............................................................................30

CERTIFICATE OF COMPLIANCE & CONFIDENTIALITY ..............................32

CERTIFICATE OF SERVICE .............................................................33

## <u>CONFIDENTIAL MATERIAL OMITTED</u>

The numerical royalty rate ("NRR") that EcoFactor advanced in confidential settlement agreements with third party licensees, which was presented during sealed fact and expert testimony at trial, has been omitted from pages iii, 1, 2, 6-8, 10-14, 17-19, and 23-28. The amount of alleged past damages that EcoFactor sought, presented during sealed expert testimony, has been omitted from page 27. The purported dollar amount under Kennedy's theory of Nest's profits, which was presented during sealed expert testimony, has been omitted from page 28. The

# TABLE OF CONTENTS
## (Continued)

purported per-unit royalty corresponding to the jury's damages award, derived from the number of alleged infringing units presented during sealed fact and expert testimony at trial, is omitted from page 28. The purported amount of licensees' lump-sum payments, presented during sealed fact and expert testimony at trial, scaled by Google's purported market share is omitted from page 28. Language from settlement communications between EcoFactor and a third party, presented during sealed expert testimony, is omitted from page 18.

# TABLE OF AUTHORITIES

**Page**

**FEDERAL CASES**

*Ask Chems., LP v. Comp. Packages, Inc.*,
   593 F. App'x 506 (6th Cir. 2014) ....................................................15

*Bio-Rad Laboratories, Inc. v. 10X Genomics Inc.*,
   967 F.3d 1353 (Fed. Cir. 2020) .......................................................21

*Bocanegra v. Vicmar Servs., Inc.*,
   320 F.3d 581 (5th Cir. 2003) ..............................................................4

*Bracco Diagnostics Inc. v. Maia Pharm., Inc.*,
   839 F. App'x 479 (Fed. Cir. 2020) ..................................................14

*Carlson v. Bioremedi Therapeutic Sys., Inc.*,
   822 F.3d 194 (5th Cir. 2016) .....................................................24, 26

*Champagne Metals v. Ken-Mac Metals, Inc.*,
   458 F.3d 1073 (10th Cir. 2006) .......................................................16

*Commonwealth Scientific and Industrial Research Organisation v.*
   *Cisco Systems, Inc.*,
   809 F.3d 1295 (Fed. Cir. 2015) ................................................16, 21

*Daubert v. Merrell Dow Pharm., Inc.*,
   509 U.S. 579 (1993) ............................................................................4

*Endless River Technologies, LLC v. TransUnion, LLC*,
   2025 WL 233659 (6th Cir. Jan. 17, 2025) ......................................15

*Gen. Elec. Co. v. Joiner*,
   522 U.S. 136 (1997) ..............................................................8, 14, 17

*Hathaway v. Bazany*,
   507 F.3d 312 (5th Cir. 2007) ...........................................................15

*Jack Henry & Assocs., Inc. v. BSC, Inc.*,
   487 F. App'x 246 (6th Cir. 2012) ......................................................9

# TABLE OF AUTHORITIES
## (Continued)

*Kotteakos v. United States*,
  328 U.S. 750 (1946) ..................................................................24

*Kumho Tire Co. v. Carmichael*,
  526 U.S. 137 (1999) ...............................................................9, 22

*LeBlanc ex rel. Est. of LeBlanc v. Chevron USA, Inc.*,
  396 F. App'x 94 (5th Cir. 2010) ............................................9, 17

*Lucent Techs., Inc. v. Gateway, Inc.*,
  580 F.3d 1301 (Fed. Cir. 2009) ...............................................15

*Mathis v. Exxon Corp.*,
  302 F.3d 448 (5th Cir. 2002) ....................................................22

*Matusick v. Erie Cnty. Water Auth.*,
  757 F.3d 31 (2d Cir. 2014) .......................................................24

*MLC Intellectual Prop., LLC v. Micron Tech., Inc.*,
  10 F.4th 1358 (Fed. Cir. 2021) .........................................6, 15, 20

*Omega Patents, LLC v. CalAmp Corp.*,
  13 F.4th 1361 (Fed. Cir. 2021) .................................................20

*In re Paoli R.R. Yard PCB Litig.*,
  35 F.3d 717 (3d Cir. 1994) .........................................................5

*Pavo Solutions LLC v. Kingston Technology Co.*,
  35 F.4th 1367 (Fed. Cir. 2022) .................................................21

*Shinseki v. Sanders*,
  556 U.S. 396 (2009) ..................................................................30

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
  551 U.S. 308 (2007) ..................................................................10

*Uniloc USA, Inc. v. Microsoft Corp.*,
  632 F.3d 1292 (Fed. Cir. 2011) .................................................27

# TABLE OF AUTHORITIES
## (Continued)

**Page**

*United States v. Arthur*,
51 F.4th 560 (5th Cir. 2022) ...............................................7

*United States v. Barton*,
909 F.3d 1323 (11th Cir. 2018) .........................................17

*Vargas v. Lee*,
317 F.3d 498 (5th Cir. 2003) ................................................4

*VLSI Tech. LLC v. Intel Corp.*,
87 F.4th 1332 (Fed. Cir. 2023) ....................................3, 24

*Whitserve, LLC v. Computer Packages, Inc.*,
694 F.3d 10 (Fed. Cir. 2012) ............................................19

*Wordtech Sys., Inc v. Integrated Networks Sols., Inc.*,
609 F.3d 1308 (Fed. Cir. 2010) ........................................29

**FEDERAL STATUTES**

28 U.S.C. § 354(a) ................................................................30

**RULES - OTHER**

Fed. R. Civ. Proc. 59 .............................................................29

Fed. R. Civ. Proc. 61 .............................................................24

Fed. R. Evid. 103 ...................................................................23

Fed. R. Evid. 104 ................................................................5, 7

Fed. R. Evid. 402 .....................................................................4

Fed. R. Evid. 702 ........................................................ 1, passim

**CONSTITUTIONAL PROVISIONS**

Seventh Amendment .........................................................9, 10

## TABLE OF AUTHORITIES
### (Continued)

**OTHER AUTHORITIES**

11 Wright & Miller, Fed. Prac. & Proc. Civ. § 2883 (3d ed.) .................................24

30 Wright & Miller, Fed. Prac. & Proc. Evid. § 6665 (2d ed.) .................................5

## **INTRODUCTION**

EcoFactor asks this Court to permit district courts to abdicate their gatekeeping responsibility to ensure that the jury does not hear unreliable expert testimony. Throughout its brief, EcoFactor proposes several alternative understandings of Rule 702, all of which boil down to the assertion that the admissibility of Kennedy's testimony was a question of fact to be evaluated by the jury. That view is misconceived, both as an account of Rule 702's operation and as an account of the evidence in this case. Accepting EcoFactor's position would deprive Rule 702 of any force.

EcoFactor was unable to present any factual evidence of the critical premise it sought to establish—that EcoFactor's licensees applied the ▮▮▮▮ rate to compute their lump-sum payments—so it had Kennedy testify that, as an expert, he had concluded that the licensees had applied the ▮▮▮▮ rate in the licenses. Having chosen to bridge the gap in its factual presentation with Kennedy's opinion, EcoFactor bore the burden of establishing that that opinion satisfied Rule 702's reliability prerequisites. EcoFactor failed to do so. The district court, for its part, should have ensured that Kennedy's opinion reflected a reliable methodology, founded on a sufficient basis. By instead deferring those reliability questions to the jury, the court committed legal error—and abused its discretion—by admitting an expert's opinion about the agreed-upon market value of the patented technology,

founded exclusively on the patentee's unsupported and unverifiable assertion of that market value.

In an attempt to defend that failure to uphold Rule 702's requirements, EcoFactor offers a revisionist evidentiary account laden with misstatements. Nonetheless, the underlying facts are undisputed—and clearly insufficient to provide a reliable basis for Kennedy's opinion. All three licenses recited only EcoFactor's belief that the licensees agreed to the rate. Had the licensees actually agreed, that agreement would have been manifest in the licenses, either in operative clauses or in recitals to that effect. Two licenses confirmed that the licensees in fact did not agree. The third (to JCI) was not relevant under Kennedy's own theory. Furthermore, Habib's "understanding" that the licensees agreed to the rate was concededly unsupported by personal knowledge of sales data or negotiations—and thus amounted to no more than a *belief* that the rate was used. Only one conclusion follows: EcoFactor had *no* factual evidence whatsoever that the licenses' lump-sum amounts reflected the application of the ██NRR██ rate. That conclusion does not rest, as EcoFactor would have it, on any determination about the evidence's credibility or correctness; it rests on the license provisions' plain language and accepts Habib's testimony as true.

Kennedy's opinion was based only on his client's unsupported and unverifiable beliefs about what other parties agreed to and therefore lacked a reliable

factual basis and any reliable methodology. Kennedy's opinion thus flouted the very premise of using comparable licenses to guide the damages analysis. Prices paid in actual licenses may indicate patent value if they reflect a negotiated market valuation, *see VLSI Tech. LLC v. Intel Corp.*, 87 F.4th 1332, 1346 (Fed. Cir. 2023)— yet here Kennedy substituted the patentee's contention as to royalty rate for actual market evidence. Even worse, EcoFactor used Kennedy's testimony to mitigate the gaps in its factual presentation. Kennedy thus served as the keystone for EcoFactor's manufactured royalty rate and provided a patina of expert confirmation that unquestionably prejudiced the jury's consideration.

## ARGUMENT

### I. This Court Should Reject EcoFactor's Efforts to Nullify Rule 702.

In order to defend the admission of Kennedy's royalty-rate testimony, EcoFactor waters down Rule 702 beyond recognition. Throughout its brief, EcoFactor advances varying accounts of the rule's operation. What all have in common is that they would erase the district court's gatekeeping role and defer the question of expert reliability to the jury. EcoFactor's arguments cannot be reconciled with Rule 702's text and well-settled precedent.

1. EcoFactor repeatedly contends that, as the panel held, expert testimony is admissible under Rule 702 so long as the expert has "based his opinions upon facts

specific to th[e] case." Resp.14[1]; *accord* Op.11. According to EcoFactor, "nothing more" is required. Resp.14.

That is an argument for eviscerating Rule 702—and it squarely conflicts with *Daubert*, which recognized that whether expert testimony is "sufficiently tied to the facts of the case" goes to "*relevancy*." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 591 (1993).[2] Under EcoFactor's view, then, Rule 702 would require only that the expert's opinion be relevant. But relevancy—both "in the sense that all testimony must be relevant" under Federal Rule of Evidence 402 and in the sense that the expert opinion must "assist the trier of fact" as to a "fact in issue"—is not enough. *Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584 (5th Cir. 2003). Rule 702 goes further, requiring that expert testimony "is not only relevant, but *reliable*." *Daubert*, 509 U.S. at 589, 597. Relevance is thus a necessary but not sufficient condition for admitting expert testimony. *Id.*; *Vargas v. Lee*, 317 F.3d 498, 502 n.5 (5th Cir. 2003).

2. EcoFactor next conflates Rule 702(b)'s requirement of "sufficient facts and data" with the distinct concept of hypothetical expert opinions. EcoFactor submits that when a "fact underlying" an expert's testimony "*might be* proven in a

---

[1] Citations to briefs refer to *en banc* briefing unless noted.

[2] Emphasis added throughout unless noted.

case," the expert may "assume" that fact to be true, provided there is some supporting evidence in the record.  Resp.28, 40.

EcoFactor draws its "rule" from selective quotations from Wright & Miller. Resp.40.  It cites a section entitled "hypothetical questions" that explains that an expert may be asked "hypothetical question[s]" based on assumed facts or data the expert "has been made aware of" at trial.  30 Wright & Miller, Fed. Prac. & Proc. Evid. § 6665 (2d ed.).  For example, an expert might testify: "If the driver was going above 75 mph, better brake maintenance would not have prevented the collision."  The first clause, a precondition, is assumed true for purposes of the testimony.  This principle relates to relevance:  if there were record evidence that the driver was going above 75 mph, the expert's testimony about brake maintenance would be *relevant*.  *See* Fed. R. Evid. 104(b) (conditional relevance).

But establishing relevance does not insulate the expert's testimony from a *reliability* challenge.  Under Rule 104(a), that is a question for the court, not the jury. *See* Fed. Evid. R. 104(a); *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 743 (3d Cir. 1994).  That is, Rules 702 and 104(a) require the court to determine whether the 75-mph speed represents "sufficient facts or data" to reliably support the expert's brake-maintenance conclusion, Fed. R. Evid. 702(b), and whether that conclusion reflects reliable methods, reliably applied to the facts, Fed. R. Evid. 702(c)-(d).

The hypothetical-question concept on which EcoFactor relies therefore does not help it. Even if Kennedy had been asked hypothetical questions (he was not), the district court would have been obligated to assess his answers for reliability— *i.e.*, whether the evidence and methodology Kennedy relied on provided a sufficiently reliable basis for his conclusion that the licenses applied the ███ rate.

Perhaps recognizing as much, EcoFactor distorts the hypothetical-question principle beyond recognition to try to insulate Kennedy's testimony from *any* scrutiny. EcoFactor asserts that an expert is permitted to assume the truth of "underlying facts," which it defines here as "the underlying fact *that the licenses were based on the royalty rate* recited on their face." Resp.15, 40. That "fact," of course, is not an underlying fact at all, but instead is Kennedy's unsupported *conclusion*. *Cf. MLC Intellectual Prop., LLC v. Micron Tech., Inc.*, 10 F.4th 1358, 1368 (Fed. Cir. 2021) (distinguishing between proper "consider[ation]" of license provision reciting a rate and improper expert testimony that the rate "was applied"). Then, EcoFactor says, questions about "the credibility of the underlying fact" are "quintessentially matters that go to the weight to be given to the expert's opinion by the jury, not to its admissibility." Resp.15.

That is simply a roundabout way of arriving at the district court's incorrect view: that questions about reliability should be deferred to the jury on the ground that they go to weight and not admissibility. Opening.34. That contention flies in

the face of Rule 702.  Opening.34-39.  Although the ultimate factual question of whether licenses actually used a particular rate might be one for the jury, EcoFactor chose to offer Kennedy's expert opinion on that question in order to shore up its evidence relating to the ▉NRR▉ rate.  Having done so, EcoFactor assumed the burden of persuading the *court* by a preponderance that Kennedy's testimony satisfies all of Rule 702's requirements.  *See* Fed. R. Evid. 104(a); *United States v. Arthur*, 51 F.4th 560, 571 (5th Cir. 2022).  Lest there be any doubt, the 2023 Advisory Committee Note explained that "many courts have held that the critical questions of the sufficiency of an expert's basis, and the application of the expert's methodology, are questions of weight and not admissibility.  *These rulings are an incorrect application of Rules 702 and 104(a)*."  Amendments to the Federal Rules of Evidence, H. Doc. 118-33 at 19.[3]

3.  EcoFactor next attempts to nullify Rule 702 by arguing that a challenge to the sufficiency of the expert's "facts or data" under Rule 702(b) impermissibly asks the district court to "choose the 'correct' version of the facts that [the] expert must apply."  Resp.44.  Not so.  A Rule 702 challenge like Google's contends, in part, that there is "too great an analytical gap between the data [on which the expert relies] and the opinion proffered"—that is, the opinion is "connected to existing data

---

[3] EcoFactor does not dispute that the 2023 amendments clarified and reaffirmed already-existing law.  Opening.16 n.4, 19-20; Resp.18, 27-28.

only by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

Thus, Google's challenge to Kennedy's testimony does not turn on disputing the correctness of any facts on which Kennedy relied. The question for the district court was whether the evidence on which Kennedy relied—the plain text of the license provisions and Habib's testimony—provided a reliable foundation for Kennedy to testify that the licenses in fact used the rate. In other words, Google's *Daubert* challenge does not turn on disputing the credibility of EcoFactor's "belie[f]," professed in "whereas" clauses, that the lump-sum amount was "based on … a reasonable royalty calculation of ██NRR██ per-unit," Appx10389; rather, the question is whether that unilateral recitation of EcoFactor's belief, considered together with the licenses' other provisions and Habib's similar testimony, provides a sufficient basis for Kennedy's opinion. For the reasons explained below and in Google's opening brief, those facts are insufficient under Rule 702(b), and Kennedy's reliance on them reflects an unreliable methodology. There is no need to resolve any dispute concerning the relied-upon facts to reach that conclusion.

4. Finally, EcoFactor appears to suggest that Kennedy's testimony should be held to satisfy Rule 702 if there was sufficient *other* evidence in the record (whether or not Kennedy actually relied on it) from which a *jury* could conclude that the licenses in fact used the royalty rate. Resp.21-23, 44. But the reliability of an

expert's testimony turns on whether his analysis is based on data that *experts* in the field would use. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999); Fed. R. Evid. 702 adv. comm. note 5 (2000 amendment). And the court must make that determination before admitting the testimony over a *Daubert* challenge, after considering the evidence on which the expert bases his opinion. *LeBlanc ex rel. Est. of LeBlanc v. Chevron USA, Inc.*, 396 F. App'x 94, 100 & n.7 (5th Cir. 2010).

The Rule 702 inquiry is thus quite obviously distinct from the after-the-fact question of whether the *jury*, in the absence of the expert's testimony, reasonably could have found the fact to which the expert testified. *See Jack Henry & Assocs., Inc. v. BSC, Inc.*, 487 F. App'x 246, 254 n.4 (6th Cir. 2012) (distinguishing these two questions). That analysis is pertinent, if at all, to harmlessness—that is, to whether the improper admission of the testimony affected the outcome (though, as discussed below, an erroneous admission can be prejudicial even if the non-expert evidence would have been sufficient). *See* pp. 24-26, *infra*. Indeed, if the test for Rule 702 were merely a *prima facie* showing that the party-proponent presented some evidence supporting a triable issue, then the floodgates would open to *any* expert testimony provided the proponent can point to some related record evidence, however unreliable.

5.    The above points dispose of EcoFactor's makeweight Seventh Amendment argument. Resp.41-45. Although the ultimate question of whether

licenses used a particular rate might be one for the jury, that does not mean that the Seventh Amendment prohibited the district court from determining whether Kennedy's *expert testimony* on that question was admissible. It is well settled that district courts may make "gatekeeping judicial determinations" of expert-testimony admissibility "without violating the Seventh Amendment." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 327 & n.8 (2007) (citing *Daubert*). Nothing about excluding the testimony—or reversing its admission on appeal—on reliability grounds improperly resolves disputed factual issues or takes any factual question away from the jury.

## II. Rule 702 Requires Exclusion of Kennedy's Assignment of a ███ Rate to the Licenses.

The correct understanding of Rule 702 makes this a straightforward case. Under Rule 702(b), Kennedy lacked a reliable basis for opining that each licensee applied the ███ rate to arrive at its lump-sum payments because the evidence on which he relied, to the exclusion of contrary evidence, established at best that EcoFactor and its CEO *believed* without support that the licensees had applied the ███ rate. Kennedy's reliance on interested-party assertions without verifying them or accounting for contrary evidence also is an unreliable methodology under Rule 702(c). Admitting the testimony enabled EcoFactor to use Kennedy's purportedly expert validation to excuse its inability to present any actual evidence that the licensees agreed to use the rate.

### A. Kennedy's opinion is unreliable under Rule 702(b) and (c).

1. a. Kennedy opined that all of EcoFactor's *licensees* agreed to apply the ██NRR██ rate to their sales to calculate the licenses' lump-sum payments. *See, e.g.*, Appx1245-1248; Appx1259; Appx1278; SAppx0080; Appx5767-5774; Appx5778-5780; Appx5793; Appx5796-5797. To support that conclusion, Kennedy relied on two types of evidence: the licenses themselves (particularly the non-binding "whereas" clauses that EcoFactor inserted); and the testimony of Habib, EcoFactor's CEO. Appx5801-5805; Appx5811-5812. That evidence, however, does not provide a sufficient basis for Kennedy to assign a ██NRR██ rate to the licenses.

EcoFactor, like Kennedy, places great weight on the licenses' "whereas" clauses that purportedly "recite[]" the ██NRR██ rate. Resp.20. But those clauses in fact *undermine* any conclusion that the licensees agreed to apply that rate: they are unilateral and non-binding, and state only that "EcoFactor represents that it has agreed to the payment set forth in this Agreement based on what *EcoFactor believes is a reasonable royalty calculation of* ██NRR██ per-unit for estimated past and [licensee's] projected future sales . . . ." Appx10389; Appx10400; Appx10411. That is akin to a bald assertion by EcoFactor in a complaint or in damages contentions as to what it thinks the market value of the patent-at-issue should be. If the licensees had in fact used the ██NRR██ rate to calculate the lump sums, there is no evident reason that the parties would not have placed that recital in an agreed-upon,

binding clause.  That the rate is recited in a non-operative "whereas" clause stating only EcoFactor's "belie[f]" is strong indication that the rate was not the subject of any agreement between the parties.[4]

Further undermining the rate, two of the licenses (Schneider and Dakin) squarely contradict EcoFactor's "whereas" recitals in operative provisions stating that the lump-sum to be paid to EcoFactor "is not based upon sales and does not reflect or constitute a royalty."  Appx10391; Appx10402.  EcoFactor observes that in the Schneider license, the whereas clause states that "nothing in the clause … 'should be interpreted as agreement by Schneider that **NRR** per unit is a reasonable royalty.'"  Resp.21 (citing Appx10400).  EcoFactor turns this language on its head to argue that Schneider implicitly agreed that **NRR** was the applicable royalty (just not a reasonable one).  *Id*.  Putting aside the self-evident implausibility of that assertion, the fact remains that in the license's operative provisions, the parties agreed that the lump-sum amount "is not based upon sales and does not reflect or constitute a royalty" of any type.  Appx10402.  Kennedy did not acknowledge the Schneider and Daikin disclaimers in his report or testimony, much less explain how he could nonetheless maintain that the parties agreed on the **NRR** rate.  When

---

[4] For the first time, EcoFactor relies on communications with licensee Daikin. Kennedy summarized the emails (which are not in the record) as showing only that "EcoFactor *propos*[*ed*]" a **NRR** rate.  Appx1245.  That does not support Kennedy's opinion.

confronted with those provisions on cross-examination, Kennedy had no response, except to point to Habib's testimony: "[B]ased on the evidence that I've heard from Mr. Habib, I believe [the licensees] did" agree to pay ███. App5796.

Habib's testimony, however, provided no basis for Kennedy to conclude that the rate was actually applied to sales. Habib testified that his "understanding" was that the ███ rate was used, Appx5671, but he confirmed that neither he nor anyone else at EcoFactor had access to any licensees' sales information (past or projected) and that he was unaware of anything showing how the lump-sum amounts were determined. Appx5691; Appx5695; Appx5697-5698. EcoFactor mischaracterizes Habib as having negotiated the licenses, Resp.20-21, but he merely signed them— he had no personal knowledge of whether the licensees agreed to apply the rate. Appx5666. Nor did Habib testify, as EcoFactor now asserts, Resp.20-21, that the licensees accepted the ███ rate; he answered a question that assumed that the licensees "agreed" to the rate by saying only that "*if* three companies were willing to accept [the rate]," that would support his belief that it was reasonable. Appx5671. He lacked the personal knowledge to go further. Thus, there is no record basis for Habib's "understanding" that the ███ rate was used to calculate the lump-sum amounts. *See* Appx5667. As a matter of law, Habib's testimony could not establish that the rate was actually applied because he asserted nothing more than his own uninformed belief. *See* pp. 25-26, *infra*.

In sum, Kennedy opined that the licensees agreed to apply the ██NRR██ rate based solely on *EcoFactor's* concededly unsupported assertion to that effect. Appx5811-5812; SAppx1226, 1245. Kennedy did not verify EcoFactor's assertions. Appx5794; Appx5797; Appx5801; Appx5805-5806. And he ignored the operative license provisions in which both parties *disclaimed applying a royalty rate to sales*.

b. Kennedy's opinion is not based on sufficient facts or data under Rule 702(b) because "there is simply too great an analytical gap" between *EcoFactor's* unilateral assertions as to what rate applied and Kennedy's conclusion that *other parties* had actually agreed to apply the rate to calculate their license payments. *Joiner*, 522 U.S. at 146. That conclusion does not rest, as EcoFactor would have it (Resp.39), on choosing among competing interpretations of the licenses; rather, it rests on the unambiguously unilateral and non-operative nature of the whereas clauses, and the fact that Kennedy ignored the contrary *bilateral* provisions. *Cf. Bracco Diagnostics Inc. v. Maia Pharm., Inc.*, 839 F. App'x 479, 487 (Fed. Cir. 2020) (unilateral clause cannot override agreed-upon stipulation). Nor does the conclusion that Kennedy lacked sufficient basis to testify that the ██NRR██ rate was used turn on any credibility determination. Even if Habib genuinely believed that the licensees agreed to apply the rate, the critical point is that he admitted that he had no personal knowledge to support that belief, and Kennedy did nothing to verify it.

It is well established that a client's unsupported assertions about a fact do not provide a sufficient basis under Rule 702(b) to permit an expert to parrot those assertions to a jury as an established conclusion. That is because "wholesale adoption of [the client's] estimates, without revealing or apparently even evaluating the bases for those estimates, … cloaks unexamined assumptions in the authority of expert analysis." *Ask Chems., LP v. Comp. Packages, Inc.*, 593 F. App'x 506, 510 (6th Cir. 2014); *see also*, *e.g.*, *Endless River Technologies, LLC v. TransUnion, LLC*, 2025 WL 233659, at *8 (6th Cir. Jan. 17, 2025) (holding that damages expert's testimony was "based … on fundamentally flawed information" where expert relied on his client's "belief" in its revenue projections, without attempting to "vet[]" them); *see* Opening.30-31 (citing cases). That is particularly true in the context of translating lump-sum payments to royalty rates—an exercise susceptible to inaccuracy and manipulation. *See Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1325-27 (Fed. Cir. 2009); *MLC*, 10 F.4th at 1368. Kennedy's reliance on the patentee's unilateral statements cannot short-circuit the need for a reliable basis to convert a lump-sum to a royalty rate.[5]

---

[5] EcoFactor's reference to Kennedy's experience, Resp.6, 20-21, is also unavailing, as he failed to explain how his experience supported his conclusion or why that would be a sufficient basis. *See* Fed. R. Evid. 702 adv. comm. note (2000 amendment); *Hathaway v. Bazany*, 507 F.3d 312, 318 (5th Cir. 2007).

c.    For much the same reasons, Kennedy's *methodology* is unreliable under Rule 702(c): it forgoes independent analysis in favor of a party's untested assertions, when those assertions are facially insufficient to establish the asserted proposition. Opening.10-11, 27-28, 30-32. Kennedy ignored evidence that conflicted with his assignment of the rate. Opening.23, 25-27, 30-32. Kennedy's failure to verify his client's unsupported assertions was particularly unreliable, as there were a number of factors indicating that EcoFactor's rate may have been manufactured for litigation.[6] Given that the license payments were relatively modest and structured as lump sums that were not readily translatable to royalty rates, EcoFactor had a strong incentive to insert its preferred rate into the licenses to use in co-pending litigation. The licensees had little incentive to protest the addition of non-binding recitals. And EcoFactor contends that every licensee—despite different litigation, asserted patents, and economics—applied the exact same rate. Kennedy's results-driven analysis amounted to mere speculation, based solely on his client's unsupported and unverifiable assertions. *See* Opening.30-31 (citing cases); *Champagne Metals v. Ken-Mac Metals, Inc.*, 458 F.3d 1073, 1080 n.4 (10th Cir.

---

[6] Whether or not the rate was actually manufactured for litigation, that such risk exists means that "courts must be proactive to ensure that the testimony presented … is sufficiently reliable." *Commonwealth Scientific and Industrial Research Organisation v. Cisco Systems, Inc. (CSIRO)*, 809 F.3d 1295, 1301 (Fed. Cir. 2015).

2006) (excluding expert testimony based on "self-serving statement[s] of an interested party").

EcoFactor's only rebuttal is the demonstrably false assertion that Google does not "really" challenge Kennedy's methodology. Resp.26. Not so. EcoFactor also argues that consideration of the *Georgia-Pacific* factors is a widely accepted methodology. Resp.13-14, 26. But that is a non sequitur. Kennedy did not use the *Georgia-Pacific* factors to assign a per-unit rate to the licenses. Doing so would not have made any sense: those factors seek to divine what Google and EcoFactor would have done, while Kennedy's testimony was that Daikin, Schneider, and JCI actually agreed to apply the ▮NRR▮ rate.

2.    Attempting to salvage Kennedy's testimony, EcoFactor now emphasizes a smattering of materials on which Kennedy did not rely. But under Rule 702, it was EcoFactor's burden to prove that the "expert['s] opinions were sufficiently supported by the [evidence] *on which [he] purported to rely*." *Joiner*, 522 U.S. at 144-45; Fed. R. Evid. 702(b) (requiring reliability of facts opinion is "based on"); *LeBlanc*, 396 F. App'x at 100 n.7.[7] And this Court's appellate review examines the supporting materials upon which Kennedy relied in persuading the district court to admit the testimony. *United States v. Barton*, 909 F.3d 1323, 1335

---

[7] For that reason, EcoFactor's passing contention (Resp.23) that Google should have sought discovery from the licensees is unavailing.

(11th Cir. 2018). Materials on which Kennedy did not rely are therefore relevant, if at all, only to whether the admission of his testimony was prejudicial.

In all events, EcoFactor's new materials do not render Kennedy's testimony reliable. EcoFactor relies heavily (Resp.21-22, 39) on a settlement-negotiation email exchange between EcoFactor's trial counsel and JCI that Kennedy never mentioned but that EcoFactor introduced over Google's objection while cross-examining Google's damages expert.[8] Appx6275-6278. In that exchange, EcoFactor's counsel proposed the ██NRR██ rate, and JCI asked for more support, observing that the rate "██negotiation██." Appx10798. JCI also asked EcoFactor to confirm that "we are applying the rates ██negotiation██" that EcoFactor alleged was implicated. Appx10798. The words "applying the rates," stripped of context, are EcoFactor's sole support for the proposition that JCI agreed to use ██NRR██. But JCI agreed to nothing of the sort. Instead, JCI sought further discussions, Appx10797, and the parties did not execute an agreement for another three months, *see* Appx10419. The most that the email can be said to show, therefore, is that EcoFactor *proposed* the ██NRR██ rate during negotiations. But

---

[8] Google moved to compel production of all information related to the rate's calculation. SAppx.1370. EcoFactor's counsel represented that Kennedy would rely on only the settlement agreements and not on communications with licensees. SAppx.1108-1109. The court ordered that EcoFactor produce anything supporting Kennedy's use of the ██NRR██ rate. SAppx.1110-1111; Appx141. EcoFactor produced no documents in response. SAppx.1344.

patentee offers are minimally probative because "patentees could artificially inflate the royalty rate by making outrageous offers." *Whitserve, LLC v. Computer Packages, Inc.*, 694 F.3d 10, 30 (Fed. Cir. 2012). And in all events, the JCI license could not support Kennedy's testimony that *all three* licensees agreed to the rate.

Moreover, the JCI license was, under Kennedy's own theory, not relevant or probative of the ██NRR██ rate, because it did not list the '327 patent as an asserted patent against JCI. Appx10411. Kennedy opined that a portfolio license assigns value only to asserted patents and not other patents, which "are thrown in usually either for nothing or very little additional value." Appx5767-5768. Under Kennedy's logic, then, the JCI license assigned little or no value to the '327 patent—certainly not a ██NRR██ rate.

EcoFactor also asserts that Kennedy "relied on" data establishing that the licensees had a smaller market share than Google. Resp.22, 40-41. But Kennedy did not rely on market share to support his assignment of the ██NRR██ rate to the licenses, whether as a reasonableness check or to independently convert the lump-sum amounts to running royalties. SAppx9; Appx5746. For obvious reasons: the relative share of licensee sales says nothing about what royalty *rate* should apply to those sales. And Kennedy's market share data cannot support any inference about the licensees' lump-sum payments relative to applicable sales because that data was from 2015, five years before the earliest license and before some of the licensees had

even launched their products. Appx10467; Appx10397; Appx10408; Appx10419; SAppx.1456-1457; Appx6256.[9]

## B. Precedent confirms that Kennedy's testimony should have been excluded.

This Court's precedent confirms that the district court abused its discretion in admitting Kennedy's testimony. In *MLC*, this Court held that an expert's derivation of a rate from a lump-sum license's most-favored-nation clause, similarly unsupported by the license's other provisions, was "not 'based on sufficient facts or data' and [was] not 'the product of reliable principles and methods.'" *MLC*, 10 F.4th at 1368-69; Opening.29-32 & n.8. And in *Omega Patents, LLC v. CalAmp Corp.*, 13 F.4th 1361 (Fed. Cir. 2021), the Court held that expert reliance on the patentee's internal policy favoring a particular rate—that is, the patentee's unilateral assertions—as well as a most-favored-nation clause were insufficient evidence to support the damages award. *Id.* at 1379-82. EcoFactor dismisses these cases as involving expert-asserted rates that had no "connection" to evidence about whether the rate was actually applied. Resp.29-31. But that perfectly describes this case. Indeed, Kennedy has even *less* factual basis: the most-favored-nation rates in *MLC* and *Omega* at least appeared in binding provisions, while the "whereas" clauses here

---

[9] Google understands EcoFactor's argument that the licenses were comparable and Kennedy adjusted for the hypothetical negotiation, Resp.4-5, 24-25, 30-32, to be beyond the scope of this proceeding. ECF.165.

were non-operative, not probative of negotiated value, and disclaimed in two licenses.

The decisions on which EcoFactor relies do not help it. *CSIRO*, 809 F.3d 1295 (Fed. Cir. 2015), did not "approve[] of the use of a patentee's standard royalty rate expectations" as a proxy for market valuation or to purportedly convert a lump sum to a royalty rate. Resp.25. There, the court found that a royalty-rate *range* was a reasonable benchmark because the upper and lower extremes reflected the defendant's and patentee's real-world counterproposals. *CSIRO*, 809 F.3d at 1300-03. Unlike here, the royalty rate was not based solely on the patentee's unilateral belief.

EcoFactor's argument that this Court has allowed experts to rely on a party's "representation" in a license is also mistaken. Resp.29-30. In *Pavo Solutions LLC v. Kingston Technology Co.*, 35 F.4th 1367, 1379 (Fed. Cir. 2022), the patentee's expert opined that a "profit-split model" was appropriate for determining damages based on a license in which the *licensee* represented that the agreed-upon royalty reflected 25% of its profits. Here, the licenses do not include any such *licensee* interpretation of the lump-sum amounts. Finally, in *Bio-Rad Laboratories, Inc. v. 10X Genomics Inc.*, 967 F.3d 1353 (Fed. Cir. 2020), the licensing parties agreed to a rate premised on certain conditions, and the patentee presented evidence that the conditions applied, such that the rate was not illusory. *Id.* at 1374-76.

In sum, EcoFactor is not able to identify even a *single* case in which this Court approved expert testimony or affirmed an award premised solely on the patentee's unilateral representations about the value of its patents. This case should not be the first.

## C. EcoFactor's defense of the panel's decision is meritless.

Both the district court and the panel committed the same legal error: they left it to the jury to decide whether Kennedy's opinion was reliable. But because Rule 702 establishes prerequisites for *admissibility*, the court must assess reliability. *See* pp. 5-10, *supra*.

EcoFactor does not defend the district court's ruling that reliability was a matter for cross-examination. Opening.33. For good reason; that abdication of the gatekeeping function constitutes legal error. *Kumho Tire*, 526 U.S. at 158-59 (Scalia, J., concurring).[10] And in all events, the district court abused its discretion in admitting the testimony for the reasons Google has explained.

EcoFactor's defense of the panel decision only highlights the ways in which that decision deviated from Rule 702. EcoFactor contends that the panel "correctly recognized" that the "truth of those underlying facts" on which Kennedy relied was

---

[10] The opinion's unreasoned nature does not require remand. "Because admissibility is a legal question—one ill-suited to remand," an appellate court can "decide the question … without remanding." *Mathis v. Exxon Corp.*, 302 F.3d 448, 460 (5th Cir. 2002).

for the jury. Resp.36. But as demonstrated above, Rule 702 required EcoFactor to show that Kennedy's royalty-rate conclusion was sufficiently and reliably supported. EcoFactor failed to do that, and that conclusion does not turn on resolving factual disputes. *See* pp. 8, 14-17 *supra*.

EcoFactor next defends the panel on the ground that the other evidence in the record was sufficient for a jury to conclude that the rate was applied to calculate the lump sums. Resp.37-38. But as discussed above, Rule 702 requires more than sufficiency: it requires the court to analyze whether the expert's opinion is reliable under the standards in the field. And in any event, though not necessary to conclude that Kennedy's testimony should not have been admitted, the evidence on which the panel relied *was* insufficient to permit a jury to find that the licenses applied the rate for the reasons stated above.[11] Op.13; *see* pp. 11-13, 18-20, *supra*.

## III. Kennedy's Testimony Was Prejudicial.

Finally, EcoFactor rehashes an argument that was central to its unsuccessful opposition to *en banc* review: that the admission of Kennedy's testimony was harmless. Resp.10-12, 13-15. That argument is not any more persuasive now. The admission of Kennedy's testimony was deeply prejudicial. His opinion that every

---

[11] EcoFactor's argument that Google failed to object to the ██ NRR ██ figure itself, Resp.7, is both incorrect and irrelevant. Google need not have renewed its objections after the court denied them. *See* Fed. R. Evid. 103(b); SAppx184-186, SAppx845-846, Appx6275-6276. And the "whereas" clauses' statement of the rate could not itself support finding that the licensees actually applied the rate.

previous EcoFactor license applied the ███ royalty rate was the foundational premise of EcoFactor's damages theory that Google, too, should pay ███. Contrary to EcoFactor's revisionist account, EcoFactor presented no other damages theory at trial.

1.    EcoFactor first argues that the error was harmless because, in its view, non-expert evidence was sufficient to establish that the licenses applied the ███ rate. That contention is easily refuted.

As an initial matter, even if EcoFactor were correct that the other record evidence was sufficient to establish the ███ rate (it is not, *see* pp. 18-20, *supra*), its argument is premised on the wrong legal standard. The harmlessness question is not "merely whether there was enough to support the result, apart from the phase affected by the error," but rather, "even so, whether the error itself had substantial influence." *Kotteakos v. United States*, 328 U.S. 750, 765 (1946); *Matusick v. Erie Cnty. Water Auth.*, 757 F.3d 31, 50-51 (2d Cir. 2014); 11 Fed. Prac. & Proc. Civ. § 2883 (3d ed.). As Google has explained (Opening.33) and EcoFactor ignores, erroneous admission of testimony affects a party's substantial rights under Federal Rule of Civil Procedure 61 unless the Court is "sure, after reviewing the entire record, that the error did not influence the jury or had but a very slight effect on its verdict." *Carlson v. Bioremedi Therapeutic Sys., Inc.*, 822 F.3d 194, 202 (5th Cir. 2016) (citation omitted); *accord VLSI*, 87 F.4th at 1348 ("We cannot say that this

error 'could not have changed the result,' namely, the precise amount of damages, so as to render it harmless."). Thus, if this Court concludes that the district court erred in admitting Kennedy's testimony, it must grant a new trial unless it is sure that the error did not influence the jury's damages award.

There can be no serious question that Kennedy's testimony made the jury substantially more likely to conclude that the licenses used the **NRR** rate. EcoFactor's other evidence, Resp.46, established only EcoFactor's unilateral belief that the rate was applied. *Not a single piece* of evidence established that any licensee had actually agreed to use the **NRR** rate to calculate the lump sums—a striking omission if the parties actually had used the rate to calculate the lump-sums, as there is no evident reason why the licenses themselves or negotiation documents would not have said that. Kennedy's expert opinion that the licenses had used the **NRR** rate therefore lent critical credibility to that rate as a real-world market valuation. Indeed, EcoFactor acknowledged in closing that Habib had been forced to admit he had no way of knowing whether the rate was actually applied—and EcoFactor then used Kennedy's testimony to rehabilitate Habib, stating that Kennedy, with his "real-world experience," believed that Habib's inability to support his testimony was "absolutely normal and right." Appx6531. EcoFactor's assertion that Habib's testimony could have alone "anchored" the jury's consideration (Resp.48) is thus both wrong and beside the point—EcoFactor used Kennedy's expert imprimatur to

paper over gaps in Habib's testimony. Kennedy's assertion that the **NRR** rate was used therefore was critical in establishing that proposition. Opening.33-34.

The JCI email does not alter that conclusion. That email cannot render the admission of Kennedy's testimony harmless because it did not establish that JCI agreed to pay **NRR**. And even if the email provided some tenuous evidence that *JCI* might have *considered* using the rate, Kennedy testified that *all three licensees actually agreed* to the rate; the JCI license alone cannot support that assertion. Nor, under Kennedy's own logic, could the JCI license support his assignment of a **NRR** rate for the '327 patent, as the license did not include the '327 patent as an asserted patent. *See* p. 19, *supra*. In these circumstances, the Court cannot be confident that Kennedy's testimony did not affect the jury's view of the rate.

2. a. This Court also cannot be "sure, after reviewing the entire record, that" Kennedy's testimony that the licenses applied the **NRR** rate "did not influence" the jury's ultimate damages award. *Carlson*, 822 F.3d at 202 (citation omitted). The assertion that all licensees had agreed to the rate was the foundation of EcoFactor's damages theory. Kennedy asserted that "Google should pay the same rate as comparable licenses"—*i.e.*, **NRR**. Appx5779-5780. Over and over, EcoFactor hammered home that its licensees had consistently paid **NRR** and therefore it would be reasonable for Google to pay the same. Appx5667-5671;

Appx5739-5740.  EcoFactor's entire damages case thus began and ended with the
**NRR** premise—which Kennedy's testimony was integral in establishing.

Moreover, although the jury's $20 million award was somewhat less than the
full amount EcoFactor sought **dollar amount**), the **NRR** rate unquestionably
anchored the jury's consideration, given Kennedy's emphasis on it.  *Uniloc USA,
Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1311 (Fed. Cir. 2011) (prejudicial error even
where jury awarded less than plaintiff sought).  EcoFactor's speculative assertion
that the award amount indicates that the jury rejected Kennedy's rate, Resp.12, does
not rebut the rate's anchoring effect, particularly because EcoFactor prevailed on
liability as to only one of two asserted patents.  Appx45.  Numerous studies confirm
such an anchoring effect.  *See* Unified Patents, LLC's Amicus Curiae Brief
(ECF.117) at 11-16.

b.     EcoFactor nonetheless contends—relying on increasingly far-fetched
post-hoc rationales—that "the jury's verdict was not calculated using the rate opined
by Mr. Kennedy."  Resp.47.  Again, prejudice turns not on whether EcoFactor can
cobble together a post-hoc theory, but instead whether the Court can be confident
that Kennedy's rate testimony did not affect the result.  The answer to that question
is clear.

In all events, EcoFactor's newly-minted theories bear no resemblance to the
trial testimony.  EcoFactor first argues that the jury could have based the award on

a smattering of testimony concerning Google's profits.  Resp.47-48.  Kennedy relied on a Google survey to opine that Google supposedly received ▮dollar amount▮ in per-device profits from the features collectively claimed in EcoFactor's asserted patents. Appx5757.  He then claimed that Google and EcoFactor would divide the ▮dollar amount▮, such that his proposed ▮NRR▮ rate was reasonable.  Appx5821, Appx6533.  Kennedy thus used the survey as a reasonableness check for the ▮NRR▮ rate.  EcoFactor now theorizes that the jury could have taken the ▮dollar amount▮ in profits that the survey purportedly showed was attributable to *one* of the patented features and applied that as a royalty rate to Google's sales.  But neither EcoFactor nor Kennedy *ever* proposed that approach or mentioned ▮dollar amount▮ as a possible rate.  Instead, EcoFactor argued that "▮NRR▮ is … the number that is supported by the evidence."  Appx6533. EcoFactor's new math cannot save the verdict.

EcoFactor also contends, based on a snippet of attorney argument, that the jury heard evidence that it could scale the lump-sum amounts by relative market share to yield damages between ▮dollar amount▮.  Resp.48.  EcoFactor did not assert that theory at trial either.  During EcoFactor's cross-examination of Google's expert Todd Schoettelkotte, counsel asserted that assuming each licensee had a 1% market share, multiplying their payments by Google's market share would yield amounts between ▮dollar amount▮.  SAppx1009-1010.  Schoettelkotte did not dispute the attorney's math, but he emphasized that he had not performed this

analysis. SAppx1009-1010. Neither Kennedy nor any other witness testified to this theory. And even if they had, it would obviously be insufficient to support the verdict. EcoFactor's purported market share data is outdated, *see* pp. 19-20, *supra*, and the theory would ask the jury to pluck a number at random from a large range.

This Court should reject EcoFactor's jury-rigged efforts to reason backwards to the damages award. *Wordtech Sys., Inc v. Integrated Networks Sols., Inc.*, 609 F.3d 1308, 1321-22 (Fed. Cir. 2010) (theory not posed at trial could not establish harmlessness).

3.      Grasping at straws, EcoFactor argues that Google forfeited any prejudice argument. Nonsense. Although EcoFactor contends—remarkably—that Google did not address prejudice in its opening brief because Google did not use EcoFactor's preferred terminology, Google in fact discussed prejudice—or harmlessness—at length. Opening.33-34.

EcoFactor's argument with respect to the panel-stage briefing is equally insubstantial. Google described the error as "prejudicial," Panel-Opening.25, and argued that "the jury's award of an amount lower than what EcoFactor sought does not save Mr. Kennedy's unreliable opinion." Panel-Reply.12; *see* SAppx833-834; SAppx845 (Rule 59 motion). All three panel judges understood Google to argue that the admission of Kennedy's testimony was "prejudicial." Op.19; Dissent.11. Nothing more was required. The "burden" of demonstrating prejudice is not

"onerous," and an appellant need not use any magic words: "Often the circumstances of the case will make clear to the appellate judge that the ruling, if erroneous, was harmful and nothing further need be said." *Shinseki v. Sanders*, 556 U.S. 396, 410 (2009). Google addressed prejudice, and in all events the error's harmfulness is clear.

4. In a final Hail Mary, EcoFactor contends that Judge Newman's nonparticipation in the *en banc* proceeding invalidates it. Resp.52. EcoFactor forfeited this argument by failing to raise it in opposing rehearing. In any event, the Federal Circuit Judicial Council has already rejected this argument, explaining that 28 U.S.C. § 354(a) authorizes suspending a judge "from hearing cases of any sort," including *en banc* cases. In re Complaint No. 23-90015, Order of the Judicial Council of the Federal Circuit at 71 (Sept. 20, 2023).

## CONCLUSION

This Court should vacate the district court's denial of a new trial and remand for a new trial on damages.

Respectfully submitted,

DATED: February 18, 2025          MUNGER, TOLLES & OLSON LLP

                                  */s/ Ginger D. Anders*

VINCENT Y. LING                   GINGER D. ANDERS
MUNGER, TOLLES & OLSON LLP        MUNGER, TOLLES & OLSON LLP
350 S. Grand Avenue               601 Massachusetts Avenue NW
  50th Floor                        Suite 500E
Los Angeles, CA 90071             Washington, DC 20001
Telephone: (213) 683-9573         Telephone: (202) 220-1100
Email: vincent.ling@mto.com       Email: ginger.anders@mto.com

EVAN MANN                         ROBERT A. VAN NEST
MUNGER, TOLLES & OLSON LLP        LEO L. LAM
560 Mission Street                EUGENE M. PAIGE
  27th Floor                      R. ADAM LAURIDSEN
San Francisco, CA 94105           KRISTIN E. HUCEK
Telephone: (415) 512-4000         STEPHANIE J. GOLDBERG
Email: evan.mann@mto.com          KEKER, VAN NEST & PETERS LLP
                                  633 Battery Street
                                  San Francisco, CA 94111
                                  Telephone: (415) 391-5400
                                  Email: rvvannest@keker.com

*Counsel for Defendant-Appellant Google LLC*

# CERTIFICATE OF COMPLIANCE & CONFIDENTIALITY

1.    This brief complies with the type-volume limitation of Federal Circuit Rule 32(b)(1), because it contains 6986 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Federal Circuit Rule 32(b)(2).

2.    This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6), because it has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14-point font.

3.    This brief complies with the requirements of Federal Circuit Rule 25.1(d)(1) because it contains 11 unique words or numbers marked confidential, excluding material exempted by Federal Circuit Rule 25.1(d)(1)(C).


DATED: February 18, 2025       MUNGER, TOLLES & OLSON LLP

                      By:  */s/ Ginger D. Anders*
                          Ginger D. Anders
                          *Counsel for Google LLC*

**<u>CERTIFICATE OF SERVICE</u>**

I certify that I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system on February 18, 2025.

I further certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

DATED: February 18, 2025        MUNGER, TOLLES & OLSON LLP

By: *&#8260;s/ Ginger D. Anders*
      Ginger D. Anders
      *Counsel for Google LLC*